1  MICHAEL ALLEN (*pro hac* motion to be filed)
   *mallen@relmanlaw.com*
2  REED COLFAX (*pro hac* motion to be filed)
   *rcolfax@relmanlaw.com*
3  D. SCOTT CHANG (State Bar #146403)
   *schang@relmanlaw.com*
4  JAMIE L. CROOK (State Bar # 245757)
   *jcrook@relmanlaw.com*
5  **RELMAN, DANE & COLFAX, PLLC**
   1225 19ᵗʰ Street NW, Suite 600
6  Washington, D.C.  20036
   Telephone: 202-728-1888
7  Facsimile: 202-728-0848

8  LOUIS A. RAFTI (State Bar #243813)
   *la.rafti.law@gmail.com*
9  634 S. Spring St., #925
   Los Angeles, CA 90014
10 Telephone: 818-209-9157

11 Attorneys for Plaintiffs

12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

15                        (WESTERN DIVISION)

16            **CV11-00974** PSG (JCₓ)

17                                          Case No.

18
   **UNITED STATES *ex rel.* MEI LING**
19 **and FAIR HOUSING COUNCIL OF**        **FALSE CLAIMS ACT COMPLAINT**
   **SAN FERNANDO VALLEY,**               **AND JURY DEMAND**
20
                      Relators,
21                                         **FILED UNDER SEAL PURSUANT TO**
          — *v.*—                          **31 U.S.C. § 3730(b)(2)**
22
                                           **DO NOT PLACE ON PACER**
23 **CITY OF LOS ANGELES,**
   **CALIFORNIA and COMMUNITY**            **DO NOT PLACE IN PRESS BOX**
24 **REDEVELOPMENT AGENCY OF**
   **THE CITY OF LOS ANGELES,**
25
                      Defendants.
26

27

28

                                        1

## INTRODUCTION

1.　　Defendant City of Los Angeles, California ("City" or "Los Angeles") is required, as a material condition to receipt of Community Development Block Grant and other federal housing and community development funds, to certify its compliance with the federal Rehabilitation Act and other civil rights laws requiring accessible housing for people with disabilities, and to actually comply with those authorities in the administration of City programs using those funds.

2.　　On multiple occasions within the six years preceding the filing of this complaint, the City falsely certified that it was in compliance with these requirements.

3.　　In fact, for the past six years, the City has knowingly permitted its agencies and subrecipients, including Defendant Community Redevelopment Agency of the City of Los Angeles ("CRA"), to allocate hundreds of millions of dollars in federal housing and community development funds to finance apartment complexes located throughout Los Angeles without ensuring that each complex includes the minimum number of accessible dwelling units required by federal law.

4.　　The City's and CRA's false certifications of compliance outlined below, made to secure nearly one billion dollars in federal funds, violate the False Claims Act, and deprive the federal government and people with disabilities of hundreds, if not thousands, of such accessible units.

2

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. ____ Complaint (Filed Under Seal)

5.    Relators Mei Ling and the Fair Housing Council of San Fernando Valley ("Council") are personally and professionally harmed by Defendants' noncompliance with the Rehabilitation Act and related federal civil rights laws, and have previously provided a written disclosure to the U.S. Department of Justice which includes substantially all of the material evidence and information they possess concerning Defendants' false statements and certifications.

6.    Relators seek to recover funds that the City and the CRA secured through false statements to the U.S. Department of Housing and Urban Development ("HUD"), together with treble damages, appropriate civil money penalties, and attorneys' fees and costs, all under the False Claims Act.  In addition, Relators seek an appropriate share of the proceeds recaptured from the City and the CRA.

## JURISDICTION AND VENUE

7.    This action arises under the 31 U.S.C. §§ 3729 et seq. ("the False Claims Act").  This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3730(b) and 3732(a).  This Court also has jurisdiction pursuant to 28 US.C. §§ 1331 and 1345.

8.    Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because the conduct proscribed by the False Claims Act and complained of herein took place in this District, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c),

because the acts and omissions complained of herein occurred in this District, and

because, at all times material and relevant, Defendants resided in and transacted

business in this District.

9.      As required by 31 U.S.C. § 3730(b)(2), Relators have provided to the

Attorney General and to the United States Attorney for the Central District of

California a statement of material evidence and information that they possess

regarding Defendants' false claims and certifications.

