Mitchell A. Kamin (Bar No. 202788)
mkamin@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067-4643
Telephone:  (424) 332-4800
Facsimile:  (424) 332-4749

*Counsel for Relman, Dane & Colfax PLLC,*
*former attorneys for Relator Mei Ling*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* Mei Ling and Fair Housing Council of San Fernando Valley,<br><br>        Plaintiff,<br><br>    v.<br><br>CITY OF LOS ANGELES, CALIFORNIA and Community Redevelopment Agency of the City of Los Angeles,<br><br>        Defendants. | Case No.: CV 11-00974 (PSG) (JCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELMAN, DANE & COLFAX PLLC'S MOTION FOR LEAVE TO APPEAR**<br><br>Judge:  Hon. Philip S. Gutierrez<br>Date:  September 11, 2017<br>Time:  1:30 p.m.<br>Location:  Courtroom 6A |

Relman, Dane & Colfax PLLC (the "Firm") hereby moves to appear in the above-captioned action.[1]  The Firm seeks leave to appear for the limited purpose of protecting its right to recover the portion of any monetary recovery obtained in this action by the Firm's former client, Relator Mei Ling, that the Firm is entitled to under its fee agreement with Ms. Ling.  Ms. Ling has provided notice of her intention to breach her fee agreement with the Firm, even though, as her current lawyer has acknowledged, the Firm's work has led to a "monumental" result for Ms. Ling.[2]  The Firm thus seeks leave to participate in this action so that it may file a notice of attorney's lien and stay apprised of developments in the litigation that may affect its interest in any monetary relief awarded to Ms. Ling and to ensure that Ms. Ling pays the Firm the amount to which it is entitled.

The Firm recognizes that there may be substantial litigation before this case will be resolved, and the Firm is not seeking any substantive relief from the Court at present. But when this case is resolved, either by settlement or judgment, the Firm will be prepared to ask this Court to enforce its fee agreement with Ms. Ling.

<u>**BACKGROUND**</u>

A.    **About the Firm.**

The Firm is a civil rights law firm based in Washington, D.C., with additional offices in Ohio and New Mexico.  The Firm litigates civil rights cases across the country in the areas of housing, lending, employment, public accommodations, education, and

---

[1]    The Firm is filing this Motion at the request of the Court's Attorney Admissions clerk, who advised counsel for the Firm to file a motion seeking leave to participate in order to begin receiving ECF notices, file its Notice of Attorney's Lien, and file other papers related to its efforts to enforce the Firm's contingency fee agreement with Ms. Ling.

[2]    *See* "U.S. sues Los Angeles over inadequate housing for disabled," Reuters (June 7, 2017 3:08 p.m.), http://www.reuters.com/article/us-losangeles-housing-lawsuit-idUSKBN18Y1ZX.

1  police accountability.  The Firm's work has included important and groundbreaking
2  lawsuits litigated in state and federal courts around the country.

3        The Firm pioneered use of the False Claims Act, 31 U.S.C. § 3729 *et seq*., to
4  ensure that cities and other municipal entities comply with their obligations under federal
5  civil rights laws.  Nearly a decade ago, the Firm persuaded the court in *United States ex*
6  *rel. Anti-Discrimination Center of Metro New York v. Westchester County* to hold that
7  when a municipality accepts federal funds, the False Claims Act imposes an affirmative
8  obligation to ensure those funds are used to provide housing accommodations as required
9  by federal fair housing laws.  495 F. Supp. 2d 375 (S.D.N.Y. 2007) (denying motion to
10  dismiss); 668 F. Supp. 2d 548 (S.D.N.Y. 2009) (granting the Firm's motion for summary
11  judgment).

12        **B.      Ms. Ling Hires the Firm To Develop Her Case Against Defendants.**

13        In February 2010, after she learned of the Firm's success in the *Westchester* matter,
14  Ms. Ling sought out and subsequently retained the Firm to develop and prosecute a case
15  against the City of Los Angeles and the Community Redevelopment Agency of the City
16  of Los Angeles (the "CRA") (collectively, "the Defendants") based on alleged violations
17  of the False Claims Act.  The Firm subsequently filed a lawsuit on behalf of Ms. Ling
18  and another relator (the Fair Housing Council of the San Fernando Valley), alleging that
19  the Defendants submitted false statements and false claims to the United States
20  government in order to receive a Community Development Block Grant and other
21  housing and community development funds and payments from the United States. The
22  Firm was tasked with a difficult job:  develop the facts and the legal theories that would
23  persuade the United States government that this case has merit and the government
24  should intervene to recover funds it paid to the Defendants under false pretenses.

