Scott Parrish Moore, (*pro hac vice pending*)
Anthony D. Todero, Cal. Bar No. 275315
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE  68102-2068
Telephone:  402-344-0500
Facsimile:  402-344-0588
Email:  spmoore@bairdholm.com

Attorneys for Plaintiff
MEI LING

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MEI LING and FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LOS ANGELES, CALIFORNIA and COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES,<br><br>Defendants. | No.  CV 11-00974 PSG (JCx)<br><br>MEMORANDUM AND POINTS & AUTHORITIES IN SUPPORT OF MEI LING'S CONSENT TO LEAVE & OBJECTION TO NOTICE OF LIEN |

Despite the fact that Co-Relator Mei Ling ("Ling") terminated the services of Relman, Dane & Colfax PLLC'S (the "Relman Firm") in December 2016, the Relman Firm seeks leave to file a Notice of Lien claiming that it performed "its job admirably" and, therefore, is entitled to one-third of any amount she recovers in this case. The Relman Firm has makes this demand despite the obvious fact that Ms. Ling has yet to recover anything and the Relman Firm's admission that "there will be substantial litigation before this case will be resolved." Indeed, contrary to its assertions, the Relman Firm's job was to not to merely investigate and file the Complaint in this case, but to ensure she recovered the amount to which she is entitled under the False Claims Act.

Ms. Ling does not to object the Relman Firm's motion for leave to file the Notice[1], but objects to the proposed Notice of Lien. If Ms. Ling recovers damages in this case, the Relman Firm is not entitled to one-third of her recovery for numerous reasons. The most compelling reason the Relman Firm is not entitled to the one-third fee is that it forfeited any fee to which it may have been entitled by breaching its fiduciary duty to Ms. Ling. The Relman Firm concealed facts material to her recovery in this case to secure $16,000,000 in attorney's fees and costs in a related case. The remedy for this breach is disgorgement.

## BACKGROUND

### A. The Relman Firm's Involvement in Two Related Lawsuits

The Relman Firm has been involved in two separate lawsuits that are the backdrop for the current Motion before the Court. The first is the present action, *United States, ex rel. Mei Ling v. City of Los Angeles* (the "FCA Case"), in which Ms. Ling claims the City of Los Angeles (the "City") violated the False Claims Act by falsely certifying compliance with federal disability laws that require housing receiving Federal financial assistance to be

---

[1] Ms. Ling agrees that this Court is best situated to resolve the Relman Firm's claim.

2

accessible to persons with disabilities. The Relman Firm served as co-counsel with the undersigned[2] representing Ms. Ling until she terminated the Relman Firm services on or about December 12, 2016. The Relman Firm also represented the Fair Housing Council of San Fernando Valley (the "Fair Housing Council"), Ms. Ling's Co-Relator in the FCA Case, until the Fair Housing Council also terminated the Relman Firm on or around that same time. (Declaration of Sharon Kinlaw ("Kinlaw Decl."), attached as Exhibit A, at ¶ 4).

The second lawsuit involving the Relman Firm is *Independent Living Center of Southern California v. City of Los Angeles*, No. 2:12-cv-00551 (the "Section 504 Case"). In the Section 504 Case, the Relman Firm represented the plaintiffs, which included the Co-Relator Fair Housing Council. The plaintiffs in that action alleged that the City of Los Angeles and others violated Section 504 of the Rehabilitation Act by failing to ensure that housing receiving federal financial assistance from the United States Department of Housing and Urban Development ("HUD") included required accessibility features. (Kinlaw Decl. at ¶ 4). The Section 504 Case was settled when the City agreed to, among other things, pay $200 million over a ten-year period to address the inaccessibility of the housing as well as several million dollars to the plaintiffs. (Kinlaw Decl. at ¶ 5). The City also agreed to pay the Relman Firm over $16,000,000 in attorney's fees and costs. (*Id.*).

**B. The Relman Firm Urges the Fair Housing Council Not to Object to a "Credit" in the FCA Case and Conceals this Information from Ms. Ling.**

The City of Los Angeles rests much of its defense in the ongoing FCA Case upon the notion that it should be entitled to an equitable "credit" for settling the Section 504 Case.[3] In other words, it seeks "credit" from the United States in the FCA Case for the $200 million it agreed to spend on accessibility in the Section 504 Case. In negotiating the

---

[2] The Relman firm refers to Scott P. Moore of Baird Holm LLP as "Ms. Ling's new lawyer." This is a patently false statement. Mr. Moore and Baird Holm have represented Ms. Ling in the present action since 2012, shortly after the Complaint was filed.

