Mitchell A. Kamin (Bar No. 202788)
mkamin@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749

*Counsel for Relman, Dane & Colfax PLLC, former attorneys for Relator Mei Ling*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA ex rel. Mei Ling and Fair Housing Council of San Fernando Valley,

Plaintiff,

v.

City of Los Angeles, California and Community Redevelopment Agency of the City of Los Angeles,

Defendants.

Case No.: CV 11-00974 (PSG) (JCx)

Assigned to Hon. Philip S. Gutierrez

**NOTICE OF ATTORNEY'S LIEN**

[*Notice of Appearance filed concurrently herewith*]

TO ALL PARTIES AND THEIR COUNSEL:

PLEASE TAKE NOTICE that the law firm of Relman, Dane & Colfax PLLC (the "Firm") claims an attorney's lien in the amount of certain money or property recovered by the Relator Mei Ling in this action, as set forth further below.

1. This lien is claimed pursuant to the terms of a written contract between Ms. Ling and the Firm, which was executed on or about December 8, 2010.

2. As set forth in Ms. Ling's written contract with the Firm, the amount of this lien is one-third of any monetary award to Ms. Ling, plus costs and expenses, or the Firm's actual fees and costs (whichever is greater), together with interest thereon at the legal rate authorized by statute.

3. This attorney's lien is permitted by the laws of the District of Columbia—which governs the contract between Ms. Ling and Firm—and other applicable law. *See, e.g.*, *Wolf v. Sherman*, 682 A.2d 194, 197 (D.C. 1996).

4. The Firm more than substantially performed its obligations in this case. As a result of the Firm's work building this case from the ground up (as well as the parallel Section 504 case against the City of Los Angeles ("City") and Community Redevelopment Agency ("CRA")—*Independent Living Center of Southern California, et al. v. City of Los Angeles, et al.*, Case No. 12-CV-00551-FMO (C.D. Cal.) (the "Section 504 case")—that yielded one of the country's most comprehensive settlements of accessible housing litigation), the Firm persuaded the United States that this case was sufficiently meritorious to warrant government intervention.

5. The Firm began work on this case and the Section 504 case simultaneously in 2010 after the Fair Housing Council of San Fernando Valley, Ms. Ling, and others realized that the City and CRA had not met their respective obligations to ensure that their affordable housing programs complied with federal accessibility requirements, and retained the Firm to fight on their behalf. The Firm engaged in several months of diligent fact-finding on the lack of accessible affordable housing in Los Angeles, the extensive portfolio of City and CRA multifamily projects, the extent of accessibility within these

projects and in individual developments, and the investment of federal and state funds in individual developments. Prior to filing a complaint in this case on February 1, 2011—and as required pursuant to the False Claims Act—the Firm submitted to the Government a detailed voluntary disclosure statement consisting of an extensive memorandum and nearly 50 exhibits, summarizing its findings as of that date. The Section 504 case was filed separately on January 13, 2012; initially, it was assigned to the Hon. S. James Otero, and subsequently to the Hon. Fernando M. Olguin.[1]

6. While this case remained under seal, the Firm developed extensive evidence of the need for accessible affordable housing in Los Angeles during discovery in the Section 504 case. The Firm secured declarations from more than forty individuals with disabilities who had been deprived of accessible affordable housing, as well as expert testimony. The Firm also developed proof of architectural inaccessibility in the affordable housing programs operated by the City and CRA, including assembling information on developments built after 1988, performing on-site inspections or plan reviews of a statistically valid sample of these buildings, and retaining two accessibility experts to review whether the inspected buildings complied with accessibility requirements. As part of this massive discovery effort, the Firm deposed twenty witnesses and propounded ninety interrogatories and 5,000 requests for admission. Given the relevance of the information generated in the Section 504 case to this one, the Firm maintained regular contact with the Government to share its factual findings and legal assessments.

