## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   **Order GRANTING IN PART and DENYING IN PART Defendant City of Los Angeles's motion to dismiss and GRANTING IN PART and DENYING IN PART Defendant CRA/LA's motion to dismiss**

Before the Court are a motion to dismiss filed by Defendant City of Los Angeles, *see* Dkt. # 128 ("*City Mot.*"), and a motion to dismiss filed by Defendant CRA/LA, *see* Dkt. # 130 ("*CRA/LA Mot.*").[1] Defendant CRA/LA also partially joins Defendant City of Los Angeles's motion. *See* Dkts. # 133, 166. Plaintiff United States of America opposes both motions, *see* Dkts. # 137 ("*City Opp.*"), 138 ("*CRA/LA Opp.*"), as does Qui Tam Plaintiff Fair Housing Council, *see* Dkt. # 136 ("*FHC Opp.*"), and Defendants replied, *see* Dkts. # 142 ("*City Reply*"), 149 ("*CRA/LA Reply*"). A hearing in this matter occurred on May 2, 2018, and the parties submitted supplemental briefing. *See* Dkts. # 164 ("*Gov't Supp.*"), 165 ("*City Supp.*"), 172 ("*CRA/LA Supp.*"), 173 ("*Second City Supp.*"), 181 ("*FHC Supp.*"), 182 ("*Second Gov't Supp.*").[2] Having considered the moving papers and oral arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant City of Los Angeles's motion to dismiss and **GRANTS IN PART** and **DENIES IN PART** Defendant CRA/LA's motion to dismiss.

I.     Background

In this action, Plaintiff United States of America ("the Government") alleges that Defendants City of Los Angeles ("the City") and CRA/LA repeatedly made false representations in order to receive federal housing funds, in violation of the federal False Claims Act ("FCA") and other laws.

---

[1] Where appropriate, the Court will refer to Defendant City of Los Angeles and Defendant CRA/LA collectively as "Defendants."

[2] Additionally, Plaintiff United States of America filed an ex parte application to file a response to Defendant City of Los Angeles's second supplemental reply. *See* Dkt. # 188. The Court hereby **GRANTS** that application and will consider the arguments contained in the response.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

A.    Factual Background

Each year, Congress allocates federal funding to address housing issues in America's cities and promote urban development and affordability. *City Mot.* 2:5–8. The City, like all major metropolitan areas, is designated as an "entitlement community," and so receives a statutorily set amount of certain federal grant funds each year. *Id.* 2:8–11 (citing 24 C.F.R. § 570.3). In addition to spending the entitlement grants directly, from 2001 to 2012, the City also provided the funds to the Community Redevelopment Agency of the City of Los Angeles ("CRA"), the predecessor to CRA/LA. *City Mot.* 2:11–14. During this period, CRA served as the "redevelopment agency for the City" and used a "portion of the [federal] funds" for various "multifamily housing projects." *See Complaint-in-Intervention*, Dkt. # 98 ("*Compl.*"), ¶¶ 11, 34, 55, 57, 264–65.

CRA/LA is an entity that came into existence on February 1, 2012, for the purpose of winding down the affairs of the former CRA. *Id.* ¶¶ 55–56. Although CRA/LA lacks the legal authority to participate in redevelopment activities (other than completing work related to approved enforceable obligations), all litigation involving the former CRA was automatically transferred to CRA/LA. *Id.* ¶¶ 57–58.

*i.    The Entitlement Programs*

In its complaint, the Government focuses on four programs ("the Entitlement Programs") that issued funds ("the Entitlement Funds") that the City used from February 1, 2001 through the present ("the Claims Period"). These are: (1) the Community Development Block Grant Program ("CDBG") and the Economic Development Initiative Program ("EDI"); (2) the HOME Investments Partnerships Program ("HOME"); (3) Housing Opportunities for People with AIDS ("HOPWA"); and (4) the Emergency Solutions Grant program ("ESG"). *Id.* ¶ 122. Each of these programs was designed to address a range of urban and economic issues; CDBG, for instance, addresses "critical social, economic, and environmental problems" stemming from "the growth of population in metropolitan and urban areas" and "inadequate public and private investment and reinvestment in housing." 42 U.S.C. § 5301(a).

The City notes that the Entitlement Programs "share many important administrative characteristics." *City Mot.* 3:16. First, the Entitlement Funds are allocated by the U.S. Department of Housing and Urban Development ("HUD") on an annual basis using statutory formulas and non-discretionary factors. *See, e.g.*, 24 C.F.R. § 570.3 (CDBG); 24 C.F.R. § 92.1 (HOME); 24 C.F.R. § 574.130 (HOPWA). Second, the Entitlement Programs vest discretion as to how funds are used to the entitlement communities, who in turn identify uses for the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Entitlement Funds and put them toward eligible activities. *See, e.g.*, 24 C.F.R. §§ 570.200–210 (enumerating a list of "eligible activities" for CDBG). And third, the Entitlement Programs are regulated and monitored by HUD through its regional and field offices, which ensure program compliance and proper use of the Entitlement Funds. *See, e.g.*, *Compl.* ¶ 139 ("Based upon its review of a jurisdiction's annual submissions—including its assurances and certifications—HUD executes with the jurisdiction a funding agreement for each of the formula grant programs for the upcoming program year."); 24 C.F.R. § 91.500 (outlining the process through which HUD approves funding requests); 24 C.F.R. § 570.900 (describing HUD performance reviews).

During its performance reviews, HUD examines whether an entitlement community is in "compliance with the primary and national objectives and other program requirements." 24 C.F.R. § 570.901. If a recipient "has failed to comply with a program requirement or has failed to meet a performance criterion," HUD can administer "corrective or remedial actions." 24 C.F.R. § 570.900. "If the recipient fails to undertake appropriate corrective or remedial actions," HUD can then administer sanctions. *Id.*

    ii.    *The Government's Allegations*

The Government alleges that the City and CRA received "many millions of federal taxpayer dollars by falsely promising to create accessible housing." *Compl.* ¶ 2. This money was then used "to violate the civil rights of people with disabilities in Los Angeles, and deprived them of an equal opportunity to participate in assisted housing programs." *Id.* These allegedly false representations occurred in various ways.

For example, each year, an entitlement community must submit an Annual Action Plan ("AAP") in which it "describ[es] the activities the jurisdiction will undertake during the next year to address priority needs and objectives, including the housing and supportive service needs of people with disabilities." *Id.* ¶ 131; *see also* 24 C.F.R. § 91.220. The AAP serves "as the application for CDBG, HOME, ESG, and HOPWA funds." *Compl.* ¶ 132; *see also* 24 C.F.R. § 91.515. In its yearly AAP, the Government asserts, the City would have certified that it would "administer the grant in compliance with Section 504 of the Rehabilitation Act of 1973," would "comply with the Fair Housing Act," and would "*[a]ffirmatively further fair housing*." *Compl.* ¶¶ 133, 136 (emphasis in original). In seeking CDBG funds, the City would further have guaranteed that "the grant will be conducted and administered in conformity with title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d), the Fair Housing Act (42 U.S.C. 3601–3619), and implementing regulations." *Id.* ¶ 137.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Furthermore, the Government's complaint indicates that funding agreements for the Entitlement Programs are premised on regulatory compliance. *Id.* ¶ 143 ("In each agreement for CDBG funds, the jurisdiction expressly acknowledges that CDBG Program regulations 'constitute part of the agreement,' and HUD agrees to make CDBG funds available to the jurisdiction 'subject to the provisions of the agreement.'"); *id.* ¶ 148 (same for HOME funds); *id.* ¶ 152 ("In agreements for ESG funds, the City makes certifications that it will comply with federal anti-discrimination laws."); *id.* ¶ 154 ("In the ESG agreements between the City and HUD, the City agrees to comply with all applicable laws and regulations in distributing funds under the grant agreement and 'to accept responsibility for ensuring compliance by recipient entities which may receive funding assistance.' . . . HUD agrees to provide the ESG grant funds '[i]n reliance upon the Consolidated Plan and certifications.'"); *id.* ¶ 158 ("[T]he City's HOPWA agreements included the requirement that it comply with . . . nondiscrimination provisions.").

The Government's complaint alleges that, despite repeatedly making these certifications as part of the funding process, the City "failed to enforce the federal accessibility laws in its housing program, resulting in systemic noncompliance, including inaccessible housing projects assisted with federal funds and an inaccessible housing program." *Id.* ¶ 183; *see also id.* ¶ 249 ("Despite its failure to analyze the impediments to fair housing for people with disabilities and take appropriate actions to address such impediments, each year during the false claims period, the City knowingly and falsely certified it would affirmatively further fair housing."). To support this claim, the Government alleges various failures on the part of the City and CRA.

In terms of "architectural failures," the Government alleges that "[t]he properties in the City's Housing Portfolio are largely inaccessible," noting,

> [a]mong other things, [that] slopes, ramps, and thresholds are too steep for safe passage by persons with mobility disabilities; balconies are too narrow for wheelchair access; steps prohibit access to common areas for individuals with mobility disabilities; kitchen cabinets, shelves, and surfaces are outside of accessible reach ranges of persons who use wheelchairs; sinks, grab bars, mailboxes, and circuit breakers are mounted so they are outside of accessible reach ranges for persons who use wheelchairs; pipes below sinks and lavatories are uninsulated, thereby posing physical threats to persons who use wheelchairs; and there are insufficient numbers of designated accessible parking spaces in garages and parking lots.

*Id.*; *see also id.*, Attach. C (compiling an "illustrative" list of alleged accessibility violations). As a result of this alleged noncompliance, the Government claims that the City "failed to make at least five percent of all buildings' unit[s] accessible for persons with mobility impairments,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

and an additional two percent of the units in such buildings accessible for persons with hearing or vision impairments," as required by Section 504 of the Rehabilitation Act. *Id.* ¶ 186.

In addition to architectural failures, the Government contends that throughout the Claims Period, "the City did not comply with programmatic requirements under the federal accessibility laws pertaining to housing programs, services, and activities." *Id.* ¶ 196. Such alleged programmatic failures include lacking a Section 504/Americans with Disabilities Act ("ADA") coordinator; failing to maintain accurate lists of accessible units; and failing to enforce various policies and procedures to ensure accessibility compliance. *Id.* ¶¶ 197–215.

Each year, the Government claims, "the City had to, and did, certify it would affirmatively further fair housing." *Id.* ¶ 216. Under federal regulations, to "affirmatively further fair housing" ("AFFH") required compliance with various provisions, which the City allegedly failed to undertake. *Id.* ¶¶ 217–49.

In November and December of 2011, the Government claims that HUD's Office of Fair Housing and Equal Opportunity "conducted a Section 504 compliance review of the CRA/LA Properties" in which it "surveyed thirty-one units at eleven projects and 'consistently observed accessibility deficiencies throughout the various units, developments, designated accessible routes and common areas.'" *Id.* ¶¶ 342, 344. Following this survey, HUD allegedly "sought an agreement with the City and the CRA/LA in which the defendants would voluntarily remedy their accessibility issues going forward." *Id.* ¶ 350. Although CRA/LA "executed a voluntary compliance agreement with HUD to remedy federal accessibility law violations" in September 2014, the City has yet to do so despite negotiations. *Id.* ¶¶ 351–52.

B.  Procedural History

In February 2011, two private whistleblowers, Relators Mei Ling and the Fair Housing Council of San Fernando Valley ("Fair Housing Council") (together, "Relators"), filed a qui tam complaint against the City and CRA. *City Opp.* 1:24–25; *see also* Dkt. # 1 ("*Qui Tam Compl.*"). The Government filed its complaint-in-intervention and joined the action on July 31, 2017. *City Opp.* 2:8. Although the Government and the City previously reached a settlement to increase future accessible housing stock in *Independent Living Center of Southern California v. City of Los Angeles*, CV 12-0551 FMO (PJWx), the action currently before this Court focuses not on alleged regulatory violations, but rather on alleged false claims and misuse of funds. *City Opp.* 2:18–21.[3]

---

[3] At oral argument, counsel for the City suggested that the settlement agreement reached by the parties in *Independent Living Center* accomplished the remedial goals that are sought by this separate action. However, the settlement agreement in that case required the City to "undertake

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

In its complaint, the Government asserts seven causes of action:

<u>First Claim for Relief</u>: Presentation of false claims for conduct occurring on or after May 20, 2009, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A). *Compl.* ¶¶ 353–55.

<u>Second Claim for Relief</u>: Presentation of false claims for conduct occurring before May 20, 2009, in violation of the FCA, 31 U.S.C. § 3729(a)(1). *Compl.* ¶¶ 356–58.

<u>Third Claim for Relief</u>: Making or using false records or statements for claims for payment pending on or after June 7, 2008, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B). *Compl.* ¶¶ 359–61.

<u>Fourth Claim for Relief</u>: Making or using false records or statements for claims for payment pending before June 7, 2008. *Id.* ¶¶ 362–64.

<u>Fifth Claim for Relief</u>: Negligent misrepresentation. *Id.* ¶¶ 365–68.[4]

<u>Sixth Claim for Relief</u>: Restitution (unjust enrichment). *Id.* ¶¶ 369–70.

<u>Seventh Claim for Relief</u>: Payment by mistake. *Id.* ¶¶ 371–73.

The Government seeks, in addition to civil penalties and other relief, $682 million in alleged damages, trebled, for a total of over $2 billion. *City Mot.* 11:24–26.

II.   <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City and County*

---

the actions described [in the agreement] for the purpose of ensuring that City-assisted housing programs, services, and activities are in compliance with the accessibility requirements of Section 504, the ADA, and Section 11135." *See* CV 12-551, Dkt. # 608, ¶ III.4. In other words, *Independent Living Center* remedied the alleged noncompliance that merely underlies the Government's allegations in this case. It did *not* remedy the allegedly false claims that are the actual focus of this action and the subject of the Government's FCA and common law claims.
[4] This claim is asserted against the City only.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

*of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.  Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations.  *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007).  The allegations "must set forth *more* than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis in original).  In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud.  Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rather, a plaintiff must identify each defendant's role in the alleged scheme.  *See id.* at 765.

III.   <u>Discussion</u>

A.   <u>FCA Claims</u>

To prevail on a claim under the FCA, the Government must prove the following elements: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent."  *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012).

Defendants argue that the Government's FCA claims should be dismissed for two primary reasons: first, because the Government's complaint does not satisfy the heightened pleading standard of Rule 9(b), and second, because the complaint fails to sufficiently plead falsity, scienter, and materiality.  *See City Mot.* 13:9–17.  In the alternative, the City contends that the FCA's statute of repose bars claims for conduct occurring before July 31, 2007.  *Id.* 13:17–19.  These various arguments will be considered in turn.

i.   *Rule 9(b)*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Because FCA claims sound in fraud, they must satisfy both the plausibility requirement of Rule 8 *and* the particularity requirement of Rule 9(b). *See United Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2004 n.6 (2016). Accordingly, the Government's complaint must "set forth what is false or misleading about a statement, and why it is false"; in other words, "the who, what, when, where, and how" of the misconduct charged. *Vess*, 317 F.3d at 1106; *see also Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) ("To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.") (internal quotation marks omitted). In the context of the FCA, Rule 9(b) requires "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998–99 (9th Cir. 2010) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Here, the City, joined by CRA/LA, argues that the complaint "utterly fails to allege the '*sine qua non* of an FCA violation'—an actual false claim." *City Mot.* 14:14–18 (quoting *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). Specifically, the City suggests that while the Government "recites a laundry list of federal statutes" and "describes the City's purported non-compliance with these accessibility requirements," it fails to "identify the specific certifications made, the individuals who made them, when they were made, how they were made, or what the specific language was in each certification." *City Mot.* 14:19–15:1. Absent any *specific* certification, or a *specific* act of alleged noncompliance to show that the certification was false, the City concludes that the Government's complaint does not meet Rule 9(b)'s particularity standard. *See id.* 15:1–13.

