## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

#219/220/222

### CIVIL MINUTES - GENERAL

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):     Order DENYING the City of Los Angeles's motion to dismiss**

Before the Court is Defendant the City of Los Angeles's ("the City") motion to dismiss.
*See* Dkt. # 219 ("*Mot.*").  Plaintiff the United States ("the Government") has opposed this
motion,[1] *see* Dkt. # 232 ("*Opp.*"), and the City replied, *see* Dkt. # 241 ("*Reply*").  The Court held
a hearing on this matter on July 15, 2019.  Having considered the moving papers and the
arguments made at the hearing, the Court **DENIES** the motion.[2]

I.     Background

The Court summarized the allegations underlying this case in its previous order so it
repeats only those necessary for deciding the current motion.  *See United States ex rel. Mei Ling
v. City of Los Angeles*, No. CV 11-974 PSG (JCx), 2018 WL 3814498 (C.D. Cal. July 25, 2018)
("*Mei Ling*").

A.     Factual Background

Each year, Congress allocates federal funding, distributed by the Department of Housing
and Urban Development ("HUD"), to address housing issues in America's cities and promote
urban development and affordability.  *See First Amended Complaint-in-Intervention*, Dkt. # 216
("*FACI*"), ¶ 1.  The City, like all major metropolitan areas, is designated as an "entitlement

---

[1] Qui Tam Relators Fair Housing Council of San Fernando Valley and Mei Ling have not filed
separate oppositions.

[2] As stated at the hearing, Defendant CRA/LA's motion to dismiss, Dkt. # 220, will be held in
abeyance in light of the forthcoming motion to approve a settlement of the claims against
CRA/LA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

community," and accordingly receives a statutorily set amount of certain federal grant funds each year. *Mei Ling*, 2018 WL 3814498, at *1; 24 C.F.R. § 570.3. In addition to spending the entitlement grants directly, from 2001 to 2012, the City also provided the funds to the Community Redevelopment Agency of the City of Los Angeles ("CRA"), which has now been succeeded by an entity called CRA/LA.[3] *See FACI* ¶¶ 54–84. During this period, CRA served as the "redevelopment agency for the City" and used a "portion of the [federal] funds" for various "multifamily housing projects." *Id.* ¶¶ 31–32, 56.

### i.   *The Entitlement Programs*

In its First Amended Complaint-in-Intervention ("FACI"), the Government focuses on three programs ("the Entitlement Programs") that issued funds ("the Entitlement Funds") that the City used from February 1, 2005 through November 26, 2017. *See id.* ¶ 287. These are: (1) the Community Development Block Grant Program ("CDBG") and the Economic Development Initiative Program ("EDI"); (2) the HOME Investments Partnerships Program ("HOME"); and (3) the Housing Opportunities for People with AIDS Program ("HOPWA").[4] *See id.* ¶ 4. The FACI also specifically discusses certain Neighborhood Stabilization Program ("NSP") grants, which are a component of CDBG funds. *See id.* ¶¶ 223–25. Each of these programs was designed to address a range of urban and economic issues. CDBG, for instance, addresses "critical social, economic, and environmental problems" stemming from "the growth of population in metropolitan and urban areas" and "inadequate public and private investment and reinvestment in housing." 42 U.S.C. § 5301(a). The "overall goal" of the programs is "to develop viable urban communities by providing decent housing and a suitable living environment . . . principally for low- and moderate-income persons." 24 C.F.R. § 91.1.

### ii.   *The Government's Allegations*

The Government alleges that the City and CRA/LA received "many millions of federal taxpayer dollars from HUD by falsely promising to create affordable, accessible housing." *FACI* ¶ 3. This money was then used to "discriminate against people with disabilities in Los

---

[3] To avoid confusion, the Court will refer to the former CRA as "CRA/LA" for purposes of this order.

[4] While the Government's original Complaint-in-Intervention also included claims stemming from the Emergency Solutions Grant program, *see Mei Ling*, 2018 WL 3814498, at *2, the Government has abandoned those claims in the FACI. *See Opp.* 62:10–11.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | | Date | July 15, 2019 |
|---|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | | |

Angeles by depriving them of an equal opportunity to participate in assisted housing programs." *Id.* ¶ 6.

The allegedly false representations were made in various ways. For example, each year, an entitlement community must submit an Annual Action Plan ("AAP") that "describe[s] the activities the jurisdiction will undertake during the next year to address priority needs and objectives, including the housing and supportive service needs of people with disabilities." *Id.* ¶ 172. The AAP "serves as the application for CDBG, HOME, and HOPWA funds." *Id.* ¶ 173. As part of submitting an AAP, a community must certify that it will "administer the grant in compliance with Section 504 of the Rehabilitation Act of 1973," "comply with the Fair Housing Act . . . and the implementing regulations . . . which prohibit discrimination in housing on the basis of disability," and "affirmatively further fair housing." *Id.* ¶¶ 147, 173–75. A community seeking CDBG funds must additionally certify that the grant "will be conducted and administered in conformity with title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), the Fair Housing Act (42 U.S.C. § 3601–3619), and implementing regulations." *Id.* ¶ 179.

Further, the Government alleges that the funding agreements for the Entitlement Programs were premised on regulatory compliance. *See id.* ¶ 188 ("In each grant agreement for CDBG funds, the jurisdiction expressly acknowledges that CDBG Program regulations 'constitute part of the agreement,' and HUD agrees to make CDBG funds available to the jurisdiction 'subject to the provisions of the agreement.'"); *id.* ¶ 196 (same for HOME funds); *id.* ¶ 202 ("[T]he City's HOPWA agreements included the requirement that it comply with . . . nondiscrimination provisions . . . ."). It contends that despite making these certifications, "the City failed to enforce the federal accessibility laws in its housing program, resulting in systemic noncompliance, including inaccessible housing projects assisted with federal funds and a housing program inaccessible to people with disabilities in the City." *Id.* ¶ 253.

In support, the Government points to several specific failures. For example, it alleges that a survey of ten multifamily properties constructed by CRA/LA with Entitlement Funds showed that each and every one of them failed to meet the requirements of federal accessibility laws. *See id.* ¶¶ 314–21. Namely, these properties had (1) slopes, ramps, and thresholds that were too steep for safe passage by persons with mobility disabilities; (2) balconies too narrow for wheelchair access; (3) mounted objects that prohibited access to common areas for individuals with mobility disabilities; (4) kitchen cabinets, sinks, mailboxes, shelves, and surfaces outside the reach of individuals who use wheelchairs; (5) pipes below sinks and lavatories that were uninsulated, posing threats to persons in wheelchairs; (6) insufficient numbers of designated accessible parking spaces; and (7) a lack of visual alarms and tactile signs for persons with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

hearing and visual impairments. *Id.* ¶ 322; *see also FACI Attachment D*, Dkt. # 216-4. As a result, the Government contends that the City and CRA/LA failed to make "at least five percent of all units per multifamily housing project accessible for people with mobility impairments, and an additional two percent . . . accessible for people with hearing or vision impairments," as required by Section 504 of the Rehabilitation Act. *FACI* ¶ 257.

In November and December 2011, HUD's Office of Fair Housing and Equal Opportunity conducted a review of the City and CRA/LA's compliance with Section 504 of the Rehabilitation Act and the ADA in their affordable housing programs, which included interviewing witnesses and conducting onsite surveys of thirty-one units at eleven projects funded with federal assistance. *Id.* ¶¶ 407–08. After finding significant instances of noncompliance, HUD sought to enter into a voluntary compliance agreement ("VCA") with the City and CRA/LA under which they would voluntarily remedy their accessibility violations. *See id.* ¶ 418. While it was able to reach a VCA with CRA/LA in 2014, it has not yet been able to do so with the City, and negotiations are ongoing to this day. *See id.* ¶¶ 418, 445.

