1  Michael N. Feuer (SBN 111529)
   *City Attorney*
2  James P. Clark (SBN 64780)
   *Chief Deputy City Attorney*
3  Teresa A. Lujan (SBN 114092)
   *Deputy City Attorney*
4  Office Of Los Angeles City Attorney
   City Hall East, 200 N. Main Street
5  Los Angeles, CA 90012-4130
   Telephone:  213-978-8100
6  Facsimile:   213-978-8312
     mike.feuer@lacity.org
7     james.p.clark@lacity.org
     teresa.lujan@lacity.org
8
   John C. Hansberry (*pro hac vice*)
9  Jana V. Walshak (*pro hac vice*)
   FOX ROTHSCHILD LLP
10 500 Grant Street, Suite 900
   Pittsburgh, PA 15219
11 Telephone:  412-394-5539
   Facsimile:   412-391-6984
12    jhansberry@foxrothschild.com
     jvolantewalshak@foxrothschild.com
13
   Amanda Murray (SBN 305018)
14 FOX ROTHSCHILD LLP
   10250 Constellation Blvd., Suite 900
15 Los Angeles, CA 90067
   Telephone:  310-598-4150
16 Facsimile:   310-556-9828
     amurray@foxrothschild.com
17
18 Attorneys for Defendant CITY OF LOS ANGELES

19              **UNITED STATES DISTRICT COURT**
          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
20

| | |
|---|---|
| 21 UNITED STATES OF AMERICA *ex rel.* MEI LING and FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY, | Case No.:  CV-11-00974 PSG-JC |
| 22 | **CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND MOTION TO STAY** |
| 23        Plaintiffs, | |
| 24        v. | DATE:          October 7, 2019 |
| 25 CITY OF LOS ANGELES, a municipal corporation, and CRA/LA, a Designated | TIME:          1:30 PM |
| 26 Local Authority, a public entity, | JUDGE:       Hon. Philip S. Gutierrez |
| | COURTROOM: 6A |
| 27        Defendants. | |

28

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................3

I.      Interlocutory Appeal ......................................................................................3

      A.      Controlling Question of Law.................................................................4

              1.      Question 1 ....................................................................4

              2.      Question 2 ....................................................................5

      B.      Substantial Grounds for Difference of Opinion ..................................6

              1.      Question 1 ....................................................................6

              2.      Question 2 ....................................................................7

      C.      Materially Advance ...............................................................................8

II.     Motion for Stay.............................................................................................9

III.    Potential Amendments To The Pleading Are Not Grounds For Denying Certification ...............................................................................................11

CONCLUSION .....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andrews v. Plains All Am. Pipeline, L.P.*,
   No. CV154113PSGJEMX, 2017 WL 9831401 (C.D. Cal. Nov. 7,
   2017) ...................................................................................................... 5

*Association of Irritated Residents v. Fred Schakel Dairy*,
   634 F.Supp.2d 1081 (E.D. Cal. 2008) .................................................. 11

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir., 2010) ................................................................ 6

*United States ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh*,
   No. 2:12-CV-1600, 2016 WL 1255294 (W.D. Pa. Mar. 31, 2016) .......... 8

*United States ex rel Freedom Unlimited v. City of Pittsburgh,
   Pennsylvania*,
   728 F. App'x 101 (3d Cir. 2018) ........................................................ 7, 8

*Jaco v. WinCo Holdings, Inc.*,
   No. 118CV00301DADEPG, 2019 WL 2615739 (E.D. Cal. June 26,
   2019) ...................................................................................................... 4

*United States ex rel Mei Ling v. City of Los Angeles*,
   No. CV 11-974 PSG, 2018 WL 3814498 (C.D. Cal. July 25, 2018) ........ 4

*Middlesex Cty. Ret. Sys. v. Semtech Corp.*,
   No. CV077114CASFMOX, 2010 WL 11523599 (C.D. Cal. May 17,
   2010) ...................................................................................................... 8

