1  Mei Ling - *In Pro Persona*
2  6750 Whitsett Avenue #310
   North Hollywood, California 91606
3  Telephone: (818) 644-3923
   Email: Mei.Ling.818@yahoo.com
4

```
                                    FILED
                          CLERK, U.S. DISTRICT COURT

                              NOV 2 6 2019

                          CENTRAL DISTRICT OF CALIFORNIA
                          BY                      DEPUTY
```

5

6

7              UNITED STATES DISTRICT COURT

8              CENTRAL DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA          CASE NO. 2:11-cv-00974-PSG-JC
   ex rel. MEI LING and FAIR
11 HOUSING COUNCIL OF SAN            QUI TAM PLAINTIFF MEI LING'S
   FERNANDO VALLEY,                  PARTIAL OPPOSITION TO THE
12                                   SETTLEMENT AGREEMENT
              Plaintiff,             BETWEEN THE UNITED STATES OF
13                                   AMERICA, CO-RELATOR FAIR
   v.                                HOUSING COUNSEL & DEFENDANT
14                                   COMMUNITY REDEVELOPMENT
                                     AGENCY OF LOS ANGELES;
15 CITY OF LOS ANGELES               DECLARATION OF MEI LING IN
   CALIFORNIA, a municipal           SUPPORT THEREOF
16 corporation, and CRA/LA, a
   Designated Local Authority, a public   LODGED CONCURRENTLY
17 entity,                           [PROPOSED] ORDER DENYING
                                     SETTLEMENT AGREEMENT
18            Defendants.
                                     FILED UNDER SEAL
19
                                     Judge:      Honorable Philip S. Gutierrez
20                                   Courtroom:  6A
21

22

23 **TO THE HONORABLE COURT AND TO THE PARTIES AND**

24 **COUNSEL OF RECORD:**

25     With the purpose of this Opposition being to have due process for a "Fairness

26 Hearing" pursuant to 31 U.S.C. § 3730(c)(2)(B) - for this Court to determine relator

27 MEI LING's objections regarding the "un"-fairness of the proposed Settlement

28 Agreement that would forever release claims between the United States of America,

The Court has received and considered Plaintiff Mei Ling's *(in pro persona)* Opposition to the fairness of the Settlement Agreement between the Unites States of America, co-relator Fair Housing Council, and defendant Community Redevelopment Agency of Los Angeles ("CRA-LA") relating to False Claims Case No. CV11-0974. It is determined that material support evidence is necessary to substantiate all facts and valuations of all applicable federally funded CRA-LA housing developments in order to arrive at a fair and equitable settlement of all applicable CRA-LA properties, subject to violations for false claims made to acquire federal funding. A subsequent hearing to present material evidence that was not made available by November 25, 2019 , is scheduled for _____ to determine revisions for an equitable Settlement Agreement.

IT IS ORDERED that:

At this time, the Settlement Agreement entered into between the United States of America and the Community Redevelopment Agency of Los Angeles, is NOT APPROVED.

**IT IS SO ORDERED.**

Dated: _____            _____

The Honorable Philip S. Gutierrez
United States District Judge

[PROPOSED ORDER]

1  Mei Ling - *In Pro Persona*
2  6750 Whitsett Avenue #310
   North Hollywood, California 91606
3  Telephone: (818) 644-3923
   Email: Mei.Ling.818@yahoo.com
4

5

6

7                    UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA          CASE NO. 2:11-cv-00974-PSG-JC
    ex rel. MEI LING and FAIR
11  HOUSING COUNCIL OF SAN            **QUI TAM PLAINTIFF MEI LING'S**
    FERNANDO VALLEY,                  **PARTIAL OPPOSITION TO THE**
12                                    **SETTLEMENT AGREEMENT**
                 Plaintiff,           **BETWEEN THE UNITED STATES OF**
13                                    **AMERICA, CO-RELATOR FAIR**
    v.                                **HOUSING COUNSEL & DEFENDANT**
14                                    **COMMUNITY REDEVELOPMENT**
                                      **AGENCY OF LOS ANGELES;**
15  CITY OF LOS ANGELES               **DECLARATION OF MEI LING IN**
    CALIFORNIA, a municipal           **SUPPORT THEREOF**
16  corporation, and CRA/LA, a
    Designated Local Authority, a public  **LODGED CONCURRENTLY**
17  entity,                           **[PROPOSED] ORDER DENYING**
                                      **SETTLEMENT AGREEMENT**
18               Defendants.
                                      **FILED UNDER SEAL**
19
                                      Judge:     Honorable Philip S. Gutierrez
20                                    Courtroom: 6A
21

22
      **TO THE HONORABLE COURT AND TO THE PARTIES AND**
23
    **COUNSEL OF RECORD:**
24
         With the purpose of this Opposition being to have due process for a "Fairness
25
    Hearing" pursuant to 31 U.S.C. § 3730(c)(2)(B) - for this Court to determine relator
26
    MEI LING's objections regarding the "un"-fairness of the proposed Settlement
27
    Agreement that would forever release claims between the United States of America,
28

1   the relators, and the Community Redevelopment Agency of Los Angeles ("CRA-LA")

2   - at this time,  due to withholding and the concealment of material information by

3   defendant CRA-LA ...  it is not possible to provide a full Opposition briefing that

4   adequately addresses the objections and bases of all objections, without the supporting

5   public evidentiary records and documents that has been within CRA-LA's control to

6   timely provide.  Moreover, the records that CRA-LA are suppressing, will contradict

7   DOJ's Senior counsel who has  been supervising over this CV11-0974 FCA case,

8   William ("Bill") Edgar's  - and whose representation made to the Court, are incorrect.

9        The attached **Exhibit "1"** and Declaration of Mei Ling explains what this relator

10   believes is a joint intentional concealment of material evidence by CRA-LA - who for

11   other personal agendas, wants the CRA-LA component of this FCA case disposed of.

12   Under the circumstances, and taking CRA-LA on its representation made at 11:30am

13   today - that they will have the requested records emailed to me as .pdf's "tomorrow"

14   (see **Exhibit "2"**)  - I will work to file a Supplemental Opposition on Nov. 29th, if the

15   Court is open, but no later than by 9:00am on Dec. 2, 2019 since the  DOJ agents had

16   represented they will be traveling before and after the Thanksgiving holiday.  There is

17   no time at this point to file an Ex-Parte Appl. for a formal extension of time, when it

18   is uncertain if what CRA-LA is providing is responsive to records request.  If the DOJ

19   believes they needs a few more days to work on its response - I will stipulate as such,

20   where the scheduled December 16, 2019 "Fairness Hearing" can still remain in place.

21        The significance of these requested public records, will support other CRA-LA

22   properties that need to be part of a CRA-LA settlement *(if  CRA-LA does not want to*

23   *be subject to the prosecution process)*.  Approximately 4-5 years ago, the relators were

24   told through false certifications, the CRA-LA obtained over $450 million in federal

25   funds ... where a demand of approximately $45 million was made.  Stripped down to

26   $3.1 million - raises valid questions.   The addition of other properties, will increase

27   the Settlement amount by at least **more than $10 million dollars** - which is why this

28   Relator has been unswerving in objecting to be short-changed, and "thrown under the

1   bus".  It has been understood by DOJ agents since at least 2012, that my Relator's

2   share will be used to help pay the rental costs of accessible housing units - so those

3   with disabilities who are currently on the streets, in homeless shelters, languishing in

4   oppressive nursing facility housing, sleeping in cars, etc., can then have needed safe,

5   accessibility housing placements to begin **restoring dignity** in their lives.  This basic

6   survival need (and civil right),  will help those with mobility and sensory challenges

7   to next move toward education and work opportunities, needed to enable achieving

8   self-sufficiency.  I am the **only** party in this FCA case - understanding and living with

9   the day-to-day impediments of Los Angeles' inaccessible infrastructure, with constant

10  injuries as a result of unsafe, inaccessible housing, and the surrounding environment.

11

12  **Federal Funds Obtained to Develop the North Hollywood Redevelopment Project**

13  comprised of HOME, CDBG, EDI and Section108 funds.  Contrary to agent Edgar's

14  misstating Section 108 funds were not part of the claims in the Qui Tam complaint -

15  HUD makes clear that "Section 108 is the loan guarantee provision of the Community

16  Development Block Grant (CDBG) Program.  HUD offers communities a source of

17  financing for certain community development activities, such as housing rehabilitation,

18  economics development, and large-scale physical development projects" – which is

19  precisely what the unique North Hollywood Redevelopment Project is.  See **Exhibit**

20  **#3** and **Exhibit #4** *from:* **https://www.hud.gov/HUDprograms/Section108**   and,

21  **https://www.hudexchange.info/programs/section-108/section-108-program-**

22  **eligibility-requirements/#purpose-of-the-section-108-program**   which explains

23  that:  " The program allows local governments to transform a small portion of their CDBG funds

24  into federally guaranteed loans large enough to pursue physical and economic revitalization

25  projects capable of renewing entire neighborhoods. Such public investment is often needed to

26  inspire private economic activity, providing the initial resources or simply the confidence that

27  private firms and individuals may need to invest in distressed areas.  While local governments

28  borrowing funds guaranteed by HUD through the Section 108 program must pledge their current

1   and future CDBG allocations as security for the loan, the goal is for the proposed project to have

2   sufficient cash flow to repay the loan without any need for current or future CDBG dollars used

3   for the repayment." 22 million in federal funds helped develop the NoHo Redevelopment Project.

4         HOME, CDBG, EDI, Section 108 federal fund, were received by "sub-recipient", CRA-LA

5   from the City of Los Angeles through contractual agreements, Owner Participation Agreements,

6   etc., and made to "sub-recipient" owners like the Gallery and the Lofts, and why the payments are

7   in spread-out through 2029.  This is why the Gallery and the Lofts have obligations to HUD, and

8   are among the 22 identified properties listed in **CRA-LA's "VCA" agreement with HUD**, which

9   CRA-LA's Counsel Tom Webber approved for its **CRA-LA CEO Steve Valenzuela** to execute

10  on September 12, 2014 - for HUD's then Asst. Secretary for Program Enforcement, **Sara Pratt**

11  *(now with Relman, Dane, Colfax)*   See **Exhibit "5"** .  This is why this same list of 22 federally

12  funded properties, are part of the August 2, 2019 "VCA"  between the City of Los Angeles and

13  HUD (at pg. 102);  including as Exhibit B in the "Corrected Settlement Agreement" executed on

14  Nov. 28, 2017 by co-Relator Sharon Kinlaw in her CV12-0551 action ... which CRA-LA obtained

15  approval on Sept. 7 , 2017 from Calif.'s Dept. of Finance for $8,750,000  for retrofits at these 22

16  CRA-LA federally funded properties  (See **Exhibit "6"** and  **Exhibit "7"**)  - which CRA-LA's

17  Records Clerk Bella Morris' Oct. 11, 2019 e-mail states: "the units have not been retrofit yet".

18  (see **Exhibit "2"** at page 3)   Co-Relator Fair Housing Council's Sharon Kinlaw has been fully

19  aware of these facts, particularly through FHC's receipt of $4 million in settlement funds through

20  her CV12-0551 co-plaintiff participation.   The Relman Dane Colfax firm has milked nearly $20

21  million out of the City of L.A. taxpayers, with further billings to the City (see **Exhibit #8**)  at the

22  expense of the taxpayers ...  when to date, not one unit has been retrofitted for occupancy by the

23  thousands with accessibility needs.   Los Angeles' violations that discriminatorily exclude those

24  with disabilities, including by its CRA-LA  ... have been exploited by attorneys who endlessly

25  employ tactics and strategies to enrich themselves ... with no benefit of the bargains to L.A.'s

26  constituents with impairments.  Any Settlement with the CRA-LA must include the Gallery and

27  Lofts properties ... which 780 combined units, is greater than the total number of units at the ten

28  hand- picked locations currently identified in the proposed CRA-LA Settlement.

1    A close examination of the properties listed in the proposed Settlement evidences that the

2  Buckingham and Palomar properties received their federal funds prior to 2005.  CRA-LA cannot

3  conceal material facts and information.  How is cheating and no transparency fair and reasonable?

4    DOJ's William Edgar cannot act to thwart CRA-LA's legal obligations, advancing the

5  interests of one relator over the other, while aiding the enrichment of the greedy Relman firm.

6  CV11-0974 cannot be manipulated to advance political agendas  (see **Exhibits "9", "10", "11"**)

7  in another Quid Pro Quo involving the same parties, while undermining the good work of people

8  *and clergy*, committed to lifting life conditions of the vulnerable they live among. (**Exhibit "12"**)

9    While I surely appear to the Court at this time to be the "odd man out"  - I have

10  to trust that your Honor's Court is one of justice – that upon reviewing all the facts

11  and circumstances, it will recognize why the proposed Settlement Agreement is very

12  unreasonable ... and in fact "cover-ups" other improprieties that parties do not want to

13  be made public.  This Court has seen my many oppositions that I tried to bring forth,

14  to show there are improprieties that cannot be overlooked.  Perhaps the attached

15  **Exhibit "13"** of Relator FHC pointing out 4 years of FCA recovery loss, sheds more

16  light, which supports my oppositions after learning this FCA case was going to be

17  "quietly derailed" … through another Quid Pro Quo orchestrated by and involving

18  many of the same  parties involved with achieving the 2011 - 2012 St. Paul Quid Pro

19  Quo.  Why isn't "professed expert" agent Edgar accountable?    This case has many

20  tentacles, but now that your Honor is presiding over the recently transferred Relman

21  vs. Mei Ling and Fair Housing Council case filed in Washington D.C., now under

22  No. CV19-8612 and related to the CV11-0974 FCA case – the objections are more

23  clear, and why CRA-LA's public record evidentiary documents cannot be withheld.

Respectfully submitted,

Dated:  November 25, 2019

Mei Ling,  *in pro persona*

# Declaration of Mei Ling

**I,  MEI LING,  declare that:**

1.     The information set forth below is known to me through firsthand knowledge. I am a resident of the City and County of Los Angeles, and if called to testify as a witness, I will and can competently testify to the facts in this Declaration.

2.     All face-to-face meetings that I have requested over the past 6 months, with the DOJ agents involved in the CV11-0974 FCA matter ... and including jointly with CRA/LA and relator Sharon Kinlaw for the Fair Housing Council  *(who I know is fully aware of material facts and information regarding certain CRA-LA properties)*,  and to discuss and present evidence why the proposed Settlement Agreement is inaccurate and would be a false representation to the Federal Court - were rejected.

3     In response to my 7th request for a meeting with CRA-LA's CEO Steven Valenzuela, and its Counsel ... on October 7, 2019 ... in pertinent part  – Pam Johnston emailed me stating:  "You have asked for a meeting with Mr. Valenzuela and me.  We decline your request."