10.     Because the statement and supporting evidence includes attorney

work product of Relators' counsel, and were submitted to the Attorney General and to

the United States Attorney in their capacity as potential co-counsel in this litigation,

the Relators understand this statement and supporting evidence to be confidential.

## PARTIES

11.     Mei Ling is 57 years of age and has used a wheelchair since January

2006.  Over the past four years, because of the lack of affordable, accessible housing

in Los Angeles such as is required by the Rehabilitation Act, Ling has been homeless,

or in transitional or senior housing that lacks the accessibility features she needs.

Through her affiliation with disability and fair housing groups, Ling has also

provided support and advocacy for other people with disabilities who are relegated

unnecessarily to institutional settings such as shelters, hospitals, and nursing homes

because of the lack of affordable accessible housing compliant with the Rehabilitation Act throughout the City.

12.     The Fair Housing Council of San Fernando Valley ("Council") is a private, non-profit, civil rights advocacy organization founded in 1958, the mission of which is to eliminate housing discrimination and expand housing choices for people with disabilities and members of other protected classes.  The Council's staff members have devoted considerable time and resources to investigating the wrongful conduct on the part of the City and the CRA alleged herein.

13.     The United States of America ("United States") provides housing-related funding to a variety of state and local governmental entities.  Receipt of the funds relevant to this action is contingent on certifications that the recipient has and will meet a variety of fair housing obligations.

14.     Defendant City of Los Angeles, California is a municipal corporation as defined by the laws of the State of California.

15.     Defendant Community Redevelopment Agency of the City of Los Angeles is a public agency authorized by California Community Redevelopment Law to conduct redevelopment and revitalization activities, using public and private funds, in designated areas in the City of Los Angeles.

5

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No.     Complaint (Filed Under Seal)

## FACTS

16.     Since at least 1974, the City has been a recipient of various federal housing and community development funds from HUD, including those under the Community Development Block Grant ("CDBG"), HOME Investment Partnership ("HOME"), Emergency Shelter Grant ("ESG") and Housing Opportunities for People with AIDS ("HOPWA") programs.  The City has also benefited from federal loan guarantees pursuant to Section 108 of the Community Development Act, 42 U.S.C. § 5308.

17.     During the six-year period preceding the filing of this Complaint (the "False Claims Period"), the City received at least $933,045,805.00 in CDBG, HOME, ESG and HOPWA funds.

18.     The total figure mentioned in paragraph 17, above, does not include other HUD funds that the City has received under the American Recovery and Reinvestment Act of 2009, the Neighborhood Stabilization Program, the Section 8 Program, and other special allocations that are also subject to the civil rights certifications outlined herein.

19.     As a precondition for receiving the funds mentioned in paragraphs 17 and 18, above, the City must certify compliance with civil rights laws protecting

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No.     Complaint (Filed Under Seal)

people with disabilities and the regulations pursuant to which HUD administers its funding programs.

20.     During the False Claims Period, the City provided HUD with express and implied civil rights certifications mentioned in paragraph 19, above, in furtherance of its applications for the federal housing and community development funds mentioned in paragraphs 17 and 18, above.

21.     Among these civil rights certifications, the City is required to certify that it will administer each grant in compliance with Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), as amended, and implementing regulations at 24 C.F.R. Part 8, which provide that no person in the United States shall on the grounds of disability be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives federal financial assistance.

22.     The federal regulations at 24 C.F.R. Part 8 require that in any new or substantially altered multifamily housing projects assisted with federal funds, a minimum of five percent (5%) of the units (but not less than one unit) in each development must comply with the Uniform Federal Accessibility Standards with respect to mobility impairments, and  at least two percent (2%) of the units (but not

7

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No.     Complaint (Filed Under Seal)

less than one unit) in each development must comply with the Uniform Federal

Accessibility Standards with respect to visual and auditory impairments.

23.     Throughout the False Claims Period, the City was obligated to

certify—in writing and as a material condition of its eligibility to receive such

funds—that it would affirmatively further fair housing ("AFFH") with respect to

disability and other protected classifications, as required by the Fair Housing Act, 42

U.S.C. § 3608; the Housing and Community Development Act, 42 U.S.C. § 5304; the

National Affordable Housing Act, 42 U.S.C. § 12705(b)(15); and these statutes'

implementing regulations, *see* 24 C.F.R. §§ 91.225(a)(1) and 570.601(a)(2).

24.     The certifications applicable to the funds mentioned in paragraphs 17

and 18, above, apply to any subrecipient of those funds, including the CRA and its

funding allocations to providers of CRA-assisted housing.