25        The Firm performed its job admirably for more than six years. The Firm began by
26  conducting an extensive investigation of the Defendants' failures to comply with the
27  federal architectural and program accessibility requirements of Section 504 of the
28  Rehabilitation Act ("Section 504") and the Fair Housing Act ("FHA"), and the

Defendants' repeated false certifications to the U.S. Department of Housing and Urban Development ("HUD") that they had complied with those requirements.  Based upon that investigation, the Firm filed a complaint and shared with the government comprehensive and detailed evidence of the Defendants' knowing failures to comply with their accessibility obligations.

Although this case remained under seal for more than six years, the Firm consulted regularly with the U.S. Attorney's Office on factual issues in the case and continuously provided the government with additional evidence—developed by the Firm at its own expense—that Defendants had violated their certifications of compliance with the Section 504 and FHA accessibility requirements, which were preconditions to the Defendants' eligibility to receive federal funds.[3]  By September 2016, the Firm had given the U.S. Attorney's Office more than 200 architectural site surveys, plan reviews, and measurement reviews prepared by experts.  The Firm also provided its expert reports and transcripts of depositions conducted by the Firm of more than a dozen City and CRA officials responsible for ensuring compliance with the federal requirements or with making certifications to HUD.  Finally, the Firm regularly shared with the U.S. Attorney's Office its findings and conclusions about which properties (i) had received federal funding from the Defendants for new construction after the Section 504 and FHA accessibility requirements took effect, and (ii) may be subject to those requirements on the basis of having been substantially rehabilitated with such funds.

---

[3]     Much of this work was developed in a parallel lawsuit litigated by the Firm against the Defendants with respect to their failure to provide accessible housing.  *See Independent Living Center of Southern California, et al. v. City of Los Angeles, et al.*, No. 2:12-cv-551 (C.D. Cal.).  That litigation was filed on behalf of the Fair Housing Council of San Fernando Valley (Ms. Ling's co-Relator in this case) and two other organizations. In August 2016, the City agreed to settle the *Independent Living Center* litigation by providing 4,000 highly accessible units over a ten-year period, investing at least $200 million.  As of the filing of this motion, the *Independent Living Center* plaintiffs have reached an agreement in principle with the CRA, but that agreement has not been consummated.

The Firm also provided the U.S. Attorney's Office with its analysis concerning the applicable False Claims Act legal standards and their application to the facts developed by the Firm or by the U.S. Attorney's Office.  In particular, the Firm articulated how the false certification theory applied to the instant litigation, and it provided a detailed roadmap about the specific false certifications the Defendants had to make in order to secure federal funding.  On a number of occasions, the Firm also provided commentary on governing Ninth Circuit precedents under the False Claims Act, explained why periodic decisions from other jurisdictions were distinguishable or inapplicable, and shared new decisions on topics such as the validity of statistical sampling in False Claims Act cases.

Crucially, the Firm identified, analyzed, and highlighted evidence that the Defendants knowingly violated the False Claims Act.  The Firm compiled and provided materials from the CRA's Disability Task Force proceedings.  These materials demonstrated that the problems with accessibility were well-known as early as 2007 or 2008, yet neither Defendant addressed those problems in existing buildings or in buildings in the development pipeline.  The Firm also shared with the U.S. Attorney's Office all of the relevant HUD regulations and guidance documents, highlighting those provisions that had been brought to Defendants' attention by HUD, by Relators, or by third parties.  It also provided copies of relevant audits by HUD's Office of Inspector General and the Los Angeles City Controller.

The Firm's years of hard work paid off.  In May 2017, more than seven years after the Firm began working on Ms. Ling's case, the United States announced its intention to intervene in this lawsuit.  As Acting U.S. Attorney Sandra R. Brown stated when the government announced the intervention decision:

> While people with disabilities struggled to find accessible housing, the city and its agents denied them equal access to housing while falsely certifying the availability of such housing to keep the dollars flowing. The conduct alleged in this case is

very troubling because of the impact on people who did not
have access to housing that met their needs.[4]

The HUD Inspector General specifically praised "the important role whistleblowers play
in the process of uncovering waste, fraud, and abuse," and explained that this case
"displays our commitment to fully pursue allegations that are brought to our attention."[5]

### C. Despite the "Monumental" Result the Firm Achieved, Ms. Ling Announces Her Intention To Breach Her Fee Agreement.

The Firm agreed to represent Ms. Ling under a contingency fee arrangement.
Under that Agreement, Ms. Ling agreed that if "relief is obtained," she would pay the
Firm one-third of any monetary award she obtained (in addition to costs) or the Firm's
actual fees or costs, whichever is greater.