[3] *See* "Federal Government Joins Whistle-Blower Suit Against L.A. Over Housing for the Disabled," LA Times, (June 7, 2017, 5:25 P.M.) http://www.latimes.com/local/lanow/la-me-ln-justice-disability-suit-20170607-story.html.

settlement of the Section 504 Case, the City demanded assurances that the Co-Relator Fair Housing Council would not "oppose a settlement agreement in the False Claims Act case that provided 'credit' based on the terms of the 504 settlement." (Emails from the Relman Firm to FCA, attached as Exhibits A1 and A2, authenticated by Kinlaw Decl. at ¶ 7). The Relman Firm informed the Fair Housing Council that the City insisted on linking the two cases.

To secure a settlement of the Section 504 Case, the Relman Firm expressly recommended that the Fair Housing Council "respond that it will not oppose a DOJ decision [in the FCA Case] to take settlement of the Section 504 Case into account." (Exs. A1 and A2 ). At the time the Relman Firm made this recommendation to the Fair Housing Council, it was simultaneously representing Ms. Ling. Of course, any "credit" for the Section 504 Case considered in a settlement of the FCA Case would materially diminish Ms. Ling's recovery.

At no point during or after its representation of Ms. Ling did the Relman Firm ever disclose to her or co-counsel for Ms. Ling that the City made this request for a "credit" or that the Relman Firm recommended the Fair Housing Council not object to it. Instead, Ms. Ling only obtained this information recently when the Fair Housing Council voluntarily waived the attorney-client privilege and provided Ms. Ling with emails sent by the Relman Firm evincing its recommendations not to oppose a "credit" in the FCA Case.

## ARGUMENT

The Relman Firm breached its fiduciary duty to Ling by concealing the City's request for a "credit" in the FCA Case and then encouraging the Fair Housing Council to acquiesce to it in a clear attempt to protect its own interest in recovering over $16,000,000 in attorney's fees and costs.[4] As a result of this breach, the Relman Firm has forfeited any

---

[4] The Relman Firm asserts that it conducted an extensive investigation into the City's failures to comply with federal accessibility requirements which led to the United States intervening in this case. However, the Relman Firm fails to disclose that it sought compensation for that work in the Section 504 case and, indeed, received in excess of $16,000,000 in attorney's fees and costs for that work.

claim to attorney's fees.

As an initial matter, the Relman Firm assumes that District of Columbia law governs any dispute arising out of its fee agreement with Ms. Ling. Ms. Ling does not concede that point, as federal courts sitting in diversity apply the choice-of-law rules of the forum state. *Nelson v. Int'l Patin Co.*, 716 F.2d 640, 643 (9th Cir. 1983). However, a detailed analysis of California's choice-of-law provisions and a determination of whether California or District of Columbia law applies is not currently necessary. The Relman Firm does not have a valid attorney's lien under either set of laws.

Under both District of Columbia and California law, attorneys owe clients an absolute fiduciary duty. As the District of Columbia Court of Appeals has noted:

> The relation of attorney and client is one of the highest trust and confidence, and demands the utmost good faith on the part of the attorney. This relation is not only highly confidential, but presents so many opportunities for the reaping of special benefits at the expense of the client by an attorney so disposed, that courts will closely scrutinize any transaction in which the attorney has assumed a position antagonistic to his client.

*Maxwell v. Gallagher*, 709 A.2d 100, 102–03 (D.C. 1998). California courts have similarly remarked that "Few precepts are more firmly entrenched than the fiduciary nature of the attorney-client relationship, which must be of the highest character." *Styles v. Mumbert*, 164 Cal. App. 4th 1163, 1167, 79 Cal. Rptr. 3d 880, 883 (2008).

This fiduciary duty is manifested in the attorney's obligation to "protect his client in every possible way, and it is a violation of that duty for him to assume a position antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances." *Havasu Lakeshore Investments, LLC v. Fleming*, 217 Cal. App. 4th 770, 777–78, 158 Cal. Rptr. 3d 311, 318 (2013). This duty requires the attorney to disclose all material facts to the client. *See, e.g.*, *Maxwell*, 709 A.2d at 102-103 (recognizing that a law firm breached its fiduciary duty by failing to

disclose material facts and potential conflicts of interest to the client while seeking to benefit itself in a financial transaction); *Beal Bank, SSB v. Arter & Hadden, LLP*, 42 Cal. 4th 503, 514, 167 P.3d 666, 673 (2007) ("[A]ttorneys have a fiduciary obligation to disclose material facts to their clients.").