[1] Plaintiffs in the Section 504 case included Independent Living Center of Southern California, Fair Housing Council of San Fernando Valley (the co-relator with Ms. Ling in this case), and Communities Actively Living Independent and Free. Judge Olguin entered judgment on the Plaintiffs' settlement agreement with the City on August 4, 2016 (Dkt. No. 532), and entered a separate judgment on Plaintiffs' settlement agreement with the CRA on September 7, 2017 (Dkt. No. 596).

7. The government's Complaint-in-Intervention (Dkt. No. 98) is supported in significant part by, and relies in part upon the above and other evidence developed by the Firm, and upon the Firm's work demonstrating the applicability of the False Claims Act to this evidence. For example:

- The Government's core allegation is that "the City failed to enforce the federal accessibility laws in its housing program, resulting in systemic noncompliance, including inaccessible housing projects assisted with federal funds and an inaccessible housing program." Dkt. No. 98, ¶ 183. The Firm developed conclusive proof of these failures through years of painstaking and costly fact-development work, and it shared all of that proof with the United States. This proof was provided in the form of deposition transcripts, building plans, expert reports, and documents and admissions obtained through both discovery and investigation in this case and the Section 504 case.
- The Government further alleges, "As a result of the City's failure to create or otherwise provide accessible housing, the City failed to comply with Section 504's minimum 5 Percent/2 Percent rule[.]" Dkt. No. 98, ¶ 186. Here again, this conclusion can be derived from the Firm's extensive work in this case and the Section 504 litigation, which culminated in expert reports documenting the City's and CRA's non-compliance in detail.
- Evidence developed by the Firm assisted the government in making the allegation that "[b]efore 2012, the City did not appoint a Section 504/ADA coordinator to coordinate the City's efforts to comply with Section 504 and the ADA with respect to housing." Dkt. No. 98, ¶ 197.
- Likewise, years of painstaking fact-finding and expert work by the Firm helped the Government to allege, "The properties in the City's Housing Portfolio are largely inaccessible. Among other things, slopes, ramps, and thresholds are too steep for safe passage by persons with mobility

disabilities; balconies are too narrow for wheelchair access; steps prohibit access to common areas for individuals with mobility disabilities; kitchen cabinets, shelves, and surfaces are outside of accessible reach ranges of persons who use wheelchairs; sinks, grab bars, mailboxes, and circuit breakers are mounted so they are outside of accessible reach ranges for persons who use wheelchairs; pipes below sinks and lavatories are uninsulated, thereby posing physical threats to persons who use wheelchairs; and there are insufficient numbers of designated accessible parking spaces in garages and parking lots." Dkt. No. 98, ¶ 184.

- The Firm also secured proof, through depositions of key witnesses, that "[a]t least up until May 2014, the City—including its departments, agencies, and housing authorities acting on its behalf—did not monitor or enforce the federal accessibility laws before issuing permits, during inspections, and for purposes of code enforcement." Dkt. No. 98, ¶ 187.
- Those same depositions also revealed that "[a]t least up until November 2014, the City did not deny requests from developers and other entities for federal housing funds based on a failure to comply with the federal accessibility laws." Dkt. No. 98, ¶ 189.
- Moreover, based in part on the Firm's lengthy voluntary disclosure to the Department of Justice, the Government alleged, "On numerous occasions, members of the public told the CRA/LA that its properties did not comply with the federal accessibility laws." Dkt. No. 98, ¶ 300.
- The Government similarly alleged, "Before 2011, in meetings and other communications with the public, the CRA/LA disclaimed any knowledge of, or interest in, statutory, regulatory or HUD guidance concerning federal accessibility requirements," Dkt. No. 98, ¶ 301, after receiving the Firm's voluntary disclosure and attached exhibits.