The Court disagrees. The Government's complaint identifies false claims made in various forms, including claims for payment in the form of annual funding agreements, *see Compl.* ¶¶ 139–58, 251–53, 354, 357; applications for Neighborhood Stabilization Funds, *see id.* ¶¶ 169–76, 262, 354, 357; and requests made through HUD's Integrated Disbursement Information System ("IDIS"), which disburses funds, *see id.* ¶¶ 159–67, 360, 363. These specific allegations of false claims submitted to the Government, coupled with allegations of regulatory noncompliance, are sufficient to give Defendants notice of the misconduct alleged. As the Government notes, "The City is not left in the dark as to where to look or what to defend." *City Opp.* 12:26–27. The Court concludes that the particulars of the alleged scheme are clear enough to give Defendants notice of the allegedly fraudulent conduct, and thus sufficient for purposes of Rule 9(b).

ii.     *FCA Elements*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

      a.      *Falsity*

Related to Defendants' Rule 9(b) argument is their assertion that the Government fails to plead "a false or fraudulent claim." *Hooper*, 688 F.3d at 1047. The Court disagrees with this contention as well.

The Ninth Circuit has stated that the FCA is to be construed "broadly, as it is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government.'" *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 899 (9th Cir. 2017) (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1170 (9th Cir. 2006)). Consequently, "[s]uch broad construction has thus given rise to a number of doctrines 'that attach potential False Claims Act liability to claims for payment that are not explicitly and/or independently false.'" *Campie*, 862 F.3d at 899 (quoting *Hendow*, 461 F.3d at 1171).

           1.     *Express and Implied False Certifications*

The Ninth Circuit attaches liability to both express and implied false certifications. *See, e.g.*, *Ebeid*, 616 F.3d at 998. Claims are categorized as express false certifications "simply when an entity seeking payment certifies compliance with a law, rule or regulation as part of the process through which the claim for payment is submitted." *United States ex rel. Capriola v. Brightstar Educ. Grp., Inc.*, No. 1:11-CV-00135 AWI GSA, 2013 WL 1499319, at *4 (E.D. Cal. Apr. 11, 2013). By contrast, under the implied false certification theory,

> when a defendant submits a claim, it impliedly certifies compliance with all conditions of payment. But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim "false or fraudulent" under § 3729(a)(1)(A).

*Escobar*, 136 S. Ct. at 1995.

Both theories of false certification are manifested in the Government's complaint. It alleges that during each year of the Claims Period, the City executed separate CDBG, HOME, HOPWA, and ESG grant agreements to obtain HUD funds. *See Compl.* ¶¶ 139, 253. For each and every grant agreement, the City promised to comply with accessibility laws, which, the complaint further alleges, it did not do. *See id.* ¶¶ 143–49, 152–54, 157–58, 253, 257. Such misrepresentations of compliance can be considered express false certifications for purposes of the FCA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

As for implied false certifications, the Supreme Court has recognized liability "at least where two conditions are satisfied: first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001; *see also id.* at 2000 ("[H]alf-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations."). Here, each time the City made a funding request (called a "drawdown") through IDIS, it input the specific projects where the funds would be invested. *See Compl.* ¶¶ 161–62. In doing so, it certified compliance with federal accessibility laws. *See id.* ¶ 167.

The Government's analogy to *Campie*, a Ninth Circuit case that interpreted *Escobar*, is instructive. There, a drug producer allegedly made false representations in an application to the Food and Drug Administration ("FDA") for approval to manufacture a new drug. *Campie*, 862 F.3d at 895. Although the application maintained that the drug's active ingredient list would be sourced from registered facilities in approved countries, it was alleged that the producer actually sourced the active ingredients from an unregistered facility. *Id.* at 895–96. The Ninth Circuit determined that such representations were misleading half-truths: "Although the drugs at issue were at all times ostensibly 'FDA approved,' [the defendant] requested payment for drugs that fell outside of that approval and omitted critical information regarding compliance with FDA standards." *Id.* at 903.

As the Government characterizes the misconduct alleged here, "With each drawdown, then, the City did not merely request payment, but also 'necessarily' and impliedly made representations about each building's accessibility, including that construction would occur in compliance with Federal Accessibility Laws and when complete, would meet Federal Accessibility Law requirements." *City Opp.* 16:16–20. The Court agrees that these allegations—that the City requested funding for specific building projects that did *not* conform to applicable requirements despite the implied assertion that they did—constitute the sort of implied false certification that satisfies the FCA's falsity requirement.

### 2. *Promissory Fraud*

Similar to an implied false certification, under the "promissory fraud" or "fraud-in-the-inducement" theory, "liability will attach to each claim submitted to the government under a contract, when the contract or extension of the government benefit was originally obtained through false statements or fraudulent conduct." *Campie*, 862 F.3d at 902. "In other words,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

subsequent claims are false because of an *original fraud* (whether a certification or otherwise)." *Hendow*, 461 F.3d at 1173 (emphasis in original).

As discussed above, the Government's complaint alleges a variety of false statements. For example, each AAP required certification with Section 504 of the Rehabilitation Act—representations that were allegedly false when made. *See Compl.* ¶¶ 131–34. The City also certified—allegedly falsely—that it would follow AFFH requirements. *See id.* ¶¶ 136–37. And in each grant agreement, the City allegedly misrepresented its compliance with federal accessibility laws. *See id.* ¶¶ 143–45, 148–49, 152–54, 157–58, 253, 257. Accordingly, the Court agrees with the Government's conclusion regarding promissory fraud: "The City obtained a government benefit through false statements of compliance with the Federal Accessibility Laws. HUD required such statements in order for the City to receive Formula Grant Program funds. Its subsequent requests for payment were therefore false or fraudulent." *City Opp.* 17:26–18:3.

Therefore, the FCA's falsity element is satisfied under the express false certification theory, the implied false certification theory, *and* the promissory fraud theory.

### 3.      *CRA/LA's False Claims*

CRA/LA makes a further argument directed only at itself: that the Government's complaint does "not sufficiently allege [that *CRA/LA*] made or caused to be made a false statement to HUD." *CRA/LA Mot.* 28:4–30:6.

FCA liability extends to persons who knowingly assist in causing the government to pay false claims, even if they did not have direct contractual relations with the government. *See United States ex rel. Rizzo v. Horizon Lines, LLC*, No. CV 10-7409 PA (AJWx), 2013 WL 12131171, at *4 (C.D. Cal. Oct. 28, 2013) (citing *United States v. Mackby*, 261 F.3d 821, 827 (9th Cir. 2001)). "[T]he FCA is violated not only by a person who makes a false statement or record, but also by one who engages in a fraudulent course of conduct that causes the [G]overnment to lose money by honoring a false claim." *United States ex rel. Humane Soc'y of U.S. v. Westland/Hallmark Meat Co.*, No. EDCV 08-00221-VAP (OPx), 2010 WL 11464786, at *8 (C.D. Cal. Aug. 5, 2010) (internal quotation marks omitted).

Here, the Government's complaint alleges that CRA/LA used federal funds to design and construct twenty-two multifamily properties, and that as a subrecipient of federal grant funds, it had an obligation to ensure that these properties complied with federal accessibility laws. *See Compl.* ¶¶ 10–12, 264–71. The Government details particular failures in design that made these properties inaccessible, *see id.* ¶¶ 272–75, and identifies various programmatic failures for which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

CRA/LA was allegedly responsible, *see id.* ¶¶ 276–301. The complaint further explains how CRA/LA "submitted, and knowingly caused the City's submission of, false claims or statements to HUD." *Id.* ¶¶ 302–17. Accepting these allegations as true and in the light most favorable to the Government, the Court determines that the complaint sufficiently pleads that CRA/LA made, or caused to be made, false claims to HUD.[5]

      *b.*    Scienter

     A defendant is liable under the FCA only if it acted "knowingly," meaning that it had "actual knowledge of the information," acted in "deliberate ignorance," or acted "in reckless disregard of the truth." 31 U.S.C. § 3729(b)(1). Although "knowledge must [] be pleaded sufficiently to make entitlement to relief plausible," *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1012 (C.D. Cal. 2015), it need not be pleaded with particularity. *See id.* at 1011–12; *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) ("[M]alice, intent, knowledge, and other conditions of a person['s] mind, including scienter, can be alleged generally.") (internal quotation marks omitted). Mere negligence is insufficient to state a claim under the FCA. *See United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 109 (3d Cir. 2007) ("Congress specifically expressed its intention that the act not punish honest mistakes or incorrect claims submitted through mere negligence.") (internal quotation marks omitted); *see also Hendow*, 461 F.3d at 1172 ("[A] palpably false statement, known to be a lie when it is made, is required for a party to be found liable under the False Claims Act.").

---

[5] CRA/LA asks the Court to go beyond the allegations in the complaint to the various requisition requests and contracts incorporated within it, which it asserts "do not contain any false statement." *CRA/LA Mot.* 28:17–19; *see also Defendant CRA/LA's Request for Judicial Notice*, Dkt. # 129. As the Government admits, at least some of these documents are incorporated into the complaint and are thus properly subject to judicial notice. *See* Dkt. # 139, 13:14–17; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014) (determining that courts may consider "attached exhibits, documents incorporated by reference, and matters properly subject to judicial notice"). However, the Court agrees with the Government that an examination of these documents at this stage is inappropriate, since "[b]efore a final determination would be appropriate, the full evidentiary record on what the contracts actually required and what was communicated to the City, would have to be developed, all of the documents relevant to the properties and all other relevant communications, not just the ones [CRA/LA] presents would have to be discovered and analyzed, depositions would have to be taken and witness[es] would have to offer testimony." *CRA/LA Opp.* 25:15–20. Such a prolonged factual inquiry cannot be undertaken on a motion to dismiss. *See Sols. for Utils., Inc. v. Cal. Pub. Util. Comm'n*, No. CV 11-04975 SJO (JCGx), 2012 WL 12919357, at *3 (C.D. Cal. Mar. 14, 2012).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Defendants argue that the Government's complaint does not adequately plead scienter for four reasons: because the complaint does not allege that the City *knew* its certifications were false, because the complaint relies on an impermissible theory of collective scienter, because the allegations amount to simple negligence, and because the Government's pre-2008 claims do not satisfy the Supreme Court's dictate in *Allison Engine*. *See City Mot.* 15:17–21:2; *CRA/LA Mot.* 24:23–26:21.

*1.     Knowledge of Falsity*

The City contends that the complaint "fails to plausibly allege that the City knew the certifications were allegedly false when made or when the City made IDIS drawdowns." *City Mot.* 16:11–13.

To begin, the City implies that any compliance was certified "*prospectively*," and that "such forward-looking statements" could not have been false when made. *Id.* 16:18–22 (emphasis in original). The Court rejects this prospectivity contention. The Government alleges in its complaint that, in connection with receiving HOME funds, the City annually certified that it "*is using* and will use HOME funds for eligible activities and costs, as described in §§ 92.205 through 92.209." *Compl.* ¶ 138 (emphasis added). Therefore, the alleged certifications are *not* only prospective. Furthermore, the Ninth Circuit has frowned upon similar attempts to evade FCA liability by relying on semantics. *See Hendow*, 461 F.3d at 1176 ("This grammatical haggling is unmoored in the law."). To hold otherwise, the court noted, would mean that a defendant "would be virtually unfettered in its ability to receive funds from the government while flouting the law." *Id.*

Next, the Court will address the City's argument that "[b]ecause these alleged categories of non-compliance turn on the interpretation of complex and sometimes ambiguous regulatory obligations, they cannot [] support a false claim." *City Mot.* 17:5–7. Courts have indeed held that the falsity element is not satisfied when it relies on a defendant "t[aking] advantage of a disputed legal issue." *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478–79 (9th Cir. 1996); *see also United States ex rel. Smith v. Boeing Co.*, 825 F.3d 1138, 1149–51 (10th Cir. 2016) (holding that the defendants' reasonable, alternative interpretation of regulatory obligations did not support a finding of falsity). However, on a motion to dismiss, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner*, 788 F.3d at 1210. This is not the appropriate forum for an analysis of the reasonableness of Defendants' interpretations of Section 504, the ADA, the Fair Housing Act ("FHA"), or any other regulation; such an inquiry would best be undertaken on a motion for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

summary judgment.  The Government asserts that Defendants were in violation of regulations for which they certified compliance.  At this time, the Court will accept these assertions as true.

As for knowledge generally, it is true that the Government's complaint lacks specificity as to certain facets of Defendants' alleged misrepresentations.  *See City Reply* 8:25–9:1.  However, even the City concedes in its motion that the complaint alleges that (1) the City had knowledge of the requirements of federal accessibility laws, and (2) it was noncompliant with these requirements in various respects.  *See City Mot.* 16:13–15.  The complaint further alleges that the City certified compliance with these regulations.  Based on these allegations, the Court disagrees with the City's assertion that the complaint does not put forward a "coherent legal theory as to how the City did or could have acted with the requisite scienter."  *City Reply* 8:17–18.  In *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016), the Ninth Circuit explained the role of the falsity requirement under the FCA:

> In defining knowingly, Congress attempted to reach what has become known as the ostrich type situation where an individual has buried his head in the sand and failed to make simple inquiries which would alert him that false claims are being submitted.  Congress adopted the concept that individuals and contractors receiving public funds have some duty to make a limited inquiry so as to be reasonably certain they are entitled to the money they seek.

*Id.* at 1174 (citation and internal quotation marks omitted).  Here, the Government alleges that, for fifteen years, the City failed to enforce federal accessibility laws despite repeatedly certifying its compliance in order to receive funding.  *See Compl.* ¶¶ 183–95.  It further alleges that the City failed to evaluate architectural plans for compliance with regulations, *see id.* ¶ 188; failed to require compliance in bid solicitations for housing projects, *see id.* ¶¶ 190–93; did not appoint a single qualified Section 504/ADA coordinator, *see id.* ¶ 197; did not maintain an accurate list of accessible units or a centralized application process for people with disabilities, *see id.* ¶¶ 200, 205–06; and failed to ensure accessible units were occupied by individuals requiring accessibility features, *see id.* ¶ 204.  Accepting these allegations as true, as the Court must at this time, the Government is correct when it asserts that "[a]llegations of the City's nonfeasance for more than a decade and a half satisfy the general pleading requirements" of the FCA's scienter element.  *City Opp.* 21:9–10.  In an FCA claim, knowledge need not be pleaded with particularity.  In light of the extensive allegations in the complaint, as well as the purpose of the FCA as illuminated by the Ninth Circuit, the Court concludes that the Government has plausibly pleaded that the City knew its representations were false when it certified compliance.

2.       *Collective Scienter*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Next, the City argues that the complaint relies on a theory of "collective scienter" that "has been rejected by this Court and other courts in the Ninth Circuit addressing the issue." *City Mot.* 17:16–18. However, several of the cases cited by the City for this proposition are inapposite because they involved the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *not* the FCA. *See Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1428 (9th Cir. 1995); *In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-JFW (VBKx), 2008 WL 4555794, at *8 (C.D. Cal. May 23, 2008); *In re Apple Comput., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1021–22 (N.D. Cal. 2002). A PSLRA complaint must, "with respect to each act or omission alleged to violate this chapter, state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). Thus, "although Rule 9(b) does not require that scienter be plead with particularity, the PSLRA does." *In re Apple Comput.*, 243 F. Supp. 2d at 1022. The FCA, by contrast, does *not* require heightened pleading for scienter, and so analogies to PSLRA cases are unavailing.