B.   Procedural History

i.   *Nature of the Claims*

In February 2011, two private whistleblowers, Relators Mei Ling and the Fair Housing Council of San Fernando Valley, filed a qui tam complaint against the City and CRA/LA, bringing claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729. *See* Dkt. # 1. The Government exercised its statutory right to intervene in the action and filed its Complaint-in-Intervention in July 2017. *See* Dkt. # 98. That complaint asserted seven causes of action, which are the same causes of action asserted in the now-operative FACI:

First Cause of Action: Presentation of false claims for conduct occurring on or after May 20, 2009, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A). *FACI* ¶¶ 536–38.

Second Cause of Action: Presentation of false claims for conduct occurring before May 20, 2009, in violation of the FCA, 31 U.S.C. § 3729(a)(1). *Id.* ¶¶ 539–41.

Third Cause of Action: Making or using false records or statements for claims for payment pending on or after June 7, 2008, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B). *Id.* ¶¶ 542–44.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

Fourth Cause of Action: Making or using false records or statements for claims for payment pending before June 7, 2008. *Id.* ¶¶ 545–47.

Fifth Cause of Action: Negligent misrepresentation.[5] *Id.* ¶¶ 548–51.

Sixth Cause of Action: Restitution (unjust enrichment). *Id.* ¶¶ 552–53.

Seventh Cause of Action: Payment by mistake. *Id.* ¶¶ 554–56.

    *ii.*    *The Court's Previous Order*

The City and CRA/LA (collectively "Defendants") moved to dismiss the Complaint-in-Intervention for failure to state a claim, and the Court granted the motion in part and denied it in part. *See generally Mei Ling*, 2018 WL 3814498. As relevant here, the Court concluded that the Government had adequately pleaded the falsity and scienter elements of its FCA claims. *See id.*, at *6–12. But it concluded that the complaint did not adequately allege materiality.[6] *Id.*, at *12–22. Because materiality is also an element of the Government's claims for negligent misrepresentation and payment by mistake claims,[7] the Court dismissed those claims as well. *See id.*, at *33, 35. The Court denied the motion to dismiss the restitution (unjust enrichment) claim. *See id.*, at *34.

While the Court concluded that the allegations in the Complaint-in-Intervention fell short of plausibly pleading materiality, it noted that they came "close," and that additional arguments made in briefing—but that had *not* been alleged in the complaint itself—might be enough to allege a plausible claim if they were developed further in an amended complaint. *See id.*, at *20–22. Accordingly, it granted the Government leave to amend. *Id.*, at *36.

---

[5] This claim is asserted against the City only.

[6] The Court also considered and rejected other arguments Defendants made for dismissal that are not at issue here, including that CRA/LA was an "arm of the state" and that separation of powers concerns barred the Government's claims. *See Mei Ling*, 2018 WL 3814498, at *23–27. The Court further concluded that the Government could not bring claims for conduct occurring before February 1, 2005; consequently, the FACI addresses only post-February 2005 conduct. *See id.*, at *23, 34–35.

[7] The Court concluded that the negligent misrepresentation, restitution (unjust enrichment), and payment by mistake claims were governed by federal common law. *Mei Ling*, 2018 WL 3814498, at *28–29.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

The Government filed the FACI, and the City now moves to dismiss once again. *See generally Mot.* CRA/LA originally filed its own motion to dismiss, *see* Dkt. # 220, but subsequently reached a settlement agreement with the Government that the parties are in the process of finalizing. Accordingly, the Court addresses only the City's motion in this order.

II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In assessing the adequacy of the complaint, the court must accept all pleaded facts as true and construe them in the light most favorable to the plaintiff. *See Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The court then determines whether the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To plead fraud with particularity, the pleader must state the time, place, and specific content of the false representations. *See Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007). The allegations "must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis in original). In essence, the defendant must be able to prepare an adequate answer to the allegations of fraud. Where multiple defendants allegedly engaged in fraudulent activity, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). Rather, a plaintiff must identify each defendant's role in the alleged scheme. *See id.* at 765.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

III.    Discussion[8]

The Court begins by analyzing the FCA claims before turning to the common law claims.

A.    FCA Claims

To succeed on a claim under the FCA, the Government must prove the following elements: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, to the United States for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012).

The City makes several arguments for why the FCA claims should be dismissed. First, it argues that the Government has once again failed to plead materiality. *See Mot.* 13:20–25:27. Second, it argues that the Government has failed to adequately plead scienter and falsity. *See id.* 28:17–31:16. Finally, it makes an alternative argument that the FCA claims should be dismissed in part even if some portions of them are adequately pleaded. *See id.* Because materiality is the centerpiece of both sides' arguments and was the basis upon which the FCA claims were previously dismissed, the Court begins its discussion with that element.

i.    *Materiality*

The Government alleges that the City and CRA/LA falsely represented in their applications for Entitlement Funds that they were complying with, and would continue to comply with, federal accessibility laws. The question is whether compliance with those statutes and regulations was material to HUD's decision to grant Defendants funding.

Under the FCA, "the term 'material' means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The materiality standard "is demanding." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016). As the Supreme Court recently explained,

---

[8] Collectively, the City and the Government have asked the Court to take judicial notice of more than thirty documents. *See* Dkts. # 219-4, 233. With the exception of one document specifically noted below, these items were not helpful to the Court's decision, and therefore, it does not decide whether they are proper subjects for judicial notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

> [a] misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment.  Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance.  Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Id.* at 2002–03.

In evaluating materiality in its previous order, this Court looked to various factors that *Escobar* had identified as potentially relevant: (1) whether the violated requirement was expressly identified as a condition of payment, which, though "relevant, [is] not automatically dispositive," *see id.* at 2003; (2) whether the violation went to the essence of the bargain; (3) whether the violation was minor or insubstantial; and (4) the actions the Government took in response to the violation at issue or similar violations.  *See Mei Ling*, 2018 WL 3814498, at *13. The Court will take that same approach once again.  *See United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1020–22 (9th Cir. 2018) (looking to these factors in analyzing materiality).

### a.    Condition of Payment

In its previous order, the Court concluded that the Government had adequately alleged that compliance with the various federal accessibility laws was expressly identified as a condition for receiving funds from the Entitlement Programs.  *See Mei Ling*, 2018 WL 3814498, at *13–15.  The City has not made any arguments about this factor in its current motion.[9] Accordingly, the Court adheres to its previous conclusion that compliance with accessibility laws was an express condition of payment, which is probative of materiality but not necessarily dispositive.  *See Escobar*, 136 S. Ct. at 2003.

### b.    Essence of the Bargain

"[B]efore a violation of the FCA can be found based on a certification theory, the Court must find the false statement sought to undermine a fundamental or core purpose of the statute

---

[9] In its previous order, the Court rejected Defendants' argument that compliance with accessibility laws was not an express condition of payment because compliance was only required to a degree satisfactory to the Secretary of HUD.  *See Mei Ling*, 2018 WL 3814498, at *13–15.  The City has not raised this argument in its current motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

governing the contract." *United States ex rel. Humane Soc'y of U.S. v. Hallmark Meat Packing Co.*, No. EDCV 08-00221-VAP (OPx), 2013 WL 5753784, at *15 (C.D. Cal. Apr. 30, 2013); *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016) ("*Escobar II*") ("Materiality is more likely to be found where the information goes 'to the very essence of the bargain'") (quoting *Escobar*, 136 S. Ct. at 2003 n.5).