*Reese v. BP Exploration (Alaska) Inc.*,
   643 F.3d 681 (9th Cir. 2011) .............................................. 4, 5, 6, 7, 8, 12

*Small v. GE Capital*,
   No. EDCV 15-2479 ............................................................................... 11

*Steering Comm. v. United States*,
   6 F.3d 572 (9th Cir. 1993) ..................................................................... 4

*In re Trump*,
   928 F.3d 360 (4th Cir. 2019) ................................................................. 7

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
    136 S.Ct. 1989 (2016) ................................................................7, 8, 10

**Statutes**

28 U.S.C. §1292(b) ..............................................................................1, 9


**Other Authorities**

HUD's FHA Lender Annual Certification Statements May Significantly
    Reduce FHA Lender Risk of False Claims Act Liability *available at*,
    www.lexology.com/library/detail.aspx?g=50b8ff27-6906-4c8a-9c45-
    be402f80db95 ............................................................................12

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

In its Opposition Brief, the Government contends that the two questions on which the City of Los Angeles ("City") seeks certification for interlocutory appeal fail to meet the standards governing such appeals under 28 U.S.C. §1292(b).  The reasons why the Government is wrong are set forth below.

As a preliminary matter, however, the Court, in making its determination, should be aware of two recent developments that bring the importance of appellate guidance here into still stronger focus.  First – as the Court is aware – the City and the United States Department of Housing and Urban Development ("HUD") have now entered into a Voluntary Compliance Agreement ("VCA"), addressing the same alleged deficiencies underlying the Government's First Amended Complaint -in -Intervention ("FACI"). The City has contended – and still contends here – that the VCA process is the proper way to resolve alleged noncompliance by a municipality under HUD entitlement grant agreements, as required by the terms of those grants and HUD's regulations, not by way of an action under the False Claims Act ("FCA"), with its attendant threat of treble damages.  Second, as a result of the City's execution of the VCA, the Civil Rights Division of the Department of Justice has notified the City that it has terminated its investigation of the City's alleged noncompliance under the grants in issue, based upon the same conduct the Government alleges in its FACI.  The City respectfully submits that these developments strengthen even further the justification for City's request for certification.

The City has presented two questions in its Motion that it respectfully contends meet the standards required for an interlocutory appeal. The first would scrutinize whether the Government is permitted to pursue FCA claims where it pleads both actual knowledge of the alleged non-compliance, and full and continuous funding to the City under the Entitlement Programs. The second question is whether an FCA claim lies against a municipality for an alleged breach of the terms of the relevant Entitlement

**1**

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

Grants.  To be clear, the Ninth Circuit has not addressed the first question post-*Escobar*, and there is no reported decision post-*Escobar*—other than this Court's Opinion—resolving the second question at all.   Moreover, reasonable jurists might disagree as to whether the facts pleaded in the FACI sufficiently set forth the claims it attempts to allege.

To be clear, the City does not seek reconsideration of this Court's ruling, nor does it argue the merits of the appeal it seeks.  Rather, the City here raises two questions of national importance for appellate review.  The reality is that HUD and the City followed prescribed guidelines to resolve an issue of alleged non-compliance, all while HUD funding continued.  If the Government is permitted to simultaneously: (1) demand all of that same funding back, with the threat of treble damages under an FCA claim; and also (2) demand a separate resolution under HUD's regulations, then municipalities would have no incentive to participate in the grant programs in the first place.  The City would have better positioned itself to provide housing for its low-income and disabled residents by walking away from the HUD programs altogether, thus avoiding the potential catastrophic blow to its affordable and accessible housing initiatives posed by an FCA action.