4.     Having received e-correspondences from DOJ's William Edgar of their belief why certain properties were excluded in the CRA-LA ... which I know to be false, public record requests from the CRA-LA were made from approximately July, 2019.  Notices of CRA-LA  needing extensions of time to gather the records always follow.  When their due date arrived,  all documents responsive to the requested records were not provided – which lead to subsequent record requests.   The same extensions, and incomplete records occurred.   Pursuant to statements made in William Edgar's responses, that I know there are records to dispute his incorrect facts and mischaracterizations  - more specific documents were requested in September and October 2019.    Fully knowing I would be working to prepare an Opposition for timely filing on Nov. 25, 2019 - CRA-LA set Friday , Nov.  22, 2019 as the date records would be made available.

QUI TAM RELATOR MEI LING'S *PARTIAL* OPPOSITION
TO SETTLEMENT AGREEMENT WITH CRA-LA

1    **5.**   On Nov. 22, 2019 CRA-LA  sent me an email that records were available and

2    to contact them to make arrangement to obtain them.  Accordingly, I made three phone

3    calls to CRA-LA.  No one answered, until the afternoon.  Records clerk, Jim Urquhart

4    instructed me to send an email as he needed to confer with Steven Valenzuela.  I sent

5    two emails as shown in Exhibit #2.   There was no response.

6    **6.**   Early on Nov. 25, 2019, I called CRA-LA to arrange for someone to pick up

7    these records at CRA-LA.   No one answered.   I sent another email on Nov. 25, 2019.

8    **7.**   At  11:29:39 am on November 25, 2019 – an unidentified person in the

9    Records Dept. sent an email that the records are now <u>not</u> available and will be emailed

10   "tomorrow" -  November, 26, 2019  (which is a day of "medical" appointments for me).

11   **8.**   I will inform the Court if the evidentiary records responsive to the public

12   records requests were received, so this Relator's Opposition can be prepared for filing.

13   All attached **Exhibits #1 - #13** -  are true and correct copies from records.

14

15   I declare under penalty of perjury that the foregoing is true and correct, under the

16   laws of the United States.

17

18                                                    Respectfully submitted,

19   Dated:  November 25, 2019

20                                                    _____

21                                                    Mei Ling,  *in pro persona*

22

23

24

25

26

27

28

**Exhibit " 1 "**



**CRA/LA**
**A DESIGNATED LOCAL AUTHORITY**

DATE November 22, 2019

FILE CODE /

448 S. Hill Street / Suite 1200
Los Angeles / California 90013

T 213 277 6778 / F 213 617 8369
www.crala.org

**VIA ELECTRONIC MAIL**

Mei Ling
Mei.Ling818@yahoo.com

RE:     **PRR - Federal Funding for 22 Multi-Family Housing Projects**

Dear Ms. Ling,

The CRA/LA, a Designated Local Authority ("CRA/LA") is in receipt of your Public Records Request, received in our office on October 30, 2019.  We have identified records that are responsive to your request.  Please contact our office at your earliest convenience to make an appointment to review the documents.

Should you have any questions, please feel free to contact me at jurquhart@crala.org.

Sincerely,

**Jim Urquhart**
**Administrative Analyst**

Cc: Records

**Exhibit " 2 "**

**Sent:** Monday, November 25, 2019, 11:29:39 AM PST
**From:** Records <Records@CRALA.org>
**To:** Mei.Ling818@yahoo.com
**Cc:** Records <Records@CRALA.org>
**Subject:** RE: Withholding of Public Fund Disbursements to CRA-LA's Gallery / Lofts / NoHo Commons Project

Ms. Ling,

Unfortunately, a CD is not available. Jim Urquhart will email you a PDF to you tomorrow.

Thank you,
Records Department

_____

**Sent:** Monday, November 25, 2019,  8:16:44 AM PST
**From:** Mei.Ling818@yahoo.com
**To:** Steve Valenzuela <SValenzuela@CRALA.org>; JUrquhart@CRALA.org; Records@CRALA.org
**Cc:** Paul.Krekorian@LACity.org;  Mayor@LACity.org;  C.McMannis@ymail.com; P.Gutierrez323@yahoo.com
**Subject:** Withholding of Public Fund Disbursements to CRA-LA's Gallery / Lofts / NoHo  Commons Project

**Attention:** Steve Valenzuela  - CRA / LA Chief Operating Officer
 **Cc:** Paul Krekorian, District 2 Councilman
 **Re:** Public Records Request

Compounding issues relating to inaccessible housing for persons with disabilities - have brought more than 11 years of litigation to the City of Los Angeles and its CRA-LA ... and sadly remains on-going.  With CRA-LA's representation that CRA-LA wishes to bring resolution to its obligations and legal dilemmas - it was disappointing to not have the courtesy of responses from you last Friday to my three phone calls, or to the below e-correspondences sent on Nov. 22nd at 12:39pm... and Nov. 22nd at 3:10pm.   Please cooperate by providing your written responses to these two *(different)* specified Nov. 22nd e-correspondences.

Regarding the Nov. 22nd (3:10pm) inquiry ... it is now necessary for you to kindly provide me with a written reply that:  confirms that the fund amounts submitted to Calif.'s State Dept. of Finance for DOF's approval relating to CRA-LA's disbursements to the Gallery at NoHo Commons and the Lofts at NoHo Commons, as shown in its Los Angeles ROP's - are "spread-out payments" being made annually through 2029 - from HUD's federal funds comprised of CDBG funds, HOME funds, 108 funds and EDI funds - *which CRA-LA received to develop its North Hollywood Redevelopment Project.*

Your immediate attention is needed by 11:00am today, Nov. 25, 2019.

Thank  you,
**Mei Ling**
**Mei.Ling818@yahoo.com**

**Sent:**   Friday, November 22, 2019, 3:10:48 PM  PST
**From:**   Mei.Ling818@yahoo.com
**To:**   Steve Valenzuela  <SValenzuela@CRALA.org>
**Cc:**   Jim Urquhart  <JUrquhart@crala.org>;  Records@CRALA.org;  Bella Morris
<BMorris@CRALA.org>;  Pablo Gutierrez <P.Gutierrez323@yahoo.com>;  Cheryl McMannis
<C.McMannis@ymail.com>;  Paul.Krekorian@LACity.org;  Mayor@LACity.org
**Subject:** Re-Send: Confirmation of Public Fund Disbursements to CRA-LA's Gallery / Lofts /
NoHoCommons Project

**Attention:**   Steve Valenzuela  - CRA / LA Chief Operating Officer
      **Cc:**   Paul Krekorian, District 2 Councilman
      **Re:**   Public Records Request

I did leave three phone messages for you this morning for a return call from you.  Instead,
CRA-LA's Jim Urquhart returned these calls.  Though I explained the information for which
needed confirmation and answers were being requested - Jim Urquhart stated **only you** will
have this information.  As such, and before 5:00pm today ... **please confirm that the fund
amounts submitted to Calif.'s State Dept. of Finance for DOF's approval relating to CRA-
LA's disbursements to the Gallery at NoHo Commons and the Lofts at NoHo Commons,
as shown in its Los Angeles ROP's - are "spread-out payments" being made annually
through 2029  from HUD's federal funds comprising of CDBG funds, HOME funds, 108
funds and EDI funds** - which CRA-LA received to develop its North Hollywood
Redevelopment Project.

While  **the courtesy of a simple phone call from you, or email response from you
confirming this above question, will suffice and be appreciated** - should you not be willing
to be transparent and provide this public information - then it will be necessary for you to
recognize the below as another Public Records Request, hereby submitted at this time for the
following records:

**1)**   True and correct copies of every check payment, that is associated with the development
of CRA-LA's North Hollywood Redevelopment Project, the Gallery at NoHo Commons, the
Lofts at NoHo Commons, the retail components of the NoHo development, etc. - through
CDBG funds, HOME funds, 108 funds, EDI funds ... regardless if payments were in one lump
sum, separately issued check payments, automatic deposits made to CRA-LA, incremental
payments, or any other payment method.
**2)**   All accompanying documents and contractural agreements associated with every
component (of the NoHo Redevelopment Project), and each funding source for each
component.
**3)**   True and correct copies of every check sent to the owners of GS NoHo, SL NoHo, NoHo
Commons, Jerry Snyder, J.H. Synder, Behringer Harvard, RedRock, Fairfield, etc. relating to
the Gallery at NoHo Commons and the Lofts at NoHo Commons properties since its
development, and through 2029 - along with all documents associated with every disbursed
payment.
**4)** True and correct copies of all ILCSC Settlement Agreement Payments totaling $8,343,524
- disbursed for the required retrofit of 250 CRA-LA units to comply with federal accessibility.

Thank  you,
**Mei Ling**
**Mei.Ling818@yahoo.com**

**Sent:**   Wednesday, October 30, 2019, 4:58:27 PM PST
**From:**   Mei.Ling818@yahoo.com
**To:**   Steve Valenzuela <SValenzuela@CRALA.org>;  Secretary.Carson@HUD.Gov;
Anna.Farias@HUD.Gov; Paul.Compton@HUD.Gov; Jeanine.Worden@HUD.Gov; Mayor@LACity.org;
Paul.Krekorian@LACity.org;  Controller.Galperin@LACity.org;  David_Brewer@HSGAC.Senate.Gov
**Cc:**   Zachary.Stacy@DOF.CA.Gov; Brian.Dunham@DOF.CA.Gov; Stephen.Franz@DOF.CA.Gov;
Records@CRALA.org;  Bella Morris <BMorris@CRALA.org>;
**Subject:** Public Records Request; Demand for Answers to un-Retrofitted CRA-LA Units; Reports of
Retrofit Funds Approved by DOF

**Attention:**  Steve Valenzuela  - CRA / LA Chief Operating Officer
**Cc:**  Paul Krekorian, District 2 Councilman
**Re:**  Public Records Request

Without further stalling and refusals, please provide:

**1)** All documents, records, and written communications to HUD, the City of Los Angeles, the Dept. of
Justice, Calif.'s State Dept. of Finance, and any other party which are responsive to the repeatedly
asked question relating to the below September 24, 2019 Public Records Requests for **Items 4, 5, 6, 7,
and 8 ... including CRA's below Oct. 11, 2019 (4:45pm)  response that CRA "does not have
records responsive to these requests because the units have not been retrofit yet"** ... and which
include full written answers as to **WHY** the NoHo units have not been retrofitted yet?;  **what** is CRA-LA
waiting for? ... **when** will retrofits of these units begin and completed for occupancy by persons with
disabilities? ... **who** specifically is making the decisions when these units will be retrofitted? ...what
happened to the funds CRA-LA received in 2017 upon approval from Calif.'s State Dept. of Finance for
retrofits of CRA-LA's required accessible units at 22 federally funded property locations?

**2)** As a further Public Records Request:  Provide all documents and records evidencing Federal Funds
received in financing and assisting in the development of the following CRA-LA multi-family housing
projects:  Yale Terrace, Palomar Apartments, Vista Monterey, Buckingham Place Senior Housing;
Vermont Senior Housing, Villas at Gower, Encore Hall (aka Triangle Square), Imani Fe Mixed Use, Ford
Apartments, Gallery at NoHo Commons, Lofts at NoHo Commons; Metro Hollywood Apts. (aka
Hollywood Western Apts.), Paseo Del Sol, Amistad Plaza, Grandview 9, Eastside Village, La Estrella
Apts., DonHotel Apts., Hope Manor, Casa Verde, Heavenly Vision Seniors Apts.

**Thank you,**
**Mei Ling**
**Mei.Ling818@yahoo.com**


**Sent:**   Friday, October 11, 2019, 4:45:39 PM  PST
**From:**   Records <Records@CRALA.org>
**To:**   Mei.Ling818@yahoo.com
**Cc:**   Records <Records@CRALA.org>
**Subject:** RE: Opposition to Refusal of Producing CRA-LA Public Records Request  [Mei Ling]

Ms. Mei Ling,

Per my October 4, 2019 e-mail below, we are continuing our search for responsive documents.  We will
send you a flash drive containing these documents as soon as they are ready.  Kindly provide us with
your mailing address so we can send them to you.  With regards to **Items 4, 5, 6, 7, and 8, CRA does
not have records responsive to these requests because the units have not been retrofit yet.**

Thank you,
Bella

**Exhibit " 3 "**

North Hollywood

CRA LA

Redevelopment Project

NoHo Commons Phases 1-3



**The Gallery at NoHo Commons**
323 Market Rate
115 Affordable
438 Total

**Lofts at NoHo Commons**
264 Market Rate
28 Affordable
292 Total

CUMPSTON ST

FAIR AVE

Phase I
(Sub Area A)

CHANDLER BLVD

Phase II
(Sub Area B)

LANKERSHIM BLVD

WEDDINGTON ST

Phase III
(Sub Area C)

BLAKESLEE AVE

MCCORMICK ST

MAGNOLIA BLVD

**LEGEND**

☐ NoHoCommons Project Boundary

**Project Parcel Funding Sources**

■ CRA/LA (T.I.) - $11.1 Million

■ Developer (Private Funds) - $46.3 Million

**HUD**

☐ HOME - $5.0 Million

■ CDBG - $3.0 Million

■ Section108 - 14.0 Million

■ Secton 108 & CDBG

1:2,260

0   30   60   120   180   240 Feet

1 inch = 188 feet

PREPARED BY CRA GIS SECTION
Tom Weisenberger, GIS Analyst
5/7/2012

About HUD    Program Offices    Resources    Contact Us    Información en

Español

Home / Programs of HUD / CDBG - Section 108 Loan Guarantee

# COMMUNITY DEVELOPMENT BLOCK GRANTS (SECTION 108 LOAN GUARANTEE)

Loan guarantee assistance for community and economic development.

**Nature of Program:** Section 108 is the loan guarantee provision of the Community Development Block Grant (CDBG) program. Under this section, HUD offers communities a source of financing for certain community development activities, such as housing rehabilitation, economic development, and large-scale physical development projects.

Eligible activities are (1) real property acquisition, (2) rehabilitation of property owned by the applicant public entity or its designated public agency, (3) housing rehabilitation eligible under the CDBG program, (4) special economic development activities under the CDBG program, (5) interest payments on the guaranteed loan and issuance costs of public offering, (6) acquisition, construction, reconstruction, rehabilitation, or installation of public facilities, (7) assistance for public facilities in colonias, (8) debt service reserves for repayment of the Section 108 loan, (9) other related activities, including demolition and clearance, relocation, payment of interest, and insurance costs. When determining eligibility, the CDBG rules and requirements apply. As with the CDBG program, all projects and activities must meet CDBG's primary objective (use of 70 percent of funds must benefit low- and moderate-income persons) and one of the following three national objectives: (a) principally benefit low- and moderate-income persons, (b) assist in eliminating or preventing slums or blight, or (c) assist with community development needs having a particular urgency. Loans may be for terms up to 20 years.