25.     On information and belief, throughout the False Claims Period, the

CRA executed applications and contracts with the City containing certifications of

compliance with the Rehabilitation Act and the Fair Housing Act.

26.     Throughout the False Claims Period, the City directed millions of

dollars in CDBG and HOME funds to an Affordable Housing Trust Fund ("AHTF")

for the purposes of developing affordable housing.

8

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. ____ Complaint (Filed Under Seal)

27.     As a consequence of the City's commingling of CDBG and HOME funds with state, local and private resources, any housing development that has received AHTF funding is, by definition, a recipient of federal financial assistance, and must comply with the federal accessibility requirements established by the Rehabilitation Act and HUD's implementing regulations found in 24 C.F.R. Part 8.

28.     Throughout the False Claims Period, the CRA's official Housing Policy provided that "[w]hen Federal . . . housing funds are used, further requirements generally apply to the specific project being funded. . . . When such funds are used, the conditions associated with those funds must be followed, in addition to the conditions set forth herein for the use of redevelopment funds for the development of housing under agreements with the CRA[]."  CRA Housing Policy, August 4, 2005, at p. 21, § 6.08.

29.     Pursuant to the Rehabilitation Act, 24 C.F.R. Part 8 and CRA's own Housing Policy, the City and CRA had an obligation to ensure that multifamily housing projects assisted with federal funds contained at least the minimum number of accessible units required by law.

30.     Throughout the False Claims Period, the City directed hundreds of millions of dollars in CDBG, HOME, AHTF and other funds to the CRA for the purpose of developing affordable housing.

31.     Throughout the False Claims Period, the CRA allocated these and other funds to private and non-profit developers to build or substantially alter hundreds of apartment complexes containing thousands of units.

32.     Relators are aware of at least 28 multifamily projects, comprising thousands of units, for which the CRA provided CDBG, HOME and/or AHTF funds to support new construction or substantial alteration during the False Claims Period.

33.     Contrary to the City's and the CRA's certifications of civil rights compliance, none of these 28 multifamily projects contains the minimum number of units accessible to people with mobility and/or auditory/visual impairments that is required by the Rehabilitation Act and 24 C.F.R. Part 8.

34.     On information and belief, the CRA provided CDBG, HOME, AHTF or other federal funds to support the development of additional complexes during the False Claims Period that do not contain the minimum number of units accessible to people with mobility and/or auditory/visual impairments that is required by the Rehabilitation Act and 24 C.F.R. Part 8.

35.     Contrary to the City's certifications of civil rights compliance made during the False Claims Period, neither the City nor the CRA maintained policies or practices to ensure that multifamily housing projects assisted with federal funds contained the minimum number of units accessible to people with mobility and/or

auditory/visual impairments that is required by the Rehabilitation Act and 24 C.F.R. Part 8.

36. Relators have previously provided a written disclosure to the U.S. Department of Justice which includes substantially all of the material evidence and information that they possess concerning the City's and the CRA's false statements and certifications, including previously undisclosed admissions that the City and the CRA do not monitor the compliance by subrecipients of federal funds with the minimum accessibility requirements of the Rehabilitation Act and 24 C.F.R. Part 8.

37. Among other admissions that have not previously been disclosed publicly, City or CRA officials revealed to Relators that they:

a. Could not identify which CRA-financed projects received federal funding that triggers Rehabilitation Act and regulatory obligations;

b. Did not monitor CRA sub-recipients' compliance with Rehabilitation Act accessibility requirements and did not require annual compliance reports from those subrecipients;

c. Did not maintain a list of accessible units in CRA-assisted projects and could not identify any wheelchair accessible or sensory accessible units in any of these projects as required by the Rehabilitation Act and 24 C.F.R. Part 8;

d.  Could not describe any accessible features in so-called "wheelchair units," "handicapped units," or "sensory accessible units"; and

e.  Failed to apply federal accessibility requirements to housing projects assisted with federal funding.

38.    Throughout the False Claims Period, Relators repeatedly advised City and CRA officials of their obligation to ensure compliance with the accessibility requirements imposed by the Rehabilitation Act, 24 C.F.R. Part 8, and other federal civil rights laws.

39.    Throughout the False Claims Period, City and CRA officials, in the presence of Relators but not in a manner that constituted public disclosure, repeatedly disclaimed any obligation for ensuring compliance with the accessibility requirements imposed by the Rehabilitation Act and 24 C.F.R. Part 8.