The Firm's work was substantially complete by December 2016, and the parties
were awaiting the government's decision on intervention. Believing that a resolution was
imminent, Ms. Ling abruptly fired the Firm on spurious grounds. Ms. Ling later
announced her intention to breach her fee agreement. Ms. Ling's refusal to honor her fee
agreement is shocking in light of the excellent work the Firm performed on her behalf
and on behalf of other disabled Los Angeles residents over a period of many years.

As Ms. Ling's new lawyer has publicly acknowledged, the government's decision
to intervene—a decision that would not have been made without the Firm's outstanding
work—was "monumental" for Ms. Ling. *See supra* at n.2. In essence, the case that the
Firm developed and persuaded the government to take over has been resoundingly
successful and important for Ms. Ling. Despite acknowledging this, Ms. Ling seeks to
walk away from her contractual obligation to pay the Firm the fees that she owes it.

---

[4]    https://www.justice.gov/opa/pr/united-states-intervenes-false-claims-act-lawsuit-against-city-los-angeles-and-crala.

[5]    *Id.*

**ARGUMENT**

The Firm should be granted leave to appear in this action so that it may protect its interest in any recovery obtained by Ms. Ling and remain apprised of developments in the proceeding that could impair that interest.  Under D.C. law, which governs Ms. Ling's fee agreement with the Firm, the Firm is entitled to recover the contingency fee Ms. Ling agreed to pay.  *See, e.g.*, *Greenberg v. Sher*, 567 A.2d 882 (D.C. 1989) (where lawyer "had substantially performed under the contingency fee agreement and was willing to complete his obligation, he was entitled to the full fee even though the outcome . . . was unknown when he was discharged").

Given the suspect timing of Ms. Ling's termination of the Firm, and her stated intent to breach her fee arrangement with the Firm, the Firm reasonably believes that, if Ms. Ling obtains a monetary recovery in this action and such funds are disbursed directly to her, the Firm will not be able to recover the portion of such funds owed to it absent further litigation.  Requiring the Firm to initiate a separate lawsuit to enforce its fee agreement would make little sense.  This Court is already familiar with the facts of this case and thus best situated to resolve any fee dispute between the Firm and Ms. Ling.

D.C. law permits the Firm to enforce its agreement with Ms. Ling through an attorney's lien.  *See, e.g.*, *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996).  The Firm is accordingly prepared to file a notice of attorney's lien with this Court in order to advise the Court and the parties that when this case is resolved, either by settlement or judgment, the Firm will be prepared to ask this Court to enforce that fee agreement.  In other False Claims Act lawsuits, firms in similar situations have brought fee disputes with relators to the attention of the Court by filing a notice of attorney's lien and asking the Court to enforce that lien at an appropriate time.  *See, e.g.*, *Goyal v. Gas Technology Institute*, 389 F. App'x 539, 542 (7th Cir. 2010); *United States ex rel. Frank v. Oakland Livingston Legal Aid*, 2000 WL 760714, at *1 (E.D. Mich. 2000).

In addition, the Firm should be allowed to appear in this proceeding so that it may receive timely notice of any developments that could jeopardize its ability to collect what

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

it is owed.  For instance, if the Firm is not notified promptly of a settlement, judgment, or other disposition of this matter, Ms. Ling could conceal or dispose of funds disbursed to her to make it even more challenging for the Firm to recover what it is owed.

In sum, the Firm recognizes that there may be substantial litigation between the government and the City before this case is resolved, and it seeks no relief from the Court as present, other than to be allowed to appear in this action.  Indeed, the sole purpose of this motion is to ensure that (1) the Firm is apprised of any developments in the case that might impact its ability to enforce its fee agreement with Ms. Ling and collect on its attorney's lien, and (2) if appropriate at a later stage, the Firm can promptly act to protect its interest prior to any disbursement of funds that might make it impossible for it to later recover the fees to which it is entitled based on the time-intensive and highly-successful work it performed as counsel for Ms. Ling.

Dated:  July 14, 2017         COVINGTON & BURLING LLP


By:    /s/   *Mitchell A. Kamin*
        Mitchell A. Kamin

*Counsel for Relman, Dane & Colfax PLLC, former attorneys for Relator Mei Ling*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELMAN, DANE & COLFAX PLLC'S
MOTION FOR LEAVE TO APPEAR