Under District of Columbia law, a client seeking disgorgement of legal fees as the sole remedy must only prove that the attorney breached a fiduciary duty, not that the breach caused actual injury. *Hendry v. Pelland*, 73 F.3d 397, 402 (D.C. Cir. 1996); *Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 75 (D.D.C. 1998) (noting that in order to state a claim for disgorgement of legal fees on a claim for breach of fiduciary duty, the client need not demonstrate actual injury). This is because an attorney's breach of fiduciary duty "diminishes the value of the attorney's representation as a matter of law." *Hendry*, 73 F.3d at 402.

Similarly, under California law, proof of actual damages is not required where the client only seeks forfeiture of fees. *Fair v. Bakhtiari*, 195 Cal. App. 4th 1135, 1153, 125 Cal. Rptr. 3d 765, 779 (2011). As one California appellate court has noted, forfeiture of legal fees "deters attorney misconduct" and reflects the "decreased value of the representation itself." *Id*. *See also*, 7 Am. Jur. 2d Attorneys at Law § 254 ("Fee forfeiture or disgorgement by an attorney is appropriate where there is a breach of fiduciary duty.").

There is no legitimate question that the Relman Firm owed Ms. Ling a fiduciary duty to both disclose all material facts and avoid any conflict that might put her interests in jeopardy. The Relman Firm breached this duty by concealing the City's request for a "credit" in the FCA Case and encouraging the Fair Housing Council not to object to this request. (*See, Exs A1* and *A2*). This conduct might have facilitated a settlement in the Section 504 Case—to the Relman Firm's benefit—but it simultaneously placed the amount of Ms. Ling's recovery in the FCA Case at significant risk. Indeed, the City has as recently as the date the United States intervened in this case stated that it believes the

1  United States should not pursue the FCA claim because of the settlement in the Section
2  504 case. Despite the inherent conflict of interest in securing a settlement in the Section
3  504 Case contingent upon a "credit" in the FCA Case, the Relman Firm forged ahead
4  and facilitated that settlement anyway—a result that netted nearly $16 million in fees for
5  itself.

Whether the Fair Housing Council ever actually acquiesced and provided the assurance demanded by the City is immaterial. Ms. Ling need not prove actual injury to succeed on a disgorgement claim; instead, she must only show that the Relman Firm breached its fiduciary duty. *See, e.g., Hendry*, 73 F.3d at 402; Fair, 195 Cal. App. 4th at 1153, 125 Cal. Rptr. 3d at 779. Not only did the Relman Firm *ignore* Ms. Ling's interests, it willingly placed them in peril by encouraging its other client (the Fair Housing Council) to not oppose a credit in the FCA case. The Firm then concealed this arrangement from Ms. Ling and co-counsel. As a result, disgorgement of any purported attorney's fee owed to the Relman Firm is warranted by this demonstrable breach of fiduciary duty.

## CONCLUSION

Ms. Ling does not object to the Court granting leave for the Relman Firm to file a notice of lien, nor to this Court deciding any such claim if and when it becomes ripe. She does, however, object to the lien itself because he Relman Firm breached its fiduciary duty to Ms. Ling by failing to disclose critical facts bearing on the FCA Case and actively encouraging a course of conduct that risked diminishing her recovery. Because of this conduct, any attorney's fees to which the Relman Firm believes it is entitled ought to be disgorged.[5]

---

[5] Ms. Ling has other defenses to the Relman Firm's claims and reserves the right to raise those claims at the appropriate juncture. Ms. Ling does not waive those rights by not expressly raising those defenses herein.

Respectfully submitted,

Dated: August 4, 2017

BAIRD HOLM LLP

_____
SCOTT P. MOORE
ANTHONY TODERO
Attorneys for Relator Mei Ling

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2017, I electronically filed **MEI LING'S CONSENT TO LEAVE AND OBJECTION TO NOTICE OF LIEN RELMAN,** with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Executed on August 4, 2017.

/s/ Scott P. Moore
Scott Parrish Moore, (*pro hac vice pending)*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Anthony D. Todero, Cal. Bar No. 275315
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE  68102-2068
Telephone:    402-344-0500
Facsimile:     402-344-0588
Email: spmoore@bairdholm.com

Attorneys for Plaintiff
MEI LING