- As set forth in the Complaint-in-Intervention: "Before March 2013, the City did not include in its communications with builders and developers provisions ensuring the Five Percent/2 Percent Rule was complied with, or that the common areas of buildings were accessible." Dkt. No. 98, ¶ 207. The Firm secured this admission through its discovery efforts.
- The same is true of the allegation that "the CRA/LA did not appoint a Section 504/ADA coordinator with any experience with accessibility issues to coordinate the CRA/LA's compliance with Section 504 and the ADA as to housing." Dkt. No. 98, ¶ 280. This evidence—and other key evidence underpinning this case—was developed by the Firm.

8. The Firm undertook all this work and shared it with the Government with no guarantee of payment, but rather in reliance on Ms. Ling's promise to pay a fixed percentage of any recovery she obtained in this case. The fact that the Firm recouped fees and expenses in connection with the settlement of the separate Section 504 litigation in no way vitiates Ms. Ling's own contractual payment obligations in this matter.

9. Despite the Firm's extraordinary work, Ms. Ling seeks to avoid her payment obligations based on a specious claim of "breach of fiduciary duty." Ms. Ling faults the Firm for not disclosing to her a *proposed* settlement term in the Section 504 case. *See* Dkt. No. 103 at 4-7. This claim has no merit: Ms. Ling was *not a party* in the Section 504 litigation; Ms. Ling was *fully aware* that the Firm was handling the related Section 504 litigation against the City; the proposed term was discussed in the context of *confidential* settlement negotiations; and the proposed settlement term was *immediately rejected* and not agreed to.

10. The settlement term at issue was discussed with the Fair Housing Council—Ms. Ling's co-relator in this case—whose interests were aligned with those of Ms. Ling. In the email cited by Ms. Ling, the Firm explained to the Council that the proposed settlement term would "not compromise any interest you have in the False Claims Act case." Dkt. No. 103-2. As the Firm explained, the U.S. government had the "right" to

consider the Section 504 settlement's terms in negotiating any settlement of this case "whether we like it or not." *Id.* And *if* the government did take the Section 504 settlement into account, the Fair Housing Council still retained "all of your rights to object in the False Claims Act case." *Id.* Ms. Ling's and the Fair Housing Council's interests were aligned. As the Firm told the Fair Housing Council, the City's proposal would have no effect on the Fair Housing Council's position—and by extension, Ms. Ling's position—in this case. Even now, with the benefit of months of hindsight, Ms. Ling cannot identify any harm resulting from her not being advised of a last-minute settlement request in the Section 504 case that was immediately rejected. And if the Firm alerted Ms. Ling to the existence of this proposed settlement term, the Firm might have breached duties of confidentiality owed to others in connection with then-ongoing settlement discussions.

11. As far as the Firm is aware, no court has ever found a breach of fiduciary duty under circumstances remotely like those alleged by Ms. Ling. Not surprisingly, Ms. Ling cites no authority supporting this creative breach of fiduciary duty argument—which is the *only* complaint she raises with the Firm's nearly seven years of representation.

12. The Firm is not now asking the Court to resolve its dispute with Ms. Ling; it will do so if Ms. Ling stands to recover anything in connection with this case. But the Firm disputes in the strongest possible terms that it provided anything less than exemplary representation to Ms. Ling. It certainly rejects Ms. Ling's unsupported assertion that it breached any fiduciary duty.

Dated: September 15, 2017

**COVINGTON & BURLING LLP**

By: */s/ Mitchell A. Kamin*
Mitchell A. Kamin

*Counsel for Relman, Dane & Colfax PLLC, former attorneys for Relator Mei Ling*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2017, I electronically filed the foregoing **NOTICE OF ATTORNEY'S LIEN** with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Executed on September 15, 2017, at Los Angeles, California.

Respectfully submitted,

/s/ *Mitchell A. Kamin*

Mitchell A. Kamin (Bar No. 202788)
mkamin@cov.com
**COVINGTON & BURLING LLP**
1999 Avenue of the Stars
Suite 3500
Los Angeles, CA 90067-4643
Telephone: (424) 332-4800
Facsimile: (424) 332-4749