The City also refers to an FCA case from this District that rejected a theory of collective scienter. *See United States ex rel. Swoben v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *5 (C.D. Cal. Oct. 5, 2017). However, to reach that conclusion, the *Swoben* court relied on the three PSLRA cases discussed above, without noting the differing statutory bases. The court also cited *United States v. Science Applications International Corp.* (*SAIC*), 626 F.3d 1257 (D.C. Cir. 2010), in which the D.C. Circuit vacated a jury verdict because the district court's instruction "improperly allowed the government to prove FCA liability without having to demonstrate that any particular [] employee knew that the company's claims were false or that [] employees acted in deliberate ignorance or reckless disregard of their truth or falsity." *Id.* at 1273–74. However, district courts have cautioned that *SAIC* should *not* be used to deny collective scienter allegations on a motion to dismiss:

> As defendant points out, relator has failed to identify a specific employee who knew he or she was submitting a false claim for payment or was making a false statement to the government. However, this shortcoming is not fatal at this stage. [*SAIC*] involved defective jury instructions following a trial at which the plaintiff was required to prove each element of its FCA claim. By contrast, during the motion to dismiss stage, relator must only allege facts accepted as true from which "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."

*United States ex rel. Shemesh v. CA, Inc.*, 89 F. Supp. 3d 36, 50 (D.D.C. 2015) (quoting *Iqbal*, 556 U.S. at 678); *see also United States v. DynCorp Int'l, LLC*, 253 F. Supp. 3d 89, 109 (D.D.C. 2017). Lastly, the *Swoben* court cited *Modglin* in its opposition to the collective scienter theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

However, *Modglin* did not address this issue specifically; there, the motion to dismiss was granted *not* because collective scienter was utilized, but because the complaint's allegations were generally "too conclusory to plead a plausible claim for relief, even under the relaxed standard of Rule 8(a)." *Modglin*, 114 F. Supp. 3d at 1024. In sum, because the cases it relied upon do not stand for the proposition that a theory of collective scienter is impermissible in FCA cases, the Court is not persuaded by the *Swoben* decision to reach that conclusion.

In its reply, the City suggests that the Government "offers no compelling reason why the Court should ignore controlling law; rather, [its] criticism amounts to nothing more than a disagreement with certain outcomes, and a dislike of how those outcomes affect [its] claims here." *City Reply* 9:10–13. The Court disagrees with this characterization of the Government's position. In its motion, the City provides *no* controlling authority to support its rejection of the collective scienter theory, and the cases it relies on are either inapposite or misleading. In the absence of controlling or persuasive authority on this issue, the Court is left with the Ninth Circuit's guidance that a complaint sufficiently alleges fraud when it includes "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Swoben*, 848 F.3d at 1180. Although the Government does not identify specific employees of the City or CRA who made these alleged misrepresentations, the Court does not find this fatal. The complaint identifies specific programs to which the City submitted allegedly false claims, specific applications that were submitted, specific requests for funding, and specific failures of the City to implement the requirements of federal accessibility laws. Taken together and accepted as true, this constitutes a plausible scheme that satisfies the scienter requirement. As the Government notes, "The individuals who signed the claims and statements can be divined" by the City; the Government need not include them in its complaint when its allegations already provide Defendants with the notice required by Rule 9(b). *City Opp.* 25:8–13.

### 3.     *Simple Negligence*

Next, the City contends that "the allegations in the Complaint could—at most—support a finding of simple negligence, which is insufficient to support an FCA claim." *City Mot.* 20:10–11. While the second statement is true, the Court disagrees with the first. The array of allegations included in the Government's complaint suggests a systematic practice of misrepresentation and noncompliance over a period of more than fifteen years. The Court is hard-pressed at this time to dismiss such allegations as amounting to mere negligence.

### 4.     *Allison Engine*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

CRA/LA makes an additional argument relating to scienter, one derived from the Supreme Court's decision in *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008). *See CRA/LA Mot.* 25:28–26:21.

In that case, the Supreme Court held that the FCA, as it existed in 2008, required that a plaintiff prove that a subcontractor made a false record or statement with the intent that that misrepresentation would be used to secure payment for a claim. *See Allison Engine*, 553 U.S. at 671. Congress later overruled *Allison Engine* with passage of the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. No. 111-21, 123 Stat. 1617 (2009). *See* S. Rep. No. 111-10, at 10 (2009) ("This section amends the FCA to clarify and correct erroneous interpretations of the law that were decided in [*Allison Engine*] . . ."). However, for claims not pending by June 7, 2008, CRA/LA argues that these claims "do not adequately allege that CRA/LA's intent met the requirements of the then-existing 'make or use' provision" because the Government does not "allege that CRA/LA intended that the [Government] rely on its statements." *CRA/LA Mot.* 26:15–18.

The Court disagrees. The Government's complaint alleges that, throughout the Claims Period, CRA "knew it was requesting federal funds, and knew its requests would cause the City to request from HUD federal funds." *Compl.* ¶¶ 303, 305. It further claims that CRA "kept track of the funds it received from the City, including the specific formula grant program from where the funds originated." *Id.* ¶ 206. These allegations are sufficient to demonstrate that CRA intended that its misrepresentations would be used to secure funding from HUD, which satisfies the *Allison Engine* requirement for pre-FERA claims.

### 5.  Summation

The Court concludes that, in the Government's complaint, "knowledge [is] pleaded sufficiently to make entitlement to relief plausible." *Modglin*, 114 F. Supp. 3d at 1012. Accordingly, the Government has satisfied the scienter requirement of its FCA claims, and so dismissal on this basis is not appropriate.

### c.  Materiality

Defendants next argue that the Government's complaint fails to plausibly allege materiality. *See City Mot.* 21:5–34:5; *CRA/LA Mot.* 19:7–24:17.

Under the FCA, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). Although the materiality requirement has long been essential in FCA cases involving false

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

certification, *see, e.g., Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008); *Hendow*, 461 F.3d at 1172–73, the Supreme Court's recent decision in *Escobar* reemphasized and clarified the element. There, the Supreme Court held, as discussed above, that "at least in certain circumstances, the implied false certification theory can be a basis for liability"; specifically, where "the claim does not merely request payment, but also makes specific representations about the goods or services provided" and where "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 1995, 2001. After describing the theory of implied false certification, the Supreme Court then proceeded to explore "how [the] materiality requirement should be enforced," describing the standard as "demanding":

> A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2002–03. Noting that no "single fact or occurrence [is] always determinative," the Supreme Court explained that the materiality requirement concerns "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation" and asks whether that misrepresentation "went to the very essence of the bargain." *Id.* at 2002, 2003 n.5. Consequently, the behavior of the Government—the recipient of the alleged misrepresentations—is an important consideration:

> [I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material. Or, if the Government regularly pays a particular type of claim in full despite actual knowledge that certain requirements were violated, and has signaled no change in position, that is strong evidence that the requirements are not material.

*Id.* at 2003–04.

In sum, *Escobar* suggests that the following factors are relevant to the materiality inquiry: whether the violated requirement was expressly identified as a condition of payment, which, though "relevant, [is] not automatically dispositive"; whether the violation went to the essence of the bargain; whether the violation was minor or insubstantial; and the actions that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Government took in response to these or similar violations. *Id.* The Court will analyze each of these various considerations in turn.

### 1. Condition of Payment

In opposition, the Government notes that "Congress itself identified the violated requirements as conditions of payment." *City Opp.* 26:27–28. However, this fact alone is not dispositive of the materiality inquiry. The Supreme Court in *Escobar* refused to rule as such because it would lead to a perverse result where *every* act of noncompliance with an accompanying certification would give rise to an FCA claim. *See Escobar*, 136 S. Ct. at 2004 ("If the Government contracts for health services and adds a requirement that contractors buy American-made staplers, anyone who submits a claim for those services but fails to disclose its use of foreign staplers violates the False Claims Act. . . . The False Claims Act does not adopt such an extraordinarily expansive view of liability."). Nevertheless, that compliance was a condition of payment is still a consideration that weighs in favor of a finding of materiality.

However, there is a curious wrinkle in this case: that "the relevant statutory and regulatory provisions generally call for compliance to a degree that is *satisfactory* to the Secretary of HUD." *City Mot.* 25:10–11 (emphasis in original). This is indeed the case. For example, the relevant provision of CDBG reads, "Any grant under [the Housing and Community Development Act of 1974] shall be made only if the grantee certifies *to the satisfaction of the Secretary* that . . . the grant will be conducted and administered in conformity with the Civil Rights Act of 1964 and the Fair Housing Act, and the grantee will affirmatively further fair housing." 42 U.S.C. § 5304(b) (emphasis added and citations omitted). Similarly, the regulatory scheme requires that HUD review a grantee's annual submissions to determine whether they are "satisfactory" to HUD or "approved" by its Secretary. *See* 24 C.F.R. § 91.500 (CDBG); 42 U.S.C. § 12705 (HOME); 24 C.F.R. § 576.501 (ESG); 24 C.F.R. § 574.500 (HOPWA); *see also* 24 C.F.R. § 91.225(a) ("The following certifications, *satisfactory to HUD*, must be included in the annual submission to HUD.") (emphasis added). It must be noted that some of the certification language that the Government includes in its compliant does *not* contain qualifying language concerning HUD's satisfaction. *See, e.g., Compl.* ¶ 133 ("As set forth in Assurances and Certifications Form 424b (SF 424b), the jurisdiction certifies it . . . [w]ill administer the grant in compliance with Section 504 of the Rehabilitation Act of 1973, as amended, and implementing regulations . . ."); *id.* ¶ 134 ("These certifications and assurances are material representations of the fact upon which HUD can rely when awarding a grant. If it is later determined that, I the applicant, knowingly made an erroneous certification or assurance, I may be subject to criminal prosecution. HUD may also terminate the grant and take other available remedies."). However, despite these variations, the regulatory scheme suggests that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |

| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. |

"HUD has broad discretion to determine whether the accessibility certifications provided by grantees are 'satisfactory.'" *City Mot.* 25:26–27.

Furthermore, in addition to this discretion, HUD is also empowered to address any violations through remedial actions—and is also charged with assessing the necessary level of compliance. *See* 24 C.F.R. § 8.52(a)(1) ("If the responsible civil rights official finds that a recipient has discriminated against persons on the basis of handicap in violation of section 504 or this part, the recipient shall take such remedial action *as the responsible civil rights official deems necessary* to overcome the effects of the discrimination.") (emphasis added). In the event of noncompliance, HUD has an array of administrative remedies at its disposal, from withholding funding to other actions such as audits, site visits, and investigations to monitor compliance. *See, e.g.*, *id.* §§ 91.525, 570.900 (CDBG); 42 U.S.C. § 12708 (HOME); 24 C.F.R. § 576.501 (ESG); 24 C.F.R. § 574.520 (HOPWA). The regulations also provide for extensive review and interaction on the part of the Secretary to determine the appropriate corrective and remedial measures. *See, e.g.*, 24 C.F.R. §§ 570.911–13. In general, the first step toward remediation is voluntary compliance. *See id.* § 8.55(a) ("The responsible civil rights official and the award official shall, to the fullest extent practicable, seek the cooperation of recipients in obtaining compliance with this part and shall provide assistance and guidance to recipients to help them comply voluntarily with this part.").

The regulatory scheme therefore vests HUD with latitude in terms of accepting or remedying noncompliant actions. As a result, noncompliance with federal accessibility laws, of which Defendants are accused, *need not* foreclose the possibility of receiving funding. Full compliance is not required; instead, the regulations require only a level of compliance satisfactory to and approved by HUD. In light of this language, Defendants argue that

> [t]hese statutes and regulations, which require compliance to a level *satisfactory* to HUD (and corrective measures as deemed necessary by HUD), demonstrate that the certifications of compliance themselves were not material to the City's [receipt] of Entitlement Funds. Even if the certifications were deemed to be a promise of rigid compliance on their face, the HUD Secretary accepts the certifications to his or her satisfaction, is not required to demand rigid compliance with every aspect of federal accessibility laws, and has broad discretion to determine the proper remedy for noncompliance.

*City Mot.* 26:8–16 (emphasis in original).

Ultimately, the Court disagrees. As the Government notes in opposition, this sort of "satisfactory" language is not unique because "all regulatory certifications must necessarily be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

made to the satisfaction of the agency.  That Congress made the requirement here explicit does nothing to lessen the significance of the grantee's underlying regulatory obligations." *City Opp.* 31:6–10.  The FCA does not contain an exception for a remedial scheme premised on an agency's satisfaction with compliance, and absent controlling authority suggesting that this garden-variety regulatory language precludes FCA claims, or is even relevant to the materiality inquiry, the Court is unwilling to follow Defendants' lead.  Similarly, the FCA contains no exception for schemes like the Entitlement Programs that anticipate a certain level of noncompliance due to their complexity.[6]  The Government persuasively notes that "the alleged violations in *Escobar* also involved a complex state Medicaid regulatory scheme, but the Supreme Court did not adopt the complexity of a regulatory scheme as an element of the materiality analysis." *Id.* 31:15–17.  Defendants ask the Court to adopt a rule that the language in the Entitlement Programs' regulations precludes a finding of materiality.  Given that this language mirrors the statutory text of myriad other federal programs, the Court is unwilling to do so.

Furthermore, that HUD itself is granted remedial powers as to the Entitlement Programs is not dispositive.  As one appellate court has noted, "Congress intended to allow the government to choose among a variety of remedies, both statutory and administrative, to combat fraud." *United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 415 (8th Cir. 2012); *see also Campie*, 862 F.3d at 905 ("[J]ust as it is not the purpose of the False Claims Act to ensure regulatory compliance, it is not the FDA's purpose to prevent fraud on the government's fisc.").  The FCA does not provide an exception for regulatory schemes that permit non-judicial remediation, and the Court will not take such a position given the scope of programs that would be implicated by it.

Ultimately, the applicable regulations specifically contemplate noncompliance, which need not result in an automatic termination of funding without remedial efforts.  Although Defendants argue that this reality counsels against a finding of materiality, the Court will not

---

[6] Much of Defendants' argument in favor of this position is derived from *United States ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh*, No. 2:12cv1600, 2016 WL 1255294 (W.D. Pa. Mar. 31, 2016).  However, that decision and the analysis that buttressed it was premised in part on an outmoded materiality test from the Second and Third Circuits that distinguished between a "condition of participation" and a "condition of payment," with liability attaching only to the latter.  *See, e.g.*, *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 309 (3d Cir. 2011).  However, *Escobar* "directly abrogated" the cast law that utilized that test, *Bishop v. Wells Fargo & Co.*, 870 F.3d 104, 106 (2d Cir. 2017), and at any rate, the test was not applied in the Ninth Circuit.  *See United States ex rel. Handal v. Ctr. for Emp't Training*, No. 2:13-cv-01697-KJM-KJN, 2016 WL 4210052, at *7 (E.D. Cal. Aug. 9, 2016).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

adopt this position given that it would preclude FCA cases with respect to an array of federal programs.

###### 2.      *Essence of the Bargain*

"[B]efore a violation of the FCA can be found based on a certification theory, the Court must find the false statement sought to undermine a fundamental or core purpose of the statute governing the contract." *United States ex rel. Humane Soc'y of U.S. v. Hallmark Meat Packing Co.*, No. EDCV 08-00221-VAP (OPx), 2013 WL 5753784, at *15 (C.D. Cal. Apr. 30, 2013). The Government asserts, citing various provisions of Section 504 and the FHA, that the importance Congress placed on accessibility when enacting these laws establishes that "the United States does not get the benefit of its bargain when local entities use federal funds to discriminate against people with disabilities." *City Opp.* 29:17–19. The Court disagrees with this characterization because, as Defendants note, the Government focuses on the wrong laws in its analysis. *See City Reply* 6:28–7:1; *CRA/LA Mot.* 22:9–24:17.