As the Court previously explained, the CDBG, HOME, and HOPWA programs "seek to remedy an array of societal ills and do not focus their attentions and efforts only on challenges faced by people with disabilities." *Mei Ling*, 2018 WL 3814498, at *15. The statutes creating these programs bear this out. *See* 42 U.S.C. § 5301(c) (noting that the primary objective of the CDBG program is "the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income"); *Id.* § 12722 (describing the purpose of HOME as, among other things, "to expand the supply of decent, safe, sanitary, and affordable housing, with primary attention to rental housing, for very low-income and low-income Americans"); *Id.* § 12901 ("The purpose of [HOPWA] is to provide States and localities with the resources and incentives to devise long-term comprehensive strategies for meeting the housing needs of persons with acquired immunodeficiency syndrome and families of such persons."). However, while not the only purpose of the Entitlement Programs, providing housing assistance to individuals with disabilities is *an* objective of these programs. This is reflected in part by the fact that Congress specifically incorporated the protections of Section 504 of the Rehabilitation Act into the HOME and CDBG statutes. *See FACI* ¶¶ 10, 22, 374.

The Court held in its previous order that the extent to which compliance with federal accessibility requirements was a core feature of the Entitlement Programs is a question that requires more factual development and therefore cannot be adjudicated on a motion to dismiss. *See Mei Ling*, 2018 WL 3814498, at *16; *see also United States ex rel. Hussain v. CDM Smith, Inc.*, No. 14-CV-9107 (JPO), 2017 WL 4326523, at *8 (S.D.N.Y. Sept. 27, 2017). Nevertheless, the City makes three arguments for why the Court should reverse course and find at this stage that it is implausible that compliance with the accessibility laws was essential to the bargain.

The City first argues, rather puzzlingly, that there was no "bargain" because the Entitlement Funds are allocated by statutory formula and are not awarded competitively. *See Mot.* 20:22–25. However, while the funding amounts may be determined by formula, HUD retains authority to take various administrative measures in the event that a funding recipient fails to comply with the program agreements. *See FACI* ¶ 313. Therefore, there is still a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | | Date | July 15, 2019 |
|----------|---------------------|---|------|---------------|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | | |

"bargain" because in exchange for certifications of compliance, HUD agrees to release the funds without imposing further restrictions.

Second, the City points out that accessibility, accessible housing, and compliance with federal accessibility requirements in housing are not listed among the nine statutorily enumerated national objectives of the CDBG program. *See* 42 U.S.C. § 5301(c). It contends that this is strong evidence that accessibility is not a core aspect of the program. *See Mot.* 20:26–21:10. The City also made this argument in its motion to dismiss the original complaint, but the Court rejected it. *See Mei Ling*, 2018 WL 3814498, at *16. The Court adheres to its previous conclusion here. While the absence of any mention of accessibility in the statutory objectives of the CDBG program may be evidence of a lack of materiality, it is not enough to render the Government's claim completely implausible on a motion to dismiss.

Finally, the City argues that "if the Government is going to embrace the essence of a program, it has to embrace the entire program, including the remedies the City is entitled to expect." *See Mot.* 21:11–12. By this, it appears to mean that HUD cannot bring an FCA claim until it exhausts all potential administrative mechanisms for recovering the funds at issue. This logic is difficult to follow. It is not clear why the availability of administrative remedies to deal with noncompliance would be evidence that the noncompliance was immaterial. As the Government points out, the fact that administrative procedures were created to deal with noncompliance seems to lead to the opposite conclusion—that ensuring compliance *was* important. *See Opp.* 20:4–10.

In support of its argument, the City points to the Fifth Circuit's decision in *United States v. Southland Management Corp.*, 326 F.3d 669 (5th Cir. 2003) (en banc). While the court in that case found that HUD could not bring an FCA case against apartment owners it contracted with because the contract provided for other remedies, it did so on the basis that the claims submitted were not false, not that they were not material. *See id.* at 677. Further, the case appears to be an outlier. *See id.* at 678 (Jones, J., joined by five other judges, specially concurring) (describing the majority's reasoning as "unprecedented"). The City has not identified any provision of the FCA that requires an agency to exhaust administrative remedies before bringing suit. Such a requirement would be odd because, as is the case with many FCA actions, the Government did not bring this case in the first instance; instead, it exercised its statutory right to intervene after the suit was initiated by private relators.

In short, the Court is not convinced by the City's arguments. It therefore adheres to its previous conclusion that at this stage, materiality can be "inferred from the fact that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

Entitlement Programs sought (at least in part) to provide accessible housing, which Defendants allegedly did not do." *Mei Ling*, 2018 WL 3814498, at *16.

> c.  *Significance of the Violation*

In its previous order, the Court found that the more than two hundred alleged accessibility violations at the City's housing projects, along with Defendants' failure at the programmatic level to create accessible programs and services over the course of a decade and a half, were more than enough to plead that the violations were substantial. *See id*. The City has not raised any arguments on this point in their current motions, so the Court adheres to its previous conclusion.

> d.  *The Government's Actions*

The Court now turns to the factor upon which the Government's previous complaint fell short: the actions HUD took after learning about the City's noncompliance with federal accessibility laws. HUD has been aware of the City's alleged noncompliance since at least December 2011, when it conducted a review of City and CRA/LA projects funded with federal assistance and "consistently observed accessibility deficiencies throughout the various units, developments, designated accessible routes and common areas." *See FACI* ¶¶ 407–11. However, even after learning of these alleged violations, HUD has continued to provide the City with funding under the Entitlement Programs to this day. *See id.* ¶¶ 504–05.

In *Escobar*, the Supreme Court noted that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." 136 S. Ct. at 2003. In its previous order, the Court found that the fact that HUD continued to provide Defendants with funding after learning of their noncompliance with accessibility laws was "very strong evidence" that compliance with those laws was not material. *Mei Ling*, 2018 WL 3814498, at *20. It further concluded that the allegations in the original Complaint-in-Intervention were insufficient to provide the "very strong counterevidence" necessary to rebut this presumption of immateriality. *Id.*

> 1.  *Whether Consideration of This Factor is Necessary*

In the FACI, the Government has provided additional allegations in an attempt to show that compliance with accessibility laws was material to HUD's decision to issue funding under the Entitlement Programs. But before determining whether these allegations are enough to cure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

the defects in the original Complaint-in-Intervention, the Court first confronts the Government's argument that the Court need not consider HUD's actions because the allegations regarding the other three *Escobar* factors (condition of payment, essence of the bargain, significance of the violation) are sufficient on their own to plead materiality. *See Opp.* 21:6–22:18.

As support for its position, the Government points to the Sixth Circuit's decision in *United States ex rel. Prather v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822 (6th Cir. 2018), which was issued shortly before the Court ruled on the previous motions to dismiss and was not mentioned in the parties' briefing on those motions. In *Prather*, the Sixth Circuit reversed a district court decision that had drawn a negative inference from the fact that a complaint did not allege that the government had ever denied a payment because of violations analogous to the ones at issue in the case. *Id.* at 834. The Sixth Circuit held that an FCA relator "is not required to make allegations regarding past government action" because *Escobar* made clear that "none of the factors it enumerated were dispositive." *Id.* The court went on to find that the relator's allegations going to the condition of payment and essence of the bargain factors were sufficient to plausibly allege materiality. *Id.* at 836.