The wide and sweeping impact of this Court's decision cannot be overstated: it reverberates with cities and counties across the country, that routinely face issues of alleged non-compliance with the terms of a HUD Entitlement Grant.  Essentially, this decision means that recipients can no longer rely on HUD's conduct or regulations.  Recipients must now decide whether to accept Entitlement Funds, at the risk of an FCA lawsuit or decline them with the resultant harm to the low income and disabled residents.   In the view of the City, questions involving massive funding streams, national Entitlement Programs, and ultimately the protection of vulnerable members of society, are worthy of appellate review.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ARGUMENT

## I.    Interlocutory Appeal

At the outset, two persistent misstatements in the Government's Opposition need to be corrected.  First, the Government quarrels with the City's formulation of Question 1 in particular, arguing that it misstates the allegations of the FACI, because HUD did not provide the City with continuous full funding, and the United States did not allege actual knowledge.  Dkt. No. 280 ("Govt.'s Opp.") at 2.[1]  To be clear, this case relates to Entitlement Programs, and Entitlement Programs only.  There is no dispute that HUD fully funded the City's Entitlement Programs throughout the entire claims period, without interruption.  The Government's argument is disingenuous because it relies on *discretionary* funding programs, not the Entitlement Programs at issue here.  HUD's discretionary funding programs are not subject to the mandatory funding requirements that apply to Entitlement Programs, which present the unique materiality questions raised in this case.  The Government's attempt to equate discretionary funds with Entitlement Funds, and argue that denying the City the opportunity to compete for discretionary funds constitutes a withholding of Entitlement Funds should be rejected.

This Court did not interpret the FACI as alleging that HUD withheld the Entitlement Funds after learning of the alleged noncompliance.  The Court held just the opposite.  *See* Dkt. No. 255 ("*Mei Ling II*") at 11 ("However, even after learning of these alleged violations, HUD has continued to provide the City with funding under the Entitlement Programs to this day.").  HUD no doubt provided continuous full funding of the Entitlement Programs, and the FACI does not allege otherwise.

---

[1] While recognizing that relator Fair Housing Council (Dkt. No. 278) and co-defendant CRA/LA (Dkt. No. 279) filed briefs in response to the City's Motions, the City principally replies in opposition to the Government's Brief.  The City does not oppose CRA/LA's request to limit a stay to "the portion of the case relating to the City and the United States."  Dkt. No. 279 at 3.  The City further notes that CRA/LA incorrectly characterizes the City's Motion for Interlocutory Appeal as implicating only the FCA claims.  *See Id.*  The City's Motion implicates all but the unjust enrichment claim in the FACI.  The Fair Housing Council raises a similar issue, and the City will address the Fair Housing Council's response in turn with the Government's arguments.

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

Second, the Government continues to argue, contrary to the Court's clear holdings, that it did not plead actual knowledge. This argument is simply not credible in light of the clear record of HUD's knowledge, and has been rejected by the Court twice. *See Mei Ling II* at 11; *United States ex rel Mei Ling v. City of Los Angeles*, No. CV 11-974 PSG (JCx), 2018 WL 3814498, *18 (C.D. Cal. July 25, 2018) ("*Mei Ling I*). The Government's FACI pleads actual knowledge of noncompliance, plain and simple.

With these two clearly pleaded and critical facts corrected - actual knowledge and continuous funding in full — the City turns to the two questions, as to which it seeks certification.

## A.   Controlling Question of Law

The touchstone of the controlling question of law prong is whether the resolution of the interlocutory appeal could materially affect the outcome of the litigation. If the City's interlocutory appeal is successful, all but one of the Government's claims would be dismissed. Accordingly, the controlling question of law prong is met. In its Opposition, the Government largely misconstrues and ignores this standard.

### 1.   Question 1

The Government makes no argument that resolution of Question 1 could not materially affect the outcome of the litigation, which is the ultimate determination for this prong. Rather, it argues that Question 1 cannot be resolved without delving into particular facts, and that the City merely disagrees with how the Court applied the "undisputed" materiality standard to the FACI. Govt.'s Opp. at 7 and 8.[2] First, there

---

[2] The Ninth Circuit has not addressed whether an issue for an interlocutory appeal must be a pure question of law, *see Jaco v. WinCo Holdings, Inc.*, No. 118CV00301DADEPG, 2019 WL 2615739, at *2 (E.D. Cal. June 26, 2019), but has permitted an interlocutory appeal when at least one pure legal question is present. *Id.* at *2 n.2 (citing *Steering Comm. v. United States*, 6 F.3d 572, 575–76 (9th Cir. 1993)). Indeed, if, as the Government argues, only pure questions of law could be certified, it would contradict the Ninth Circuit's rule for consideration of interlocutory appeals: "we 'may address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court.'" *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).