The applicant pledges its current and future CDBG funds as the principal security for the loan guarantee. HUD may require additional security for each loan, and any additional security that may be necessary is determined on a case by case basis.

**Applicant Eligibility:** Metropolitan cities and urban counties that receive entitlement grants may apply directly to HUD for loan guarantee assistance. Non-entitlement communities under the state CDBG program may also apply, but must have a pledge of their state's CDBG funds from the appropriate agency. Insular areas and non-entitlement communities in Hawaii may also apply directly to HUD for loan guarantee assistance. The public entity applicant may issue the Section 108-guaranteed obligation itself, or it may designate a local public agency with the necessary legal authority to do so. The appropriations Acts for fiscal years 2008, 2009, and 2010 authorize States borrowing on behalf of local governments in non-entitlement areas to apply. Final regulations implementing the authority pursuant to section 222 of the Omnibus Appropriations Act, 2009 (Public Law 111-8) were published on April 6, 2010.

**Legal Authority:** Section 108 of the Housing and Community Development Act of 1974 (42 U.S.C. 5308). Regulations are at 24 CFR part 570, subpart M.

**Administering Office:** Assistant Secretary for Community Planning and Development, U.S. Department of Housing and Urban Development, Washington, DC 20410-7000.

**Information Sources:** Administering office and HUD field offices. On the Web

**Current Status:** Active.



## ATTACHMENT A

### LIST OF FEDERALLY FUNDED MULTI-FAMILY DEVELOPMENTS (1997-2012)

#### AS OF 03/27/13

| Project | Address | Construction Start Date | Total Units |
|---|---|---|---|
| Heavenly Vision Seniors | 9400 S. Broadway | 7/12/1998 | 46 |
| Casa Verde | 1552 Schrader Blvd. | 8/15/1998 | 30 |
| Hope Manor | 1332 S. Hope Street | 12/20/1998 | 75 |
| Don Hotel Apartments | 105 E. 'T' St. | 2/3/1999 | 58 |
| Western Carlton Apts. (aka Western-Carlton Phase I) | 5443 Carlton Way | 4/15/1999 | 61 |
| La Estrella Apartments | 1979 Estrella Ave. | 8/25/1999 | 11 |
| Eastside Village (Lillian Mobley) | 2250 East 111st | 8/3/2000 | 78 |
| Grandview 9 | 916-920 S. Park View St. | 11/3/2000 | 62 |
| Amistad Plaza | 6050-6130 South Western Avenue | 6/1/2001 | 56 |
| Paseo del Sol | 417 North Soto St | 9/20/2001 | 7 |
| Metro Hollywood Apts. (aka Hollywood Western Apts./Western-Carlton Phase II) | 5450 Hollywood Blvd. | 4/1/2002 | 60 |
| Buckingham Place Senior Housing | 4020-70 Buckingham Road | 2/19/2003 | 70 |
| Gallery at NoHo Commons (Phase I) | 5416 Fair Avenue | 6/1/2003 | 438 |
| Palomar Apartments | 5473 Santa Monica Blvd. | 6/27/2003 | 26 |
| Encore Hall (aka: Triangle Square) | 1623 Vine Street | 8/15/2005 | 104 |
| Lofts at NoHo Commons (aka NoHo Commons-Phase II) | 11136 Chandler Blvd | 9/1/2005 | 292 |
| Vermont Seniors | 3901-3925 S. Vermont Ave / 1015 W. 39th Place | 10/1/2005 | 140 |
| Vista Monterey Senior Housing | 4647 Huntington Dr. North | 10/21/2005 | 48 |
| Yale Terrace Apartments | 716-734 S. Yale St | 2/15/2006 | 55 |
| Imani Fe (East & West) | 10345 & 10408-10424 S. Central Ave. | 6/1/2007 | 92 |
| Villas at Gower | 1726 North Gower Street | 4/28/2010 | 70 |
| Ford Apartments (aka Ford Hotel) | 1000 E. 7th St. | 5/28/2010 | 122 |
| | | **TOTAL** | **2001** |

A-1

Los Angeles City Recognized Obligation Payment Schedule (ROPS 17-18) - Amended ROPS Detail

July 1, 2017 through June 30, 2018

(Report Amounts in Whole Dollars)

| DLA Line # | DLA ROPS # | DLA Cat. | DOF Item # | A | B Project Name / Debt Obligation | C Obligation Type | D Contract/Agreement Execution Date | E Contract/Agreement Termination Date | F Payee | G Description/Project Scope | H Project Area | I Total Outstanding Debt or Obligation | J Retired | K ROPS 17-18 Total | L Bond Proceeds | M Reserve Balance | N Other Funds | O RPTTF | P Admin RPTTF | Q 17-18A Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | $1,030,173,969 | | $93,112,040 | $3,652,306 | $3,764,300 | $29,381,410 | $ | $ | $ 36,808,016 |
| 1 | 1813 | 1A | 472 | | Bonds | Bonds Issued After 12/31/10 | 9/1/2016 | 9/1/2040 | U.S. Bank, N.A. | 2016 TAB Refunding (Taxable), $329,060,100 Prin-3,185,000 Int-4,668,044 | Various | 306,667,552 | N | 20,654,344 | | | | | | $ 36,808,016 |
| 2 | 1791 | 1A | 436 | | Bonds | Bonds Issued After 12/31/10 | 10/30/2014 | 12/1/2028 | U.S. Bank, N.A. | 2014 TAB Refunding, $174,050,000 (Tax-Exempt) Prin-10,595,000 Int-7,127,500 | Bunker Hill | 186,492,137 | N | 17,153,000 | | | | | | |
| 3 | 1814 | 1A | 473 | | Bonds | Bonds Issued After 12/31/10 | 12/20/2013 | 9/1/2032 | U.S. Bank, N.A. or Union Bank | 2013 TAB Refunding, $30,615,000 (Tax-Exempt) & $21,995,000 (Taxable) Prin-4,540,000 Int-2,055,907 See note. | Adams/ Eastside, Hollywood, Little Tokyo, Mid City Corridors, & North Hollywood | 52,919,051 | N | 6,045,907 | | | | | | |
| 4 | 1145 | 1A | 2 | | Bonds | Bonds Issued On or Before 12/31/10 | 3/1/1998 | 7/1/2022 | U.S. Bank | Hollywood TAB REF SER C $35,640,000 (Remaining Unfunded Maturities - $7,560,000) Prin-2,660,000 Int-71,488 | Hollywood | 2,802,975 | N | 2,802,975 | | | | | | |
| 5 | 1815 | 1A | 474 | | Bonds | Bonds Issued On or Before 12/31/10 | 6/26/2008 | 9/1/2038 | U.S. Bank | Pooled Financing Bonds, Series P, $8,750,000 (Taxable) Prin-215,000 Int-640,400 | Mid City Corridors & Vermont/Manchester | 15,219,600 | N | 850,400 | | | | | | |
| 6 | 1816 | 1B | 475 | | Bonds | Fees | 10/24/1997 | 9/1/2040 | U.S. Bank, N.A., Union Bank, or Bank of New York | Annual Admin Fees - Various Bonds. See note. | Various | 230,504 | N | 40,304 | | | 3,450 | | | 3,450 |
| 7 | 1822 | 1F | 482 | | Bonds | Bond Funded Project – Pre-2011 | 9/21/2014 | 1/1/2020 | City of Los Angeles | Non-Housing Excess Bond Proceeds (Taxable). Final payment. | Western/Slauson | 378,900 | N | 378,900 | 378,900 | | | | | 378,900 |
| 8 | 1823 | 1G | 483 | | Bonds | Bond Funded Project – Pre-2011 | 9/21/2014 | 1/1/2020 | City of Los Angeles | Non-Housing Excess Bond Proceeds (Tax-exempt). Final payment. | Wilshire/Koreatown | 1,523,631 | N | 1,523,631 | 1,523,631 | | | | | 1,523,631 |
| 9 | 1496 | 3B | 310 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 10/1/2008 | 10/1/2038 | 9L NoHo, LLC | NoHo Commons Sub Area B&C - $3,000,000 HUD Loan & 66,000,000 Revenue Shortfall obligation (Mixed income development including affordable housing completed in 2008.) See note. | North Hollywood | 7,437,437 | N | 1,523,631 | | | 2,465,730 | | | 2,465,730 |
| 10 | 1818 | 3B | 477 | | Legally binding and enforceable agreements or contracts | Miscellaneous | 7/1/2017 | 7/1/2017 | City of Los Angeles | Remittance of CDBG Program Income from sale of Asset ID# 100 - 4347 W. Adams. Final payment. | Mid-City | 2,211,905 | N | 2,211,905 | | | 2,211,905 | | | 2,211,905 |
| 11 | 1817 | 3B | 476 | | Loans or Moneys Borrowed by Agency | Miscellaneous | 7/1/1990 | 9/30/2018 | City of Los Angeles | Remittance of Program Income from loans funded with CDBG & HOME funds (OFSA DO# Items #2, 3, 5, 7, 10, and 11). Final payment. | Various | 2,444,253 | N | 2,444,253 | | 2,444,253 | | | | 2,444,253 |
| 12 | 0679 | 3B | 300 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 7/1/2002 | 10/1/2042 | Monogram Residential NOHO LLC (formerly known as Behringer Harvard NoHo) | NoHo Commons Sub Area A - Annual Housing Subsidy Payments (Mixed income development including affordable housing completed in 2006.) See note. | North Hollywood | 23,656,312 | N | 850,400 | | | 1,069,276 | | | 1,069,276 |
| 13 | 0095 | 3B | 305 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 6/6/2011 | 12/13/2040 | NoHo COMMONS RETAIL FEE OWNER LLC | NoHo Commons retail project - $5,000,000 residual receipts loan from T1 and $12,500,000 Promissory Note SSTI pledge + 6% interest rate. | Wilshire Center/Koreatown | 15,639,301 | N | 1,759,754 | | | 1,759,754 | | | 1,759,754 |
| 14 | 1497 | 3B | 306 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 8/27/2004 | 2/26/2029 | 9L NoHo, LLC | NoHo Commons Sub Area A & B1 & C - $8,045,481 Developer Loan (Mixed income development including affordable housing completed in 2008.) See note. | North Hollywood | 8,210,556 | N | 1,104,507 | | | 1,104,507 | | | 1,104,507 |
| 15 | 0094 | 3B | 175 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 3/12/2008 | 10/1/2042 | MEFT Midtown Crossing LLC | Midtown Crossing Retail Project - Public Improvements- Sr Note: $3,000,000 SSTI pledge 6% int. rate (max. pmt $485,000), Jr Note: $5,422,000 SSTI pledge 6% int. rate (max. pmt $400,000). See note. | Mid City Corridors | 22,325,942 | N | 850,400 | | | | | | |
| 16 | 1498 | 3B | 318 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 10/1/2008 | 10/1/2038 | Monogram Residential NOHO LLC (formerly known as Behringer Harvard NoHo) | NoHo Commons Sub Area A&B - $3,000,000 HUD Loan (Mixed income development including affordable housing completed in 2008.) See note. | North Hollywood | 1,760,507 | N | 1,760,507 | | | 428,342 | | | 428,342 |
| 17 | 0090 | 3B | 344 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 3/5/2002 | 10/1/2038 | NoHo Commons Pacific Owner LLC | NoHo Commons Sub Area B - Annual Housing Subsidy Payments (Mixed income development including affordable housing completed in 2006.) See note. | North Hollywood | 3,949,972 | N | 329,131 | | | 329,131 | | | 329,131 |
| 18 | 0647 | 3B | 316 | | Legally binding and enforceable agreements or contracts | Third-Party Loans | 9/4/2008 | 9/4/2041 | Plaza Pacoima, LLC | OPA for Public Improvements, Grant, and Acquisition Assistance for Plaza Pacoima, a 200,000 sq. ft. commercial center, located at 13500 Paxton Street in Pacoima. See note. | Pacoima/Panorama City | 4,099,972 | N | 255,938 | | | 255,938 | | | 255,938 |

1  **MICHAEL N. FEUER**
   City Attorney, SBN 111529
2  **JAMES P. CLARK**
   Chief Deputy City Attorney, SBN 64780
3  **NOREEN VINCENT**
   Assistant City Attorney, SBN 102935
4  **JEFFERY C. ELDER**
5  Deputy City Attorney, SBN 288124
   Email: jeffery.elder@lacity.org
6  916 City Hall East
   200 North Spring Street, 21st Floor
7  Los Angeles, California 90012-4130
   Telephone: (213) 922-8557
8  Facsimile: (213) 978-7957
9
   Attorneys for Defendant
10 CITY OF LOS ANGELES

11          **UNITED STATES DISTRICT COURT FOR THE**
12      **CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)**

13 | INDEPENDENT LIVING CENTER | Case No.: 12-CV-00551 FMO (PJWx)
   | OF SOUTHERN CALIFORNIA, *et*
14 | *al.* | **DECLARATION OF JEFFERY**
15 | | **ELDER IN SUPPORT OF**
   | Plaintiffs, | **DEFENDANT CITY OF LOS**
16 | | **ANGELES' OPPOSITION TO**
   | vs. | **PLAINTIFFS ILCSC AND**
17 | | **CALIF'S MOTION TO ENFORCE**
18 | CITY OF LOS ANGELES,
   | CALIFORNIA, and COMMUNITY
19 | REDEVELOPMENT AGENCY OF | Date: December 5, 2019
   | THE CITY OF LOS ANGELES, | Time: 10:00 a.m.
20 | | Courtroom: 6D
21 | Defendants. | Judge: Hon. Fernando M. Olguin

22
23
24          <u>**DECLARATION OF JEFFERY ELDER**</u>

25     I, JEFFERY ELDER, declare as follows:

26     1.     I am an attorney at law duly licensed to practice before all courts of the

27 State of California and the United States District Court Central District of

28 California.

                                  1
                 **DECLARATION OF JEFFERY ELDER**

2.     I am a Deputy City Attorney for the Los Angeles City Attorney's Office, attorneys of record for Defendant City of Los Angeles ("City").

3.     I am aware of the facts stated herein of my own knowledge and, if called to testify thereto, I could and would competently so testify.

4.     When providing financial assistance to a property, the City's customary practice is to require property owners to execute a regulatory agreement with the City, which sets out the conditions that the property must comply with.

5.     I have reviewed a number of regulatory agreements for properties subject to the CSA at the time of its execution (to wit, properties financially assisted, designed, constructed, altered, operated, administered or financed in connection with a program administered by the City or by its subrecipients ("Covered Properties"), none of which require owners and property managers of Covered Properties to participate in training about disability rights obligations in assisted housing, nor do they require Covered Properties to be listed on the City's Web Registry.

6.     Subsequent to the entry of the CSA, I revised the City's regulatory agreement to include a covenant, which requires, among other things, participation in training about disability rights obligations in assisted housing and registration on the City's Web Registry.  All new construction is now being required to execute this document.