40.    Notwithstanding their knowledge of federal housing accessibility requirements, the City and the CRA failed, throughout the False Claims Period, to develop any system to ensure sub-recipients' compliance with those obligations.

41.    As a condition of receiving CDBG, HOME, ESG and HOPWA funding during the False Claims Period, the City was obligated to submit, for HUD approval, a periodic "Consolidated Plan," describing the housing market and housing needs within the City of Los Angeles.

12

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. _____ Complaint (Filed Under Seal)

42.    In 2003, the City submitted its 2003-2008 Consolidated Plan to HUD. In 2008, the City submitted its 2008-2013 Consolidated Plant to HUD.

43.    In its 2008-2013 Consolidated Plan, the City reported that 24% of adults with disabilities (or 166,636 adults) in the City were living below the poverty line, compared to 18% of the adult population without disabilities, and that "[p]ersons with disabilities in the City face unique problems in obtaining affordable and adequate housing," including discrimination.  2008-2013 Consolidated Plan, at 94.

44.    Despite the fact that the City's Consolidated Plan contains detailed findings with respect to the need for accessible housing, 2008-2013 Consolidated Plan, at 94-95, the City has not taken appropriate actions to ensure that apartment complexes built with federal housing and community development funds actually comply with the accessibility requirements found in the Rehabilitation Act and its implementing regulations.

45.    HUD may not grant funds to the City unless the City makes an annual certification that it will "affirmatively further fair housing." *See* 42 U.S.C. §§ 3608, 5304(b), and 12705(b)(15).  HUD has interpreted these statutory requirements to mean that a recipient of federal funds must "conduct an analysis to identify impediments to fair housing choice within the jurisdiction, take appropriate actions to overcome the effects of any impediments identified through that analysis, and

maintain records reflecting the analysis and actions in this regard." 24 C.F.R. § 91.225; *see also* 24 C.F.R. § 570.601(a)(2).

46.     The City virtually ignored the lack of affordable, accessible rental units in its most recent Analysis of Impediments ("AI"), which was published in draft form in November 2005.

47.     In fact, the City failed to conduct a meaningful analysis of impediments with respect to the housing needs of people with severe enough disabilities to require the kind of highly accessible housing mandated by the Rehabilitation Act.

48.     To the extent that the AI identifies any impediments that bear on fair housing choice for persons with disabilities, for many years and throughout the False Claims Period, the City has failed to take appropriate steps to overcome such impediments.

49.     For instance, the City failed to take one of the simplest "appropriate actions" it could have taken: enforcement of the 5% wheelchair accessibility and 2% sensory-impairment accessibility requirements in CRA-sponsored apartment complexes.

50.     The City's certifications and representations by which it asserted that it would conduct, and had conducted, an analysis of impediments to fair housing

14

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. ___ Complaint (Filed Under Seal)

choice with respect to disability were false because the City's process and the resulting document was the functional equivalent of doing no analysis at all.

51.    In vouching for the compliance of the CRA and the CRA's sub-recipients with the Rehabilitation Act and other civil rights requirements (including the obligation to "affirmatively further fair housing"—pursuant to the Fair Housing Act, 42 U.S.C. § 3608; the Housing and Community Development Act, 42 U.S.C. § 5304; the National Affordable Housing Act, 42 U.S.C. § 12705(b)(15); and these statutes' implementing regulations, *see* 24 C.F.R. §§ 91.225(a)(1) and 570.601(a)(2)—throughout the False Claims Period, the City has permitted the CRA to distribute vast amounts of federal funding to its sub-recipients (the developers of these CRA-assisted properties) without adequate oversight and financial controls, resulting in wholesale noncompliance with the accessibility requirements of the Rehabilitation Act and the Fair Housing Act.

52.    In the face of these failures to identify impediments faced by people with serious mobility and sensory impairments, and to take appropriate actions to overcome those impediments, the City has made express and implied certifications of compliance with the Rehabilitation Act, along with express and implied AFFH and other civil rights certifications.

53.     On multiple occasions within the preceding six years, the City

certified that it was in compliance with these requirements.  On multiple occasions

within the preceding six years, the City made demands for payment of the funds that

it had been awarded, which demands represented that the City was in compliance

with the terms of the grants.