As discussed throughout this order, the Entitlement Funds are provided through the CDBG, HOME, ESG, and HOPWA programs, *not* through Section 504, the FHA, or the ADA. These Entitlement Programs seek to remedy an array of societal ills and do not focus their attentions and efforts only on challenges faced by people with disabilities. *See, e.g.*, 42 U.S.C. § 5301(c) (noting that the purpose of CDBG is "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income"); 42 U.S.C. § 12722 (describing the purpose of HOME as, among other things, "to expand the supply of decent, safe, sanitary, and affordable housing, with primary attention to rental housing, for very low-income and low-income Americans"); 24 C.F.R. § 576.1 ("[ESG] authorizes [HUD] to make grants to States, units of general purpose local government, and territories for the rehabilitation or conversion of buildings for use as emergency shelter for the homeless, for the payment of certain expenses related to operating emergency shelters, for essential services related to emergency shelters and street outreach for the homeless, and for homelessness prevention and rapid re-housing assistance."); 42 U.S.C. § 12901 ("The purpose of [HOPWA] is to provide States and localities with the resources and incentives to devise long-term comprehensive strategies for meeting the housing needs of persons with acquired immunodeficiency syndrome and families of such persons."). As the City notes, the Government's complaint "never alleges that the City failed to use the Entitlement Funds to address these [other] objectives." *City Reply* 7:8–9.

Nevertheless, the range of objectives highlighted by the Entitlement Programs *does* include providing housing assistance to persons with disabilities, *see Compl.* ¶¶ 3–8, and *that* is the subject of the Government's allegations. Therefore, the Court cannot conclude at this time

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

that the Government received the benefit of its bargain.  Such an inquiry requires a fuller factual picture than that which is available on a motion to dismiss.  *See United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2017 WL 4326523, at *8 (S.D.N.Y. Sept. 27, 2017) ("[T]he misrepresentation does not have to be so grievous that the government would have completely denied payment upon discovering the truth—it is enough that the omission would have affected the government's payment decision.  This holistic question can be answered fully only after discovery.") (citation omitted).  At this stage, materiality can be inferred from the fact that the Entitlement Programs sought (at least in part) to provide accessible housing, which Defendants allegedly did not do.

*3.     Significance of the Violation*

The Government's complaint identifies more than two hundred accessibility violations at thirty-five of the City's housing projects, failure at the programmatic level to create accessible programs and services, and a period of noncompliance spanning over a decade and a half.  *See generally Compl.*; *see also id.*, Attach. C.  It thus concludes that this "systematic disregard" of federal accessibility laws is more than substantial.  *City Opp.* 30:1–2.

The City argues that these alleged offenses are actually insubstantial given the scope of the Entitlement Programs and the total payment of over $2 billion that the Government seeks in relief.  *See City Reply* 7:15–22; *see also City Mot.* 33:17–18 ("The FCA was not intended to remedy these types of minor regulatory violations.").  The Court is conscious that *Escobar* sought in part to avoid extraneous treble damages in FCA cases.  *See United States ex rel. Ruckh v. Salus Rehab., LLC*, No. 8:11-cv-1303-T-23TBM, 2018 WL 375720, at *3 (M.D. Fla. Jan. 11, 2018) ("*Escobar* assumes and enforces a course of dealing between the government and a supplier of goods or services that rests comfortably on proven and successful principles of exchange—fair value given for fair value received.  *Escobar* rejects a system of government traps, zaps, and zingers that permits the government to retain the benefit of a substantially conforming good or service but to recover the price entirely—multiplied by three—because of some immaterial contractual or regulatory non-compliance.").  *Escobar* itself emphasized the limited role of the FCA in this context.  *See Escobar*, 136 S. Ct. at 2003 ("The False Claims Act is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations.  A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.") (citation omitted).

However, accepting the Government's allegations as true and in the light most favorable to it, the Court is not prepared at this time to conclude that the lengthy allegations lodged against Defendants are insubstantial.  Such an inquiry would best be reserved for summary judgment or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

trial, when the full extent and consequences of noncompliance can be considered in the proper factual context. Accordingly, the substantiality of the alleged misconduct favors a finding of materiality.

4.     *The Government's Actions*

This fourth consideration illustrates a question that ultimately forms the cornerstone of Defendants' motions: put simply, how can the Government claim materiality when it continued to grant hundreds of millions of dollars *despite* knowledge of Defendants' misconduct? In *Escobar*, the Supreme Court acknowledged that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 136 S. Ct. at 2003. Following that decision, many courts have focused on this issue and concluded that a viable FCA claim must allege either that the government would not have paid the claims at issue if it had known of the alleged noncompliance *or* that it has not paid claims in similar cases of noncompliance. *See, e.g.*, *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 334 (9th Cir. 2017) ("Given the demanding standard required for materiality under the FCA, the government's acceptance of [the defendant's] reports despite their non-compliance . . . and the government's payment of [the defendant's] public vouchers for its work . . . we conclude that no reasonable jury could return a verdict for [the relator] on his implied false certification claim."); *Swoben*, 2017 WL 4564722, at *6 (quoting *Escobar*, 136 S. Ct. at 2004) ("[T]he complaint must allege that the violations at issue 'are so central . . . that the [Government] would not have paid these claims had it known of these violations.'"); *Knudsen v. Sprint Commc'ns Co.*, Nos. C13-04476 CRB, C13-4465 CRB, C13-4542 CRB, 2016 WL 4548924, at *14 (N.D. Cal. Sept. 1, 2016) (determining that absent details such as "allegations that the government consistently refuses to pay claims that" violate terms or that the government did not have knowledge of the alleged misconduct, the plaintiff "fails to adequately plead materiality").

Seizing on this trend, the City asserts that "HUD's behavior in this case—as well as in similar instances of alleged accessibility related non-compliance—is dispositive on the issue of materiality. Simply put, HUD did not act in a way that would demonstrate materiality." *City Mot.* 29:7–10; *see also CRA/LA Mot.* 20:25–22:5.

At the outset, the Court will consider two threshold matters. First, *Escobar* demonstrates that the materiality analysis under the FCA requires a probing factual inquiry, which must take into account the Government's conduct and whether evidence exists that counters the "very strong evidence" that violations were not material. The Supreme Court emphasized that courts can and should consider factual questions on a motion to dismiss FCA claims. *See Escobar*, 136 S. Ct. at 2004 n.6 ("We reject [the] assertion that materiality is too fact intensive for courts to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

dismiss False Claims Act cases on a motion to dismiss or at summary judgment. The standard for materiality that we have outlined is a familiar and rigorous one. And False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality."). Accordingly, the Court will undertake a rigorous, fact-driven plausibility inquiry in line with *Escobar*'s mandate.

Second, and relatedly, the City seeks to introduce "similar letters" issued by HUD in analogous cases of noncompliance, none of which resulted in a termination of funding or an FCA action. *See City Mot.* 29:24–30:9; *see also City of Los Angeles's Request for Judicial Notice*, Dkt. # 128-2, Exs. 4–13. As publicly available records of an administrative agency, these voluntary compliance agreements ("VCAs") are properly subject to judicial notice. *See Armani v. Nw. Mut. Life Ins. Co.*, No. CV 13-07058 RSWL (RZx), 2017 WL 3174894, at *3 (C.D. Cal. July 24, 2017) ("Courts may [] take judicial notice of records and reports of administrative bodies.") (internal quotation marks omitted). Furthermore, as mentioned above, *Escobar* permits factual inquiries as part of the materiality analysis when considering dismissal of FCA claims. However, the use to which the City purports to put these VCAs is not proper. Whether or not the factual landscapes in these other jurisdictions is analogous to the one at issue, such that HUD's decision to continue paying claims is evidence of immateriality, would require a more robust analysis than that which the Court is able to conduct using only these VCAs on a motion to dismiss. The City urges the Court to consider the VCAs because "HUD's conduct in similar cases shows that it does not consider strict compliance with accessibility requirements material to decisions to provide Entitlement Funds." *City Reply* 3 n.3. But establishing whether or not these cases are indeed "similar" is the sort of factual inquiry that is more appropriate for a motion for summary judgment, when both parties can supply evidence and argument as to whether these VCAs are analogous to the situation at hand. Therefore, the Court will not consider the VCAs to determine whether or not the Government's complaint plausibly pleads materiality.

### A.   *Allegations in the Complaint*

The Court can, however, consider HUD's actions as evidenced by the complaint itself. HUD was aware of Defendants' alleged noncompliance since at least December 2011, when it conducted a Section 504 compliance review and "consistently observed accessibility deficiencies throughout the various units, developments, designated accessible routes and common areas." *Compl.* ¶¶ 342–47. It then issued a Letter of Findings ("LOF") on January 11, 2012, reporting the results of the survey. *Id.* ¶ 343. The LOF "noted that the City and the CRA/LA were not in compliance with Section 504 and the ADA 'in the application of their policies, certifications, practic[es], and outcomes.'" *Id.* ¶ 345. The LOF also indicated that Defendants were "not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | | Date | July 25, 2018 |
|---|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | | |

monitoring the policies and procedures of federally-funded recipients in several key areas, and that the policies in place [were] not implemented in a manner that ensures that these policies and practices do not discriminate against qualified individuals with disabilities because of their disability." *Id.* ¶ 346. One month later, on February 17, 2012, HUD issued a Letter of Determination of noncompliance with Section 504 and the ADA, "which confirmed the findings set out in HUD's LOF." *Id.* ¶ 347. Since issuing the LOF in 2012, although "HUD has sought an agreement with the City and the CRA/LA in which the defendants would voluntarily remedy their accessibility issues going forward," the City "has yet to sign a voluntary compliance agreement." *Id.* ¶¶ 350, 352.

Despite HUD's knowledge of noncompliance, "[t]hroughout the false claims period"—from February 1, 2001 through the present—"the City applied for and received many millions of dollars in formula grant program funds and other HUD funds." *Id.* ¶ 250; *see also id.* ¶ 251 ("Every year throughout the false claims period, the City applied for and received formula grant funds under the CDBG Program, HOME Program, HOPWA Program, and ESG Program."); *id.* ¶ 252 ("During the false claims period, the City also applied for and received Neighborhood Stabilization Program funds.").

In sum, the factual allegations in the complaint suggest that "the Government pa[id] a particular claim in full despite its actual knowledge that certain requirements were violated," which "is very strong evidence that those requirements [were] not material." *Escobar*, 136 S. Ct. at 2003. The complaint does *not* contain allegations that the Government withheld funding from Defendants due to the noncompliance, that it would have withheld the Entitlement Funds had it known of the alleged noncompliance, or that it had previously withheld funding in similar cases of noncompliance—at least one of which, *Escobar* and its progeny suggest, is needed to counter this "very strong evidence" of immateriality.

The Government cautions the Court not to "read too much into" the Government's conduct here, citing language from the Ninth Circuit's decision in *Campie*. *City Opp.* 34:5–6 (quoting *Campie*, 862 F.3d at 906). That case is distinguishable from this one, however. There, "the parties dispute[d] exactly what the government knew and when, calling into question its 'actual knowledge.'" *Campie*, 862 F.3d at 906–07. Here, the complaint's allegations leave no doubt that the Government knew of Defendants' alleged misconduct in at least 2011 or 2012, and continued to provide the Entitlement Funds regardless. Furthermore, in *Campie*, the "relators allege[d] more than the mere possibility that the government would be entitled to refuse payment if it were aware of the violations, sufficiently pleading materiality at this stage of the case." *Id.* at 907 (citation omitted). Here, the Government's complaint does not contain similar allegations, nor does it demonstrate that it withheld funding from Defendants, that it would have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

withheld the Entitlement Funds had it known of the alleged noncompliance, or that it has
previously withheld funding in similar cases of noncompliance.

At oral argument, the parties seemed to agree that this case presents a challenging set of
facts to which *Escobar* must be applied. Here, the most definitive and persuasive evidence that
would counter the evidence of immateriality created by HUD's actions—specifically, that it
withheld funding to Defendants due to their noncompliance—is all but impossible to imagine.
As the Government pointed out at oral arguments, the Entitlement Programs address a greater
assortment of social ills than a lack of accessible housing. As discussed in Part I.A, CDBG is
intended to address "critical social, economic, and environmental problems" stemming from "the
growth of population in metropolitan and urban areas" and "inadequate public and private
investment and reinvestment in housing." 42 U.S.C. § 5301(a). ESG is focused broadly on
combatting homelessness. *See* 42 U.S.C. § 11372. And HOME strives "to strengthen public-
private partnerships and to expand the supply of decent, safe, sanitary, and affordable housing,
with primary attention to rental housing, for very low-income and low-income families." 24
C.F.R. § 92.1. Compliance with the ADA and other applicable regulations to assist persons with
disabilities is, as discussed above, indisputably an important focus of these programs, but it is
not the *only* focus. Consequently, it would be unreasonable to expect the Government to
withhold hundreds of millions of dollars' worth of Entitlement Funds, earmarked to increase the
supply of affordable housing for a wide swath of the population, because certain accessibility
regulations were not followed. Therefore, the most potent counterargument that the Government
might conceivably muster is, for all practical purposes, unavailable to it in this case.

That need not, however, imply that the Government cannot marshal *other* evidence, and
include it in its complaint. It is possible to demonstrate materiality *even if* the Government
continued to provide funding despite its knowledge of false certifications, as the First Circuit
concluded after *Escobar* was remanded to it. *See United States ex rel. Escobar v. United Health
Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) ("[W]hile the Supreme Court observed that 'if the
Government pays a particular claim in full despite its actual knowledge that certain requirements
were violated, that is very strong evidence that those requirements are not material,' the Court
did not state that such knowledge is dispositive.") (citation omitted). That *must* be the correct
interpretation of *Escobar*; if it were not, then materiality would be impossible to demonstrate in
cases, like this one, where the Government continues to provide funding when it knows of false
certifications because completely withholding the money would have an overwhelmingly
deleterious and counterproductive effect. Furthermore, the remedial schemes contained within
the Entitlement Programs' statutes would be seriously undermined if their vindication meant that
materiality could never be demonstrated in FCA cases. If this were the case, the Government
would be placed in a damned-if-it-does, damned-if-it-doesn't situation: either the Government

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|----------|---------------------|------|---------------|

| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. |
|-------|--------------------------------------------------------------------------------|

would need to subvert the statute by denying statutory funding and ignoring statutory remedies, or it would need to follow the statute and risk a showing of immateriality.

These considerations might explain why the Supreme Court suggested *other* means of demonstrating materiality: for example, evidence that the Government had previously withheld funding in similar cases of noncompliance. In its opposition and at oral argument, the Government pointed to a case, *United States ex rel. Anti-Discrimination Center of Metro New York, Inc. v. Westchester County*, 668 F. Supp. 2d 548 (S.D.N.Y. 2009), that it believes satisfies this alternative evidentiary requirement. In that case, the Government intervened in a case alleging that Westchester County, New York "violated the False Claims Act through certifications made to the Secretary of Housing and Urban Development [] between April 2000 and April 2006 to obtain over $52 million in federal funding for housing and community development." *Id.* at 550. Although *Anti-Discrimination Center* is nearly a decade old, and is factually dissimilar to this case, the comparison is persuasive. However, it is but *one* instance of withheld funding; the other cases that the parties have brought to the Court's attention are less availing due to either their ages or the presence of inapposite facts. *See, e.g.*, *United States ex rel. Rosales v. S.F. Hous. Auth.*, 173 F. Supp. 2d 987, 993–94 (N.D. Cal. 2001) (describing the basis for the Government's FCA claims, which did not concern housing discrimination but rather "inaccurate assessments of management performance"); *United States v. Incorporated Village of Island Park*, 888 F. Supp. 419, 430 (E.D.N.Y. 1995) (indicating that the Government challenged alleged misuse of HUD funding, including CDBG funds, in an action filed in 1990).