The Government argues that the Court should follow *Prather*'s lead and find that materiality is adequately pleaded on the basis of the other *Escobar* factors alone, without considering HUD's actions after learning about Defendants' alleged noncompliance. *See Opp.* 21:6–22:18. But *Prather* differs from this case in a key respect. There, the relator did not make any allegations about past government conduct. *See Prather*, 892 F.3d at 833 ("Prather made no allegations regarding the government's past practice with respect to claims that the government knew did not comply with [the relevant regulation].")). In contrast, the FACI here contains extensive allegations about HUD's conduct after learning about the alleged noncompliance in this case, as well as actions HUD has taken in other instances of similar noncompliance. *See FACI* ¶¶ 407–520. The Court cannot simply ignore these allegations, especially when the Supreme Court has said that they can provide "very strong evidence" of a lack of materiality at the motion to dismiss stage. *See Escobar*, 136 S. Ct. at 2003; *cf. Jackson v. Marion Cty.*, 66 F.3d 151, 153 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by alleging facts which show he has no claim, even though he was not required to allege those facts."). The Court reads *Prather* to stand only for the proposition that a complete absence of allegations regarding past government conduct should not weigh for or against a finding of materiality. *See* 892 F.3d at 834. Because the FACI in this case *does* contain allegations regarding past government conduct, *Prather*'s holding is not relevant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

Having determined that it must consider HUD's conduct in analyzing whether materiality has been adequately pleaded, the Court will first review its reasons for why the Government's previous allegations of materiality were insufficient to state a claim before examining whether the allegations that have been added to the FACI are enough to cure those defects.

2.      *The Court's Previous Order*

In its previous order, the Court began its analysis with the fact that the allegations in the complaint "[left] no doubt that the Government knew of Defendants' alleged misconduct in at least 2011 or 2012" but nevertheless "continued to provide the Entitlement Funds regardless." *Mei Ling*, 2018 WL 3814498, at *18.  Under *Escobar*, it found that this was "very strong evidence" that compliance with the accessibility laws was not material."  *Id.*  However, the Court recognized that the continued payments had to be looked at in context.  The Entitlement Programs "address a greater assortment of social ills than a lack of accessible housing," and while compliance with accessibility laws is "indisputably an important focus of these programs . . . it is not the *only* focus."  *Id.*  Accordingly, the Court observed that it would be "unreasonable to expect the Government to withhold hundreds of millions of dollars' worth of Entitlement Funds, earmarked to increase the supply of affordable housing for a wide swath of the population, because certain accessibility regulations were not followed."  *Id.*

Ultimately, the Court concluded that the fact that HUD had continued to provide Defendants with Entitlement Funds was not dispositive on its own, noting that by describing this factor as "very strong"—but not definitive—evidence of immateriality, *Escobar* left open the possibility that materiality could be demonstrated even when the government has continued to provide funding despite knowing of false certifications.  *Id.*, at *19; *see also Escobar II*, 842 F.3d at 110.  Specifically, the Court noted that materiality could be demonstrated by showing that funding had previously been withheld in similar cases of noncompliance or that there was another explanation for why the funding had not been withheld.  *Mei Ling*, 2018 WL 3814498, at *19.

The Court found, however, that the allegations in the original Complaint-in-Intervention were insufficient to counter the very strong evidence of immateriality supplied by the continued payments.  Specifically, while the Government had pointed to its efforts to secure a VCA with the City, the Court noted that the complaint did not allege that these efforts were the reason for continued funding in the face of noncompliance.  *Id.*  The Government also identified six other allegations that it contended demonstrated the seriousness of Defendants' non-compliance:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

- HUD conducted a "boots-on-the-ground" survey of thirty-one units at eleven projects.

- HUD detailed the results of its review in the January 11, 2012 Letter of Findings ("LOF"), which was directed to the City.

- HUD conducted "extensive negotiations" with the City and CRA/LA to secure voluntary remediation of accessibility issues.

- HUD successfully executed a voluntary compliance agreement with CRA/LA to remedy accessibility issues going forward.

- HUD rejected the City's application pursuant to a Notice of Funding Availability for Fiscal Year 2016 Choice Neighborhood funds designed to assist distressed federally assisted housing because the City was not in compliance with the federal accessibility laws.

- The Government chose to intervene in this case.

*Id.*, at *20. The Court noted that none of these allegations were "particularly compelling" on their own, but that collectively, they "c[a]me close to plausibly suggesting materiality." *Id.* But it concluded that additional factual allegations would be necessary to carry the claim of materiality across the line from possible to plausible. *Id.*

The Court found that the "most persuasive evidence" of materiality were the allegations that HUD had denied the City's 2016 application for Choice Neighborhood funds—a HUD program separate from the Entitlement programs directly at issue here—because it was not in compliance with federal accessibility laws. *Id.* But it concluded that it would need additional information "to determine the significance of HUD's actions and decisions," including: "How much money was withheld when HUD refused to provide the Choice Neighborhood funds? How does that amount compare to those Entitlement Funds that were disbursed around the same time? Was the reason for the denial communicated to Defendants?" *Id.* The Court noted that the answers to these and similar questions would allow the Court to address the strength of these allegations and determine whether they are sufficient to counter the evidence that the violations were not material. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

The Court also discussed other arguments from the Government's briefing that appeared "potentially meritorious" but were not adequately alleged in the Complaint-in-Intervention. *Id.*, at *21. These included the fact that there was no alternative recipient available for the Entitlement Funds; that under HUD regulations, terminating, reducing, or limiting grants would require "a number of additional lengthy procedural hurdles; and that reducing the funds available for affordable housing would have a drastic impact on Los Angeles residents." *Id.* The Court found these arguments "compelling." *Id.* It noted that other courts have emphasized "the importance of alternate considerations (and the difficulty of assessing them on a motion to dismiss)." *Id.*; *Hussain*, 2017 WL 4326523, at *8 ("As *Escobar* made clear, the misrepresentation does not have to be so grievous that the government would have completely denied payment upon discovering the truth—it is enough that the omission would have affected the government's payment decision. This holistic question can be answered fully only after discovery.") (internal citation omitted). But because allegations supporting these arguments were not made in the complaint, the Court concluded that it could not rely on them. *Mei Ling*, 2018 WL 3814498, at *22. And it found that the allegations that *were* in the complaint were insufficient to allege materiality, at least without "additional factual development." *Id.*

### 3. *Allegations Added to the FACI*

The Government has added more than a hundred paragraphs of new allegations in support of materiality to the FACI, which fall into several categories.

### A. *Denials of Discretionary Funds*

The FACI alleges that HUD refused to make some discretionary grants to the City because of its noncompliance with accessibility laws, demonstrating that compliance with these laws was material to the agency. As one example, in Fiscal Year 2014/2015, the City submitted an application to HUD for a Choice Neighborhoods Implementation Grant, worth approximately $30 million. *See FACI* ¶¶ 447–48. The Notice of Funds Availability ("NOFA") for the grant expressly provided that applicants must have resolved, to HUD's satisfaction, any outstanding finding of systemic noncompliance with Title VI, Section 504 of the Rehabilitation Act, Section 109 of the Housing and Community Development Act of 1974, or the ADA. *Id.* ¶ 449. In July 2015, HUD sent a letter to Los Angeles Mayor Eric Garcetti, informing him that the City's grant application was not being considered for funding because the City had failed to resolve its outstanding finding of noncompliance prior to the application deadline. *Id.* ¶ 451.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

The following year, HUD again denied the City's Choice Neighborhoods application for the same reason. *Id.* ¶¶ 452–54. And the FACI further alleges that in Fiscal Year 2015/16, HUD denied the City's application for up to $3 million in funds through the Lead-Based Paint Hazard Control Grant Program and the Lead Hazard Reduction Demonstration Grant Program, citing the outstanding Rehabilitation Act complaint. *Id.* ¶ 458. In short, as alleged in the FACI, HUD denied applications for up to $33 million in federal funds explicitly because of the City's failure to resolve outstanding findings of noncompliance with federal accessibility regulations.