4

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

are no disputed or genuine issues of fact at play.  *Cf.* Govt.'s Opp. at 7.  The FACI is a complaint with allegations that must be accepted as true.

Second, the City's Question 1 focuses on the materiality standard itself, which, contrary to the Government's arguments, is not "undisputed" or "settled law."  *See* Dkt. No. 270-1 ("City's Opening Br.") at 5-9.  The City is not seeking reconsideration – there is no argument with the Court's application of an undisputed standard or request for an inquiry into disputed factual issues.  And again, contrary to the Government's argument, an interlocutory appeal can involve the application of a legal standard to particular allegations in a complaint.  This is precisely what the City seeks here.  In *Reese*, the Ninth Circuit considered an interlocutory appeal of a securities fraud case concerning whether the plaintiff adequately pled misrepresentation.  *Reese*, 643 F.3d at 683-684. In reaching its conclusions, the Ninth Circuit analyzed the standard for misrepresentation as it applied to the particular allegations of the complaint.  *Id.* at 690-694.

Instead of arguing why resolution of Question 1 could not materially affect the outcome of the litigation, the Government merely quibbles over its phrasing (addressed a pp. 3-4, *supra*).  Simply put, resolution of Question 1 in favor of the City would result in dismissal of all but one of the claims in the FACI against the City.  That is the principal inquiry under the first prong, and the City has met it.

### 2.     Question 2

As to Question 2, the Government argues that the "controlling question of law" prong is not met because, assuming a successful appeal, the City would not be dismissed, and discovery would proceed along largely the same course.  Govt.'s Opp. at 8.  This argument misstates the test: for this prong, the City need not show that an interlocutory appeal would result in an entire dismissal; rather, where an interlocutory appeal may result in dismissal of some claims against a party, this prong has been satisfied.  *See Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX,

2017 WL 9831401, at *3 (C.D. Cal. Nov. 7, 2017) (rejecting plaintiffs' argument that an issue is not controlling because litigation would proceed regardless of its resolution); *see also Reese*, 643 F.3d at 688.  An interlocutory appeal, if successful, would result in dismissal of all but one of the Government's claims, and that is sufficient to meet the first prong.

## B.    Substantial Grounds for Difference of Opinion

A substantial ground for difference of opinion exists because the City's Questions are novel issues, and because they raise questions upon which reasonable jurists might disagree.

### 1.    Question 1

Under the Substantial Grounds prong, the Government, citing to *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir., 2010), argues that a lack of precedent, in and of itself, does not satisfy the second prong, and further argues that the Circuits are not in disagreement.  Govt.'s Opp. at 9-10.  However, this is not the approach taken by the Ninth Circuit in the more recent *Reese* decision.  In *Reese*, the Ninth Circuit clearly rejected the Government's lack of precedent and lack of a Circuit split argument:

> [c]ourts traditionally will find that a substantial ground for difference of opinion exists where novel and difficult questions of first impression are presented.
>
> …
>
> Our interlocutory appellate jurisdiction does not turn on a prior court's having reached a conclusion adverse to that from which appellants seek relief.  A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.

*Reese*, 643 F.3d at 688 (internal quotations omitted).

**6**

The Government also argues that the cases cited by the City are distinguishable by contending that its FACI is different than complaints in other cases. *See* Govt.'s Opp. at 11-13. In doing so, the Government essentially argues that the cases cited by the City do not reflect substantial grounds for difference of opinion because the complaints in those other cases were inadequate, whereas the Government's FACI is not. This conclusory argument is not the proper inquiry for determining whether an interlocutory appeal should be granted; rather the inquiry is whether "fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688.