7.     I am also responsible for reviewing the attorneys' invoices submitted by ILCSC/CALIF.

8.     While reviewing the attorneys' invoices, I have observed that Michael Allen charges $900/hour, Dara Schur charges $900/hour, and Autumn Elliott charges $645/hour to monitor the City's compliance with the CSA.

9.     The invoices reflect that Michael Allen, Dara Schur, and Autumn Elliott charge the City for time spent traveling to and from meetings with the City.

10.     The invoices also reflect ILCSC/CALIF regularly charging the City

2

**DECLARATION OF JEFFERY ELDER**

for sending three attorneys to the same meeting, which I have personally observed as I also attended those meetings.

11.     The invoices contain charges to the City for multiple attorneys discussing issues internally; and do not provide specificity as to the nature of the issues discussed.

12.     Additionally, the invoices do not distinguish as to whether the services are being provided to ILCSC or CALIF, singularly or jointly.

13.     The entries regularly contain block billing for the time spent "monitoring" the City's compliance.

14.     To demonstrate these factors and the level of waste contained in the ILCSC/CALIF attorney billing, I chose a monthly meeting held in April of 2019 and analyzed the amount of time spent by legal counsel for ILCSC/CALIF for that one three hour meeting. A true and correct copy of the monitoring invoice for ILCSC/CALIF for April 1, 2019 to June 30, 2019 is attached hereto as Exhibit A.

15.     The monthly meetings are meetings that the City voluntarily agreed to participate in, during which meeting the City provides a report on the City's activities over the last month and give the parties an opportunity to ask questions and raise concerns. These meetings are not required by the CSA and could be done telephonically or via videoconference.

16.     Reviewing the invoices received from Dara Schur, Autumn Elliott, and Michael Allen for the April 23, 2019 meeting, I observed that the attorneys collectively charged the City $34,004.26.

17.     I prepared a summary chart showing the billing entries for Dara Schur, Autumn Elliott, and Michael Allen associated with the three (3) hour April 23, 2019 meeting. A true and correct copy of the chart is attached hereto as Exhibit B.

18.     Reviewing the invoices, I observed that Dara Schur, Autumn Elliott, and Michael Allen charged the City for preparation time, travel time, the time spent at the meeting, and time spent "debriefing".

3

**DECLARATION OF JEFFERY ELDER**

19.  I also observed that Dara Schur charged the City 8.2 hours, or $7,290 for travel from San Francisco.

20.  Additionally, Autumn Elliott charged the City $322.50 to travel approximately 1.5 miles, roundtrip, from her office.  Michael Allen further charged the City $2,070 to fly to Washington D.C. from the meeting.

21.  Importantly, the invoices did not distinguish which client the work was being done for and included block billing, making it difficult to determine the amount of time being spent on individual tasks.

I declare under penalty of perjury according to the laws of the United States and State of California that the foregoing is true and correct.

Dated:  November 14, 2019

_____
JEFFERY ELDER

4

**DECLARATION OF JEFFERY ELDER**

**Michael Allen**

| | |
|---|---|
| **From:** | James Clark <james.p.clark@lacity.org> |
| **Sent:** | Friday, June 17, 2016 3:34 PM |
| **To:** | John Relman; Miguel Santana |
| **Cc:** | Michael Allen |
| **Subject:** | Re: Stipulation for Judge Olguin |

John  and Michael  –

As both Miguel and I have told John on several occasions, and as I reiterated when I wrote to John on June 14th with proposed language for a "side letter," we can't file this until the *qui tam* issue is resolved.  Miguel and I have tried to be completely transparent with you about our instructions from the City Council.  Despite the Council's requirements, we first gave up on our request  that the relators **support** DOJ granting an offset to the City for for accessible housing created pursuant to the settlement of the *ILC* action and the VCA  – assuming we can negotiate one with HUD.  We then abandoned our second "ask:" that your clients at least **not oppose** the City getting **full credit** for its delivery of accessible housing pursuant to those other agreements.  When you refused to do even that, we went as far as we possibly can under the Council's mandate: that you simply not oppose the DOJ **"taking into consideration"** sums expended as a result of the resolution of the *ILC* and VCA negotiations.  Given your clients' clear and demonstrable interest in increasing the stock of accessible housing in Los Angeles, I would think that they would welcome this result.

Since you have repeatedly told us that DOJ will pay no attention whatsoever to what the relators say about a settlement of the *qui tam* action, and  – as John  and I discussed earlier this week  – there is no realistic possibility that DOJ will not require some (presumably significant) monetary payment to settle the *qui tam* action, there's no **real** downside for you.  In short, this is something we need to satisfy the Council, but which could have zero negative effect on your clients.  We've met you far more than half-way on this.  All we need is your concurrence in the language I sent you on Tuesday, and we can sign and file the stipulation and wrap this case up.

1

the False Claims action, or even to say that they **won't oppose** the City seeking as much credit as the DOJ might offer. Miguel Santana and I have accepted (even if not understood) your clients' position about making those statements - - although our City Council specified that we require them -- and have agreed to take back to the Council for final approval your clients' agreement merely not to oppose the DOJ **taking into account** the terms of the *ILC* settlement in resolving the *qui tam* action with the City.  Frankly, I can't think of any reason they wouldn't agree to that, particularly since you've told Miguel and me repeatedly that it will make zero difference to the Government whether your clients say that or not.

I've tried to make the wording of our proposed letter as neutral as possible, but if you have suggestions as to how it might be amended, we are open to discussing those changes.  Here's what we propose:

"As our clients are aware, the City of Los Angles is attempting to resolve the *qui tam* action currently under seal, and pending in the United States District Court for the Central District of California, entitled "*United States ex rel. [Confidential Parties] Relators, v. City of Los Angeles et al., Defendants*, Case No. C11-00974 PSG (JCx)" ( the *"qui tam* action").  As part of that potential resolution, the City is seeking to receive monetary "credit" in the computation of any damages or penalties imposed by the Department of Justice ("DOJ") in the *qui tam* action, based upon amounts to be expended by the City in carrying out: (1) the terms of the settlement agreement among the parties in *Independent Living Center of California, et al., Plaintiffs, v. City of Los Angeles, et al., Defendants*, Case No.: 12-CV-00550 FMO (PJWx) (the *ILC* litigation), currently pending in the United States District Court for the Central District of California; and (2) any Voluntary Compliance Agreement ("VCA") reached between the City and the United States Department of Housing and Urban Development  ("HUD") regarding the same facts alleged in the *qui tam* action and the *ILC* litigation.  Acknowledging the City's desire to resolve the *qui tam* litigation, the relators agree not to object to or oppose the City's request that the DOJ take into account sums paid by the City to settle the *ILC* litigation, or in fulfilling its obligations under a VCA with HUD, in resolving the *qui tam* action.

**Michael Allen**

| | |
|---|---|
| **From:** | John Relman |
| **Sent:** | Thursday, June 23, 2016 8:07 PM |
| **To:** | Jennifer Klar; Michael Allen |
| **Subject:** | FW: ILC Setttlement |

**From:** James Clark [mailto:james.p.clark@lacity.org]
**Sent:** Tuesday, June 14, 2016 2:16 PM
**To:** John Relman
**Cc:** Miguel Santana
**Subject:** ILC Setttlement

John --

Set out below is the language that the City would like included in a "side letter" (or in some other acceptable form) related to our settlement of the *ILC* litigation. I would hope that your clients would have no issue signing this, since they have been aware, as you undoubtedly told them, that the City would be seeking to get "credit" for amounts expended under the terms of our settlement, or a VCA with HUD, toward the amount the City ultimately will have to pay to the DOJ to resolve the *qui tam* litigation, in which your clients are relators.

As we've said from the beginning, the City views sums expended to rehabilitate or build accessible housing as addressing a critical public need for adding accessible, affordable housing to the City's streets and neighborhoods. In contrast, money paid by the City to the DOJ will do ***nothing*** to assist in alleviating the current housing crisis facing Los Angeles, and will be simply a transfer of funds from the taxpayers of Los Angeles to the Federal Treasury. I would think that, as advocates for the disabled community, your clients would want as much of that money as possible to be expended to actually improve the lives of the people whose cause they espouse. There is nothing mysterious or deceptive in seeking that result. The City's motivation is the same as your clients'.

However, we understand from our discussions with you that your clients are reluctant to either ***support*** the City's getting "credit" for sums expended to settle

1

Signed:

_____                    _____

**Counsel for Relators**                    Counsel for the City of Los
                                            Angeles"


Thanks for your attention to this matter, John.  As you requested, in order to provide comfort to your clients concerning the language of the letter, I will send you today a copy of the Settlement Agreement initialed by both Miguel and me.  I look forward to hearing from you.  All best regards.


Jim

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

*****************Confidentiality Notice **************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message and any attachments without reading or saving in any manner.
*********************************************************************

Please consider the environment before printing this email

Please let us know that we can proceed as I've outlined.  Many thanks and best regards.

Jim


James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347



On Fri, Jun 17, 2016 at 10:28 AM, John Relman <jrelman@relmanlaw.com> wrote:

Jim –


Michael will be sending you very shortly a proposed joint stipulation for Judge Olguin asking him to sign and enter the settlement agreement.  It is very short and self-explanatory.  If you give us the green light, we will get it filed today.


Best,


John


John P. Relman

(Licensed in D.C.)

Relman, Dane & Colfax PLLC

1225 19th Street, N.W.

Suite 600

Washington, D.C.  20036

202-728-1888 (phone)

202-728-0848 (fax)

**Jennifer Klar**

| | |
|---|---|
| **From:** | John Relman |
| **Sent:** | Monday, June 27, 2016 10:37 AM |
| **To:** | Jennifer Klar |
| **Subject:** | FW: Stipulation for Judge Olguin |
| **Attachments:** | 2016 6 17 Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.doc; Exhibit 1 to Stipulation for Entry of Judgment Pursuant to Settlement TO CITY WORD - JPC REDLINE.docx |

**From:** James Clark [mailto:james.p.clark@lacity.org]
**Sent:** Thursday, June 23, 2016 9:25 PM
**To:** John Relman; Michael Allen
**Cc:** James Clark; Miguel Santana
**Subject:** Stipulation for Judge Olguin

## John and Mike  ---

I attach a "mark-up" of the Stipulation and [Proposed] Judgment you sent me earlier.  In the drafts, I have tried to let the Court know that, while we have substantive agreement, there is a related, outstanding issue that must be resolved before we can stipulate to the Judgment with full Council approval.  Obviously, I have no desire to do it this way, but neither Miguel nor I has the authority to stipulate to a Judgment until we have a meeting of the minds regarding the relators' position in the False Claims Act litigation.

As I mentioned when I last wrote, after all of the concessions we have made, and even (at your request) sent you an initialed copy of the Settlement Agreement, we find it inexplicable that you and your clients will not agree to the minimal request that not oppose the DOJ just taking the VCA **into consideration** in settling the *qui tam* action.

I understand ,John, that you will be in Los Angeles next Tuesday, and would like Miguel to meet with one of your clients who harbors "trust issues" with the City.  If that would help us finalize the settlement, I am all for it.  I'll be in Washington on Tuesday, but could do a meeting in L.A. on Wednesday (with Miguel), if that would work for you and your client.  Please let us know what your prefer.

1

Again, we want nothing more than to complete the settlement with you and your clients. Please work with us in getting there as soon as we mutually can do so. All the best.

Jim

James P. Clark
Chief Deputy City Attorney
800 City Hall East
200 N. Main St.
Los Angeles, CA 90012
(213) 978-8347

*****************Confidentiality Notice *************************
This electronic message transmission contains information
from the Office of the Los Angeles City Attorney, which may be confidential or protected by the attorney-client
privilege and/or the work product doctrine. If you are not the intended recipient, be aware that any disclosure, copying,
distribution or use of the content of this information is prohibited. If you have received this communication in
error, please notify us immediately by e-mail and delete the original message and any attachments without
reading or saving in any manner.
*****************************************************************

Please consider the environment before printing this email.

From: okojielaw [mailto:info@okojielaw.com]
Sent: Wednesday, June 29, 2016 2:40 PM
To: Jennifer Klar; David Iyalomhe; Michael Allen
Cc: John Relman
Subject: RE: Settlement Status - 504 and False Claim Cases

Ms. Klar,

Thank you for your email of earlier today.

The FHC's position is simple: The City should fully and completely execute the Settlement Agreement in which it fully, deftly, and actively negotiated with the three the FHC and its two co-plaintiffs. The terms of the Settlement Agreement are substantially derived from the Term Sheet which, again, the City actively took part in creating.

The FHC therefore maintains that the City's current demand that it would not fully execute the Settlement Agreement it fully participated in the crafting of all of the terms in the finalized version is not only unreasonable, but is a classic example of bad faith, bordering on extortion. Indeed, recall that your firm indicated that the City objected to and refused to included several of FHC's suggested and recommended provisions into the finalized version of the Settlement Agreement.

So, here's what the FHC wants your firm to do: To immediately advise the City that if it is unwilling to completely execute the Settlement Agreement which (a) it fully participated in producing, (b) an Agreement which its Manager and counsel of record have initialed, (c) an Agreement which all of the Plaintiffs were rushed into executing because of a deadline imposed by the City itself, and (d) an Agreement which the Plaintiffs have reasonably and detrimentally relied upon, then Plaintiffs will seek court intervention compelling the City to be bound by the Settlement Agreement.

If, for any reason(s), your firm is unable or unwilling to seek Court intervention as the FHC has directed you to do , David and me, as co-counsel to the FHC in this action, are prepared to do so; and to do so right away.

**Date:**   June 22, 2016  8:22 AM
**From:**   Michael Allen <MAllen@RelmanLaw.com>
**To:**      Sharon Kinlaw  <SKinlaw@gmail.com>;  Sharon Kinlaw <SKinlaw@FairHousingCouncil.org>;
Odion Okojie <OkojieLaw@aol.com>;  David Iyalomhe <David@doiaLaw.com>;
Michelle White <AFFHsgServices@sbcGlobal.net>;  Don Bagwell <DBagwell@SkylineHomeLoans.com>;
Loretta Kelly-Denkins  <NetLoretta1@hotmail.com>;  Juanita Bankhead <JBankhead@LAFireCU.org>
**Cc:**      Jennifer Klar <JKlar@RelmanLaw.com>;  John Relman <JRelman@RelmanLaw.com>
**Subject:** Update on LA Accessibility Matters

All:

We write with an important update and to identify a key decision-point for the FHC.

The City Attorney's office has told us that – pursuant to the instructions of the City Council - it is prepared to sign and submit the Settlement Agreement to Judge Olguin only after FHC provides a response to a question the City Council has asked related to the False Claims Act case.  The question is as follows:  Would the FHC oppose a decision by the U.S. Department of Justice to take into account the terms of the 504 settlement in its resolution of the False Claims Act case?