54.     To Relators' knowledge, no public disclosure has been made of these

facts.  Through their efforts to obtain information from the City and the CRA,

Relators have secured previously undisclosed admissions that neither the City nor the

CRA is monitoring compliance, in housing that has been developed and constructed

with federal housing and community development funds, with the accessibility

requirements of the Rehabilitation Act or applicable AFFH requirements.

55.     Through the Consolidated Plans submitted or in force during the

False Claims Period, the City caused HUD and the public to believe that the lack of

accessible housing for people with disabilities was a significant problem in Los

Angeles and that the City would employ its housing and community development

funds to address that problem.

56.     Through its Annual Action Plans, Consolidated Annual Performance

Reports and annual certifications of compliance with civil rights and AFFH

obligations, the City caused HUD and the public to believe that it was in compliance

with all federal obligations relating to the receipt of federal housing and community development funds.

57.     Specifically, through its annual Applications for Federal Assistance and Grant Agreements, the City caused HUD and the public to believe that it and its sub-recipients were complying with the accessibility requirements of the Rehabilitation Act.

58.     In fact, there were (and are) no mechanisms in place to ensure such compliance by CRA-assisted projects, as Relators have learned through a lengthy series of inquiries and public records requests for the addresses and unit numbers of all the Rehabilitation Act-compliant, accessible units in CRA-sponsored properties.

59.     The City's false claims and certifications to the federal government were knowingly made.

60.     Through its repeated certifications and assurances to the City and to HUD that it was in compliance with the Rehabilitation Act and other civil rights laws, the CRA has knowingly caused false or fraudulent claims for payment or approval to be submitted to the federal government.

61.     Through audits conducted by HUD's Office of Inspector General before and during the False Claims Period and as a result of notifications provided by Relators to numerous City officials, the City was on notice that the CRA lacks written

policies and adequate controls to ensure that federal requirements are met by its sub-recipients.

62.     Despite these findings by HUD, and notwithstanding evidence uncovered by Relators that the CRA lacks oversight mechanisms necessary to ensure compliance with federal accessibility requirements, the City has not required sub-recipients of its federal housing funds to demonstrate their compliance with the Rehabilitation Act and related requirements, has never sanctioned a sub-recipient for noncompliance, and has continued to allocate federal housing and community development funds to the CRA throughout the False Claims Period.

63.     As a consequence, the federal government has been cheated out of hundreds or thousands of highly accessible apartment units that federal law requires be made available to people with mobility, auditory and visual impairments.

64.     People in need of the highly accessible units have also been deprived of the opportunity to live in neighborhoods where CRA-supported apartment complexes have been built, and many of these people have been relegated to living in inaccessible or inappropriate institutional settings because of the City's and the CRA's failure to comply with their civil rights certifications and their obligations under the Rehabilitation Act and 24 C.F.R. Part 8.

18

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. ____ Complaint (Filed Under Seal)

65.     In short, while conveying the "cover story" supported by the actions

described in the City's Consolidated Plans, Annual Action Plans, and Consolidated

Annual Performance Evaluation Reports, the City and the CRA were actually

permitting the use of hundreds of millions of dollars to create housing that did not

contain the minimum number of highly accessible units needed by people with

serious mobility and visual/auditory impairments.  In essence, the City and the CRA

lied to the federal government in order to secure the federal funds mentioned above.

That is precisely the conduct Congress sought to prevent in passing and strengthening

the False Claims Act.

66.     More broadly, the City has knowingly failed to take appropriate steps

to overcome impediments to fair housing choice for people with mobility and sensory

disabilities, as required by the Fair Housing Act.

67.     Accordingly, the City's certifications were false, as were its

representations that it was complying with its obligations under the grants when it

made demands for payment.  Inasmuch as compliance with all civil rights

certifications is a precondition for receipt of federal housing and community

development funds, the City has improperly received at least as much as $933 million

in federal funds.

68.     Relators allege that all of the funds mentioned in paragraphs 17 and 18, above, were obtained through knowing false claims and certifications to HUD, and will seek recovery of such funds on behalf of the United States.

## CAUSE OF ACTION

69.     Relators repeat and incorporate herein the allegations set forth in paragraphs 1- 68, above.

70.     On each occasion that the City made an express certification of the type described herein, the total number of which during the False Claims Period is not currently known to Relators, and on each occasion that the City otherwise requested or demanded payment from the federal government based on the City's having supposedly complied with its certification-based obligations outlined above, it committed a separate violation of the False Claims Act, 31 U.S.C. § 3729 et seq.