In its opposition papers, the Government also argues that "there were other reasons for HUD not withdrawing the [Entitlement Funds] even in the face of materially false statements or claims, including HUD's ongoing efforts to settle claims with the City prior to initiating any litigation." *City Opp.* 34:14–18 (citing *Compl.* ¶¶ 350, 352). The Court agrees with the proposition that other factors might well influence the Government to continue to provide funding despite knowledge of false claims, such as when the service provided is essential, and that *Escobar* does not completely foreclose a viable FCA claim in such cases. *See, e.g.*, *United States v. Pub. Warehousing Co. K.S.C.*, No. 1:05-CV-2968-TWT, 2017 WL 1021745, at *6 (N.D. Ga. Mar. 16, 2017) ("The more essential the continued execution of a contract is to an important government interest, the less the government's continued payment weighs in favor of the government knowledge defense. . . . The contracts at issue in this case were for the procurement of necessary supplies for American troops in an active theater of war. A contract could hardly be more essential to an important government interest than that."). Here, however, the "other reasons" cited by the Government in its opposition are unavailing. Although the Government's efforts to secure a VCA with the City are referenced in the complaint, it is *not* alleged that this was the reason for continued funding in the face of noncompliance. And even if

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

the Court were to accept this explanation, it alone cannot overcome the "very strong evidence" of immateriality that is *also* contained in the complaint.

At the hearing, the Government improved upon its counterargument by pointing to other facts in the complaint—what its counsel referred to as "extensive allegations"—that purportedly demonstrate that, although the Government could not feasibly have withheld the Entitlement Funds, it took other steps that demonstrate the seriousness of Defendants' noncompliance.  The Government enumerated these allegations:

• HUD conducted a "boots-on-the-ground" survey of thirty-one units at eleven projects. *See Compl.* ¶ 344.

• HUD detailed the results its review in the January 11, 2012 LOF, which was directed to the City.  *See id.* ¶ 343.

• HUD conducted "extensive negotiations" with Defendants to secure voluntarily remediation of accessibility issues.  *See id.* ¶ 350.

• HUD successfully executed a voluntary compliance agreement with CRA/LA to remedy accessibility issues going forward.  *See id.* ¶ 351.

• HUD rejected the City's application pursuant to a Notice of Funding Availability for Fiscal Year 2016 Choice Neighborhood funds designed to assist distressed federally assisted housing, because the City was not in compliance with the federal accessibility laws.  *See id.* ¶ 328.

• The Government chose to intervene in this case.

Individually, none of these individual allegations is particularly compelling.  As CRA/LA's counsel observed at oral argument, if the Government's decision to intervene in an action were given substantial weight, then materiality would be a fait accompli in any case where intervention has occurred, thus working an end-run around *Escobar*.  The Court also questions whether the survey and letter are sufficient; no matter how thorough the former or how strongly worded the latter, such standard gestures seem inadequate when compared with the "very strong evidence" of immateriality that the Government's other conduct constitutes.

Taken together, however, the allegations come close to plausibly suggesting materiality.  In order to fully do so, however, additional facts would need to be pleaded.  For example, the most persuasive evidence is the denial of Choice Neighborhood funds and the negotiations that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

HUD undertook to secure voluntary compliance. Naturally, as *Escobar* indicates, the withholding of funds is substantial evidence. But additional information would be needed to determine the significance of HUD's actions and decisions. How much money was withheld when HUD refused to provide the Choice Neighborhood funds? How does that amount compare to those Entitlement Funds that were disbursed around the same time? Was the reason for the denial communicated to Defendants? The answers to these and similar questions would allow the Court to assess the strength of these allegations and determine whether they are sufficient to counter the evidence that the violations were not material. If the Government's conduct constitutes "very strong evidence" of immateriality in the wake of *Escobar*, then it follows that only very strong counterevidence would suffice. The allegations currently contained in the complaint do not, as pleaded, satisfy this burden. That is not to say that these allegations work *against* the Government's position; instead, the Court concludes that the evidence is less availing than it might be if more factual context were provided in the complaint. It would not be impossible for the Government to show that its efforts to secure compliance were vigorous enough to demonstrate the materiality of Defendants' alleged misconduct, but it has not provided sufficient allegations to support this contention.

In *Escobar*, the Supreme Court held that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar*, 136 S. Ct. at 2003. Such is the case here. The Government's response—that "other reasons" factored into HUD's decision not to withdraw funding; that funding was denied in one other, factually distinguishable case; and that the complaint contains allegations demonstrating that it attempted to redress noncompliance short of withholding funding—is simply insufficient to counter this "very strong evidence." It is close, however, and with greater elaboration, it may be possible to plead facts sufficient to overcome it. This possibility is apparent given potentially meritorious arguments developed in the supplemental briefing provided to the Court, but *not* included in the complaint. The Court will now turn to these additional arguments.

### B.     Additional Arguments Not in the Complaint

As Relator Fair Housing Council notes,

> The [G]overnment is simply not in a position to stop an essential service, program or supply chain so it can prosecute fraud. The Government should not be faced with the forced Hobson's choice of either 1) shutting down a housing program while it prosecutes a fraud or 2) forgoing that prosecution and accept the fraud so that it can keep a housing program going. Yet, this is the absurd choice that would result if the City's argument was the rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

One cannot ignore the real world balancing of policy issues that the Government has to grapple with as it makes decisions it deems in the overall best interests of the public. If there were a "Vendor B" the Government could switch to when it learns "Vendor A" is committing fraud, then it would be more probative on the issue of materiality if the Government simply kept paying Vendor A instead of switching. However, there is no "Vendor B" is this situation. The fair housing program with the City is the only vehicle the federal Government has for supporting accessible affordable housing in Los Angeles.

*FHC Supp.* 6:24–7:10. Furthermore, the Government argues that if "HUD sought to terminate, reduce or limit current or future formula grants to the City, HUD regulations require a number of additional lengthy procedural hurdles," and outlines the various steps that would need to be taken. *Second Gov't Supp.* 11:3–12:5. The Government also reflects Fair Housing Council's observations, writing that

allowing annual formula grants to be made after January 2012 does not mean the City's or [CRA/LA's] false claims about accessibility are not important. It means HUD is continuing to pursue its administrative procedures and is being careful about causing additional injury as it takes steps to remedy past misconduct. The City and [CRA/LA] say that, despite their false claims, HUD cannot recover FCA damages if it does not first complete the process of terminating an existing grant or denying the award of future formula grants, all while ignoring the impact reducing funds available for affordable housing could have on Angelenos. To use Senator's Grassley's analogy, the City and [CRA/LA] are holding the Government hostage because HUD has not cut off funding. This dynamic should not be allowed to drive the materiality analysis.

*Id.* 16:12–21.

These are compelling arguments. Courts that have interpreted *Escobar* have emphasized the importance of alternate considerations (and the difficulty of assessing them on a motion to dismiss). *See, e.g.*, *Hussain*, 2017 WL 4326523, at *8 ("As *Escobar* made clear, the misrepresentation does not have to be so grievous that the government would have completely denied payment upon discovering the truth—it is enough that the omission would have affected the government's payment decision. This holistic question can be answered fully only after discovery.") (citation omitted). Accordingly, it might be possible for the Government to plead that the Entitlement Programs at issue here are essential, and that withholding the Entitlement Funds would have been an impossible or at least impractical option given the importance of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

services that the funding facilitates and the unavailability of an alternative recipient of funds. However, such an argument would need to be developed *in the complaint*, and *Escobar* requires more rigorous pleading than that which is currently provided. *See Escobar*, 136 S. Ct. at 2004 n.6 ("False Claims Act plaintiffs must [] plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality.").

In short, as currently pleaded, the Government's attempt to demonstrate materiality falls short of countering the "very strong evidence" of immateriality created by its conduct. The factual allegations that *are* included in the complaint—including those listed by the Government's counsel at oral argument—might, when taken together, create a plausible inference of materiality, but to do so would require additional factual content. In addition, although the Court is persuaded by arguments developed by the Government over the course of several rounds of briefing—in particular, the notion that this is a unique case because the Government lacks an alternative recipient for these vital funds—these potentially meritorious contentions are *not* developed in the complaint, as they must be in order for the operative pleading to satisfy the standards of both Rule 9(b) and *Escobar*.

### 5.  Summation

Under the FCA, "[t]he materiality standard is demanding." *Id.* at 2003. The Court concludes that the Government's complaint plausibly alleges that compliance with federal accessibility laws was a condition of payment, that it was denied the benefit of its bargain with Defendants, and that the alleged noncompliance was substantial. These conclusions suggest materiality. However, in the wake of *Escobar* and its assertion that conduct of the sort the Government committed here is "very strong evidence" of immateriality, *id.*, the Court must ultimately conclude that the materiality element of the Government's FCA claims is not satisfied. The various allegations and arguments highlighted by the Government *might*, taken together, be sufficient to counter Defendants' evidence when "[a]pplying the Supreme Court's holistic approach to determining materiality." *Escobar*, 842 F.3d at 112. However, these lines of reasoning would need to be included in the complaint, and more fully developed, in order to serve this purpose. Because the complaint does not sufficiently create a plausible inference of materiality in light of *Escobar*, the FCA's materiality standard is not satisfied. Accordingly, the Court **GRANTS** Defendants' motions to dismiss the Government's first, second, third, and fourth claims for relief under the FCA.

### iii.  Statute of Repose

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Because the Court grants the Government leave to amend, *see* Part IV, it will consider Defendants' other arguments in support of dismissal.

Defendants contend that the Government's FCA claims are barred by the statute of repose for conduct occurring before July 31, 2007. *See City Mot.* 34:8–36:19; *CRA/LA Mot.* 14:21–17:23. The Court disagrees.

The FCA states that a suit may not be brought

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

31 U.S.C. § 3731(b). In other words, "Section 3731(b) contains a two-tiered statute of limitations under which a claim must be brought within the later of six years from the date of the conduct on which it is based or three years from the date on which the responsible official of the United States knew or should have known of that conduct." *Swoben*, 2017 WL 4564722, at *8 (citations and internal quotation marks omitted). It also features a "ten-year statute of repose," after which no FCA claim can be brought. *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996). Defendants therefore assert that, because the Government filed its complaint on July 31, 2017, any FCA claims for violations that occurred before July 31, 2007 are time-barred by the statute of repose.

Defendants' argument only works if the FCA's relation-back provision, which reads that "[f]or statute of limitations purposes, any such Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action," does not apply. 31 U.S.C. § 3731(c). Defendants contend that it does not, arguing that the "statute of repose" is not a "statute of limitations." *See City Mot.* 35:26–28; *see also Swoben*, 2017 WL 4564722, at *8–9. Although they find support for this proposition in *Swoben*, the Court disagrees with their conclusion. Subsection (b) of § 3731 is a single provision, and the phrase "whichever occurs last" indicates that subsections (b)(1) and (b)(2) should be read together. 31 U.S.C. § 3731(b); *see also United States ex rel. Sansbury v. LB & B Assocs., Inc.*, 58 F. Supp. 3d 37, 51 (D.D.C. 2014); *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 474 F. Supp. 2d 75, 85

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|

| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. |
|---|---|

(D.D.C. 2007). The statute of repose is included as part of subsection (b)(2), and subsection (c)'s relation-back provision does not distinguish between "statutes of limitation" and the "statute of repose."[7] Consequently, the Court concludes that subsection (c) refers to the various timing restrictions contained in subsection (b), the statute of repose included. This is consistent with precedent from the Ninth Circuit and elsewhere that has found, with regards to federal statutes, that statutes of limitations can include statutes of repose. *See Nat'l Credit Union Admin. Bd. v. RBS Sec., Inc.*, 833 F.3d 1125, 1130–35 (9th Cir. 2016); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 113 (2d Cir. 2017); *Fed. Deposit Ins. Corp. v. First Horizon Asset Sec., Inc.*, 821 F.3d 372, 379–80 (2d Cir. 2015). Furthermore, courts have held, as this Court does, that under § 3731, the date of filing of the *relator's* complaint controls whether claims are time-barred, *see, e.g., United States ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 608 F.3d 871, 879–90 (D.C. Cir. 2010) (allowing the government's complaint to relate back to the relator's complaint to assert claims for conduct occurring more than ten years earlier), and the Supreme Court has long held that "[s]tatutes of limitation sought to be applied to bar rights of the Government, must receive a strict construction in favor of the Government." *Badaracco v. Comm'r*, 464 U.S. 386, 391 (1984) (quoting *E. I. Du Pont De Nemours & Co. v. Davis*, 264 U.S. 456, 462 (1924)); *see also California ex rel. Cal. Dep't of Toxic Substances v. Neville Chem. Co.*, 358 F.3d 661, 666 (9th Cir. 2004); *Cal. Dep't of Toxic Substances v. Alco Pac.*, 308 F. Supp. 2d 1124, 1135 (C.D. Cal. 2004) ("[T]he statute of limitations is an especially disfavored defense when asserted against government entities.").

Moreover, the Government has conceded that, although the Claims Period spans from February 1, 2001 to the present, *see Compl.* 2:6, the Government's FCA claims only apply to conduct occurring since February 1, 2005. *See CRA/LA Opp.* 17:7–9. Therefore, it can rely exclusively on § 3731(b)(1), which provides that an FCA claim may not be brought "more than 6 years after the date on which the violation of section 3729 is committed." 31 U.S.C. § 3731(b). This alternative statute of limitation does *not* include the problematic statute of repose, and so the relation-back provision of § 3731(c) indisputably applies. Therefore, because Relators filed their original complaint on February 1, 2011, the Government's FCA claims relate back to that

---

[7] Although the Supreme Court recently held that the "statute of limitations" in the federal CERCLA statute does *not* encompass "statutes of repose," it also noted that "[w]hile the term 'statute of limitations' has acquired a precise meaning, distinct from 'statute of repose,' and while that is its primary meaning, it must be acknowledged that the term 'statute of limitations' is sometimes used in a less formal way. In that sense, it can refer to any provision restricting the time in which a plaintiff must bring suit." *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2185 (2014). That seems to be the case with respect to § 3731, which, notably, does not even use the term "statute of repose" and appears to lump all of subsection (b)'s timing provisions together under the term "statute of limitations."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

date, and applying the six-year statute of limitations, they can apply to conduct occurring since February 1, 2005.

 iv.   *Arm of the State*

In addition to joining the City's previous arguments in support of dismissal of the FCA claims, CRA/LA raises an additional ground for dismissal unique to itself: that FCA claims cannot be maintained against it because it is an "arm of the state." *CRA/LA Mot.* 8:21–14:14.

The Supreme Court has held that states and state agencies are not "persons" under the FCA, and so the statute cannot subject either to liability. *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 787 (2000) ("[W]e believe that various features of the FCA, both as originally enacted and as amended, far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability, indicate quite the contrary."); *see also Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1121 (9th Cir. 2007) ("*Stevens* held that a state or state agency is not a 'person' for purposes of § 3729 and, therefore, not subject to liability in *qui tam* suits brought by private parties."). Although both *Stevens* and *Stoner* considered qui tam cases in which the United States had not intervened, the Ninth Circuit has suggested (though not expressly held) that the prohibition still applies to cases in which intervention has occurred, *see Donald v. Univ. of Cal. Bd. of Regents*, 329 F.3d 1040, 1042 n.3 (9th Cir. 2003) ("Nothing in [*Stevens*] purports to limit its scope solely to *qui tam* suits brought by private parties."), and district courts within and without the Circuit have followed suit. *See, e.g., United States ex rel. Doughty v. Or. Health & Scis. Univ.*, No. 3:13-CV-01306-BR, 2017 WL 1364208, at *5 (D. Or. Apr. 11, 2017) ("[T]he United States may not bring an FCA action against an arm of the state such as Defendant."); *United States v. Menominee Tribal Enters.*, 601 F. Supp. 2d 1061, 1069 (E.D. Wis. 2009) ("[T]he Court in *Stevens* was construing the statutory term 'person' as it is used in the FCA.  The meaning of a specific term in a statute does not change depending on who the plaintiff is.").[8]

In *Stoner*, the Ninth Circuit determined that a California county office of education and a California school district were arms of the State of California, and therefore that the plaintiff "ha[d] no statutory authority to bring an FCA claim against" those offices. *Stoner*, 502 F.3d at 1123.  CRA/LA contends that "[t]he same outcome is necessary here" because "like a county office of education, [it] is effectively an arm of the state." *CRA/LA Mot.* 9:23–25.

---

[8] Although the Government vigorously contests this point in opposition, *see CRA/LA Opp.* 10:14–15:7, whether or not the United States can maintain an FCA claim against a state or state agency is ultimately not dispositive here, since the Court concludes that CRA/LA is *not* an arm of the state.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

The Ninth Circuit employs a "five-factor test to determine whether an entity is an arm of the state," an inquiry commonly referred to as the "*Mitchell* test." *Beentjes v. Placer Cty. Air Pollution Control Dist.*, 397 F.3d 775, 778 (9th Cir. 2005). These factors are:

> [1] whether a money judgment would be satisfied out of state funds, [2] whether the entity performs central governmental functions, [3] whether the entity may sue or be sued, [4] whether the entity has the power to take property in its own name or only the name of the state, and [5] the corporate status of the entity.

*Id.*; *see also Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). "To determine these factors, the court looks to the way state law treats the entity." *Mitchell*, 861 F.2d at 201. All five factors need not weigh in the same direction. *See Aguon v. Commonwealth Ports Auth.*, 316 F.3d 899, 904 (9th Cir. 2003).

At the outset, CRA/LA draws the Court's attention to the fact that, "as a successor entity to a redevelopment agency, CRA/LA is a product of state legislation." *CRA/LA Mot.* 10:26–27. This is indeed the case. *See Compl.* ¶¶ 55–62. However, this fact is neither dispositive nor particularly revealing. As the Ninth Circuit has noted, the *Mitchell* test is "designed to discriminate *between* governmental bodies" to determine "whether a governmental entity is an arm of the state or is *better characterized* as part of another level of government." *Del Campo v. Kennedy*, 517 F.3d 1070, 1076–77 (9th Cir. 2008) (emphases added). That an entity was created by the state legislature is not determinative; the Ninth Circuit has previously *denied* sovereign immunity to another community development authority, despite its origin under state law. *See Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 (9th Cir. 1991). Ultimately, it is less important *where* CRA/LA came from than *how* it is treated and operates. To determine the latter, the Court must apply the five *Mitchell* factors.

### a.  Whether a Money Judgment Would Be Satisfied out of State Funds

Whether a judgment against an entity would be satisfied by state funds is the first and "most critical" factor. *Aguon*, 316 F.3d at 902. Given that "the impetus of the Eleventh Amendment is the prevention of federal-court judgments that must be paid out of a state's treasury," *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1041 (9th Cir. 2003), "the source from which the sums sought by the plaintiff must come is the most important single factor in determining whether the Eleventh Amendment bars federal jurisdiction." *Durning*, 950 F.2d at 1424. Accordingly, the central question is "whether the state treasury would [] be legally pledged to satisfy the obligation." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

CRA/LA has identified no statutory provision requiring the State of California to satisfy its debts. Indeed, a court in this District has already held that the same legislation that created CRA/LA also transferred all liability to it. *See Indep. Living Ctr. of S. Cal. v. City of Los Angeles*, 205 F. Supp. 3d 1105, 1113–14 (C.D. Cal. 2016). Instead, CRA/LA attempts an act of fiscal sleight-of-hand, arguing that because any revenue remaining after it pays its obligations will be allocated to "cities, counties, special districts, and school and community college districts"—which would otherwise require state funding to overcome budget shortfalls—"any enforceable obligation against CRA/LA . . . would be taken from property-tax revenue that would otherwise be allocated in large part to a local school district," which in turn "would require the State of California to reimburse those lost funds to the school district." *CRA/LA Mot.* 11:28–13:8. Therefore, CRA/LA concludes, "a judgment against [it] would very much impact the state's fisc." *Id.* 13:8–9.

As clever at this twisted line of reasoning may be, the Court is not convinced. In *Durning*, the Ninth Circuit rejected a similar argument, noting that "[t]he relevant question is whether the state would have a *legal liability* to pay the judgment . . . . Moreover, the [defendant's argument] would lead to the absurd results that the size of the plaintiff's injury would weigh *in favor* of a finding of the defendant's immunity: the larger the loss caused by the defendant's conduct . . . the greater its chances of being found immune." *Durning*, 950 F.2d at 1424 n.2 (emphases in original). This salient distinction between legal liability and fiscal impact has been echoed by the Supreme Court, which explained (albeit in another context) that "with respect to the underlying Eleventh Amendment question, it is the entity's potential legal liability, rather than its ability or inability to require a third party to reimburse it . . . that is relevant." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997); *see also Holz v. Nenana City Pub. Sch. Dist.*, 347 F.3d 1176, 1182 (9th Cir. 2003) ("[T]his first factor does not focus on whether a possible judgment against the entity would impact the state treasury.") (internal quotation marks omitted).

In its reply, CRA/LA contends that "binding precedent" requires the Court to conclude that this funding scheme tips the first factor in its favor. *CRA/LA Reply* 4:14. It is true that the Ninth Circuit has found that the first factor indicates sovereign immunity "where the state is *functionally liable*, even if not legally liable, on money judgments against the state entity." *Stoner*, 502 F.3d at 1122 (emphasis added). However, to illustrate this point in that decision, the court cited, among other cases, *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994), in which the Supreme Court held that "[w]here an agency is so structured that, as a practical matter, if the agency is to survive, a judgment *must* expend itself against state treasuries, common sense and the rationale of the eleventh amendment require that sovereign immunity attach to the agency." *Id.* at 50 (emphasis added). CRA/LA's case is distinguishable from *Hess*. The State of California would not be *required* to expend money to satisfy a judgment against CRA/LA as a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

practical certainty; that is merely a hypothetical possibility that requires multiple operating assumptions. Nor, for that matter, is this a situation where "the state treasury [is] unconditionally liable to make up any budgetary shortfall," as is the case with regards to judgments against California school districts. *Stoner*, 502 F.3d at 1123; *see also Alaska Cargo Transp., Inc. v. Alaska R.R. Corp.*, 5 F.3d 378, 380–81 (9th Cir. 1993) (finding an entity satisfies the first *Mitchell* factor where it "would be *compelled* to turn to legislative appropriation in order to remain in business" if faced with a large money judgment) (emphasis added). Absent a clear, definite, unavoidable link between a money judgment and the state fisc, whether by force of law or force of function, the Court concludes that CRA/LA should not be treated the same as school districts and other entities for which the state is directly responsible for budgetary shortfalls.

In short, there is no dispute that CRA/LA, and *not* the State of California, is legally liable for claims against it and the former CRA. It is *this* fact, and not a hypothetical forecast of funding requirements that indirectly implicates the state's treasury, that is determinative. Accordingly, the first and most crucial *Mitchell* factor weighs against a finding that CRA/LA is an arm of the state.

> b.    *Whether CRA/LA Performs Central Governmental Functions*

CRA/LA asserts that it and other redevelopment agencies perform a central government function, citing to various state statutes noting that the activities of such organizations are of "state concern." *CRA/LA Mot.* 13:17–25. However, as the Government notes in opposition, CRA/LA's "frame of reference is entirely skewed." *CRA/LA Opp.* 8:13. As CRA/LA asserts in its motion, it is a "wind-down entit[y] that California created to tend to remaining enforceable obligations" and to "dispose of assets and properties and to remit all unencumbered balances for distribution to other taxing entities." *CRA/LA Mot.* 11:7–11. The Court agrees with the Government that these winding-down affairs are highly localized ministerial activities, not central functions of the state, especially in light of the fact that CRA/LA produces no authority to suggest otherwise. *See CRA/LA Opp.* 8:17–20. Furthermore, that the objectives of redevelopment agencies are of "state concern" is not dispositive of this factor. The Ninth Circuit has held, for example, that air pollution control districts, "through which the State meets and maintains state and federal air quality standards under the federal Clean Air Act and California law," are nonetheless local entities for purposes of this factor because they perform a "highly localized function." *Beentjes*, 397 F.3d at 782–83; *see also id.* at 783–84 ("[W]hile districts derive their authority from the State, they are granted wide latitude to conduct their affairs as they see fit, so long as they maintain standards at least as stringent as those adopted by the State."). Therefore, this second factor also militates against finding that the CRA/LA is an arm of the state.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

       *c.*     *Whether CRA/LA May Sue or Be Sued*

CRA/LA concedes that this factor "weighs against CRA/LA being an arm of the state, as [it] can be sued." *CRA/LA Mot.* 13:25–27.

       *d.*     *Whether CRA/LA Has the Power to Take Property in Its Name or the State's Name*

CRA/LA contends that this factor weighs in its favor because it notes, correctly, that it cannot take property in its own name. *See id.* 13:29–14:4; *see also* Cal. Health & Safety Code § 34163(e). However, that is not the end of the analysis, because it is equally true that CRA/LA cannot take property in the name of the State of California either, since it was divested of any ongoing ability to conduct redevelopment operations. *See* Cal. Health & Safety Code § 34173(g) ("As successor entities, successor agencies succeed to the organizational status of the former redevelopment agency, but without any legal authority to participate in redevelopment activities."). Accordingly, the Court will treat this factor as neutral.

       *e.*     *CRA/LA's Corporate Status*

CRA/LA suggests that its "corporate status is a far cry from anything autonomous from the State, as California state law closely controls and limits its duties, activities, and spending." *CRA/LA Mot.* 14:5–6; *see also Alaska Cargo Transp.*, 5 F.3d at 381–82 (noting that an entity was "far from autonomous" when considering the fifth factor). While it is true that state legislation created CRA/LA and defined its powers and responsibilities, *see* Cal. Health & Safety Code §§ 34177 et seq., in analyzing the fifth factor, the Ninth Circuit *also* considers how "California law defines" the entity. *Beentjes*, 397 F.3d at 785. Here, there is no statute indicating that CRA/LA is a "public agency of the State." *Id.* If anything, the statute that created CRA/LA suggests that it is a *local* entity. *See* Cal. Health & Safety Code § 34173(d)(3)(A) ("If no *local agency* elects to serve as a successor agency for a dissolved redevelopment agency, a public body, referred to herein as a 'designated local authority' shall be immediately formed . . . . The designated *local authority* shall serve as successor agency until a *local agency* elects to become the successor agency in accordance with this section.") (emphases added). The Ninth Circuit has noted that a "local public entity" includes "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does *not* include the State." *Beentjes*, 397 F.3d at 785 (quoting Cal. Gov't Code § 900.4) (emphasis added). The language used in the California statute leaves the impression that CRA/LA is better categorized with local public entities rather than public agencies of the state.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
| --- | --- | --- | --- |
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

The Court will ultimately treat this factor as neutral, because although state law created and defined CRA/LA, the language in the statute suggests it is a local entity rather than a state agency.

#### f.   Summation

Each of the five *Mitchell* test factors either indicates that CRA/LA is *not* an arm of the state or is neutral. Therefore, the Court concludes that CRA/LA should not be considered the state or a state agency for purposes of the FCA, and that it can therefore be held liable for FCA claims.

### B.   Separation of Powers

In the middle of its motion to dismiss, the City, joined by CRA/LA, raises a curious argument relating to the separation of powers; specifically that because funding of the Entitlement Programs is a matter for the Legislative and Executive Branches, and enforcement of the same is within the ambit of the Executive Branch only, the Court should dismiss the Government's complaint as violative of the balance of power. *See City Mot.* 36:22–39:22.

It is, as the City notes, an indisputable and foundational tenet of our federal system that power is separated into three branches of government. *See Immigration & Naturalization Serv. v. Chadha*, 462 U.S. 919, 951 (1983) ("The Constitution sought to divide the delegated powers of the new federal government into three defined categories, legislative, executive and judicial, to assure, as nearly as possible, that each Branch of government would confine itself to its assigned responsibility."); *see also Chevron, U.S.A, Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 865–66 (1984) ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail."). It is also true, as discussed throughout this order, that authority to fund the Entitlement Programs rests with HUD, and compliance with applicable regulations must be to its satisfaction. But it is a bridge too far to therefore conclude that "[t]he Government's Complaint seeks to abrogate that separation [of powers] and violate the balance of power." *City Mot.* 37:1–2.

For one, the FCA specifically authorizes the Attorney General to bring suits under the statute, *see* 31 U.S.C. § 3730(a), and thus it would be unreasonable to conclude that the Government's exercise of that authority "undermine[s] Congress's legislative judgment." *City Mot.* 37:17; *see also United States v. Philip Morris USA, Inc.*, 310 F. Supp. 2d 68, 72 (D.D.C. 2004) (quoting *Chadha*, 462 U.S. at 953 n.16) ("[W]hen the Attorney General performs his duties pursuant to a statute that delegates authority to him 'he does not exercise "legislative"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

power' but acts 'in his presumptively Art. II capacity.'"). Furthermore, as the Government notes in opposition, "the City's argument collapses under its own weight: the Attorney General and HUD are both part of the Executive Branch, so their actions toward each other cannot, by definition, violate any separation of powers." *City Opp.* 43:15–17.

As to HUD's enforcement power, the Court determined above that the availability of an alternative remedial scheme does not preclude an FCA claim. Indeed, the Government notes that "[v]irtually every government agency has a remedial scheme to address instances of non-compliance," and yet no court has dismissed an FCA action on separation of powers grounds. *City Opp.* 43:28–44:2. It is, after all, *not* the regulatory violation to which liability applies under the FCA, but instead the false claim for payment. *See Hendow*, 461 F.3d at 1171 ("[M]ere regulatory violations do not give rise to a viable FCA action."); *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996) ("It is the false *certification* of compliance which creates liability when certification is a prerequisite to obtaining a government benefit.") (emphasis in original). Therefore, enforcement of the FCA does not intrude upon or undermine HUD's other remedial efforts, and no violation of the separation of powers is present in this case.

C.    Other Claims

In addition to FCA claims, the Government's complaint also includes causes of action for negligent misrepresentation, restitution (unjust enrichment), and payment by mistake. *See Compl.* ¶¶ 365–73.[9] Defendants interpret these additional causes of action as a "string of state law claims, all of which must be dismissed." *City Mot.* 39:27. The Government, however, contends that these are *federal* common law claims, not *state* law claims. *City Opp.* 45:13–14. The Court will consider these various arguments in turn.

_____

[9] As a threshold matter, CRA/LA contends that the Government's common law claims must be dismissed because "[w]here there is an adequate remedy at law, courts dismiss equitable claims at the motion to dismiss stage." *CRA/LA Mot.* 33:16–34:2. However, as the Government correctly notes in opposition, "nothing prevents [it] from pleading in the alternative." *CRA/LA Opp.* 32:20; *see also Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2573 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) (allowing plaintiff to plead both breach of contract and unjust enrichment claims). The single case on which CRA/LA relies, *Singh v. City of Oakland*, 295 F. App'x 118 (9th Cir. 2008), is distinguishable because the plaintiff in that case sought equitable accounting in addition to money damages for alleged constitutional violations. *See id.* at 121–22. Here, by contrast, the Government seeks *only* money damages for its common law claims, not any other equitable remedy. Therefore, the Court agrees with the Government that it can maintain its common law claims as alternative means of relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

i.   *Negligent Misrepresentation*

When the United States disburses federal funds in connection with a federal program, federal interests apply and federal law governs. *See United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726 (1979) ("This Court has consistently held that federal law governs questions involving the rights of the United States arising under nationwide federal programs."); *see also Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law."). In *Kimbell Foods*, the Supreme Court explored the reasoning for this rule, citing to an earlier case and explaining,

> When the United States disburses its funds or pays its debts, it is exercising a constitutional function or power. . . . The authority [to do so] had its origin in the Constitution and the statutes of the United States and was in no way dependent on the laws [of any State]. The duties imposed upon the United States and the rights acquired by it . . . find their roots in the same federal sources. In absence of an applicable Act of Congress it is for the federal courts to fashion the governing rule of law according to their own standards.

*Kimbell Foods*, 440 U.S. at 726 (quoting *Clearfield Trust Co. v. United States*, 318 U.S. 363, 366–67 (1943)) (alterations in original). The Supreme Court went on to note that "[c]ontroversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules." *Kimbell Foods*, 440 U.S. at 727–28. "Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'" *Id.* at 728 (quoting *United States v. Standard Oil Co. of Cal.*, 332 U.S. 301, 310 (1947)). The Supreme Court specified three such considerations. First, "federal programs that by their nature are and must be uniform in character throughout the Nation necessitate formulation of controlling federal rules," but "when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision." *Kimbell Foods*, 440 U.S. at 728. Second, "[a]part from considerations of uniformity, [a court] must also determine whether application of state law would frustrate specific objectives of the federal programs." *Id*. Lastly, the "choice-of-law inquiry must consider the extent to which application of a federal rule would disrupt commercial relationships predicated on state law." *Id.* at 728–29.

The Court agrees with the Government that "[b]ecause this case involves the disbursement of federal funds in connection with nationwide housing programs, federal law similarly governs the United States' negligent misrepresentation claim." *Gov't Supp.* 1:7–9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

Interestingly, CRA/LA "is persuaded that the government is correct on this narrow point" and agrees that "[f]ederal law should apply to these federal common law claims." *See CRA/LA's Partial Withdrawal of Joinder*, Dkt. # 166, 1:10–18. However, although *Kimbell Foods* dictates that federal *law* applies, the Court cannot necessarily conclude that a uniform federal *rule* must be applied here as well. The City, unlike CRA/LA, is not persuaded by the Government's position and contends that "[t]here is no valid reason to create new federal causes of action here." *City Supp.* 1:8. The City's skepticism is grounded in precedent, which has noted that "there is no federal general common law, and the instances where courts have fashioned federal common law 'are few and restricted.'" *Hoa v. Riley*, 78 F. Supp. 3d 1138, 1145 (N.D. Cal. 2015) (quoting *Wheeldin v. Wheeler*, 373 U.S. 647, 651 (1963)); *see also Crispin v. Christian Audigier, Inc.*, 839 F. Supp. 2d 1086, 1099–1100 (C.D. Cal. 2011) (declining to sanction a federal common law claim for indemnification where such a claim had not been previously recognized). "Even when an 'action arises under and is clearly determined by federal law, state law limiting the enforcement of a federal right is sometimes adopted as the federal rule.'" *United States v. Ellis*, 714 F.2d 953, 955 (9th Cir. 1983) (quoting *United States v. Haddon Haciendas Co.*, 541 F.2d 777, 783 (9th Cir. 1976)). The Government has not produced, and the Court cannot find, any authority recognizing a federal common law claim for negligent misrepresentation. Accordingly, to determine whether the creation of a controlling federal rule is appropriate in this case, or whether application of state law is advisable, the Court will explore the considerations enumerated in *Kimbell Foods*.

> ### a. Kimbell Foods *Considerations*
>
> #### 1. *Need for Uniformity*

The Government claims that "the nationwide housing programs at issue here clearly require uniform rules of decision," noting that "HUD distributes hundreds of millions of dollars in federal housing funds on an annual basis to states and local entities throughout the country" and that these "[f]unds are largely determined by formula" and so "are neither individually negotiated with each recipient nor tailored individually to adapt to each recipient's local laws." *Gov't Supp.* 3:18–23; *see also* 42 U.S.C. § 5306 (governing allocation of CDBG funds); 42 U.S.C. § 12747 (governing allocation of HOME funds); *County of Westchester v. U.S. Dep't of Hous. & Urban Dev.*, 116 F. Supp. 3d 251, 260 (S.D.N.Y. 2015) (noting that HUD funds "are allocated to jurisdictions based on a statutory formula"). The Court agrees with the Government's conclusion in this regard. Administration of the Entitlement Programs at issue relies on federal standards, not, as the Government phrases it, "the intricacies of contract or tort law in the fifty states." *Gov't Supp.* 4:3–4. Consequently, these programs are "nationwide act[s] of the Federal Government, emanating in a single form from a single source." *Kimbell Foods*, 440 U.S. at 733 (alteration in original). As such, they are distinguishable from other federal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

programs for which the Supreme Court has found no need for uniform federal rules.  *See id.* at 730–32 (rejecting need for uniform rule where federal program's rules and regulations "follow state law"); *United States v. Yazell*, 382 U.S. 341, 345–46, 357 (1966) (rejecting need for uniform federal rule where loans made by federal program were "individually negotiated in painfully particularized detail" and "specifically and in great detail adapted to state law").

Because HUD's programs here operate without reference to the laws of California or any other state, uniformity is encouraged, and other courts have applied federal rules of decision to claims that similarly arose out of nationwide HUD programs.  *See, e.g.*, *United States v. Landmark Park & Assocs.*, 795 F.2d 683, 685–87 (8th Cir. 1986) (noting that although the court had "incorporated state law as the federal rule of decision when the state law is derived from a uniform statute such as the Uniform Commercial Code and to do so would therefore not hinder the federal interest in uniformity of the law," there is "no such uniformity in state law concerning" the federal program at issue) (internal quotation marks omitted); *Holbrook v. Pitt*, 643 F.2d 1261, 1270 n.16 (7th Cir. 1981) ("Federal common law applies to plaintiffs' third-party beneficiary claims since a federal agency is a party to the action and since the outcome of this case will directly affect substantial financial obligations of the United States."); *Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 978–82 (C.D. Cal. 2000) (quoting *United States v. Lewis County*, 175 F.3d 671, 677 (9th Cir. 1999)) ("The present case . . . require[s] a uniform federal practice.  It is doubtful, here, that Congress in enacting the Single Family Mortgage Insurance Program, intended 'the outcome to depend upon varying characterizations of state law.'").

Furthermore, the Government also correctly notes that "[w]ithout a uniform federal rule, negligent misrepresentation in HUD's programs would be actionable in some states and immune in others and subject to myriad conflicting state requirements."  *Gov't Supp.* 4:15–17.  Indeed, taking only the jurisdictions within the Ninth Circuit as an example, claims for negligent misrepresentation against public entities are allowed in Arizona, Montana, Nevada, Oregon, and Washington, but not in California, Colorado, or Idaho.  *See Hayenga v. Gilbert*, 236 Ariz. 539, 541 (Ariz. Ct. App. 2015); Ariz. Rev. Stat. §§ 12-820.01–12-821.01; *Delaney & Co. v. City of Bozeman*, 354 Mont. 181, 182 (2009); Mont. Code Ann. § 2-9-102; *Pub. Emps.' Ret. Sys. v. Harper*, No. 64987, 2016 WL 3257895, at *1 (Nev. June 10, 2016); Nev. Rev. Stat. § 41.031; *Black v. Coos County*, 288 Or. App. 25, 27 (2017); Or. Rev. Stat. § 30.265; *Maytown Sand & Gravel LLC v. Thurston County*, 198 Wash. App. 560, 566 (2017); Wash. Rev. Code § 4.96.010; Cal. Gov't Code § 818.8; Colo. Rev. Stat. §§ 24-10-105, 24-10-106; Idaho Code § 6-904(3).[10]

---

[10] This is in addition to conflicting procedural requirements.  For example, "[n]egligent misrepresentation claims must be filed within one year in Arizona, within two years in Nevada and Oregon, and within three years in Montana and Washington."  *Gov't Supp.* 5:8–10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

In short, given that the HUD programs at issue here are applied nationwide and centrally administered at the federal level, and that negligent misrepresentation claims would be subject to varying requirements in different jurisdictions, the Court concludes that the need for and desirability of uniformity tips in favor of a federal rule of decision.

### 2. *Frustration of Objectives*

The Government also makes a persuasive argument that "[a]pplication of state law to the federal claims here would frustrate numerous federal interests." *Gov't Supp.* 5:19–20. In addition to various hurdles relating to the issue of immunity, *see id.* 5:20–6:4, there is the fact that, under California law, "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Cal. Gov't Code § 818.8. This bar would certainly frustrate the Government's ability to ensure that the funding for the Entitlement Programs is not subject to misrepresentation. In addition, the Government notes that

> [r]equiring the United States to give notice of its claims to an investigative target of an FCA action within six months to one year, as required by the [California Tort Claims Act], would interfere with the FCA's statutory scheme in at least two ways: it would tip off the public entity to an investigation and would interfere with the statutorily-imposed *qui tam* seal.

*Gov't Supp.* 6:12–17. Like the need for uniformity, these hurdles support a federal rule for negligent misrepresentation.

In opposing the creation of a federal rule, the City observes that courts have questioned the need for federal rules where alternative remedies exist and the creation of a new rule would merely serve as a convenience. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 312–13 (2010) (nothing that, while "Granite Rock's case for a new federal common-law cause of action is based on assumptions about the adequacy of other avenues of relief," it did "not litigate below, and thus does not present us with occasion to address, whether state law might provide a remedy"); *Dupnik v. United States*, 848 F.2d 1476, 1483 (9th Cir. 1988) ("Our previous decisions indicate that convenience normally is not sufficient justification to create a uniform federal rule rather than to adopt state law."). The City also notes that "HUD has the authority to 'reduce' the amount of an Entitlement Program grant when a 'recipient fails to undertake appropriate corrective or remedial actions which resolve the deficiency to the satisfaction of the Secretary.'" *City Mot.* 7:10–13 (citing 24 C.F.R. §§ 570.900(b)(7), 570.911(b), 570.913(a)); *see also* 42 U.S.C. § 5311(b) (providing that "the Secretary may, if he has reason to believe that a recipient has failed to comply substantially with any provision of this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

chapter, refer the matter to the Attorney General," who "may bring a civil action in any United States district court having venue thereof for such relief as may be appropriate, including an action to recover the amount of the assistance furnished under this chapter which was not expended in accordance with it"). The City thus concludes that "there are numerous enforcement options available to deter misrepresentations by funding recipients and to reclaim misspent monies," *City Supp.* 9:2–4, and so a federal rule is not needed.

The Court ultimately disagrees. Unlike the case in *Granite Rock*, here it is not unknown but rather clear that state law—specifically, California law—would not provide a remedy for a negligent misrepresentation claim. Therefore, to contrast this case with the Ninth Circuit's *Dupnik* decision, here state law is not merely an inconvenience, but is instead a barrier. As for the statutory remedies the City mentions, the ability to *reduce* a grant does not permit the *recuperation* of funds already spent, which is the basis of the negligent misrepresentation claim. And while § 5311(b) does present the Government with an alternative remedial scheme to reclaim ill-spent funds, the convenience inquiry is concerned with whether or not a *state law* should be adopted as the rule under federal common law; as such, the relevant consideration is the imposition presented by that state law, not the availability of other remedies. *See Granite Rock*, 561 U.S. at 312–13; *Dupnik*, 848 F.2d at 1483; *Ellis*, 714 F.2d at 955. Here, use of California's negligent misrepresentation law would cause far more than a mere inconvenience; it would instead prevent the claim altogether.

In short, application of state law here would frustrate the Government's ability to redress grievances stemming from the Entitlement Programs. This further suggests that a uniform federal rule should be adopted.

*3.   Disruption of Commercial Relationships*

The Government notes that "[i]t is unclear how the third *Kimbell Foods* factor, the extent to which application of a federal rule would disrupt commercial relationships predicated on state law, is applicable to instances where the state accepts federal funds from the United States." *Gov't Supp.* 6 n.4. The Court shares this view, and considering that neither the City nor CRA/LA suggests any argument to the contrary, concludes that the third *Kimbell Foods* factor is neutral here.

*4.   Summation*

Two of the three *Kimbell Foods* factors indicate that a uniform federal rule should be adopted in this case, and the third factor is neutral. Therefore, the Court concludes that a new federal rule for negligent misrepresentation should be applied in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|----------|---------------------|------|---------------|

| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. |
|-------|--------------------------------------------------------------------------------|

       b.     *Uniform Federal Rule*

       Having determined that the considerations described in *Kimbell Foods* support the adoption of a uniform federal rule for the Government's negligent misrepresentation claim, the Court must now determine which rule to apply.

       The Government urges the Court "to look to the Restatement (Second) of Torts for a uniform federal rule of decision." *Id.* 2:4–5. This is a sound suggestion. The Restatement is a widely cited authority that can be applied across varied jurisdictions and ensure consistent adjudication of negligent misrepresentation claims. The Fifth Circuit has noted that the Restatement reflects the approach to negligent misrepresentation taken in most courts, writing that

       the Restatement approach steers a middle course by allowing only a prescribed group of third parties to recover for pecuniary losses attributable to inaccurate financial statements. This is the approach that the majority of states have adopted. The popularity of the Restatement approach appears to be a result of many courts' finding it to be most consistent with the policy foundations underlying the tort of negligent misrepresentation.

*Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 612 (5th Cir. 1996); *see also Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992) ("Of the approaches we have reviewed, Restatement Second of Torts section 552, subdivision (b) is most consistent with the elements and policy foundations of the tort of negligent misrepresentation.").

       The Restatement provides that

       [o]ne who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Restatement (Second) of Torts § 551(1) (1977). In addition,

       One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

pecuniary loss caused to them by their justifiable reliance upon the information, if
he fails to exercise reasonable care or competence in obtaining or communicating
the information.

*Id.* § 552(1). Applying the Restatement's rules governing negligent misrepresentation, the
Government's claim fails for the same reason as its FCA claims: absence of materiality. To
prevail on a negligent misrepresentation claim under the Restatement's rules, a plaintiff "must
present some evidence establishing the element of causation, in the sense of actual and
justifiable reliance upon misrepresentations or omissions of material fact." *Smolen v. Deloitte,
Haskins & Sells*, 921 F.2d 959, 964 (9th Cir. 1990) (citing Restatement (Second) of Torts § 552);
*see also Geosearch, Inc. v. Howell Petroleum Corp.*, 819 F.2d 521, 526 (5th Cir. 1987) ("A
plaintiff may recover for negligent misrepresentation only if he proves 'justifiable reliance' on
that misrepresentation. . . . [T]here must be a reasonable relation between the contents of the
defendant's misrepresentation and the action the plaintiff took in reliance."); *In re Allstate Life
Ins. Co. Litig.*, 971 F. Supp. 2d 930, 945 (D. Ariz. 2013) (explaining that under the Restatement,
"the plaintiff must have actually relied on the information, and the misstatement must have
caused the plaintiff's injury"). Here, as discussed at length above, the Government has not
sufficiently pleaded materiality under the FCA. However, whether this insufficiency similarly
dooms its negligent misrepresentation claim hinges on resolution of a question that the Court
presented to the parties: should the materiality standard for a federal common law negligent
misrepresentation claim follow the same analysis as the standard under the FCA?

Having reviewed the additional briefing provided by the parties, the Court concludes that
the standard and analysis are the same. The City notes that under California law, as in other
states, a plaintiff's conduct must be scrutinized to determine whether it justifiably relied on an
allegedly negligent misrepresentation. *See, e.g., Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal.
App. 4th 182, 196 (2012) (noting that the elements of negligent misrepresentation include "a
misrepresentation of a past or existing material fact" and "justifiable reliance on the
misrepresentation"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 771 (W.D.N.Y.
2017) (collecting cases from various jurisdictions and concluding that "[r]easonable or
justifiable reliance is [] an element of a negligent misrepresentation claim under any []
potentially applicable law"); *Sevin v. Kelshaw*, 417 Pa. Super. 1, 10 (1992) ("A
misrepresentation is material if it is of such character that had it not been made, or in the present
case, had it been made, the transaction would not have been consummated."). The City further
observes that courts applying the Restatement "demand[] a showing of justifiable reliance by the
plaintiff, which, in turn, requires both that the plaintiff in fact relied and that such reliance was
reasonable. Cases applying the Restatement make clear that a party cannot have 'justifiably
relied' on any misrepresentation if it knew, or had reason to know, that the representation was
false." *Second City Supp.* 3:22–28 (citation omitted); *see also Porreco v. Porreco*, 571 Pa. 61,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

69–70 (2002) ("To be justifiable, reliance upon the representation of another must be reasonable. While the nature of the relationship between the parties may affect the reasonableness of one's reliance, we hesitate to find reliance justified where the party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements.") (citations omitted); *Collins v. Burns*, 103 Nev. 394, 397 (1987) ("The test is whether the recipient has information which would serve as a danger signal and a red light to any normal person of his intelligence and experience."); *Nat'l Grps., LLC v. Nardi*, 145 Conn. App. 189, 194–95 (2013) ("The plaintiff's knowledge is particularly relevant to determining whether, under all the circumstances, reliance was reasonable. Knowledge of the fact misrepresented can preclude a claim that reliance on a contrary representation was reasonable. Even if the misrepresentation forms part of a binding agreement, a plaintiff cannot reasonably rely on a contractual term he knows to be false.") (citations omitted). This tracks with the materiality analysis set forth above, which concludes that the Government's knowledge of Defendants' false claims strongly suggests an absence of materiality.

Furthermore, the Court notes that *Escobar* itself, like the Restatement, is grounded on common law fraud principles. *See Escobar*, 136 S. Ct. at 1999 n.2 ("The False Claims Act abrogates the common law in certain respects. For instance, the Act's scienter requirement 'require[s] no proof of specific intent to defraud.' But we presume that Congress retained all other elements of common-law fraud that are consistent with the statutory text because there are no textual indicia to the contrary.") (citation omitted); *see also United States ex rel. Poehling v. UnitedHealth Grp., Inc.*, No. CV 16-08697-MWF (SSx), 2018 WL 1363487, at *8 (C.D. Cal. Feb. 12, 2018) (noting that "the FCA's materiality requirement" reflects "its common-law antecedents"); *Pub. Warehousing*, 2017 WL 1021745, at *5 ("The Supreme Court has taken [the FCA materiality] definition to be equivalent to the common law understanding."). Accordingly, although *Escobar* provided context to the FCA's materiality requirement, it is rooted in the common law and thus reflects the materiality standard encapsulated by the Restatement. The Supreme Court explained,

> Under any understanding of the concept, materiality "look[s] to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." . . . In tort law, for instance, a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not.

*Id.* at 2002–03 (quoting 26 R. Lord, *Williston on Contracts* § 69:12 (4th ed. 2003); Restatement (Second) of Torts § 538). It is therefore logical to assume that both the Restatement's treatment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

of negligent misrepresentation and *Escobar*'s analysis of the FCA would feature the same materiality standard given that both are based on common law principles of justifiable reliance. Notably, the Government shares this position, noting that *Escobar* based its analysis on "common-law antecedents" and suggesting that "although the balance of, or emphasis on, factors considered in assessing an FCA claim (which focuses on obtaining funds from the United States), may be different than a tort claim (which focuses on the breach of a duty of care), or a quasi-contract claim (which focuses on equities), *Escobar*'s non-exhaustive factors for assessing materiality are instructive to the materiality analysis under payment by mistake and negligent misrepresentation." *Second Gov't Supp.* 3:16–4:2.

The Court therefore concludes that the materiality standard that should be applied to the federal negligent misrepresentation claim mirrors the standard that applies to the FCA. Accordingly, the FCA and negligent misrepresentation claims rise or fall together here, and so the Court **GRANTS** the City's motion to dismiss the Government's fifth claim for negligent misrepresentation.

### ii.   *Unjust Enrichment and Payment by Mistake*

Like the Government's negligent misrepresentation claim, its unjust enrichment and payment by mistake claims are governed by federal law for the reasons set forth in *Kimbell Foods*. Furthermore, unlike negligent misrepresentation, the federal common law already recognizes claims for unjust enrichment. *See United States v. California*, 932 F.2d 1346, 1350 (9th Cir. 1991). Accordingly, California's substantive and procedural requirements do not apply, *see id.* at 1349, and the Court need not consider whether a new uniform rule should be adopted.

### a.   *Funding Agreements*

Defendants assert that the claims for unjust enrichment and payment by mistake cannot proceed in light of the funding agreements executed between them and HUD. *See City Mot.* 42:25–44:12. Because "the doctrine of unjust enrichment is recognized where there is no enforceable agreement between the parties on the subject matter at issue or where no adequate legal remedy exists," *Glenn v. Hyundai Motor Am.*, No. SACV 15-2052-DOC (KESx), 2016 WL 7507766, at *5 (C.D. Cal. Nov. 21, 2016), Defendants argue that the presence of the various funding agreements preclude an action for unjust enrichment.

The Court is not so quick to make this determination. As the Government points out, the complaint does not characterize the funding agreement as "contracts," but rather as claims for payment or approval. *See Compl.* ¶¶ 353, 357. Whether these claims can be properly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | | Date | July 25, 2018 |
|---|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | | |

characterized as enforceable contracts is a question of fact, one that the Court cannot pursue at this time. Furthermore, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was *procured by fraud*." *Glenn*, 2016 WL 7507766, at *5 (emphasis in original). The gravamen of the Government's complaint is that the Entitlement Funds were fraudulently procured, and so the claims for unjust enrichment and payment by mistake can survive even in the presence of an express contract. Therefore, this is not a sound basis for dismissal.

> b.    *Statute of Limitations*

In addition, Defendants argue that these claims are time-barred for conduct occurring before February 1, 2005. *See City Mot.* 44:15–46:15; *CRA/LA Mot.* 34:6–35:3. Here, the Court agrees. The applicable statute of limitations for these claims is set forth in 28 U.S.C. § 2415. *See United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (Ex), 2002 WL 35628747, at *4 (C.D. Cal. Aug. 5, 2002) (determining that the statute of limitations for common law claims of payment by mistake, unjust enrichment, breach of contract, and fraud is set forth in § 2415). Section 2415 requires that these claims must be "filed within six years after the right[s] of action accrue[d]." 28 U.S.C. § 2415(a). In addition, § 2416 sets forth a tolling provision "[f]or the purpose of computing the limitations periods established in section 2415." *Id.* § 2416. Under subsection (c), all periods are tolled during which "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances." *Id.* § 2416(c). Thus, § 2416 "excludes from the six-year limitation period those periods of time when the government: (1) did not know the facts material to its right of action; and (2) reasonably could not have known of the facts material to its right of action." *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir. 1993).

Here, as discussed above, the Government's claim accrued no later than January 2012. *See Compl.* ¶ 343. Therefore, accepting the facts set forth in the complaint as true, the Government had until January 2018 to bring its unjust enrichment and payment by mistake claims. Therefore, these claims satisfy the statute of limitations.

CRA/LA suggests, however, that January 2012 is *not* the correct date to use for this purpose, arguing that February 1, 2011—"when the *qui tam* plaintiffs in this action filed their Complaint under seal"—is actually the date when "the government knew, or reasonably could have known, of the core allegations in the government's complaint" and hence when the six-year clock began running. *CRA/LA Supp.* 5:4–14. It writes,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

> To survive the six-year limit, the government's common law claims depend on pushing the date of government knowledge out a year to when HUD returned findings. The government asserts that facts material to the right of action could not have been known until HUD issued its Letter of Findings on January 11, 2012. This makes no sense. HUD did know, or reasonably could have known, before making its findings in January 2012 of facts and allegations relevant to the common law claims.

*Id.* 5:15–21; *see also United States v. Gavilan Joint Cmty. Coll. Dist.*, 849 F.2d 1246, 1249–50 (9th Cir. 1988) ("Parties are not entitled to delay instituting a claim until they know the exact dollar amount; the Government here essentially asserts that it may postpone litigation indefinitely through delay in conducting its own audit. This is not a tenable position."). Although this is a compelling argument, the Court is not persuaded. Selecting February 1, 2011, the date Relators filed their complaint, as the proper date under the discovery rule is also problematic; as the Government notes, CRA/LA's "assertion that the filing of the relator's *qui tam* complaint is the trigger ignores the difference between allegations and knowledge." *Second Gov't Supp.* 21:5–6; *see also Pub. Warehousing*, 2017 WL 1021745, at *6 ("[M]ere suspicion of wrongdoing is not enough. The appropriate time to impute knowledge is at the end of an investigation, not at the beginning."). Logically, the moment that knowledge should be imputed to the Government falls sometime between February 1, 2011—when it was first alerted to the alleged violations—and January 11, 2012—when it dispatched its LOF. Indeed, the appropriate date might be found in December 2011, when the complaint alleges that HUD conducted its Section 504 compliance review and "consistently observed accessibility deficiencies throughout the various units, developments, designated accessible routes and common areas." *Compl.* ¶¶ 342–47. Ultimately, though, the precise date, which might well be significant for statute of limitations purposes, cannot be ascertained at this time, although it might well be determined on a motion for summary judgment. For now, the operative complaint indicates that January 11, 2012 is the date when "the results of the compliance review" were compiled, which suggests that this is the date the Government became aware of the relevant facts of the case. *Compl.* ¶ 343. Therefore, whether the Court uses that date or December 2011 to calculate the applicable statute of limitations, the Government's payment by mistake and unjust enrichments claims were timely brought when its complaint-in-intervention was filed on July 31, 2017.[11]

However, although the claims are not time-barred, they can only be applied to conduct since February 1, 2005. Under the Federal Rules of Civil Procedure, an amendment to a pleading relates back to the date of the original pleading when "the law that provides the

---

[11] The Court also notes once more that statute of limitations defenses are disfavored when brought against the Government. *See Badaracco*, 464 U.S. at 391; *Neville Chem.*, 358 F.3d at 666.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|

| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. |
|---|---|

applicable statute of limitations allows relation back" or "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c). Under the FCA, "[f]or statute of limitations purposes, any [] Government pleading shall relate back to the filing date of the complaint of the person who originally brought the action." 31 U.S.C. § 3731(c). Whichever method under Rule 15(c) is applied, in this case the result is the same. Relators' original qui tam complaint asserted claims only with respect to the six preceding years—specifically, for conduct beginning February 1, 2005. *See Qui Tam Compl.* ¶ 17. The Government's complaint asserts claims for conduct dating from February 1, 2001 to the present. *See Compl.* ¶ 2. Because Relators' complaint did *not* address conduct from February 2001 through February 2005, the Government's claims do not relate back to that period. *See United States ex rel. Lee v. Corinthian Colls.*, No. CV 07-1984 PSG (MANx), 2012 WL 12878361, at *4 (C.D. Cal. Apr. 19, 2012) ("[A]ny false certifications that occurred before 2005 are independent acts of fraud and not part of the same 'conduct, transaction, or occurrence' as the allegations in the original complaint, which only claimed fraud from 2005 and later.").[12]

   *c.*  *Materiality*

   Finally, CRA/LA argues that the Government's claim for payment by mistake must be dismissed because, like the FCA claims, it too requires a showing of materiality. *See CRA/LA Mot.* 35:7–15; *see also Fort Belknap Hous. Dep't v. Office of Pub. & Indian Hous.*, 726 F.3d 1099, 1105 (9th Cir. 2013) ("[T]he Government is entitled to recover payments when it made those payments under an erroneous belief *which was material to the decision to pay.*") (emphasis added and internal quotation marks omitted). In opposition, the Government does not dispute this materiality requirement, but only argues that it has sufficiently alleged materiality in the context of the FCA claims. *See CRA/LA Opp.* 34:6–10. However, the Court concludes that the Government's complaint does *not* sufficiently plead materiality. For the reasons outlined above, the Court is persuaded that the materiality standard applied to FCA claims is derived from and reflective of the standard that should be applied to the Government's common law claims, including payment by mistake. *See Swoben*, 2017 WL 4564722, at *6 (applying the same materiality standard to FCA, unjust enrichment, and payment by mistake claims); *United States*

---

[12] The Government's negligent misrepresentation claim only applies to conduct on or after February 1, 2008, *see City Opp.* 35 n.9, which is consistent with the applicable statute of limitations. Unlike an unjust enrichment or payment by mistake claim, which features a six-year statute of limitations, an "action for money damages . . . which is founded in tort," like a negligent misrepresentation claim, must be filed "within *three* years after the right of action first accrues." 28 U.S.C. § 2415(b) (emphasis added). Therefore, relating back to the date Relators' complaint was originally filed, the Government can assert its negligent misrepresentation claim as to conduct that occurred within three years of February 1, 2011.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

*ex rel. Dresser v. Qualium Corp.*, No. 5:12-cv-01745-BLF, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016) (same). Therefore, because the Government has not adequately pleaded materiality, dismissal of the payment by mistake claim is appropriate. *See United States v. Reunion Mortg., Inc.*, No. C 13-02340 SBA, 2013 WL 5944252, at *7 (N.D. Cal. Nov. 5, 2013).

Accordingly, the Court **GRANTS** Defendants' motions to dismiss the Government's sixth claim for relief for restitution (unjust enrichment) as to conduct occurring prior to February 1, 2005, and **DENIES** Defendants' motions to dismiss that claim for conduct occurring after that date. Due to the absence of materiality, the Court also **GRANTS** Defendants' motion to dismiss the Government's seventh claim for relief for payment by mistake.

IV.   Leave to Amend

Whether to grant leave to amend rests in the sound discretion of the trial court. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Court considers whether leave to amend would cause undue delay or prejudice to the opposing party, and whether granting leave to amend would be futile. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996). Generally, dismissal without leave to amend is improper "unless it is clear that the complaint could not be saved by any amendment." *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003).

Many of the shortcomings in the Government's complaint that have resulted in dismissal could be cured through amendment. The Government's FCA, negligent misrepresentation, and payment by mistake claims fail because the allegations in the complaint do not overcome the strong evidence of immateriality created by the Government's conduct. This could be remedied by pleading, for example, allegations that it withheld funding from Defendants due to the alleged noncompliance, that it would have withheld the Entitlement Funds had it known of the alleged noncompliance, or that it had previously withheld funding in similar cases of noncompliance.

However, because the statute of limitations bars the Government's unjust enrichment and payment by mistake claims as to conduct occurring before February 1, 2005, such claims should be dismissed with prejudice.

V.   Conclusion

For the foregoing reasons, the Court:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 25, 2018 |
|---|---|---|---|
| Title | United States of America ex rel. Mei Ling et al. v. City of Los Angeles et al. | | |

**GRANTS WITH LEAVE TO AMEND** Defendants' motions to dismiss the Government's first, second, third, and fourth claims for relief under the FCA[13];

**GRANTS WITH LEAVE TO AMEND** the City's motion to dismiss the Government's fifth claim for relief for negligent misrepresentation;

**GRANTS WITHOUT LEAVE TO AMEND** Defendants' motions to dismiss the Government's sixth claim for relief for restitution (unjust enrichment) and seventh claim for relief for payment by mistake as to conduct occurring prior to February 1, 2005;

**DENIES** Defendants' motions to dismiss the Government's sixth claim for relief for restitution (unjust enrichment) as to conduct occurring on or after February 1, 2005; and

**GRANTS WITH LEAVE TO AMEND** Defendants' motions to dismiss the Government's seventh claim for relief for payment by mistake as to conduct occurring on or after February 1, 2005.

To the extent that the Court grants leave to amend, the Government must file an amended complaint by **September 24, 2018**.

**IT IS SO ORDERED.**

---

[13] As discussed in Part III.A.iii, in light of the Government's concession regarding the timespan of its FCA claims, leave to amend is only granted as to claims for conduct occurring on or after February 1, 2005.