### B.     HUD's Procedures

The FACI explains in detail the regulations HUD must follow before it can withhold Entitlement Funds, which are "formula grants," the amount of which is determined by Congressional appropriations and other demographic factors. *Id.* ¶¶ 385–87. When HUD discovers that a jurisdiction is not complying with accessibility laws, it can seek corrective action or impose sanctions, but only after giving the grantee the opportunity to demonstrate that there has been no violation and attempting to resolve any violation informally. *See id.* ¶¶ 392–93 (citing 24 C.F.R. §§ 8.56(b), (d)–(e), 103.200, 103.202, 103.204, 103.300; 28 C.F.R. § 35.171(a)(3)). The Government alleges that HUD's regulations "embody the strong policy goals" articulated in the Rehabilitation Act, ADA, and FHA of attempting "to obtain voluntary compliance at the earliest possible stage of an investigation." *Id.* ¶ 394. If initial efforts at achieving voluntary compliance are not successful, HUD sends the grantee a letter describing the findings of noncompliance, and, if the grantee requests review of these findings, it follows up with a "letter of determination" ("LOD"), which serves as HUD's formal written determination. *Id.* ¶¶ 396–97 (citing 24 C.F.R. § 856(g)–(h); 28 C.F.R § 35.171(a)). At this stage, HUD and the grantee can still resolve the findings through a VCA. *Id.* ¶ 398. However, if voluntary compliance still cannot be achieved, HUD can refer the matter to the Department of Justice for a civil rights action, terminate or reduce payments, limit the availability of payments, initiate suspension or debarment proceedings, or take any other action allowed by law. *Id.* ¶ 399.

The FACI alleges that if HUD decides to terminate, reduce, or limit current formula grants—or not award all or part of future formula grants—it must "comply with a number of additional and lengthy procedural hurdles." *Id.* ¶ 400. These hurdles are detailed at length in the FACI and the Court does not repeat all of them here, but they include providing an opportunity for a hearing before an administrative law judge, securing the approval of the Secretary of HUD, and submitting a report to the relevant committees of both houses of Congress. *See id.* ¶¶ 401–05. The Government alleges that "[t]he practical consequence of all of these regulatory requirements is that HUD cannot terminate, alter, or suspend all or part of a Formula

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

Grant, or restrict all or part of future Formula Grants, until it concludes, among other things, that compliance cannot be achieved through voluntary means." *Id.* ¶ 406.

### C.      *Efforts to Obtain Voluntary Compliance*

The allegations regarding the procedures for terminating funding segue into the next category of allegations, which describes HUD's ongoing efforts to secure voluntary compliance from the City and CRA/LA.  After a 2011 review revealed numerous instances of noncompliance, HUD issued a "letter of findings" ("LOF") to the City and CRA/LA.  *See id.* ¶¶ 407–15.  After sending the letter, in 2012, HUD began seeking an agreement with the City and CRA/LA that would require them to voluntarily remedy their accessibility violations. *Id.* ¶ 418.  In 2014, HUD entered into a VCA with CRA/LA.  *Id.*  However, negotiations with the City are still ongoing.

The FACI details the various communications sent back-and-forth between HUD and the City regarding a potential VCA.  The City initially sent HUD proposed terms in May 2014, but HUD apparently deemed them inadequate.  *See id.* ¶¶ 423–25.  In May 2016, the City sent HUD a revised draft VCA, which led to additional negotiations, and, eventually, the City and HUD executing a term sheet in June 2016.  *Id.* ¶¶ 429–34.  As alleged in the FACI, the City dragged its feet on executing the actual VCA, despite repeated urgings by HUD.  *Id.* ¶¶ 434–39.  In June 2017, HUD representatives again surveyed a sample of the City's housing developments and observed significant noncompliance with federal accessibility laws.  *Id.* ¶¶ 441–42.  HUD discussed this noncompliance with the City during a June 30, 2017 meeting and again urged the City to enter into a VCA.  *Id.* ¶ 443.  However, in an August 18, 2017 letter, the City "notified HUD that it was backing away from the commitments it made in the executed Term Sheet, though it also stated that it would continue to 'negotiate in good faith the terms of the [VCA].'" *Id.* ¶ 444.  In August 2017, HUD referred the matter to the Department of Justice ("DOJ") for potential civil enforcement of the Rehabilitation Act, ADA, and FHA.  *Id.* ¶ 461.  At the City's request, DOJ stayed its investigation in December 2017 to give the City an additional opportunity to reach a voluntary resolution with HUD.  *Id.* ¶ 465.  Since January 2018, the parties have engaged in "substantive VCA negotiations" on more than a dozen occasions, though an agreement has not yet been reached.  *Id.* ¶¶ 469, 473.

### D.      *Actions in Other Jurisdictions*

In support of the argument that accessibility violations are taken seriously, the FACI alleges that HUD recently entered into VCAs with housing authorities in Hawaii and Puerto

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

Rico to address violations similar to the ones alleged in this case. *See id.* ¶¶ 507–20. The 2016 VCA with the Puerto Rico authority—the third in a series of VCAs entered into over twelve years—specifically states that HUD is agreeing to it "as a goodwill last opportunity to bring [the Puerto Rico authority] into full compliance with its statutory obligations" under, among other things, the Rehabilitation Act, ADA, and FHA. *See id.* ¶ 516. It further states that any continued failure to meet the obligations imposed by the VCA would put the Puerto Rico authority's federal subsidies "in immediate peril" and would "trigger the initiation of all enforcement actions that correspond under HUD's statutory authorities and regulations." *Id.*

4.    *Discussion*

Having described the allegations added to the FACI, the question of whether they are sufficient to state a claim is ripe for decision. But before delving into the details of specific allegations, the Court pauses to clarify what exactly the Government must show to counter the "very strong evidence" of immateriality supplied by the fact that HUD continued to provide Defendants with Entitlement Funds even after learning of their accessibility violations.

At times, the City talks about cutting off funding (at least in part) as if it were a step HUD *must* take to demonstrate materiality in an FCA case. *See Reply* 13:13–16 ("At the end of the day, it is not the City's job to show HUD how it can use its authority to limit or reduce the Entitlement Funds in a way that still preserves the City's affordable housing efforts, while demonstrating that the City's alleged noncompliance with accessibility laws is material . . . . "). But cutting off funding is not a statutory requirement. The decision to cut off, or not cut off, funding is relevant only to the extent that it is probative of whether a specific false certification was material to the Government's decision to provide funds.

To be sure, the probative value of this factor is generally high; the Supreme Court has instructed that payment of a claim after learning that certain requirements were violated is "very strong evidence" that those requirements were not material. *See Escobar*, 136 S. Ct. at 2003. This makes sense as a matter of logic. The element of materiality is focused on the extent to which the false certification affected the Government's decision to provide funds. *See id.* at 2002 ("[M]ateriality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation.") (cleaned up). In most cases, if the Government decides to continue paying a claim even after learning that certifications accompanying that claim were false, it follows that the false certification was not that important.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

However, while a decision to continue making payments may be strong evidence of immateriality, it is not dispositive. *See Mei Ling*, 2018 WL 3814498, at *19; *Escobar II*, 842 F.3d at 110. Because continued payments are relevant only to the extent that they are probative of immateriality, the Government may still maintain an FCA claim if it can muster allegations, taken as true, that explain why continued payments are not probative of immateriality in the circumstances presented by a specific case. *See United States ex rel. Campie v. Gilead Scis. Inc.*, 862 F.3d 890, 906 (9th Cir. 2017) (explaining that the significance of the government's decision to continue paying claims can be diminished by the existence of alternative explanations for the decision). In short, as the Court previously put it, the Government can rebut the "very strong evidence" of immateriality provided by the continued payments with its own "very strong counterevidence" of materiality. *See Mei Ling*, 2018 WL 3814498, at *20.

### A.    The FACI Adequately Pleads Materiality

Though the allegations in the original Complaint-in-Intervention were insufficient to carry that burden, they came "close." *See id.*, at *21. The Court concludes that the additional detailed allegations in the FACI, accepted as true, are enough to render it plausible that compliance with federal accessibility laws was material to HUD's decision to provide funds through the Entitlement Programs, notwithstanding the fact that HUD has continued, to this day, to provide funds even after learning about the City's noncompliance.

The Court's conclusion is driven by several factors. First, it cannot be disputed that cutting off funds under the Entitlement Programs due to accessibility violations would have serious collateral consequences. *See id.*, at *19. The Government has alleged that the Entitlement Programs meet "varied, vital needs" related to an "absolute crisis in affordable housing" in Los Angeles. *FACI* ¶ 477. In other words, while providing accessible housing is one piece of the programs, it is not their only goal. Given the deleterious effect that terminating or reducing the Entitlement Funds could have on housing throughout Los Angeles, it is no surprise that HUD is reluctant to take that step when other, less harmful means of achieving compliance remain possible. This is borne out by HUD's regulations and procedures, which, in practice, render it difficult to terminate, alter, suspend, or restrict current or future grants unless the agency has concluded "that compliance cannot be achieved through voluntary means." *Id.* ¶ 406. The FACI alleges in detail that HUD has already entered into a VCA with CRA/LA and has engaged in extensive negotiations with the City in an attempt to reach agreement on a VCA that would remedy the accessibility violations. *See id.* ¶¶ 407–45. Importantly, it appears that the negotiations have taken place since August 2018, giving rise to an inference that HUD is still actively pursuing voluntary compliance. *See id.* ¶ 473.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

These allegations, taken together, provide a cogent explanation for why HUD's decision to continue providing Entitlement Funds to Defendants after learning of their accessibility violations is not fatal to establishing materiality in this case. Specifically, they render it plausible that the time for cutting off funding has simply not yet arrived. It appears that HUD is still in the midst of following its typical practice of attempting to secure voluntary compliance before reducing or cutting off funding on the Entitlement Programs. In other words, it is still offering the carrot before wielding the stick.

This proposition is supported by allegations describing HUD's actions in similar cases. In instances of noncompliance with accessibility laws in both Hawaii and Puerto Rico, HUD first sought to enter into VCAs to remedy the violations before unilaterally cutting off funding. *See id.* ¶¶ 511–16. In both of those cases, the housing authorities agreed to enter into VCAs with HUD—something the City has yet to do here. *See id.* However, when the Puerto Rico authority failed to fully remedy its violations within the time provided by previous VCAs, HUD informed the authority that it would execute the "third and final VCA as a goodwill last opportunity" to bring the authority into compliance but that failure to come into full compliance would put its federal subsidies "in immediate peril." *Id.* ¶ 516. This supports the Government's position that while HUD's primary objective is to obtain voluntary compliance, its patience is not limitless, and it may be willing to terminate or reduce funding if a jurisdiction persists in failing to comply with federal accessibility laws.

This position is further bolstered by the FACI's allegations that HUD has denied the City the opportunity to apply for funds under the Choice Neighborhoods program and two lead hazard mitigation programs, specifically citing the City's failure to resolve accessibility violations as the reason for the denials. *Id.* ¶¶ 446–58. The Court previously described these denials as the "most persuasive evidence" in favor of materiality but found that the original Complaint-in-Intervention did not provide enough information about the context of the denials to allow the Court to determine their significance. *See Mei Ling,* 2018 WL 3814498, at *20. Specifically, the Court noted that the Complaint-in-Intervention did not allege how much money was withheld, how that amount compared to the amount of Entitlement Funds disbursed around the same time, and whether the reason for the denial was communicated to Defendants. *See id.* The FACI has supplied this information. It alleges that the City could have been awarded up to $30 million per year under the Choice Neighborhoods program and up to $3 million per year under the lead hazard programs. *See FACI* ¶¶ 447, 457. This $33 million that the City was denied the opportunity to apply for in 2016 is more than double the amount of money it received that year from the HOPWA program. *See Los Angeles HOPWA Data, Declaration of Lisa*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

*Palombo*, *Ex. 26*, Dkt. # 233-26[10] (reporting that Los Angeles received $13,700,201 in HOPWA funding in 2016). Finally, HUD specifically informed the City that its applications were being denied because it had failed to resolve outstanding findings of noncompliance with federal accessibility laws. *See FACI* ¶¶ 451, 454. These allegations, which are significantly more detailed than the allegations in the Complaint-in-Intervention, show that HUD denied the City the opportunity to apply for a significant amount of federal funds explicitly because of noncompliance with accessibility laws. This supports the Government's assertion that compliance with those laws is material to the agency's funding decisions.

In sum, the Court concludes that the FACI plausibly alleges that compliance with federal accessibility laws was material to HUD's decision to grant Defendants funds through the Entitlement Funds. While an agency's decision to continue funding even after learning of violations may generally be "very strong evidence" of immateriality, *Escobar*, 136 S. Ct. at 2003, the allegations in the FACI temper the value of that evidence in this case by presenting an alternative explanation: that HUD is still trying to obtain voluntary compliance before reducing or terminating funding—a decision which could have harmful collateral consequences. That is not to say that the Government has already proven its case. Additional evidence may be uncovered through discovery that cuts for or against a finding of materiality. But at this stage, the Government need only plead non-conclusory allegations sufficient to render it plausible that the alleged false certifications in this case were material. The Court concludes that it has done so.

### B.    *The City's Counterarguments*

The Court now addresses the City's counterarguments, none of which it finds persuasive. While proceeding along several axes, they largely drive at a single thesis: because HUD has not reduced or terminated Defendants' Entitlement Funds in the more than seven years since it discovered their noncompliance with accessibility laws, it is implausible that HUD has ever considered, or will ever consider, doing so—rendering the false certifications immaterial. *See Mot.* 22:25–23:4.

The City first contends that HUD has overstated the extent to which regulatory and procedural requirements limit the agency's ability to reduce or terminate funding and that the agency has the authority to stop any further funding now, if it wants to. *See id.* 22:14–24. This

---

[10] The Court **GRANTS** the Government's unopposed motion for judicial notice of this government document. *See* Dkt. # 233.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

argument flows from what the Court believes is a false premise:  that violations cannot be material if an agency attempts to achieve voluntary compliance before exercising its regulatory authority to cut funding.  Nothing in *Escobar*, or in the FCA itself, creates such a rule, which would be akin to requiring the agency to shoot first and ask questions later or risk not being able to bring an FCA claim.  The fact that an agency may choose to pursue voluntary compliance first so that it does not *need* to cut off funding does not mean that the violation at issue is completely immaterial to its funding decisions or that funding will never be terminated or reduced if violations continue.  The Ninth Circuit has recognized as much after *Escobar* in holding that an agency's successful attempts to recoup funds through voluntary settlement agreements can be evidence of materiality even though the agency did not take unilateral action to limit, suspend, or terminate the funds at issue.  *See Rose*, 909 F.3d at 1022–23.

Having determined that attempts to achieve voluntary compliance before reducing or cutting off funding are not fatal to establishing materiality, the Court turns to the City's next argument:  that the allegations in the FACI lead to the conclusion that voluntary compliance efforts are as far as HUD is willing to go.  If HUD will never consider reducing or cutting off funding because of accessibility violations, the City argues that the alleged false certifications cannot have been material to its payment decisions, as the FCA requires.  *Mot.* 22:25–23:4.  While acknowledging that HUD has threatened to terminate or reduce its funding under the Entitlement Programs, the City contends that the fact that the agency has taken no steps toward doing so over the course of seven years while pursuing only voluntary compliance renders the threats mere "government speak"—in other words, posturing that is not probative of the agency's true intentions.  *Id.*

The City asserts that this is borne out by the allegations about HUD's actions in Hawaii and Puerto Rico because in both of those situations, HUD pursued voluntary compliance and entered into VCAs instead of terminating funding.  *See id.* 2:28–3:4 ("In short, the VCAs are further evidence supporting the City's position: across the board, where HUD has found non-compliance with federal accessibility requirements, it does not revoke payment, instead it continues funding and pursues compliance through negotiations and mutual cooperation.").  As further support of its argument that the alleged ongoing VCA negotiations between HUD and the City are merely a fig leaf, the City points out that it has reached a settlement agreement with private parties in another suit in this District, *Independent Living Center of Southern California v. City of Los Angeles*, No. CV 12-551 FMO (PJWx) (C.D. Cal. filed Jan. 13, 2012), under which it has agreed to several of the same requirements the Government has alleged that HUD would seek to include in a VCA, such as converting five percent of rental units into accessible housing.  *See City Mot.* 18:13–20:7.  According to the City, through the *Independent Living*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

settlement, "the City already, in essence, has a VCA," such that the alleged ongoing negotiations with HUD should not be viewed as legitimately aimed at achieving any benefit that the agency has not already received. *Id.* 20:6–7.

These arguments are unconvincing. The Court agrees with the City in principle that an extraordinarily long period of negotiations toward voluntary compliance, with no steps taken toward cutting funding, could indicate that voluntary compliance is all that an agency will ever seek. But under the circumstances of this case, the Court does not believe that the negotiations have gone on for so long that it is implausible that HUD will ever try to do more than negotiate. To be sure, seven years is a long time in real terms. But the length of the negotiations must be viewed in context. As alleged extensively in the FACI, HUD provides the City with hundreds of millions of dollars that the City itself has admitted are "critical" to efforts to address homelessness and other major social problems. *FACI* ¶ 503. It is understandable that HUD would want to exhaust every possible method of achieving voluntary compliance before terminating or reducing the Entitlement Funds, given the disastrous consequences that such a decision could have. Accordingly, it is at least plausible that the seven-year period of negotiations toward voluntary compliance is reflective not of HUD's unwillingness to go further but rather its legitimate desire to be absolutely certain that the City will not voluntarily comply before taking the drastic step of cutting off funding.

Importantly, the allegations in the FACI strongly suggest that HUD has not acquiesced in the City's noncompliance but is still investing significant resources in *actively* pursuing voluntary compliance that will remedy the accessibility violations. HUD and the City engaged in negotiations on at least a dozen occasions in 2018, including as late as August 2018, only four months before the FACI was filed. *See id.* ¶¶ 468–73. Under these circumstances, it is plausible that HUD's current efforts to secure voluntary compliance are not as far as the agency is willing to go.

HUD's VCAs with authorities in Hawaii and Puerto Rico do not undercut that conclusion. While HUD did not cut off funding in those cases, this can be explained by the fact that the relevant authorities agreed to VCAs that remedied HUD's concerns—in other words, they agreed to come into compliance before it became necessary to cut off funding. The series of VCAs HUD entered into with authorities in Puerto Rico supports, rather than undermines, the proposition that while the agency is willing to cooperatively work toward voluntary compliance, its patience is not unlimited and persistent noncompliance may put federal funding in immediate peril. *Id.* ¶ 516.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

The settlement agreement in the *Independent Living* case also does not say anything about whether accessibility violations are material to HUD. As the Government correctly points out, HUD is not a party to this agreement and has no authority to enforce it, so it makes little sense to say that HUD's continued VCA negotiations with the City cannot provide the agency with any additional benefit. *See Opp.* 45:14–16. Further, the fact that the City has accepted the *Independent Living* agreement but has refused to agree to the terms of HUD's proposed VCA belies the City's argument that the two agreements would be essentially identical.

As explained above, the Court finds it especially probative of materiality that HUD has twice denied the City the opportunity to apply for approximately $33 million per year in funding under the Choice Neighborhoods programs and two lead hazard programs, citing the accessibility violations. *See FACI* ¶¶ 447, 457. The City attacks this conclusion on three grounds.

First, the City argues that these denials have little value because HUD only denied it *the opportunity to apply* for $30 million per year in Choice Neighborhoods funds—which are awarded in a competitive process—rather than withholding funds that the City was otherwise sure to have received. *See Reply* 9:4–19 ("It was not a denial of funds, rather it was a rejection of an application to compete for the [funds]."). But this distinction makes little difference. The bottom line is that HUD affirmatively blocked the City from even entering the process through which it could have received funding. From the City's perspective, the end result is the same: its application seeking funding was denied because of its accessibility violations.

Next, the City argues that the Choice Neighborhoods funds would have gone to a project run by the Housing Authority of the City of Los Angeles ("HACLA"), a co-applicant with the City, so the denial should not be viewed as a denial of funds *to the City*. *See Mot.* 17:3–19. But the FACI alleges that regardless of who would ultimately have received the funds, the application was denied because of *the City's* outstanding accessibility violations. *See FACI* ¶ 451. Accordingly, the denial supports the Government's position that HUD viewed *the City's* accessibility violations as something worth denying funding over, a factor that is probative of materiality.

The City also argues that the funds HUD denied represent only a fraction—0.5 percent—of the total Entitlement Funding provided. *See Reply* 1:12–19. But it reaches this calculation by ignoring the $30 million in Choice Neighborhoods funds and counting only the $3 million in lead hazard funds. *See id.* As explained in the preceding paragraphs, the Court concludes that it is proper to consider the Choice Neighborhoods funds, and the City does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

argue that *these funds* were insubstantial. Accordingly, their argument based on proportionality is inapposite.

In sum, the Court concludes that the Government has supplied a plausible explanation for why compliance with accessibility requirements was material to HUD, notwithstanding the fact that HUD continued to make payments to the City even after learning of the violations. Because the other *Escobar* factors also weigh in favor of materiality, the Court concludes that the materiality element of the FCA claim has been adequately pleaded. The Court now turns to the City's other arguments for dismissal of the FCA claims.

ii.    *Falsity and Scienter*

The City argues that the FACI fails to adequately allege the falsity and scienter elements of the FCA claims. *See Mot.* 26:10–31:16. The Court previously concluded that the Government had adequately pleaded these elements, *see Mei Ling*, 2018 WL 3814498, at *6–12, and nothing in the City's current motion has persuaded it to depart from that conclusion.

With regard to falsity, the City argues that the FACI does not allege the false claims with the particularity required by Rule 9(b) because it does not identify "the specific certifications made, the individuals who made them, when they were made, how they were made, and the specific language that was in each certification." *See Mot.* 27:18–24. The Court has previously rejected this argument, and it does so once again. As noted in its previous order, the FACI "identifies specific programs to which the City submitted allegedly false claims, specific applications that were submitted, specific requests for funding, and specific failures of the City to implement the requirements of federal accessibility laws." *Mei Ling*, 2018 WL 3814498, at *11. Because "[t]he individuals who signed the claims and the statements can be divined by the City," Rule 9(b) does not require the Government to include allegations on these points in its complaint.[11] *Id.* (cleaned up). Accordingly, falsity has been adequately alleged.

As for scienter, the City once again argues that the Government should not be able to rely on a theory of "collective scienter." *See Mot.* 30:5–31:16. But as the Court previously explained, other courts have held that allegations of collective scienter are sufficient to survive the pleading stage. *See Mei Ling*, 2018 WL 3184498, at *10–11. Accordingly, the allegations in the FACI are sufficient to establish scienter.

---

[11] While these passages are taken from the Court's discussion of scienter in its previous order, they are equally applicable to the City's current falsity argument.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

    *iii.    Arguments for Partial Dismissal*

    Finally, the City asserts three "grounds for partial dismissal": (1) that the allegations in the FACI are not sufficient to allow the Government to attempt to recoup administrative costs expended in connection with administering the Entitlement Funds; (2) that the FACI fails to adequately plead that the City did not "affirmatively further fair housing"; and (3) that the allegations about the City's failure to appoint an ADA coordinator and conduct self-evaluations are insufficient because they are "demonstrably false." *See Mot.* 36:12– 20.

    *a.    Administrative Costs*

    The City argues that because the relevant regulations allow for Entitlement Funds to be used for administrative costs, there was nothing false or fraudulent about it using the funds for these purposes. *See id.* 36:21–37:7. However, the Government points out that HUD regulations prohibit HUD funds from being used to administer a program that discriminates on the basis of disability. *See Opp.* 58:13–20; *FACI* ¶ 104; 24 C.F.R. § 8.4(b)(4). The City has not responded to this persuasive argument in its reply, and the Court concludes that it is enough to support the Government's claims based on administrative expenses at this stage.

    *b.    The City's Alleged Failure to "Affirmatively Further Fair Housing"*

    The FACI alleges that the City falsely certified that it would "affirmatively further fair housing," which, under the relevant regulation, required the City to "[1] conduct an analysis of impediments to fair housing choice within the area, [2] take appropriate action to overcome the effects of any impediments identified through that analysis, and [3] maintain records reflecting the analysis and actions in this regard." *FACI* ¶¶ 288–89 (quoting 24 C.F.R. § 91.225(a)(1)). The FACI then goes on to allege several things the City could have done, but did not do, to overcome impediments to fair housing, such as ensuring that owners or developers followed federal accessibility laws or sanctioning noncompliant owners or developers. *Id.* ¶¶ 291–99.

    The City argues that the Government has not alleged that HUD *required* that these specific actions be taken to satisfy the regulatory requirement or that there is even a standard for what constitutes "appropriate actions" under the regulation. *See Mot.* 37:8–38:2. But the Court agrees with the Government that the myriad alleged accessibility violations can speak for themselves at the pleading stage. *See Opp.* 61:3–27. Given the allegedly widespread nature of the violations, it is at least plausible that the City did not take appropriate actions to overcome impediments to fair housing choice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

c.     *Appointment of an ADA Coordinator and Self-Evaluations*

Finally, the City disputes the truth of the FACI's allegations that the City did not appoint a Section 504/ADA coordinator before 2012 and did not conduct a self-evaluation of the program accessibility of its housing programs, as required by law. *See Mot.* 38:3–39:3; *FACI* ¶¶ 269–71. In support, it relies on various documents that it contends are subject to judicial notice. *See Mot.* 38:3–39:3. Regardless of whether these documents are appropriate subjects for judicial notice, the Court agrees with the Government that it is inappropriate to consider them on a motion to dismiss for the purpose of undercutting the truth of the FACI's allegations. *See Opp.* 60:16–24. While these documents may be relevant to the issues in question, the Court cannot be sure that they constitute the entire universe of relevant evidence. A holistic inquiry into the truth or falsity of the allegations must await a motion for summary judgment when both sides will have the opportunity to put all of their evidence before the Court. *See Mei Ling*, 2018 WL 3814498, at *9 (reaching the same conclusion in a similar context).

\*     \*     \*

For the foregoing reasons, the Court concludes that the Government has adequately pleaded all elements of its FCA claims. Accordingly, the City's motion to dismiss the FCA claims is **DENIED**.

B.     Common Law Claims

The City argues that each of the common law claims for negligent misrepresentation, restitution (unjust enrichment), and payment by mistake should be dismissed because the Government has not adequately pleaded materiality. *See Mot.* 25: 21–26:7. As the Court previously held—and the City does not now contest—the materiality standard for these claims is the same as for the FCA claims. *See Mei Ling*, 2018 WL 3814498, at *32, 35. Because the FACI adequately pleads materiality with regard to the FCA claims, it does so with regard to the common law claims as well.

Next, the City repeats its argument that the Government cannot allege claims for unjust enrichment and payment by mistake because there was a contract between HUD and the City in the form of funding agreements or grant agreements. *See Mot.* 35:14–36:10. However, as the Court previously held, the Complaint-in-Intervention, and now the FACI, characterize these funding agreements as "claims for payment or approval," not contracts, and these allegations must be taken as true. *See Mei Ling*, 2018 WL 3814498, at *33–34. And even if they were contracts, "restitution may be awarded in lieu of breach of contract damages when the parties

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |

had an express agreement, but it was *procured by fraud*." *Id.*, at \*34 (quoting *Glenn v. Hyundai Motor Am.*, No. SACV 15-2052 DOC (KESx), 2017 WL 7505566, at \*5 (C.D. Cal. Nov. 21, 2016)). Accordingly, the purported existence of contracts between HUD and the City does not preclude the Government from bringing unjust enrichment or payment by mistake claims at this stage.

Finally, the City argues that it cannot be liable for unjust enrichment because it did not retain any benefit from the Entitlement Funds; instead, it passed the funds along to developers who used them to construct affordable housing. *See Mot.* 33:1–35:10. It is true that retention of a benefit is an element of common law unjust enrichment claims. *See United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 205 (D.D.C. 2017). But as the Government points out, money is fungible, so while the City may have passed along the Entitlement Funds to developers, this likely freed up City money for "other City priorities"—providing the City with a benefit that it retained. *See Opp.* 67:24–27. The City counters that "HUD funds only support HUD programs," and so the City did not save any money because had it not received any Entitlement Funds, the specific HUD programs they went to would not exist in Los Angeles in the first place. *See Reply* 16:9–17:11. However, while perhaps not alleged as explicitly as it could have been, the allegations in the FACI give rise to a plausible inference that the City would have devoted its own funds to the *purposes* served by the HUD programs. For example, the City told HUD that the Entitlement Funds were "a critical component" of its efforts to combat homelessness and other major challenges. *See FACI* ¶ 503. Given the undeniable importance of these efforts, it is at least plausible that absent the HUD funds, the City would have spent more of its *own* money on them. Accordingly, the FACI adequately alleges that the City retained a benefit and therefore states a claim for unjust enrichment.

\*       \*       \*

For the foregoing reasons, the Court concludes that the Government has adequately pleaded its common law claims. Therefore, the motion to dismiss these claims is **DENIED**.

VI.   <u>Conclusion</u>

For the reasons stated above, the Court concludes that the Government has adequately pleaded both its FCA and common law claims. Accordingly, the City's motion to dismiss is **DENIED**.

**IT IS SO ORDERED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-974 PSG (JCx) | Date | July 15, 2019 |
|---|---|---|---|
| Title | United States ex rel. Mei Ling, et al. v. City of Los Angeles, et al. | | |