The City's argument under this second prong is twofold: (1) the Ninth Circuit has not addressed the impact of *Escobar* on a complaint that alleges actual knowledge and continued full payment—*i.e.* this is a novel issue— and (2) the few decisions outside the Ninth Circuit that have addressed allegations of actual knowledge and continued payment vary in their approaches—*i.e.* reasonable jurists "might disagree" on the issue. *See* City's Opening Br. at 5-9. This is sufficient to meet the the second prong.

### 2. Question 2

For Question 2, the Government argues that the Court's "unequivocal reject[ion] of the City's arguments as to the applicability of the FCA to the Entitlement Programs means there are no substantial grounds for difference of opinion. But whether or not this Court's opinion is correct is not the inquiry. *See e.g. In re Trump*, 928 F.3d 360, 369 (4th Cir. 2019) (stating that a court may not rely on its belief that its opinion was unquestionably correct to conclude that no substantial ground for difference of opinion existed). The Government might be content with the Court's holding, but it cannot escape the fact that FCA claims involving Entitlement Programs are exceedingly rare, and - except for this Court's Opinion - non-existent in a post-*Escobar* world.[3]

---

[3] The Government misrepresents the Third Circuit's decision in *United States ex rel Freedom Unlimited v. City of Pittsburgh, Pennsylvania*, 728 F. App'x 101 (3d Cir. 2018). The issue of whether the FCA could apply to Entitlement Programs was not at issue before the Third Circuit. To the contrary, the Third Circuit did not apply a materiality standard to the relators' complaint at all, but returned that issue to the district court. *See Id.* The City accurately reported that this Court's Opinion is the only post-

What the City must show for the second prong is that there is at least a novel legal issue "on which fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688. The City has done that: application of the FCA to Entitlement Programs has not been litigated in the Ninth Circuit, so the issue is novel. And fair-minded jurists "might reach contradictory conclusions" as demonstrated by the Western District of Pennsylvania's decision. *United States ex rel. Freedom Unlimited, Inc. v. City of Pittsburgh*, No. 2:12-CV-1600, 2016 WL 1255294, at *30 (W.D. Pa. Mar. 31, 2016). To be clear, the City is not arguing that the pre- *Escobar* decision in *Pittsburgh* is binding precedent. Rather, the City merely points out how, in a pre-*Escobar* world, a court came to a different conclusion than the Court did here. Additionally, outside of this Court's Opinion, there is no precedent post-*Escobar*.

### C.     Materially Advance

The City seeks an interlocutory appeal on questions that may lead to the dismissal of all but one of the Government's claims. Without doubt, this would materially advance the litigation. The Government altogether misconstrues the "materially advance" prong by arguing that resolution of the City's questions would not remove the City as a party. Govt.'s Opp. at 16. While it is true that the City does not seek an interlocutory appeal that might dismiss the entire case, the City is not required to do so in order to meet the "materially advance" prong. *See Reese*, 643 F.3d at 688 ("neither § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation"). Indeed, discovery orders are a frequent subject of interlocutory appeals, and they have no dispositive effect on the litigation. *See e.g. Middlesex Cty. Ret. Sys. v. Semtech Corp.*, No. CV077114CASFMOX, 2010 WL 11523599, at *2-3 (C.D. Cal. May 17, 2010) (granting motion to certify for interlocutory appeal of an order on a motion to compel). The Government's arguments on this point are without merit.

---

*Escobar* Opinion applying the FCA and the materiality standard to HUD Entitlement Programs.

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND MOTION FOR STAY

The Government further contends that an interlocutory appeal would not save the courts and litigants trouble or expense because the sole surviving unjust enrichment claim would involve the "same underlying conduct" as the Government's other claims. Even if this dubious proposition is accurate, the Government would have this Court ignore that the relief sought under the FCA claims, such as treble damages, and the appropriate defenses, are vastly different. The Government provides no legal authority limiting interlocutory appeals to situations where any remaining claims do not involve the same underlying conduct. The Government's argument here is just another way of presenting its incorrect argument that interlocutory appeals must involve the entire case, and every claim at issue. Section 1292(b) does not contain such a requirement.

## II.   Motion for Stay

The City requests a stay to address serious legal issues, and questions that will have a ripple effect felt by entitlement jurisdictions across the country, potentially undercutting municipalities' efforts to ameliorate urban slums, homelessness, and blight, and to provide affordable housing.

The Government simply dismisses or ignores the seriousness of these legal issues, and the effect that the threat of FCA claims will have on entitlement jurisdictions across the country. On the one hand, the Government argues the FCA itself addresses these concerns by way of its four elements. Govt.'s Opp. at 20. On the other, it inexplicably states that entitlement jurisdictions "already know not every instance of regulatory noncompliance will lead to FCA liability." *Id.* This is a stunning proposition. How is a municipality to know which incidents of non-compliance will be addressed by HUD administratively, and which will result in a municipality facing an FCA action in Federal Court with the daunting threat of treble damages? Certainly not by looking at payment decisions, the regulations, or even HUD's conduct.

The Government's dismissive argument ignores the realities of FCA litigation: the simple threat of FCA litigation is substantial enough to shake the entire Entitlement

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY

Grant system, and the willingness of recipients to take grant funds. Cities and counties cannot accept cooperation as cooperation – they must also decipher or predict whether the very same conduct underlying that cooperation will allow the Government to later claim it was defrauded. That the Government may ultimately not be able to prove its case after years of litigation is small solace. No reasonable litigant can view an FCA complaint without trepidation, even knowing that it can eventually defeat the claims on the merits. The Government's efforts to downplay the seriousness of the issues presented in this case by essentially saying cities should not fear FCA litigation because FCA claims are difficult to prove is nonsensical. The prospect of spending millions of taxpayer dollars defending that litigation, and the potentially catastrophic specter of treble damages, are more than enough to deter municipalities from participating in the Entitlement Programs.

Further, the City's likelihood of success on appeal is also strong because, under *Escobar*, the payment decision is the touchstone for materiality, and the Government's continued payment with actual knowledge of violations is "very strong evidence" of immateriality. *Universal Health Services, Inc. v. United States ex rel. Escobar*, 136 S.Ct. 1989, 2003-04 (2016). Courts across the country apply different approaches when faced with this type of very strong evidence, and the strongly-worded emphasis on materiality from the Supreme Court, and its relation to payment decisions, makes it likely that the Ninth Circuit may assess materiality in a different fashion than did this Court.[4]

If this case is not stayed pending appeal, the litigation would proceed for years on all counts, including the potentially irrelevant FCA and common law claims, and would ultimately result in appeals, in any event. The expense associated with litigating

---

[4] The Government refers to *Westchester* to argue that the City "was already on notice" that using federal funds to discriminate against certain classes of individuals can result in FCA liability. Govt.'s Opp. at 20. This reference fails because the noncompliance at issue in *Westchester* is materially different than the noncompliance alleged here, there was no finding of liability, and, obviously, *Westchester* pre-dates *Escobar*.

claims that could be dismissed on appeal is exactly the type of irreparable injury that justifies a stay. *See, e.g., Small v. GE Capital*, No. EDCV 15-2479 JGM (DTBx), 2016 WL 4502460, *3 (C.D. Cal. June 9, 2016); *Association of Irritated Residents v. Fred Schakel Dairy*, 634 F.Supp.2d 1081, 1094 (E.D. Cal. 2008). Certainly, eliminating the FCA claims, and most of the common law claims, would significantly reduce the scope and expense of this litigation.

Finally, the Government argues that federal taxpayers bear the costs of fraud against the U.S. Treasury, and so the Government will be injured by a stay, which is merely to say, if the Government is ultimately successful, there would be a delay in monetary recovery being paid to the Federal Treasury. A recovery that is defined by this type of monetary compensation is not a substantial injury. To the extent the court considers monetary considerations, if a stay is in place, neither the Government nor the City will be expending taxpayer resources litigating a case which might be massively changed by an interlocutory appeal. Additionally, the City's goal here is primarily about protecting the funds that it expends to assist its low-income and disabled residents. While the Government argues for the public fisc, it threatens financial ruin for the City, and would force the City to divert taxpayer-funded resources to defend a case which, ultimately, may prove to lack legal foundation. A stay, therefore, is in the public's interest, and the balance of hardships weighs in favor of the City and protection of its public fisc.

## III. Potential Amendments To The Pleading Are Not Grounds For Denying Certification

The Government argues that an interlocutory appeal will not materially advance this case because the Government could amend its complaint to add new materiality allegations. Govt.'s Opp. at 16-17. This argument is echoed in the Fair Housing Council's Opposition (Dkt. No. 278) which specifically references the VCA recently signed by the City and HUD. The Ninth Circuit has held, however, that the possibility

of an amended complaint is not a basis to deny an interlocutory appeal. *See Reese*, 643 F.3d at 689 (recognizing that the plaintiff filed an amended complaint asserting new claims against the defendant, yet still considering the interlocutory appeal).

If the possibility of future amendments to pleadings were enough to bar interlocutory appeals, there would be none. Surely, where, as here, the very actions that are subject to litigation are playing out in real time, there will always be new facts to plead and report. For example, in addition to the VCA, the City could point to the more recent decision of the Civil Rights Division of the same Department of Justice to close its investigation of the City pertaining to the alleged noncompliance that forms the basis for the instant FCA action.

The City could also point to HUD's changing position regarding broad annual certifications like the certifications at issue here. In an analogous setting concerning HUD's FHA loans, HUD recently proposed changes to its FHA lender certifications, because FHA lenders were refusing to participate in HUD's program, specifically for fear of being threatened with FCA litigation, marking a "dramatic departure from the prior administration" which brought FCA claims against lenders on the basis of such certifications.[5] The Court's decision to allow an FCA claim here fuels the same types of fears among entitlement jurisdictions, and it is only a matter of time before those communities, like the FHA lenders, refuse to participate in the Entitlement Programs, for the same reason—fear of FCA liability.

## CONCLUSION

For all of the reasons set forth above and in its opening Brief, the City respectfully requests that this Honorable Court grant both its Motion to Certify Order for Interlocutory Appeal and its Motion for Stay.

---

[5] "HUD's FHA Lender Annual Certification Statements May Significantly Reduce FHA Lender Risk of False Claims Act Liability," *available at*, www.lexology.com/library/detail.aspx?g=50b8ff27-6906-4c8a-9c45-be402f80db95.

12

1

2

Respectfully submitted,

3   Dated: September 23, 2019

By: */s/ John C. Hansberry*
Michael N. Feuer (SBN 111529)
City Attorney
James P. Clark (SBN 64780)
Chief Deputy City Attorney
Teresa A. Lujan (SBN 114092)
Deputy City Attorney
Office Of Los Angeles City Attorney
City Hall East, 200 N. Main Street
Los Angeles, CA 90012-4130
Telephone: 213-978-8100
Facsimile: 213-978-8312
mike.feuer@lacity.org
james.p.clark@lacity.org
teresa.lujan@lacity.org

John C. Hansberry (*pro hac vice*)
Jana V. Walshak (*pro hac vice*)

FOX ROTHSCHILD LLP
500 Grant Street, Suite 900
Pittsburgh, PA 15219
Telephone: 412-394-5539
Facsimile: 412-391-6984
jhansberry@foxrothschild.com
jvolantewalshak@foxrothschild.com

Amanda Murray (SBN 305018)
FOX ROTHSCHILD LLP
10250 Constellation Blvd., Suite 900
Los Angeles, CA 90067
Telephone:  310-598-4150
Facsimile: 310-556-9828
amurray@foxrothschild.com

*Attorneys for Defendant*
*CITY OF LOS ANGELES*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**13**

CITY OF LOS ANGELES' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR
INTERLOCUTORY APPEAL AND MOTION FOR STAY