Clearly, linking these two cases in any way was not something that the City or we agreed to in the April 2016 Term Sheet, and was not part of the negotiated final Settlement Agreement.  But apparently some members of the City Council have insisted on obtaining this assurance **for political reasons as a condition for moving forward on the 504 settlement.**  We, like you, are frustrated by this new request, but believe there is a simple response that will allow the 504 matter to reach immediate final resolution and not compromise any interest you have in the False Claims Act case.

**We recommend that the FHC respond that it will not oppose a DOJ decision to take settlement of the 504 case into account.**  As a matter of law and federal government policy, DOJ has the right to consider any relevant circumstance it deems appropriate in resolving the False Claims Act case (including the terms of the 504 settlement).  This is DOJ's right, and we cannot change it whether we like it or not.  If a final settlement is reached in the False Claims Act case, DOJ will still be required to ask the FHC whether it objects to the terms of the False Claims Act settlement as not being "fair, adequate and reasonable under all the circumstances."  If you decide it is not fair and reasonable, you would still have the right to object and seek a hearing in Court.  DOJ will only seek FHC's opinion in the event it reaches a False Claims Act settlement with the City, and if it reaches a settlement it must ask whether you will object.  Thus, agreeing not to object to the fact that DOJ is simply taking the settlement into account gives up nothing.  DOJ can take the 504 settlement into account whether we like it or not, and saying you will not object to its doing so still leaves you with all of your rights to object should you decide to do so once you see the final terms of the False Claims Act final settlement.

**Telling the City the FHC will not object to DOJ taking the 504 settlement into account will satisfy whatever political concern will allow the 504 settlement to move forward to Judge Olguin for immediate approval,** and leaves fully intact all of your rights to object in the False Claims Act case.

The City is ready to reach immediate closure on the 504 settlement once this question is answered.  Specifically, that means the settlement will move forward to final approval and submission to the Court for entry of the Settlement.  We cannot predict what will happen if you don't provide this assurance.  As you know, no settlement is final without City Council approval.  If there is no approval, the case would return to litigation.  We are happy to discuss any of this with Odion, David, the Board, and the Executive Director and staff of FHC (or any combination thereof).

In her email of June 15, Sharon suggested that she would like FHC to talk with Lisa Palombo regarding this issue and asked for her contact information.  We provided that information, and also inquired of Lisa concerning her availability.  She suggested that any call should also include Eric Schmelzer, a

DOJ attorney in Washington, D.C.   Lisa offered times for the morning of Monday June 20, and we passed that information on to Sharon.   In response to Sharon's instructions, we informed Lisa that FHC was unavailable to speak during that time period.   In order to facilitate that call, I would ask that FHC provide its availability, and we can be in touch with Lisa to confirm a time that works for all relevant parties.

Kindly let us know how you would like to proceed.

Best wishes.

Jennifer Klar
Michael Allen

**Michael Allen**
Relman, Dane & Colfax, PLLC
1225 19th Street, N.W. #600
Washington, D.C.   20036-2456
Phone:  202/728-1888
FAX:  202/728-0848
E-mail:  MAllen@RelmanLaw.com
Website:  www.RelmanLaw.com
Admitted to Practice in the District of Columbia and Virginia

NOTE:  I CHECK AND RESPOND TO EXTERNAL E-MAIL TWICE A DAY - AT 10:00 A.M. AND AGAIN AT 3:00 P.M.  IF YOU NEED TO REACH ME AT OTHER TIMES, PLEASE CALL OUR RECEPTIONIST, AT 202/728-1888.

NOTICE:  The contents of this email and any attachments to it contain confidential or legally privileged information from the law firm of Relman, Dane & Colfax PLLC.  This information is only for the use of the intended recipient.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the comments of the contained information is strictly prohibited and that the documents should be returned to this firm immediately.  If you have received this email in error, please notify us by email immediately.

Please consider the environment before printing this email.

---

**From:** Odion - <okojielaw@aol.com>
**Date:** June 22, 2016 at 3:53:42 PM PDT
**To:** Michael Allen <mallen@relmanlaw.com>
**Cc:** David Iyalomhe <david@doialaw.com>, Sharon Kinlaw <skinlaw@gmail.com>, "fyi123@pacbell.net" <fyi123@pacbell.net>
**Subject: RE: Update on LA accessibility matters**

Dear Counsel:


Regarding your email of earlier today, please note that the Council is considering your office's assertion that the entire settlement agreement of the plaintiffs in the 504 case will unravel unless the Council signs off on another, unrelated, and unanticipated agreement in connection with the False Claims case.  Our understanding is that the two cases were not supposed to be linked in any way and manner.


The Council asks that you provide us with all written communication between your office and the City's attorneys regarding all post settlement agreement negotiations and discussions regarding the basis of the side agreement.  We have previously asked for this information and have yet to receive any response from your office.  What exactly is the City demanding that the Council sign off on?  The Council will not and should not be put in the awkward position of being a deal breaker of a settlement involving two other plaintiffs.  What exactly is the City demanding of the Council and what, if any, new consideration is the Council receiving for signing the new and additional term?


Again, provide us with the above requested documents and information.  Since time is of the essence your immediate cooperation will be greatly appreciated.

Scott Parrish Moore, (*pro hac vice pending*)
Anthony D. Todero, Cal. Bar No. 275315
BAIRD HOLM LLP
1500 Woodmen Tower
1700 Farnam St
Omaha, NE 68102-2068
Telephone: 402-344-0500
Facsimile: 402-344-0588
Email: spmoore@bairdholm.com

Attorneys for Plaintiff
MEI LING

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MEI LING and FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY,<br><br>            Plaintiffs,<br><br>            v.<br><br>CITY OF LOS ANGELES, CALIFORNIA and COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES,<br><br>            Defendants. | No. CV 11-00974 PSG (JCx)<br><br>DECLARATION OF SHARON KINLAW IN SUPPORT OF MEI LING'S CONSENT TO LEAVE & OBJECTION TO NOTICE OF LIEN |

I, Sharon Kinlaw, having personal knowledge of the facts contained in this declaration and being competent to testify to them, hereby state as follows:

1.      I am the Director of the Fair Housing Council of San Fernando Valley ("FHC").

2.      I submit this declaration in support of Mei Ling's Consent to Leave and Objection to the Notice of Lien proposed by Relman, Dane, & Colfax PLLC (the "Relman Firm").

3.      The Relman Firm represented the FHC as co-relator in this matter (the "False Claims Case") until the FHC terminated its services in or around January 2017.

4.      The Relman Firm also represented the FHC in the matter styled *Independent Living Center of Southern California v. City of Los Angeles*, No. 2:12-cv-00551 (the "Section 504 Case") in which the plaintiffs alleged that the City of Los Angeles and others violated Section 504 of the Rehabilitation Act by failing to ensure that housing receiving federal financial assistance from the United States Department of Housing and Urban Development ("HUD") included required accessibility features.

5.      On or about August 4, 2016, the court in the Section 504 Case entered a judgment pursuant to a settlement agreement by and between the plaintiffs and the City of Los Angeles under which the City agreed to, among other things, pay $200 million over a ten-year period to address the inaccessibility of the housing.  The City also agreed to pay the Relman Firm over $16,000,000 in attorney's fees and costs in connection with the

2

settlement.

6.    The FHC had signed a settlement agreement with the City, but the FHC had not yet received a signed copy of the agreement with the City.  Therefore, the FHC contacted the Relman Firm to determine what was happening.  The Relman Firm informed the FHC that the City Council was required to review and approve the settlement agreement and the City Council would not approve the settlement agreement without a "side agreement"  The Relman Firm also indicated the "side agreement" would not be included in the settlement agreement or any filing with the Court.  Under this "side agreement," the FHC would not oppose the City's assertion that it should receive a "credit" for the amount paid in the Section 504 Case in the settlement of the False Claims Case.

7.    In addition to discussions over the telephone and in person with the Relman Firm's attorneys, Michael Allen sent emails to FHC on June 22, 2016 and June 23, 2016, in which he expressly recommended that the FHC not oppose the City's assertion that the settlement of the 504 should be taken into account in settling the False Claims Case. A true and accurate copy of the emails are attached hereto as Exhibit A1 and A2.

8.    I am authorized by the FHC to make a knowing and voluntary waiver of the attorney-client privilege with regard to the two emails described in this declaration as well as any other communication with the Relman Firm regarding its recommendation that FHC inform DOJ that it would not oppose giving the City a "credit" for the amount

3

paid in the Section 504 Case in the settlement of the False Claims Case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _____ August 4, 2017

Sharon Kinlaw

DOCS/1922939.2

4

# Declaration of Fredrick Newell

I, **FREDRICK NEWELL, declare that:**

**1.** The information set forth below is known to me through firsthand knowledge. I am a resident of St. Paul Minnesota, and if called to testify as a witness, I would and could competently testify under oath about the following facts:

**2.** I was the Relator in the False Claims Act Case 09-SC001177 (D. Minn.), which was the subject of investigation by the House Comm. on Oversight and Gov't Reform, and both the Senate and the House Committees on the Judiciary. The Joint Staff Report to the https://republicans-**oversight.house.gov**/wp-content/uploads/2013/04/**DOJ-St-Paul**.pdf 113th Congress details former Asst. A.G. Thomas Perez's Quid Pro Quo with St. Paul - by manipulating justice and ignoring rules of law. DOJ's supporting documents to the Report https://republicans-oversight.house.gov/wp-content/uploads/2013/04/Appendix-I-**Docs**.pdf reveals facts that by November 22, 2011 - my FCA case rose to the level of intervention by the Dept. of Justice, with concurrence by HUD (see DOJ Docs. at pgs 3 -26, and Report).

**3.** Under false pretenses in August 2010, HUD's Region 5 Director Maury McGough pursuaded my *then* counsel Thomas DeVincke - to have me retain Relman Dane Colfax's attorney Michael Allen as his co-counsel in my FCA case, based on Allen's 2009 settlement in his "Westchester, N.Y." FCA case, and his very close association with HUD's Sara Pratt. It was <u>not</u> disclosed to me at this time - the reason for RDC's co-counsel agreement, was to provide Michael Allen and John Relman a guise to meet with St. Paul city officials <u>for</u> DOJ's **Tom Perez** - to use my FCA case as leverage to take an unrelated "disparate impact" case off the Supreme Court's calendar. I learned about Perez's and Pratt's secret Quid Pro Quo 8 months <u>after</u> it occurred when an investigators called in Oct. 2012, to meet with me about their Congressional investigation of Perez's violating rules of law and manipulations using my FCA case. Pretending to be "co-counsel" - Michael Allen and John Relman **concealed** they were **agents** to DOJ's Tom Perez and HUD's Sara Pratt, to <u>derail</u> St. Paul's "Magner" disparate impact case, by knowingly leveraging my FCA case and forfeiting my interests.

1

**Sent:**   **Thursday, February 09, 2012  6:13 PM**
**From:**   **Thomas F. DeVincke  <TFD@mgmllp.com>**

2

**To:**     **Fredrick Newell  <nael@qwest.net>;  Michael Allen  <MAllen@RelmanLaw.com>**
**Subject:  Update**

3

**Gentlemen:**  About an hour ago, the Dept. of Justice officially declined the FCA action.   I am in a

4

deposition right now, but I wanted to get the bad news out right away.  We can talk tomorrow.  Tom

**Thomas F. DeVincke**

5

**Malkerson Gunn Martin  LLP**

6

_____  then after the Feb. 12, 2012 Quid  Pro Quo occurred  _____

**Sent:**   **Tuesday, February 14, 2012  8:46 AM**

7

**From:**   **Michael Allen < MAllen@RelmanLaw.com>**
**To:**     **Thomas F. DeVincke  <TFD@BDBLLP.com>**
**Subject: RE: Article**

8

... We knew that Magner was a brewing problem  (recall that we quietly tried to derail  it ...)

9

... John Relman and I visited with Sara Grewing when we were in town in November  (to confer with

Shoemaker and Engel about how to stop this train wreck of a case from going to decision by the

10

Supremes), and came away convinced  (and distressed) that the City was going to put the pedal to the
metal in its brief, which it clearly did.

11            4.     Once the Quid Pro Quo was achieved on Feb. 10, 2012, Michael Allen withdrew

12   as counsel and refused to provide me with an explanation. Tom DeVincke who became my

13   counsel in 2005, went through the motions of pretending to act as counsel in my FCA case,

14   *which proceeded without DOJ's intervention* - fully knowing DOJ and HUD measures were

15   fabricated to reach predisposed denial outcomes.  It was concealed from me in 2011 - that

16   DOJ and HUD arranged a "pass the hat" fund for attorney DeVincke's fees and damages.

17

**From:**     Pratt, Sara K [RC-1 ████████]

18

**Sent:**     Sunday, November 13, 2011 2:59 PM
**To:**       Perez, Thomas E (CRT)
**Subject:**  Magner

19

20

Michael Allen and John Relman are going to meet with the appellees counsel a week from tomorrow (next Monday) to
find out what blandishments will be needed.  For one of the attorneys, passing the hat may be necessary—there ARE

21

still some fees and damages questions. There are other efforts going on by St. Paul players (Myron Orfield, Jay
Wilkinson) with the city players and lawyers.

22

Sara K. Pratt
Deputy Assistant Secretary for Enforcement and Programs

23

Department of Housing and Urban Development
451 Seventh Street, SW

24

Room ▌RC-1▐
Washington, D.C.  20410

**true and correct copy from DOJ's documents pgs. 27 and 30 of 270**

25

▌RC-1▐     (direct line)

26

**From:**     Perez, Thomas E (CRT)
**Sent:**     Wednesday, November 23, 2011 2:29 PM

27

**To:**       Sara Pratt ████████
**Subject:**  Re: Magner

28

Can u call me asap at 202 ▌RC-1▐

1    **5.**    I learned this in April 2013 from documents provided me from the Congressional

2    investigation.  It explained why:  **a)** Thomas DeVincke suddenly left the Bonner & Borhart

3    law firm in Feb. 2012, concurrent with Tom Perez finalizing his Quid Pro Quo;  **b)** DeVincke

4    never asked me for $127,000 of legal fees for 8+ years of representation; and  **c)** DeVincke

5    stating his abrupt departure related to irreconsilible differences with the firm, who could not

6    engage in or deposit ill-begotten "Quid Pro Quo pass the hat funds" into the firm's account.

7        **6.**    Another close associate who Michael Allen deferred to relating to my FCA case,

8    was DOJ's senior trial attorney **William Edgar**.  After numerous stipulations for this case to

9    remain under seal - in Sept. 2011, there were opportunities to partner with entities aligned

10   with providing jobs to St. Paul's low income community - requiring a "partial lift" of the seal

11   to discuss and launch related structural plans.  Michael Allen advised against a "partial lift"

12   after he conferred with "Bill" Edgar, stating that the DOJ was close to its December 1, 2011

13   intervention decision date.  Michael Allen, John Relman, and Bill Edgar did <u>not</u> disclose to

14   me they were secretly coordinating with Tom Perez & Eric Holder to knowingly and willfully

15   use my FCA case as a Quid Pro Quo "leverage" piece to "derail" the St. Paul Magner case

16   from being heard and decided by the Supreme Court. By refusing to permit a "partial lift" of

17   the seal - Allen, Relman, Edgar, Pratt, Perez and Holder - each knowingly and intentionally

18   made <u>false</u> representations adverse to this Relator and the St. Paul community, in order to

19   advance their agenda by manipulating justice and laws, to accomplish their Quid Pro Quo.

20       **7.**    The Congressional documents revealed that agents in DOJ's Civil Fraud Division

21   involved in Tom Perez's Quid Pro Quo with *then* Attorney General Eric Holder, leveraging

22   my FCA case – included Bill Edgar, Eric Schmelzer, Sara McLean and Michael Granston.

23   As a result of their joint abuse of powers, the St. Paul community was irreparably harmed.

24       **8.**    The 2/9/12, and 2/14/12 emails between DeVincke and Allen are true and correct.

25       **9.**    I declare under penalty of perjury, under the laws of the United States, that the

26   foregoing is true and correct.

27

28   March 10, 2018                    by _____
                                             Pastor Fredrick Newell

Declaration of Fredrick Newell                    - 3 -

1 Donald R. Warren (CA 138933)
Warren - Benson Law Group
2 7825 Fay Ave., Ste. 200
La Jolla, CA 92037
3 Tel: 858-454-2877
Fax: 858-454-5878
4 donwarren@warrenbensonlaw.com

5 Phillip E. Benson (CA 97420)
Warren - Benson Law Group
6 620 Newport Center Dr., Ste 1100
Newport Beach, CA 90630
7 Tel: 949-721-6636
Fax: 858-454-5878
8 philbenson@warrenbensonlaw.com

9 Attorneys for Defendant/Counterclaimant
Fair Housing Council of San Fernando Valley

10

11

12                  UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF CALIFORNIA
13                         WESTERN DIVISION

| | |
|---|---|
| 14  RELMAN, DANE & COLFAX PLLC, | CASE NO. 2:19-cv-08612 CAS (AFMx) |
| 15           Plaintiff, | |
| 16       v. | FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY'S |
| 17  FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY AND MEI LING, | FIRST AMENDED |
| 18 | ANSWER |
| 19           Defendants. | and |
| 20 | |
| 21  FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY AND MEI LING, | COUNTERCLAIMS FOR DECLARATORY JUDGMENT and PROFESSIONAL NEGLIGENCE |
| 22 | |
| 23           Counterclaimants, | |
| 24       vs. | |
| 25  RELMAN, DANE & COLFAX PLLC, | |
| 26           Counterdefendant. | |
| 27 | |

28

1       Defendant Fair Housing Council of San Fernando Valley ("FHC") by and

2 through its undersigned counsel, files this first amended answer and separate

3 defenses to the Complaint ("Complaint") of Plaintiff Relman, Dane & Colfax,

4 PLLC ("Relman") and Counterclaims for Declaratory Judgment and Professional

5 Negligence and states as follows.

6                   **FHC's Answer to Complaint**

7       The unnumbered section preceding "Nature of Action" as well as the

8 unnumbered section headings throughout the Complaint are surplusage to which

9 no answer is required. To the extent that an answer is required, FHC denies these

10 allegations.

11       1.     FHC denies the allegations in Paragraph 1.

12       2.     FHC admits Relman filed a  False Claims Act ("FCA") lawsuit in

13 which the FHC and Defendant Ms. Ling ("Ling") serve as relators, alleging that

14 the City of Los Angeles ("City") and a related defendant submitted false claims to

15 the United States Government in order to receive hundreds of millions of dollars

16 of federal housing and community development funds. To the extent a response is

17 deemed necessary, FHC states that the statute referenced in Paragraph 2 speaks for

18 itself.  FHC denies the remainder of the allegations in Paragraph 2.

19       3.     FHC admits FHC and Relman entered into a fee agreement in 2010

20 for Relman's representation of the FHC in the FCA lawsuit.  FHC admits Ling and

21 Relman entered into a separate fee agreement in 2010 for Relman's representation

22 of Ling in the FCA lawsuit.  FHC denies the remainder of the allegations in

23 Paragraph 3.

24       4.     FHC denies the allegations in Paragraph 4.

25       5.     FHC is without sufficient knowledge or information to form a belief

26 as to the truth of the allegations contained in Paragraph 5, and on that basis denies

27 each and every allegation contained therein.

28       6.     The text of paragraph 6 is irrelevant surplusage to which no answer is

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 52 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 68   Filed 10/28/19   Page 3 of 23   Page ID #:861
#:1004

1   required. To the extent that an answer is required, FHC denies these allegations.

2         7.     The text of paragraph 7 is irrelevant and argumentative surplusage to

3   which no answer is required. To the extent that an answer is required, FHC denies

4   these allegations.

5         8.     The text of paragraph 8 is irrelevant and argumentative surplusage to

6   which no answer is required. To the extent that an answer is required, FHC denies

7   these allegations.

8         9.     FHC admits Ms. Ling claimed in an August 2017 court filing that

9   "the Relman Firm . . . forfeited any fee to which it may have been entitled by

10   breaching its fiduciary duty to Ms. Ling." FHC admits its counsel notified Relman

11   that the FHC "has opted to void" its agreement with Relman Firm.  FHC denies

12   the remainder of the allegations in Paragraph 9.

13        10.    FHC denies the allegations in Paragraph 10.

14        11.    FHC admits the allegations in Paragraph 11.

15        12.    FHC admits this matter is now ripe for judicial review.  FHC denies

16   the remainder of the allegations in Paragraph 12.

17        13.    FHC admits the allegations in Paragraph 13.

18        14.    FHC admits the allegations in Paragraph 14.

19        15.    FHC admits the allegations in Paragraph 15.

20        16.    FHC admits the allegations in Paragraph 16.

21        17.    FHC denies the allegation in Paragraph 17 that venue was proper in

22   the District of Columbia and that a substantial part of the events or omissions

23   giving rise to the claim occurred in the District of Columbia.  FHC admits venue is

24   proper in the Central District of California.

25        18.    FHC denies the allegations in Paragraph 18.

26        19.    FHC denies the allegations in Paragraph 19.

27        20.    FHC is without sufficient knowledge or information to form a belief

28   as to the truth of the allegations contained in Paragraph 20, and on that basis

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 53 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 4 of 23   Page ID #:862
#:1068

1    denies each and every allegation contained therein.

2         21.    FHC is without sufficient knowledge or information to form a belief

3    as to the truth of the allegations contained in Paragraph 21, and on that basis

4    denies each and every allegation contained therein.

5         22.    FHC denies the allegations in Paragraph 22.

6         23.    FHC admits FHC and Relman entered into a fee agreement in 2010

7    for Relman's representation of the FHC in the FCA lawsuit.  FHC admits Ling and

8    Relman entered into a separate fee agreement dated December 8,  2010 for

9    Relman's representation of Ling in the FCA lawsuit.  FHC denies the remainder of

10   the allegations in Paragraph 23.

11        24.    FHC admits the fee agreements were signed on behalf of the Relman

12   Firm by Michael Allen, one of its partners.  FHC is without sufficient knowledge

13   or information to form a belief as to the truth of the remainder of the allegations

14   contained in Paragraph 24, and on that basis denies each and every remaining

15   allegation contained therein.

16        25.    FHC admits the Relman firm's principal place of business is in the

17   District of Columbia and is incorporated there as well.  FHC is without sufficient

18   knowledge or information to form a belief as to the truth of the remainder of the

19   allegations contained in Paragraph 25, and on that basis denies each and every

20   remaining allegation contained therein.

21        26.    FHC denies the allegations in Paragraph 26.

22        27.    As to Paragraph 27, FHC denies the Agreement provides "In general

23   terms," that if the FHC or Ms. Ling receive a "lump sum settlement or offer

24   of judgment" or prevails at summary judgment or trial, the FHC and Ms. Ling

25   agreed to pay the Relman Firm the Firm's lodestar fees or one-third (33 1/3%) of

26   their monetary award, whichever is greater.  FHC admits that the Agreement

27   provides in specific terms that if the FHC or Ms. Ling receive a "lump sum

28   settlement or offer of judgment" that provides for a monetary award to the client

3    FHC's Amended Answer and Counterclaims

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 54 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 5 of 23   Page ID #:863
#:1068

1  but makes no separate provision for fees and waives the client's right to seek

2  court-awarded fees or prevail at summary judgment or trial, the FHC and Ms. Ling

3  agreed to pay the Relman Firm the Firm's lodestar fees or one-third (33 1/3%) of

4  their monetary award, whichever is greater.

5      28.   FHC admits its fee agreement with Relman purports to state the fee

6  agreement "shall be governed in accordance with the laws of the District of

7  Columbia[.]" FHC denies the remainder of the allegations in Paragraph 28.

8      29.   FHC denies the allegations in Paragraph 29 to the extent they suggest

9  the pre-filing investigation was done by Relman without the substantial work and

10  investigation performed by the FHC.

11      30.   FHC denies the allegations in Paragraph 30 to the extent they suggest

12  the pre-filing investigation was done by Relman without the substantial work and

13  investigation performed by the FHC.

14      31.   FHC admits the allegations in Paragraph 31.

15      32.   FHC is without sufficient knowledge or information to form a belief

16  as to the truth of the allegations contained in Paragraph 32, and on that basis

17  denies each and every allegation contained therein, except FHC admits the case

18  remained under seal for more than six years and that Los Angeles and the

19  Community Redevelopment Agency had violated their certifications of

20  compliance with the Section 504 and FHA accessibility requirements, which were

21  preconditions to their eligibility to receive federal funds.

22      33.   FHC is without sufficient knowledge or information to form a belief

23  as to the truth of the allegations contained in Paragraph 33, and on that basis

24  denies each and every allegation contained therein.

25      34.   FHC is without sufficient knowledge or information to form a belief

26  as to the truth of the allegations contained in Paragraph 34, and on that basis

27  denies each and every allegation contained therein.

28      35.   FHC is without sufficient knowledge or information to form a belief

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 55 of 75   Page ID
#:11001
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 6 of 23   Page ID #:864

as to the truth of the allegations contained in Paragraph 35, and on that basis

denies each and every allegation contained therein.

36.     FHC admits the allegations in Paragraph 36.

37.     FHC denies Relman is entitled to fees in the FCA case under the

terms of the fee agreement.  FHC admits the remainder of the allegations in

Paragraph 37.

38.     FHC admits the allegations in Paragraph 38.

39.     FHC is without sufficient knowledge or information to form a belief

as to the truth of the allegations contained in Paragraph 39, and on that basis

denies each and every allegation contained therein.

40.     FHC denies the allegations in Paragraph 40.

41.     FHC denies the allegations in Paragraph 41.

42.     FHC denies the allegations in Paragraph 42.

43.     FHC denies the allegations in Paragraph 43.

44.     FHC denies that Relman is contractually entitled to one-third of any

recovery in the FCA case.  The FHC admits the remainder of the allegations in

Paragraph 44.

45.     FHC is without sufficient knowledge or information to form a belief

as to the truth of the allegations contained in Paragraph 45, and on that basis

denies each and every allegation contained therein.

46.     FHC admits it terminated the Relman firm as its counsel in December

2016.  The FHC denies the remainder of the allegations in Paragraph 44.

47.     FHC admits it terminated the Relman firm as its counsel on December

18, 2016 by email and sent a copy of the notice of termination to Government

counsel.  The FHC denies the remainder of the allegations in Paragraph 47.

48.     FHC admits Ms. Ling terminated the Relman firm as its counsel. FHC

is without sufficient knowledge or information to form a belief as to the truth of

the remaining allegations contained in Paragraph 48, and on that basis denies each

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 56 of 75   Page ID
#:11008
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 7 of 23   Page ID #:865

1   and every remaining allegation contained therein.

2       49.    FHC denies the allegations in Paragraph 49.

3       50.    FHC admits FHC's new counsel informed the Relman Firm's counsel

4   that the FHC "has opted to void [the FHC's Agreement]."  FHC denies the

5   remaining allegations in Paragraph 50.

6       51.    FHC denies the allegations in Paragraph 51.

7       52.    FHC denies the allegations in Paragraph 52.

8       53.    FHC denies the allegations in Paragraph 53.

9       54.    FHC incorporates by reference its answers to all paragraphs as if set

10  forth fully in response to Paragraph 54.

11      55.    FHC admits there is now a genuine and bona fide dispute and an

12  actual controversy and disagreement between Relman and the Defendants as to

13  Relman's entitlement to fees for its representation of Defendants in the False

14  Claims Act case.  FHC denies the remainder of the allegations in Paragraph 55.

15      56.    FHC denies the allegations in Paragraph 56.

16      57.    FHC denies the allegations in Paragraph 57.

17      58.    FHC admits the allegations in Paragraph 58.

18      59.    FHC denies the allegations in Paragraph 59.

19      60.    FHC denies the allegations in Paragraph 60.

20      61.    FHC admits there is now a genuine and bona fide dispute and an

21  actual controversy and disagreement between Relman and the Defendants as to

22  Relman's entitlement to fees for its representation of Defendants in the False

23  Claims Act case.  FHC denies the remainder of the allegations in Paragraph 61.

24      62.    Paragraph 62 contains no factual allegations, and therefore an answer

25  to this paragraph is not required.  To the extent an answer is required, FHC denies

26  that Relman is entitled to the relief requested.

27      63.    Paragraph 63 contains no factual allegations, and therefore an answer

28  to this paragraph is not required.  To the extent an answer is required, FHC denies

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 57 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 8 of 23   Page ID #:866
#:31000

1   that Relman is entitled to the relief requested.

2       64.    FHC incorporates by reference its answers to all paragraphs as if set

3   forth fully in response to Paragraph 64.

4       65.    FHC denies the allegations in Paragraph 65.

5       66.    FHC denies the allegations in Paragraph 66.

6       67.    FHC denies the allegations in Paragraph 67.

7       68.    FHC denies the allegations in Paragraph 68.

8       69.    Except as specifically admitted herein, FHC denies each and every

9   allegation of the Relman Complaint. To the extent any headings or footnotes in the

10   Complaint are considered separate allegations, FHC denies them. FHC further

11   denies that Relman is entitled to any relief whatsoever, whether as requested in its

12   prayer for relief or otherwise. Relman's prayer for relief should be denied in its

13   entirety and Relman should take nothing from FHC. FHC asks that judgment be

14   entered for FHC and that FHC be awarded its costs and such other relief the Court

15   deems appropriate.

16   **SEPARATE DEFENSES**

17       70.    FHC asserts these defenses, without assuming the burden of proof

18   regarding any defenses for which Relman carries the burden of proof, and reserves

19   the right to assert additional defenses when they become appropriate.

20   **FIRST DEFENSE**

21       71.    As a first affirmative defense, defendant FHC asserts that the

22   contingency fee agreement upon which Relman bases its claim has been voided

23   and is void  pursuant to California Business and Professions Code §6147.

24   **SECOND DEFENSE**

25       72.    As a second affirmative defense, defendant FHC asserts that the

26   contingency fee agreement upon which Relman bases its claim is invalid based on

27   a conflict of interest caused by the plaintiff's simultaneous representation of

28   clients with potential or actual adverse interests without obtaining a proper

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 58 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 9 of 23   Page ID #:867
#:910

conflict waiver.

## **THIRD DEFENSE**

73.   As a third affirmative defense, defendant FHC asserts that the contingency fee agreement upon which Relman bases its claim is invalid based on Relman's breaches of fiduciary duty to the FHC including, but not limited to, Relman's disclosure of the sealed qui tam complaint in case no. 11-cv-00974 to its other clients in case no. 12-CV-00551 without FHC's knowledge or consent in violation of Cal. Business and Professions Code § 6068(e)(1), Relman's false representations to FHC that co-relator Mei Ling had approved a side agreement that FHC would not oppose an attempt by the City of Los Angeles to obtain a credit in the False Claims Act case (11-cv-00974) for the amount of its settlement in case no. 12-CV-00551, and Relman's advocating against FHC's interests and in support of the interests of Relman's other co-clients in case no. 12-CV-00551 without FHC's informed consent, by adversely advocating in the presence of Relman's other co-clients that FHC should receive a lesser percentage of the settlement proceeds in case no. 12-CV-00551 so that Relman's other co-clients in that matter could receive a larger settlement which far outweighed their damage claims, in violation of Cal. Rule of Professional Conduct 3-310(C)(2).

## **FOURTH DEFENSE**

74.   As a fourth affirmative defense, defendant FHC asserts that it terminated Relman's representation in the False Claims Act case (11-cv-00974) for cause for Relman's violations including, but not limited to, Relman's disclosure of the sealed qui tam complaint in case no. 11-cv-00974 to its other clients in case no. 12-CV-00551 without FHC's knowledge or consent in violation of Cal. Business and Professions Code § 6068(e)(1), Relman's false representations to FHC that co-relator Mei Ling had approved a side agreement that FHC would not oppose an attempt by the City of Los Angeles to obtain a credit in the False Claims Act case (11-cv-00974) for the amount of its settlement

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 59 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 10 of 23   Page ID #:868
#:11011

1   in case no. 12-CV-00551, and Relman's advocating against FHC's interests and in

2   support of the interests of Relman's other co-clients in case no. 12-CV-00551

3   without FHC's informed consent, by adversely advocating in the presence of

4   Relman's other co-clients that FHC should receive a lesser percentage of the

5   settlement proceeds in case no. 12-CV-00551 so that Relman's other co-clients in

6   that matter could receive a larger settlement which far outweighed their damage

7   claims, in violation of Cal. Rule of Professional Conduct 3-310(C)(2).

8   **COUNTERCLAIMS BY DEFENDANT/COUNTERCLAIMANT**

9   **FHC AGAINST PLAINTIFF/COUNTERDEFENDANT**
    **RELMAN FOR DECLARATORY JUDGMENT**

10  **AND PROFESSIONAL NEGLIGENCE**

11  75.     Counterclaimant FHC brings its counterclaims against

12  counterdefendant Relman for declaratory judgment and professional negligence

13  and, in support thereof, alleges as follows.

14  **JURISDICTION & VENUE**

15  76.     This Court has jurisdiction over the counterclaims pursuant to 28

16  U.S.C. § 1332 and supplemental jurisdiction pursuant to 28 U.S.C § 1367(a).  At

17  all relevant times, the parties were of diverse citizenship, and the amount in

18  controversy exceeds $75,000.

19  77.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391

20  because defendant/counterclaimant FHC has its principal place of business in this

21  district and a substantial part of the events or omissions giving rise to the

22  counterclaims occurred in this district.

23  **PARTIES**

24  78.     Counterclaimant FHC is a non- profit fair housing organization

25  incorporated under the laws of the State of California with its principal place of

26  business in Panorama City, California. FHC's mission is to eliminate housing

27  discrimination and to expand housing choices for people with disabilities and

28  members of other classes protected under federal and state civil rights and equal

9     FHC's Amended Answer and Counterclaims

1   opportunity statutes and regulations. FHC engages in a number of activities to

2   further its mission of promoting equal housing opportunities including, but not

3   limited to: education programs in the community; training  programs for real estate

4   professionals and the general public; and fair housing counseling.

5          79.   Counterdefendant Relman is a professional limited liability company

6   of attorneys engaged in the practice of law under the laws of the District of

7   Columbia with its principal place of business in the District of Columbia. At all

8   times mentioned in this counterclaim and in doing the things alleged in this

9   counterclaim, Relman's attorneys were the agents and employees of Relman acting

10  within the course and scope of that employment and were either licensed to

11  practice law in the State of California or admitted *pro hac vice* in the FCA case

12  filed in the U.S. District Court, Central District of California, as Case No.11-cv-

13  00974.

14                **COUNTERCLAIM FOR DECLARATORY JUDGMENT**

15         80.   Counterclaimant FHC employed counterdefendant Relman on

16  December 8, 2010 under a contingency fee contract (Agreement) to represent the

17  FHC in an FCA suit to be commenced against the City of Los Angeles (City) and

18  the Community Redevelopment Agency of the City of Los Angeles (CRA) based

19  on the alleged submission of false statements and false claims by these municipal

20  entities to the United States Government in order to receive Community

21  Development Block Grants (CDBG) and related funds and payments from the

22  United States.

23         81.   Relman, alone, drafted the Agreement.

24         82.   Relman pre-signed the Agreement and then sent it to FHC for

25  signature.

26         83.   Relman never explained the terms of the Agreement to FHC prior to

27  FHC's execution of the Agreement.

28         84.   Relman never discussed the terms of the Agreement with FHC prior

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 61 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 12 of 23   Page ID #:870
#:11619

1   to FHC's execution of the Agreement.

2       85.    The Agreement did not include the statement, as required by Cal.

3   Bus. & Prof. Code § 6147: "the fee is not set by law but is negotiable" between

4   attorney and client.

5       86.    The Agreement did not state what percentage of Relman's costs

6   would be charged to the FHC, or charged to co-defendant Ms. Ling, or how the

7   apportionment of costs between Ling and FHC would affect FHC's recovery.

8       87.    Under the Agreement, Relman was entitled to no fees if the FHC

9   recovered nothing in the FCA suit.

10       88.    FHC has exercised its option to void the Agreement with Relman

11   under the provisions of Cal. Bus. & Prof. Code § 6147.  Relman claims that the

12   Agreement has not been voided. An actual controversy has arisen and now exists

13   between the parties relating to Relman's claim that the Agreement has not been

14   voided by FHC's exercise of its statutory right  under Cal. Bus. & Prof. Code §

15   6147. FHC requests that the Court find that the agreement is void under §6147.

16       89.    Relman claims that the Agreement entitles Relman to a contingency

17   fee of one-third (33 1/3%) of any monetary award received by FHC against the

18   CRA and the City. In the event the Court finds FHC's voiding of the Agreement to

19   be invalid, then FHC alternatively asks the Court to issue a declaratory judgment

20   rejecting Relman's claim that it is entitled to a contingency fee of one-third (33

21   1/3%) of any monetary award received by FHC against the CRA and the City.

22   FHC also asks the Court to issue a declaratory judgment that Relman is limited to

23   its reasonable hourly fees incurred on behalf of FHC that FHC recovers from the

24   CRA and the City in the CRA - FHC settlement and in any City - FHC settlement.

25       90.    Under the Agreement, if the FCA litigation was resolved by a lump

26   sum settlement or offer of judgment that provided for a monetary award to the

27   client but made no separate provision for fees and waived the Client (FHC's) right

28   to seek court-awarded fees, Relman would be entitled to one-third (33 1/3%) of

Case 2:11-cv-00974-PSG-JC   Document 307   Filed 11/26/19   Page 62 of 75   Page ID
Case 2:19-cv-08612-JFW-AFM   Document 63   Filed 10/28/19   Page 13 of 23   Page ID #:871
#:11014

1   the monetary award, in addition to costs, or Relman's actual fees and costs under

2   the "lodestar" method reflecting the number of hours worked multiplied by a

3   reasonable hourly rate for the work performed.

4       91.    On behalf of FHC and co-defendant Mei Ling, Relman filed the FCA

5   suit (Case No. 11-cv-00974) on February 11, 2001 against the City and the CRA.

6       92.    There has been no settlement or judgment in the FCA suit against the

7   City and litigation is ongoing.

8       93.    The CRA has entered into a settlement agreement with the United

9   States and the FHC which is awaiting court approval pending a fairness hearing to

10  consider  Ms. Ling's objections to the settlement.

11      94.    The FCA suit against CRA will not be resolved by a lump sum

12  settlement or offer of judgment that makes no separate provision for fees and

13  waives FHC's right to seek court-awarded fees.

14      95.    The settlement of the FCA suit against CRA specifically reserves

15  FHC's right to seek court-awarded fees for the work performed by Relman.

16      96.    Sharon Kinlaw, the Executive Director of the FHC, has advised the

17  Court and Relman that the FHC will reject any settlement agreement or offer of

18  judgment in the underlying FCA suit that makes no separate provision for fees, or

19  that waives its right to seek court-awarded fees. (ECF Doc. 10-2, FHC's Kinlaw

20  Decl., ¶ 14, filed 4/10/18).

21      97.    Relman has admitted that the only settlement scenario in the Retainer

22  Agreement which would entitle Relman to one-third of the FHC's recovery would

23  be an FHC settlement agreement or acceptance of an offer of judgment that makes

24  no separate provision for fees and actually waives its right to seek court-awarded

25  fees - - neither of which applies to the CRA settlement nor will apply to any future

26  settlement by the FHC with the City.

27      98.    In response to Sharon Kinlaw's declaration on this point, Relman

28  stated to the Court that Ms. Kinlaw's declaration is an announcement

1 "that the FHC 'will reject' any settlement that would entitle the Relman Firm to

2 one-third of the FHC's recovery." (ECF Doc. 14, p. 12, fn 5)

3     99.     Under the Retainer Agreement, Relman would be entitled to a one-

4 third contingency fee under only one other scenario: if Relman resolves the

5 litigation in the FCA suit by summary judgment or trial.

6     100.     There has been no summary judgment or trial in Case No.11-cv-

7 00974. Since Relman no longer represents the FHC, Relman cannot resolve the

8 litigation in the FCA suit by summary judgment or trial.

9     101.     If none of the conditions under Relman's agreement providing for an

10 award of a one-third contingency fee come into existence, the agreement allows

11 Relman to recover its attorneys' fees utilizing the "lodestar" method reflecting the

12 number of hours worked multiplied by a reasonable hourly rate for the work

13 performed. (See Attachment A, demonstrative Flowchart of Fee Agreement.)

14     102.     As part of the process of settling with the CRA, the FHC has allowed

15 Relman to negotiate its reasonable hourly fees directly with the CRA.  These

16 hourly fees are  required to be paid to the FHC by defendant CRA pursuant to 31

17 U.S.C. 3130(d).  If Relman is unable to reach a settlement with the CRA, it will

18 have a reasonable amount of time pursuant to the CRA settlement agreement to

19 apply to the Court for those fees.  Either way, Relman's fee claim for its CRA

20 work on behalf of the FHC will be mooted by its direct settlement with the CRA

21 for such fees or by an order from the court awarding such fees in the FCA suit.

22     103.     An actual controversy has arisen and now exists between the parties

23 relating to Relman's claim to a one-third contingency fee from the CRA settlement

24 and from any future settlement with the City. In the absence of the occurrence of

25 any of the conditions in the agreement allowing Relman to recover a one-third

26 contingency fee from the FHC, Relman has nonetheless sued FHC claiming

27 entitlement to a one-third contingency fee. FHC denies that Relman is entitled to

28 such a fee. A declaratory judgment is necessary in that Relman contends that it is

1 entitled to a one-third contingency fee from the CRA settlement and from any
2 future settlement with the City and FHC denies that Relman is so entitled.  FHC
3 also asks the Court to issue a declaratory judgment that Relman is limited to its
4 reasonable hourly fees incurred on behalf of FHC that FHC recovers from the
5 CRA and the City in the CRA - FHC settlement and in any City - FHC settlement.

6       104.   An actual controversy has also arisen and now exists between the
7 parties relating to Relman's claim that its representation was terminated by FHC
8 without cause. FHC contends that it terminated Relman's representation for good
9 cause. FHC asks the Court to issue a declaratory judgment that FHC terminated
10 Relman's representation for good cause.

11 **COUNTERCLAIM FOR RELMAN'S PROFESSIONAL NEGLIGENCE**

12       105.   Relman claims to have specialized knowledge in the area of "private
13 relators' use of the False Claims Act, 31 U.S.C. § 3729 *et seq.*, (FCA) to ensure
14 that cities and other municipal entities comply with their obligations under federal
15 civil rights laws," and touted its experience in this area to the FHC in the course of
16 engaging FHC as a client and to others.

17       106.   As a result of Relman's professed experience in representing private
18 (qui tam) relators in prosecuting FCA violations based on the failure of municipal
19 entities to comply with their obligations under federal civil rights laws, FHC
20 employed counterdefendant Relman to represent the FHC in an FCA suit to be
21 commenced against the City and the CRA based on the alleged submission of false
22 statements and false claims by these municipal entities to the United States
23 Government in order to receive Community Development Block Grants (CDBG)
24 and related funds and payments from the United States. FHC  signed a fee
25 agreement with Relman on December 8, 2010.

26       107.   In support of the FCA suit, during 2010, FHC obtained information
27 and documents containing facts material to causes of action under the FCA and
28 provided the information to Relman. This information showed that FCA violations

by the City and the CRA had been consistently ongoing for more than ten years. At the time Relman filed the FCA complaint in Case No. 11-cv-00974 on February 11, 2011, Relman had reviewed this information and knew that the City's and CRA's ongoing violations had been ongoing for at least ten years and included the following:

108. The City and CRA had received federal funds from the federal funding programs referenced in the FCA complaint to support low income and accessible housing. As a precondition to receiving these funds, the City and CRA were required to certify compliance with civil rights laws protecting people with disabilities and the regulations to which HUD administers its funding programs, and the City and CRA did certify their compliance. However, these certifications were false.

109. Neither the City nor the CRA maintained policies or practices to ensure that multifamily housing projects assisted with federal funds contained sufficient units accessible to people with mobility, auditory or visual impairments as required under federal and state civil rights laws.

110. The City and the CRA also had not maintained policies, practices or procedures to ensure that people with mobility and/or auditory or visual impairments otherwise had meaningful access to housing built with federal funds.

111. During the FHC's 2010 investigation in preparation for the FCA case, the FHC obtained, and provided to Relman, a partial list of Los Angeles Housing Department projects for years 2000 through 2010 that had been funded with CDBG and other federal grant funds to support new construction or substantial alteration to provide meaningful access to people with disabilities to comply with Section 504 of the Rehabilitation Act, Title II of the ADA and Cal. Government Code § 11135. These lists contained the names of a large number of low income housing projects that were federally funded during the years 2001, 2002, 2003, 2004 and 2005. By way of example, these listed projects which were federally

funded in years 2001, 2002, 2003, 2004 and 2005 included, but were not limited to: the Alegria Apartments, Amistad Apartments, Apple Tree Village, Benton Green Apartments, Curtis Johnson Apartments, Echo Park Sr. Housing, Eugene Hotel, Eugene Thomas Manor, Fame West 25th Street, Dolores M. Garcia, Jr. Apartments, Hoover Apartments, Jenesse-5th Avenue Shelter, Kosumosu Transitional Housing, Magnolia City Lights, Meera Townhomes, Noble Senior Housing, Park Lane Family Housing, Richard N. Hogan Manor, Terre One Apartments, Transitional Shelter, Victory Gardens, Villa Paloma, Vintage Crossing Sr. Apartments, Washington Ct. Family Housing, Waterloo Heights Apartments and the Willow Tree Apartments.

112.    In filing the FCA case , Case No. 11-cv-00974, on February 11, 2011 on behalf of the FHC in the United States District Court for the Central District of California, Relman was subject to long-standing, published and controlling law in the Ninth Circuit  interpreting the FCA's Statute of Limitations provision at 31 U.S.C. § 3731(b), which states:

> (b) A civil action under section 3730 may not be
> brought –
> (1) more than 6 years after the date on which the
> violation of section 3729 is committed, or
> (2) more than 3 years after the date when facts material
> to the right of action are known or reasonably should
> have been known by the official of the United States
> charged with responsibility to act in the circumstances,
> but in no event more than 10 years after the date on
> which the violation is committed, whichever occurs last.

113.    Since at least 1996, controlling and published authority in the Ninth Circuit has held that a private *qui tam* relator may rely on section 3731(b)(2) with

1   its three year discovery limitations rule and corresponding ten year rule of repose.

2   *See United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir.

3   1995). The *Hyatt* court explained that the both the three year tolling and the ten

4   year limitation period applies to private *qui tam* relators:

5       [A] civil action under the [FCA] brought by a qui tam plaintiff

6       must be commenced no more than (1) six years after the date on which

7       the FCA violation is committed or (2) three years after the date when

8       facts material to the right of action are known or reasonably should have

9       been known by the qui tam plaintiff, whichever occurs last. A suit must,

10      in any event, be brought no more than ten years after the date on which

11      the violation occurred. [1]

12  _____

13      [1]    More recently, based on the "plain-text" of the statute, the Supreme

14  Court also confirmed that the FCA's ten year statute of limitation applies to *qui*

15  *tam* actions as held in *Hyatt. See Cochise Consultancy, Inc. v. United States ex rel.*

16  *Hunt*, —U.S.—, 139 S.Ct. 1507, 1511-12 (May 13, 2019)("Section 3731(b) sets

17  forth two limitations periods that apply to 'civil action[s] under section 3730.'

18  Both Government-initiated suits under § 3730(a) and relator-initiated suits under §

19  3730(b) are 'civil action[s] under section 3730.' Thus, the plain text of the statute

20  makes the two limitations periods applicable in both types of suits.").

21      In addition to confirming that the ten year limitation applies to *qui*

22  *tam* relators (as held in Hyatt), the *Cochise Consultancy* decision abrogated the

23  portion of *Hyatt* that held the commencement of the limitations period is triggered

24  on the date when facts material to the right of action are known or reasonably

25  should have been known by the *qui tam* plaintiff.  On this question, the Supreme

26  Court held that the limitations period is triggered only by the knowledge of the

27  United States official charged with responsibility to act, and not the relator's

28  knowledge. *Id.* at 139 S.Ct. 1513-14 "([T]he statute provides no support for

114. Basic research by Relman would have also shown the Ninth Circuit *Hyatt* ten year statute of limitations period was applied in the 2007 district court case *U.S. ex rel. Parikh v. Premera Blue Cross*, 2007 WL 1031724, *4 (W.D.WA., April 3, 2007) ("Although the statute does not explicitly apply the longer ten year limitations period to private parties, the Ninth Circuit has held that it benefits qui tam plaintiffs as well as the government. *See United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir.1995).").

115. Neither the United States nor FHC on behalf of the United States knew or reasonably should have known of the relevant FCA violations until 2010, triggering the 10 year limitations period from the date of the eventual FCA case filing. If Relman had followed the applicable FCA statute of limitations, including its limitations discovery rule, and controlling Ninth Circuit authority, Relman should have alleged claims back to February 1, 2001 on behalf of FHC in FCA Case No. 11-cv-00974 for FCA violations occurring the full ten year period prior to the February 1, 2011 filing of the FCA action. Contrary to 1) the actual statute of limitations, 2) the limitations discovery rule and 3) controlling Ninth Circuit authority, Relman negligently and erroneously assumed that the statute of limitations for *qui tam* plaintiffs was only six years and that *qui tam* plaintiffs did not have the benefit of the limitations discovery rule. As a result, on behalf of FHC, Relman alleged FCA violations for only a six year period, back to February 1, 2005, losing four years of claims for FCA violations between February 1, 2001 and January 31, 2005.

116. As FHC's counsel in Case No. 11-cv-00974, Relman owed a duty of care to FHC, requiring it to exercise the knowledge, skill and ability ordinarily exercised by similarly situated lawyers. Further, as purported specialists in the area of "private relators' use of the FCA, 31 U.S.C. § 3729 *et seq.*, to ensure that cities

_____

reading "the official of the United States" to encompass a private relator.").

and other municipal entities comply with their obligations under federal civil rights laws," the professional services rendered by Relman should have been comparable to other FCA "private relator" specialists, imposing on Relman a higher standard of care.

117. Relman failed to use reasonable skill and care in representing FHC by not alleging meritorious claims for the violations of the FCA that had occurred between February 1, 2001 and January 31, 2005. Had Relman conducted any standard legal research regarding the Ninth Circuit's long-standing and controlling legal authority interpreting the limitations period under the FCA, it would have readily found that the applicable limitations period was ten years after the date on which the violations had been committed, not six. The omission of these meritorious claims was not the result of a rational, professional judgment that would have been made by other reputable attorneys in the community under the same or similar circumstances.

118. Relman partner Michael Allen vividly demonstrated Relman's professional negligence in an email to Ms. Ling on April 13, 2015, in which Allen boasted about the size of the FCA case, while erroneously asserting that Relman's "private party" clients Ms. Ling and the FHC were restricted to a 6 year statute of limitations:

> "You know that the only relief you (or FHC) can get in the FCA case is money. Our own analysis of the properties covered by the FCA case suggests that LA received (and handed out) roughly $650 million in federal funds to support multifamily housing during the False Claims Period (10 years back from the date we filed the complaint under seal; DOJ has a 10-year statute of limitations, whereas a private party has only 6 years)."

19   FHC's Amended Answer and Counterclaims

119.   No reasonably prudent attorney representing *qui tam* plaintiffs under the FCA –much less a specialist in *qui tam* (private relator) cases under the FCA–would have ever abandoned the meritorious, and, as admitted by Relman, sizeable damage claims for the FCA violations occurring between February 1, 2001 and January 31, 2005, which were all within the Statute of Limitations.

120.   Relman's negligent and careless failure to include the FHC's FCA claims against CRA and the City in the civil complaint in Case No. 11-cv-00974 for the period February 1, 2001 through January 31, 2005 has caused all of the CRA's and the City's individual violations of the FCA during this four year period to be barred from civil prosecution by FHC under the FCA.  Relman's negligence and failure to set forth, or even attempt to set forth, FCA violations prior to February 1, 2005 also prevented the United States from being able to prosecute the FCA claims against either the CRA or the City for the lost four years when the United States intervened in the FCA case in July 2017.  As a direct and proximate result of Relman's negligence and carelessness as set forth above, FHC has been damaged in an amount to be proven at trial which is estimated to exceed $2,000,000.

## PRAYER FOR RELIEF

Wherefore, Defendant/Counterclaimant FHC prays that this Court enter Judgment in favor of FHC and against Plaintiff and Counterdefendant Relman, as follows:

a.   Enter judgment in favor of Defendant FHC and deny Plaintiff Relman's requested relief in its entirety;

b.   i) Issue a declaratory judgment that the Agreement between FHC and Relman is void under California Business & Professions Code § 6147 and declare that Relman is limited to its reasonable hourly fees incurred on behalf of FHC that FHC recovers from the CRA in the CRA - FHC settlement, and from the City in any City - FHC settlement in the FCA suit

1    (Case No. 11-cv-00974).

2        ii)  In the alternative, issue a declaratory judgment that the Agreement

3    between FHC and Relman is invalid based on a conflict of interest caused

4    by the plaintiff's simultaneous representation of clients with potential or

5    actual adverse interests without obtaining a proper conflict waiver.

6        iii)  In the alternative, issue a declaratory judgment that the

7    Agreement between FHC and Relman was terminated by FHC for cause and

8    is therefore limited to its reasonable hourly fees under *quantum meruit*.

9        iv) In the alternative, issue a declaratory judgment that under the

10    Agreement between FHC and Relman, the Relman firm is limited to its

11    reasonable hourly fees incurred on behalf of FHC that FHC recovers from

12    the CRA in the CRA - FHC settlement, and from the City in any City - FHC

13    settlement in the FCA suit (Case No. 11-cv-00974).

14    c.     Enter judgment in favor of Counterclaimant FHC for compensatory

15    damages for the negligent acts complained of herein, in an amount to be proven at

16    trial;

17    d.     Enter judgment in favor of Counterclaimant FHC for special damages

18    as permitted by the law;

19    e.     Enter judgment in favor of Counterclaimant FHC for such

20    pre-judgment and post-judgment interest as permitted by law;

21    f.     Enter judgment awarding Defendant/Counterclaimant FHC its costs

22    of suit incurred in this action;  and

23    ///

24    ///

25    ///

26    ///

27

28

21   FHC's Amended Answer and Counterclaims

1        g.    Enter judgment in favor of Defendant/Counterclaimant FHC for such

2  other and further relief as the court deems necessary or proper.

3

4                                        Respectfully Submitted,

5  Dated: October 28, 2019       Warren - Benson Law Group

6

7                                /s/ Donald R. Warren

8                                Donald R. Warren
                                Phillip E. Benson

9                                Attorneys for Defendant/Counterclaimant

10                                Fair Housing Council of San Fernando Valley

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Attachment A

## Relman Fee Agreement in the Event of a Recovery

<u>Attorneys' Fees</u>

In the event relief is obtained, the Client agrees that the Firm is entitled to its reasonable attorneys' fees. The Firm's fees shall be calculated as follows:

**A.** If the Litigation is resolved by a lump sum settlement or offer of judgment that provides for a monetary award to the Client but makes no separate provision for fees and waives the Client's right to seek court-awarded fees, the Firm shall be entitled to one-third (33 1/3%) of the monetary award, in addition to costs, or the Firm's actual fees and costs (calculated in the manner described below), whichever is greater.

**B.** If the Litigation is resolved by summary judgment or a trial at which the Client prevails, the Firm shall be entitled to one-third (33 1/3%) of the monetary amount awarded to Client in the court proceeding, in addition to costs, or the court's award of statutory fees and costs, whichever is greater. The Firm will ask the court to award attorneys' fees and costs, to be paid by the Defendants. If the amount awarded by the court is less than one-third of the monetary amount awarded by order or judgment, the Client shall be responsible for paying the Firm the difference between the court-awarded fees and one-third of the monetary award to the Client.

**C.** The Firm's attorneys' fees will be calculated utilizing the "lodestar" method. The "lodestar" amount reflects the number of hours worked multiplied by a reasonable hourly rate for the work performed.



**A.** Was the case resolved by a lump sum settlement or offer of judgment that:

1) did not have a provision for attorney fees, **and**

2) actually waived the right to seek court-awarded fees?

— No →

— Yes → Relman fee is the greater of 1/3 of the settlement amount, or its hourly fees.

**B.** Did Relman firm resolve the case by winning a Summary Judgment or Trial Judgment?

— No →

— Yes → Relman fee is the greater of 1/3 of the court award, or its hourly fees.

**C.** The Firm's attorneys' fees will be calculated by the number of hours worked multiplied by a reasonable hourly rate.

1

## PROOF OF SERVICE BY MAILING

2

3        I am over the age of 18 and not a party to the within action.  I am a resident of the

County of Los Angeles at 6750 Whitsett Ave. #206  in North Hollywood, Calif.  91606

4        On November 25, 2019  I served:

5

6    **QUI TAM PLAINTIFF MEI LING'S PARTIAL OPPOSITION TO SETTLEMENT
     AGREEMENT BETWEEN THE UNITED STATES OF AMERICA, AND
7    DEFENDANT, THE CRA-LA;   DECLARATION OF MEI LING IN SUPPORT
     THEREOF;   LODGED CONCURRENTLY  [PROPOSED ORDER]**

8    on each person or entity named below by enclosing a true copy in a sealed envelope with

9    first class postage fully prepaid, and placing the envelop for mailing and collection on this

10   date for collection by the U.S. Postal Service.  Persons and/or Entities to whom mailed to:

11

12   **Lisa Palombo,  Ross Cuff,** *Carol Ybarra*          **William Edgar,  Eric Schmelzer**
     United States Department of Justice               United States Department of Justice
13   Central District of California                     *Civil Division  -  Fraud Section*
     300 North Los Angeles Street  - #7516             601  D  Street, N.W.  -  Rm. #1204
14   Los Angeles, California  90012                     Washington, D.C.  20004

15

16        for CRA-LA ...

17   **Pamela Johnston  Daniel Sturm**
     Foley & Lardner,  LLP
18    555 South Flower Street - #3500
     Los Angeles, Calif.  90071-2411
19

20       *for Fair Housing Council ...*

21   **Donald Warren,   Phillip Benson**
22   7825 Fay Avenue - Suite #200
     La Jolla, California   92037

23

24        I declare under penalty of perjury under the laws of the United States of America,

25   that the foregoing is true and correct.

26

27   Executed on November 25, 2019          *Althemus Joseph Delahoussaye*

28                                          Althemus Joseph Delahoussaye

**PROOF OF SERVICE**
RELATOR MEI LING'S PARTIAL OPPOSITION TO SETTLEMENT AGREEMENT WITH CRA-LA