## JURY TRIAL DEMAND

Relators hereby demand a trial by jury.

## CLAIMS FOR RELIEF

Relators respectfully request that this Court enter judgment against the City and CRA, as follows:

1. That the United States be awarded damages against the City and CRA in the amount of three times the damages sustained by the United States because of the false

20

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles, Case No. ___ Complaint (Filed Under Seal)

claims alleged within the Complaint, as provided by the False Claims Act, 31 U.S.C. §3729 et seq.

2.  That civil penalties of $11,000 be imposed for each and every false claim that the City and CRA presented to the United States;

3.  That Relators be granted an appropriate share of the proceeds of the action or settlement of the claim, pursuant to 31 U.S.C. § 3730(d);  and

4.  That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which Relators necessarily incurred in commencing and prosecuting this case.

Dated: February 1, 2011          RELMAN, DANE & COLFAX, PLLC


MICHAEL ALLEN (*pro hac* motion to be filed)
*mallen@relmanlaw.com*
REED COLFAX (*pro hac* motion to be filed)
*rcolfax@relmanlaw.com*
D. SCOTT CHANG (State Bar #146403)
*schang@relmanlaw.com*
JAMIE L. CROOK (State Bar # 245757)
*jcrook@relmanlaw.com*
**RELMAN, DANE & COLFAX, PLLC**
1225 19th Street NW, Suite 600
Washington, D.C.  20036
Telephone: 202-728-1888
Facsimile: 202-728-0848

21

LOUIS A. RAFTI (State Bar #243813)
la.rafti.law@gmail.com
634 S. Spring St., #925
Los Angeles, CA 90014
Telephone: 818-209-9157

Attorneys for Relators

United States *ex rel.* Ling and Fair Housing Council of San Fernando Valley v. City of Los Angeles, California and Community Redevelopment Agency of
the City of Los Angeles, Case No.      Complaint (Filed Under Seal)

Community Redevelopment Agency of the City of
Los Angeles
Serve: Christine Essel
        Chief Executive Officer
        1200 West 7th Street
        Los Angeles, CA 90017

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States ex rel. Mei Ling and Fair Housing Council of San Fernando Valley | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV11-00974 PSG (JCx) |
| v. | |
| City of Los Angeles, California and Community Redevelopment Agency of the city of Los Angeles | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S).

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _D. Scott Chang_____, whose address is _1225 19th Street, NW, Suite 600, Washington, D.C. 20036_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

FEB - 1 2011

Clerk, U.S. District Court

Dated: _____

By: _____
            Deputy Clerk

                    *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

City of Los Angeles, California
Serve: June Lagmay
       City Clerk
       200 North Spring Street, Room 360
       Los Angeles, CA 90012

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| United States ex rel. Mei Ling and Fair Housing Council of San Fernando Valley | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | CV11-00974 PSG (JCx) |
| v. | |
| City of Los Angeles, California and Community Redevelopment Agency of the city of Los Angeles | SUMMONS |
| DEFENDANT(S). | |

TO:    DEFENDANT(S) _____                    _____

_____

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, D. Scott Chang _____, whose address is 1225 19th Street, NW, Suite 600, Washington, D.C. 20036 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___FEB - 1 2011___

By: _____JULIE PRADO___SEAL

                              Deputy Clerk

                              *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Philip S. Gutierrez and the assigned discovery Magistrate Judge is Jacqueline Chooljian.

The case number on all documents filed with the Court should read as follows:

## CV11- 974 PSG (JCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
| --- | --- | --- |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Mei Ling and Fair Housing Council of San Fernando Valley | City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| D. SCOTT CHANG, Relman, Dane & Colfax, PLLC, 1225 19th St., NW, Suite 600, Washington, D.C. 20036: 202-728-1888; LOUIS A. RAFTI, 634 S. Spring St., #925, Los Angeles, CA 90014: 818-209-9157 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C. §§ 3729, et seq. - for Defendants' false certification of compliance with civil rights obligations in exchange for federal funding

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | IMMIGRATION | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | REAL PROPERTY | ☐ 462 Naturalization Application | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | | FEDERAL TAX SUITS |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV11-00974**

FOR OFFICE USE ONLY:   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Mei Ling - County of Los Angeles<br>Fair Housing Council of San Fernando Valley - County of Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☑  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| County of Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER):  _____   Date  1.31.11

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |