BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
JOSEPH T. MCNALLY
First Assistant United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
KAREN PAIK, AUSA (SBN 288851)
PAUL B. LA SCALA, AUSA (SBN 186939)
     300 N. Los Angeles Street, Room 7516
     Los Angeles, California 90012
     Tel: (213) 894-2467; Fax: (213) 894-0142
     Email: Paul.LaScala@usdoj.gov
JAMIE ANN YAVELBERG
SARA MCLEAN
WILLIAM C. EDGAR
JENNIFER CHORPENING
DANIEL W. KASTNER
WESLEY J. HEATH
United States Department of Justice
     175 N Street NE, Room 9.135
     Washington, DC 20002
     Tel: (202) 353-7950; Fax: (202) 307-3852
     Email: William.Edgar@usdoj.gov

*Attorneys for Plaintiff United States of America*

DONALD R. WARREN (CA 138933)
PHILLIP E. BENSON (CA 97420)
Warren - Benson Law Group
     7825 Fay Ave., Ste. 200
     La Jolla, CA 92037
     Tel: 858-454-2877; Fax: 858-454-5878
     donwarren@warrenbensonlaw.com
     philbenson@warrenbensonlaw.com
DAVID O. IYALOMHE, ESQ.
David Iyalomhe & Associates
ODION L. OKOJIE, ESQ.
Law Offices Of Odion L. Okojie
     880 West First Street Suite 313
     Los Angeles, CA 90012
     Tel: 213-626-4100: Fax: 213-626-6900
     Email: david@doialaw.com
     Email: okojielaw@aol.com

*Attorneys for Qui Tam Plaintiff Fair Housing Council of San Fernando Valley*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

UNITED STATES OF AMERICA *ex rel.* MEI LING and FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY,

Plaintiffs,

v.

CITY OF LOS ANGELES, a municipal corporation, and CRA/LA, a Designated Local Authority, a public entity,

Defendants.

No. CV-11-00974 PSG (JCx)

PLAINTIFFS THE UNITED STATES' AND THE FAIR HOUSING COUNCIL OF THE SAN FERNANDO VALLEY'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF SETTLEMENT, JOINED BY DEFENDANT CITY OF LOS ANGELES

[31 U.S.C. § 3730(c)(2)(B)]

DATE: August 16, 2024
TIME:    1:30 p.m.
COURTROOM:  6A
JUDGE:  Hon. Philip S. Gutierrez

PLEASE TAKE NOTICE that, on August 16, 2024, at 1:30 p.m., or as soon after that as counsel may be heard, Plaintiff United States of America (the "United States") and relator the Fair Housing Council of San Fernando Valley ("FHC"), by and through their counsel of record, joined by Defendant City of Los Angeles, will bring for hearing this Motion for approval of its settlement with the City of Los Angeles. This Motion will be made before the Honorable Philip S. Gutierrez, United States District Judge, Courtroom 6A, at 350 West 1st Street, Los Angeles, California 90012.

This Motion is made pursuant to 31 U.S.C. § 3730(c)(2)(B) of the False Claims Act on the ground that the settlement between the United States and the City of Los Angeles for $38,266,989 is "fair, adequate, and reasonable under all the circumstances."

This Motion is based upon this Notice of Motion, the attached United States' Memorandum of Points and Authorities, the Declaration of William C. Edgar, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at, before, and after the hearing of this Motion.

///

2

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on or about June 4, 2024, and continued thereafter.

Dated: July 5, 2024                              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH T. MCNALLY, AUSA
First Assistant United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
PAUL LA SCALA, AUSA
KAREN PAIK, AUSA


/s/ *William C. Edgar*
JAMIE ANN YAVELBERG
SARA MCLEAN
WILLIAM C. EDGAR
JENNIFER CHORPENING
DANIEL W. KASTNER
WESLEY J. HEATH
Attorneys, Civil Division
United States Department of Justice

*Attorneys for Plaintiff*
*United States of America*

/s/ *Donald R. Warren*
Donald R. Warren
Phillip E. Benson

WARREN BENSON LAW GROUP
David O. Iyalomhe, Esq.

2

DAVID IYALOMHE & ASSOCIATES
Odion L. Okojie, Esq.
LAW OFFICES OF ODION L. OKOJIE

*Attorneys for Qui Tam Plaintiff Fair Housing Council of the San Fernando Valley*

3

**UNITED STATES' AND THE FAIR HOUSING COUNCIL OF THE SAN FERNANDO VALLEY'S MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ii

I.    INTRODUCTION .................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ...........................2

III.  ARGUMENT..........................................................................................4

      A.    The City Settlement Is Fair, Adequate, And Reasonable Under Any Applicable Standard ...........................................................4

            1.    The City Settlement Satisfies The Rule 23(e)(2) Standard. ...............7

            2.    The City Settlement Satisfies The *Sequoia Orange* Standard. .........15

      B.    The Court Is Not Required To Hold An Evidentiary Or In-Person Hearing ...........................................................16

IV.   CONCLUSION....................................................................................17

**Attachments**

Attachment A:  Declaration of William C. Edgar

Attachment B:  Settlement Agreement

Attachment C:  Unreported decision in *U.S. ex rel. Burns v. A.D. Roe Co.,* No. 3:94-cv-357 (W.D. Ky., July 23, 1997)

**TABLE OF AUTHORITIES**

**CASES**

*Brutus Trading, LLC v. Standard Chartered Bank,* No. 20-cv-2578, 2023 WL 5344973 (2d Cir. 2023) ...............................................................................16

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................9

*Coleman v. Hernandez,* 490 F. Supp. 2d 278 (D. Conn.2007)......................................10

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ...........................................................7

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......................................................................8

*Humes v. First Student, Inc.*, No. 1:15-cv-0186, 2019 WL 12034875 (E.D. Cal. 2019) ...........................................................................................................9, 12, 13

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001)...............................................................14

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981), *cert. denied,* 456 U.S. 998 (1982)..............................................................................10, 11

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995)............................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................................................7, 9, 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982), *cert denied*, 459 US 1217 (1983)..........................................................................7, 9, 11

*Ridenour v. Kaiser-Hill,* 397 F.3d 925 (10th Cir. 2005) ...............................................16

*Rigo v. Kason Indus., Inc.*, No. CV 11-0064, 2013 WL 3761400 (S.D. Cal. July 16, 2013) ...............................................................................................................12

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)....................................7, 14

*U.S. ex rel. Ashton v. Everglades College, Inc.*, 855 F.3d 1279 (11th Cir. 2017), *abrogated on other grounds by U. S. v. Republic of Honduras*, 75 F.4th 1288 (11th Cir. 2023) .................................................................................................8, 17

*U.S. ex rel. Balko v. Senior Home Care, Inc.* No. 8:13-cv-3072, 2017 WL 9398654 (M.D. Fla. May 2, 2017).................................................................9, 10

*U.S. ex rel. Burns v. A.D. Roe Co.*, No. 3:94-cv-357 (W.D. Ky, July 23, 1997) ............12

*U.S. ex rel. Chang v. Children's Advoc. Ctr. of Delaware*, 938 F.3d 384 (3d Cir. 2019) ...............................................................................................................17

*U.S. ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995), *cert denied*, 518 U.S. 1018 (1996) ............................................................................................13

*U.S. ex rel. Grober v. Summit Med. Grp., Inc.*, No. 02–cv–177, 2004 WL 7340579 (W.D. Ky. July 13, 2004) ..................................................................................15

*U.S. ex rel. Humane Society v Hallmark Meat Packing Co.*, No. 08-cv-221, 2013 WL 5753784 (C.D. Cal. 2013) ...................................................................11

*U.S. ex rel. Jacobs v. Advanced Derm. & Skin Cancer Specialists,* No. 5:20-cv-1373 (C.D. Cal. Apr. 18, 2024). ...............................................................5

*U.S. ex rel. Killingsworth v. Northrup Corp.*, 25 F.3d 715 (9th Cir. 1994) ....................5

*U.S. ex rel. Ling v. City of Los Angeles,* No. 2:11-cv-00974 (C.D. Cal., Dec. 17, 2019) (Dkt. # 321) ..........................................................................3

*U.S. ex rel. McCoy v. Calif. Med. Rev.,* 133 F.R.D. 143 (N.D. Cal. 1990) ......................5

*U.S. ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 143 S.Ct. 1720 (2023)..................................................................................passim

*U.S. ex rel. Resnick. Weill Med. Coll. of Cornell Univ.*, No. 04 CIV. 3088, 2009 WL 637137 (S.D.N.Y. Mar. 5, 2009)..............................................6, 11, 14

*U.S. ex rel. Shepard v. Grand Junction Reg'l Airport Auth.,* No. 13-cv-736, 2017 WL 749070, (D. Colo. Feb. 27, 2017)..................................................passim

*U.S. v. Center for Diagnostic Imaging,* No. 05-cv-58, 2011 WL 13249405 (W.D. Wash. Apr. 4, 2011)..................................................................5, 6, 8, 15

*United States v. Sprint Communications, Inc.*, 855 F.3d 985 (9th Cir. 2017)...................5

*Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482 (C.D. Cal. 2010) ........................9

**STATUTES**

31 U.S.C. § 3730(c)(1)...............................................................................................5

31 U.S.C. § 3730(c)(2)(A) and (B)...........................................................................16

31 U.S.C. § 3730(c)(2)(B) ................................................................................passim

31 U.S.C. § 3730(d)(1)...............................................................................................2

**RULES**

Federal Rule of Civil Procedure 41 ............................................................................6

Local Rule 7-3................................................................................................................4

**TREATISES**

4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed.2002) ............................................................................................................9

## <u>OTHER AUTHORITIES</u>

S. Judiciary Comm., False Claims Amendments Act of 1986, S. Rep. No. 99-345, at 26 (1986) .................................................................................................. 16

**<u>UNITED STATES' AND THE FAIR HOUSING COUNCIL OF THE SAN FERNANDO VALLEY'S MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I.  INTRODUCTION

Plaintiff United States of America, relator the Fair Housing Council of San Fernando Valley ("FHC"), and defendant the City of Los Angeles (the "City," and together with the United States and FHC, the "Settling Parties") have entered into a settlement (the "City Settlement") that requires the City to pay $38,266,989 to resolve this matter. The Settling Parties now seek Court approval due to the objection of relator Mei Ling. The United States submits this Memorandum in support of the motion, and FHC joins in the Memorandum.  The City has advised that it will file its own Response in Support of the Joint Motion rather than joining in this Memorandum.

The City Settlement not only guarantees a substantial recovery for the United States but also eliminates the delay, uncertainty, inconvenience, and expense of continued litigation of the United States' claims against the City. It also sends a strong deterrence message, reinforcing the United States' expectation of compliance with grant requirements ensuring accessibility for people with disabilities. The Settling Parties agreed to the terms of the City Settlement after extended litigation, expansive discovery, and robust negotiation, mediation, and internal deliberation. Despite the benefits of the City Settlement recognized by the United States and FHC, individual relator Mei Ling, who was *pro se* for most of this litigation and had limited participation in it, opposes this settlement. This objection lacks merit and should not prevent the Government from settling its claims in this matter.

"The Government may settle [a False Claims Act ("FCA"),] action with the defendant notwithstanding the objections of the [relator] if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B) ("section (c)(2)(B)"). That standard is clearly satisfied here. The City Settlement would result in a significant payment to the United States to resolve causes of action for false claims on the United States. Ms. Ling's

opposition should not be permitted to trump the judgment of the United States that this is a reasonable resolution, or to force the United States to expend additional time and resources to litigate the case and risk a less favorable outcome. Moreover, it is particularly telling that the other relator in this case, the Fair Housing Council of San Fernando Valley ("FHC"), also supports the proposed settlement.

Accordingly, we respectfully request the Court: (1) provide Ms. Ling a hearing and (2) enter an order confirming that the City Settlement is fair, adequate, and reasonable under all the circumstances. Once that occurs, the United States will seek dismissal of the claims against the City. Following that, the parties can negotiate, or seek Court resolution of, the collateral issues in the case reserved in the City Settlement: statutory relators' share and relators' attorneys' fees. 31 U.S.C. § 3730(d)(1).

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The United States alleged in this suit that the City took HUD grant funds for construction and renovation of affordable housing and failed to ensure that the housing met federal requirements that it be accessible to people with disabilities. On February 1, 2011, Ms. Ling and FHC filed this *qui tam* action against defendants the City of Los Angeles and the Community Redevelopment Agency of the City of Los Angeles (the "CRA"). The United States filed its Complaint-in-Intervention on July 31, 2017. (Dkt. # 92.) The United States filed a First Amended Complaint in Intervention ("FACI") on December 10, 2018. (Dkt. # 216.) The City denied all the claims in the FACI in its Answer filed on October 18, 2019. (Dkt. # 295.)

On July 12, 2019, the United States, the FHA, and the CRA executed a settlement agreement resolving all of the United States' claims against the CRA for a payment of $3.1 million. (Declaration of William C. Edgar ¶ 3. ("Edgar Decl.") (Att. A to this Memo).

Relator FHC concurred with the United States that the CRA settlement was fair, adequate, and reasonable. (*Id*. ¶ 4.) As she does here, relator Mei Ling, then *pro se*, objected. (Dkts. ## 307, 323.) The parties submitted briefs (Dkts ## 307, 309, 310, 313,

2

318, 322, 323), and the Court held an *in-camera* hearing on December 16, 2019. On December 17, 2019, having considered all the parties' submissions and arguments, the Court issued a sealed order approving the settlement and finding that the agreement with the CRA was fair, adequate, and reasonable under all the circumstances. (Dkt. # 321; Edgar Decl. ¶ 6.)[1]

As to the claims against the City, the United States and the City pursued extended and voluminous fact discovery, including propounding and responding to multiple rounds of document requests, interrogatories, and requests for admissions; issuing third-party subpoenas related to hundreds of properties; collectively reviewing for privilege and relevance almost one million documents; and exchanging more than 580,000 documents. (Edgar Decl. ¶¶ 7-10.) The United States and the City deposed 28 fact and 30(b)(6) witnesses, produced eleven expert and non-retained expert reports, and took eight expert and non-retained expert depositions. (*Id*. ¶¶ 11, 12.) The United States and the City marked and used more than 400 separate deposition exhibits. (*Id*. ¶ 13.) The United States collected, assembled, and analyzed extensive agency accounting records for tens of thousands of City grant draws. (*Id*. ¶ 14.) The City and third parties produced architectural records and management files for hundreds of buildings. (*Id*. ¶ 16.) The United States' experts surveyed and photographed 219 buildings, finding extensive accessibility defects in them. (*Id*. ¶ 17.)

Fact discovery concluded on November 17, 2023. Expert discovery was set to close on March 8, 2024, and the Court scheduled the trial for August 22, 2024. (Dkt. # 435). On March 5, 2024, the United States and the City attended pre-trial mediation. (Dkt. # 472, Edgar Decl. ¶ 18). At the mediation's conclusion, counsel for the United States and the City agreed to recommend the City Settlement to their decisionmakers. (*Id*.) While that approval was pending, the parties negotiated and agreed on written

---

[1] Although the Court's fairness decision regarding the CRA settlement, *U.S. ex rel. Ling v. City of Los Angeles,* No. 2:11-cv-00974 (C.D. Cal., Dec. 17, 2019) Dkt. # 321, discussed then-applicable law regarding section (c)(2)(B) , the United States does not cite that decision here because it remains sealed.

terms. (Edgar Decl. ¶ 19.) Responsible officials at both DOJ and the City approved the City Settlement, and on June 13, 2024, the United States, the City, and FHC executed the agreement. (*Id.* ¶¶ 20, 25, 35.) (Settlement Agreement (Att. B to this Memo).)

After counsel for the United States and the City agreed on settlement terms that they would recommend to their decisionmakers, but before the Settling Parties executed the City Settlement, counsel for the United States conferred with FHC and obtained its concurrence and also exchanged numerous emails and spoke by phone with relator Mei Ling to discuss the proposed settlement with the City. (*Id.* ¶ 21.) On May 28, 2024, immediately after DOJ officials approved the City Settlement, the United States shared a copy of the not-yet-signed agreement with Ms. Ling. (*Id.* ¶ 22.) On June 4, 2024, under Local Rule 7-3, counsel for the United States met and conferred telephonically with Ms. Ling and her counsel to discuss the substance of this motion and to see if they could resolve Ms. Ling's objections. (*Id.* ¶ 23.) The parties were unable to resolve her complaints. (*Id.* ¶ 24.) Despite the United States' attempts to address Ms. Ling's concerns throughout the meet and confer process, she continues to object to the City Settlement, seemingly based on the argument that the settlement amount is too low and/or the size of her relator's share also should be increased.

Ms. Ling cannot establish that the City Settlement is unfair, inadequate, or unreasonable. The City Settlement satisfies all of the potentially applicable standards for evaluating FCA settlements. Accordingly, the United States, joined by the City and Relator FHC, asks that the Court hold a hearing and confirm the City Settlement is fair, adequate, and reasonable so it can be effectuated and the last steps to ending this litigation can proceed.

## III.  ARGUMENT

### A.  The City Settlement Is Fair, Adequate, And Reasonable Under Any Applicable Standard

In an FCA action, "the Government is always the real party in interest" and has the continuing right to protect its own interests because the United States' interest "is the

4

predominate one" and the injury redressed by an FCA action "is exclusively to the Government alone." *U.S. ex rel. Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419, 425, 434 (2023); *United States v. Sprint Communications, Inc.*, 855 F.3d 985, 994 (9th Cir. 2017) (citation omitted); *U.S. ex rel. Jacobs v. Advanced Derm. & Skin Cancer Specialists,* No. 5:20-cv-1373, *9 (C.D. Cal. Apr. 18, 2024). Although relators have certain rights, the FCA's *qui tam* provisions grant the United States broad discretion to control the litigation, and when the United States intervenes it has primary control. 31 U.S.C. § 3730(c)(1); *U.S. ex rel. Kelly v. Boeing Co,* 9 F.3d 743, 756 (9th Cir. 1993), *cert. denied,* 510 U.S. 1140 (1994).

Under the FCA, the United States can settle a *qui tam* action over a relator's objection "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." § (c)(2)(B); *Polansky*, 599 U.S. at 440; *U.S. ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 724 (9th Cir. 1994), *cert. denied,* 518 U.S. 1018 (1996); *U.S. ex rel. McCoy v. Calif. Med. Rev.,* 133 F.R.D. 143, 148 (N.D. Cal. 1990). The FCA "grants the Government uncommon, even extraordinary, power: to . . . settle an action over the objection of the person who brought" the suit. *Polansky*, 599 U.S. at 431.

The Ninth Circuit has not set forth a standard for what the FCA means by "fair, adequate, and reasonable under all circumstances," but has recognized that Congress "intended that the provision authorizing relators to formally object to any . . . proposed settlements between the government and defendant should not pose a significant burden for the government or courts." *Kelly,* 9 F.3d at 754 n. 11; *see also U.S. v. Center for Diagnostic Imaging,* No. 05-cv-58, 2011 WL 13249405, *3 (W.D. Wash. Apr. 4, 2011); *U.S. ex rel. Shepard v. Grand Junction Reg'l Airport Auth.,* No. 13-cv-736, 2017 WL 749070, *1-3 (D. Colo. Feb. 27, 2017).

To date, district courts in the Ninth Circuit considering whether FCA settlements over the relator's objection are "fair, adequate, and reasonable" have applied one of two different standards. Some have adopted the standard for evaluating class action

settlements under Federal Rule of Civil Procedure 23(e)(2), modified to afford added deference to the United States in settling its own FCA claims. *See, e.g., Diagnostic Imaging,* 2011 WL 13249405 at *4; *U.S. ex rel. Resnick. Weill Med. Coll. Of Cornell Univ.*, No. 04 CIV. 3088, 2009 WL 637137, at *2 (S.D.N.Y. Mar. 5, 2009). Other courts have adopted the standard used by the Ninth Circuit in *Sequoia Orange Co. v. Baird-Neece Packing Corp.* to evaluate United States' dismissals of *qui tam* complaints over relators' objection that are not due to settlement, but in the exercise of the United States' prosecutorial discretion, *see* 31 U.S.C. § 3730(c)(2)(A) (providing United States may dismiss a *qui tam* "if [relator] has been notified . . . of the filing of the motion and the court has provided [relator] with an opportunity for a hearing"). The Court of Appeals held in *Sequoia Orange* that as long as the United States identified a valid government purpose and a rational relationship between dismissal and the government purpose, the burden shifted to the relator to demonstrate that dismissal was "fraudulent, arbitrary and capricious, or illegal." 151 F.3d 1139, 1145 (9th Cir. 1998), *overruled, U.S. ex rel. Polansky v. Exec. Health Resources, Inc.* 599 U.S. 419 (2023) ("*Sequoia Orange*"); *see, e.g., Shepard*, 2017 WL 749070 at *2-3.

The Supreme Court's 2023 decision in *Polansky*, 599 U.S. at 423-24, overruled *Sequoia Orange* as the standard for evaluating motions to dismiss *qui tam* cases under section 3730(c)(2)(A). In *Polansky*, the Supreme Court determined the appropriate standard for review under section (c)(2)(A) was the dismissal standard found in Federal Rule of Civil Procedure 41 and ruled that in "all but the most exceptional cases" the Government's motion to dismiss should be granted. *Id.* at 436-437. *Polansky* did not address the standard applicable to section 3730(c)(2)(B) motions for settlement, but the *Polansky* decision necessarily calls into question the continued application of *Sequoia Orange's* standard to dismissals under section 3730(c)(2)(B).

To resolve Ms. Ling's objections here, the Court need not decide whether the appropriate standard of review for the government's settlement is a deferential version of Rule 23(e)(2), or the dismissal standard under section 3730(c)(2)(A) from *Sequoia*

6

*Orange.* As always, settlement "is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming district court approval of a class action settlement). The settlement proposed here would meaningfully advance the interests of the United States and the other parties and should be approved.

### 1. The City Settlement Satisfies The Rule 23(e)(2) Standard.

The City Settlement is fair, adequate, and reasonable if judged under the applicable factors from the Rule 23(e)(2) class action standard, as appropriately modified to recognize the additional deference due the United States when it seeks to settle a case under the FCA. District courts applying the Federal Rule of Civil Procedure 23(e)(2) class action standard consider the following factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement. [2]

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citations and quotation marks omitted). The factors are not exclusive; one may deserve more weight than another, and one alone can prove determinative. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert denied*, 459 U.S, 1217 (1983) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).

Because of the significant differences between a class action settlement and a settlement under the FCA, these factors must be applied deferentially in the latter

---

[2]    Because factor 3, the risk of maintaining class action status throughout the trial, and factor 8, the reaction of the class members to the proposed settlement, apply only to class actions, the Court need not analyze them here.

context. *Diagnostic Imaging,* 2011 WL 13249405 at *3 (many class action factors are inapplicable to the United States' settlement of a suit brought on its own behalf); *see also U.S. ex rel. Ashton v. Everglades College, Inc.*, 855 F.3d 1279, 1287-88 (11th Cir. 2017), *abrogated on other grounds by U. S. v. Republic of Honduras*, 75 F.4th 1288 (11th Cir. 2023); *Shepard*, 2017 WL 749070 at *3 (the "high degree of vigilance" required to protect absent class members is unnecessary in FCA cases where the United States has negotiated a settlement for itself). First, unlike the members of a plaintiff class, a *qui tam* relator has suffered no personal invasion of his own, legally protected rights. *Ashton*, 855 F.3d at 1287-88; *see also Polansky,* 599 U.S. at 425. When the government settles a *qui tam* case, it compromises claims for its own injuries, not those of the relator or some absent class member. *See Id.* ("the injury [relator] asserts is exclusively to the Government").

Second, unlike private plaintiffs, the United States must consider public interests at stake in the litigation and settlement, interests that are not confined to maximizing the monetary recovery. The United States may wish to consider whether a proposed settlement would adequately redress the government's economic injury and whether continued prosecution warrants the expenditure of the United States' limited prosecutorial resources. The class action standards must be applied so as to capture these public interest considerations.

Finally, the decision to settle rather than litigate is an exercise of the government's prosecutorial discretion—a matter generally committed to the discretion of the Executive Branch and presumptively shielded from judicial review. *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). The language of section (c)(2)(B) sets limits on the government's discretion to settle a *qui tam* case—by letting the relator try to prove the settlement is not fair, adequate, and reasonable—but that does not vest the trial court with the kind of *de novo* review power it exercises when reviewing a class action settlement brought by private individuals.

Under an appropriately deferential application of the relevant Rule 23 factors, this Court should find that the proposed settlement is fair, adequate and reasonable, and overrule the relator's objection.

> **a)   Factor 1: Strength Of Plaintiff's Case And Factor 2: Risk, Expense, Complexity, And Likely Duration Of Further Litigation**

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.* 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted)). This factor is generally satisfied where plaintiffs must overcome barriers to make or face uncertainties in making their case. *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010); *Humes v. First Student, Inc.*, No. 1:15-cv-0186, 2019 WL 12034875, *2 (E.D. Cal. 2019). "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice*, 688 F.2d at 624. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecoms. Coop.*, 221 F.R.D. at 526 (*quoting* 4 A Conte & H. Newberg, *Newberg on Class Actions,* § 11:50 at 155 (4th ed. 2002)); *see also Polansky,* 599 U.S. at 436-38 (ruling United States' interest in dismissal to avoid litigation costs and potential legal risks overcame relator arguments that dismissal at the summary judgment stage after years of relator-led litigation was "leaving billions of dollars of potential recovery on the table").

Considering the strength of the United States' case under Factor 1 does not require the Court to decide this case on the merits. It is the "policy of the law generally to encourage settlements. This could hardly be achieved if the test on hearing for approval [of a settlement] meant establishing success or failure to a certainty." *U.S. ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-cv-3072, 2017 WL 9398654, *8 (M.D. Fla. May 2,

2017), adopting report and recommendation, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017) (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 212 (5th Cir. 1981), *cert. denied,* 456 U.S. 998 (1982)). Where questions exist regarding the possibility of success at trial, factors 1 and 2 weigh in favor of approving a proposed settlement, and "determination of the fairness of a settlement should be 'informed by the strong judicial policy favoring settlement as well as the realization that compromise is the essence of settlement." *Balko,* 2017 WL 9398654, at *8.

Although the United States believes that it would prevail if it continued to litigate this case, the United States nonetheless faces litigation risk that it eliminates by settling. Although the Court denied the City's Motion to Dismiss, it did not conclude "that the Government has already proven its case." (Jun. 15, 2019 Order Denying Motion to Dismiss, Dkt. # 255 at 21.) The City aggressively defended this case, as is to be expected, using facts uncovered during discovery to challenge the United States' claims, (Edgar Decl. ¶ 39,) creating uncertainty and risk as to liability and damages. Proceeding with the case would require the parties to engage in long, complex, and hard-fought litigation encompassing motions practice, remaining pre-trial activities, trial, and potential appeals. (*Id.* ¶ 40.) As to liability, for example, in the Motion for Summary Judgment the City filed on March 1, 2024, immediately before the parties agreed on settlement terms, the City argued the United States would be unable to prove the City's certifications were material to the U.S. Department of Housing and Urban Development ("HUD") and could not prove *scienter* or causation, all of which are required to establish FCA claims. (City Motion for Summary Judgment ("MSJ"), Dkt. # 471 at 26-28). At trial, for example, numerous and complicated architectural details determined by the United States' experts would need to be distilled and presented to the jury. (Edgar Decl. ¶ 17.)

Similarly, the proper measure of damages in this case has been the subject of significant dispute. Damages in FCA cases can be complex, as courts have acknowledged in other grant cases. *See, e.g., Coleman v. Hernandez,* 490 F. Supp. 2d

278, 281 (D. Conn. 2007) ("there is no simple rule for calculating . . . damages under the [FCA]"); *U.S. ex rel. Humane Society v. Hallmark Meat Packing Co.*, No. 08-cv-221, 2013 WL 5753784,*8 (C.D. Cal. 2013) ("Courts have fashioned several different methods for calculating the United States' damages depending on the specific facts of each case."); *Resnick,* 2009 WL 63137 at *3 (opining in an FCA grant case "there are issues regarding the proper measure of recoverable damages"). Here, the City's intent to challenge the United States on damages is plain. (City MSJ, Dkt. # 471 at 26-28). The City Settlement avoids all of this uncertainty and risk.

The United States believes in its case but is entitled to make a strategic decision to settle based on its goals in the matter and a prudent assessment of the risks and rewards of continued litigation through summary judgment, remaining pre-trial activities, trial and appeals. Settlement, which always involves challenging decisions, offers a guaranteed recovery for the United States. It eliminates the risk of allocating significant additional resources to litigation without any guarantee of greater reward. The United States has carefully evaluated all possible outcomes and uncertainties and concluded that the relevant factors strongly support the City Settlement. The City and FHC agree that the settlement is fair, adequate, and reasonable. Factors 1 and 2 weigh in favor of approving the settlement in this case.

### b)    Factor 4: Amount Offered In The City Settlement

The reasonableness of the amount of the $38,266,989 settlement also favors approval of the City Settlement. As the Ninth Circuit has explained, "[o]f course, the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624. A "proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id*. at 625 (*citing Corrugated Container,* 643 F.2d at 212). Judgment as to the fairness of a settlement amount must consider the risk of further litigation and trial and the expense and delay associated with continued litigation.

11

Importantly, "whether it is theoretically possible that the United States may have recovered more at trial than through settlement is not the issue before the Court." *U.S. ex rel. Burns v. A.D. Roe Co.*, No. 3:94-cv-357, at 2 (W.D. Ky, July 23, 1997) (Att. C to this Memo). Instead, the question presented that the "Court must determine [is], all things considered, whether the settlement was reasonable." *Id.*; *see also, Rigo v. Kason Indus., Inc.*, No. CV 11-0064 MMA (DHBx), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation."); *Humes,* 2019 WL 12034875 at *2 ("It is well-settled law that a proposed settlement may be acceptable even where it amounts to less than the potential recovery that might be available at trial.") (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527).

Before arriving at the City Settlement amount of $38,266,989, the United States and the City engaged in extensive confidential settlement discussions over the course of nine years and two mediations. (Edgar Decl. ¶ 26.) The negotiations were typical of those in complex civil litigations. (*Id.* ¶ 29.) The parties exchanged data, made presentations regarding the facts and law, and exchanged multiple offers. (*Id.* ¶ 27.) Rulings by the Court, facts uncovered in discovery that revealed details previously unknown or unrecalled, and the evolving development and analysis of the parties' respective arguments resulted in a series of increased, reduced, withdrawn, or amended offers and counteroffers. (*Id.*) The point was repeatedly raised that each dollar the City pays in settlement is a dollar that it must find in its budget, which balances other important goals such as spending on affordable and accessible housing, reducing homelessness, and other public goods. (*Id.* ¶ 37.)

There are many ways to calculate damages for settlement purposes. Even the parties to a settlement may not agree as to methods used, and work product, deliberative process privilege, and confidentiality of settlement negotiations are entitled to

protection.[3] The substantial $38,266,989 settlement recognizes that the City received funds for affordable housing that it did not make entirely accessible, and takes into account the United States' interests in avoiding litigation risks through a certain recovery, thereby preserving its resources while sending a message of deterrence. *See U.S. ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 965 (9th Cir. 1995), *cert denied*, 518 U.S. 1018 (1996) (recognizing "the FCA aims at achieving deterrence as well as restitution.")

The United States' acceptance of the City's $38,266,998 offer required review and approval by multiple levels of sophisticated and experienced lawyers at the line levels and in management and leadership positions within the Civil Division at the Department of Justice, the U.S. Attorney's Office, and HUD who are charged with representing the interests of the United States. (Edgar Decl. ¶ 35.) City decisionmakers also approved the number, and FHC agreed that it is fair, adequate, and reasonable. Each of these participants has had the opportunity to evaluate the factual development of this case, the Court's opinions, the litigation risks, and their respective constituents' goals and interests. Factor 4 weighs against substituting Ms. Ling's judgment for the Settling Parties' evaluations and decisions, and in particular those of the United States, the real party in interest.

### c) Factor 5: Extent Of Discovery Completed And Stage Of The Proceedings

The extent of discovery completed and the stage of this proceeding also support approval of the City Settlement. As described above, over the course of years of litigation, the parties completed extensive fact and expert discovery, providing a significant factual foundation for negotiations. The Settling Parties considered a wealth of information, allowing them to make well-informed decisions. *Vandervort,* 8 F. Supp. 3d at 1207; *Humes,* 2019 WL at 12034875 at *2. Counsel for the United States "had a

---

[3] If the Court nonetheless requires further detail as to the United States' evaluation of these figures, the United States requests the opportunity to do so *in camera* at a hearing or through supplemental submission.

good grasp on the merits of their case," which weighs in favor of approving the settlement. *Rodriguez*, 563 F.3d at 967. Although discovery was near complete, the litigation still has a long way to go, including summary judgment, remaining pre-trial activities, trial, and any appeals. This stage of the proceedings, when the parties know the evidence, but it has not yet been adjudicated, is an optimal one for settlement.

### d) Factor 6: Experience And Views Of Counsel

As noted above, this factor also strongly supports approval of the City Settlement. "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A presumption of fairness, adequacy, and reasonableness attaches to "the product of arm's length negotiations" by experienced capable counsel. *Resnick,* 2009 WL 63137 at *2. "'Once the settlement is presumed fair, it is not for the Court to substitute its judgment . . . for that of such competent counsel.'" *Id.*  (*quoting In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001)).

Relator Mei Ling, who was *pro se* throughout most of the litigation of the case, has recently retained counsel to object to the settlement. The United States' trial team included experienced attorneys and financial auditors in the Department of Justice and the United States Attorney's Office for the Central District of California. (Edgar Decl. ¶ 34.) Additionally, multiple senior managers and officials in both offices, as well as at HUD, reviewed and approved the City Settlement. (*Id.* ¶ 35) The United States carefully and reasonably evaluated the merits of the claims, the risks associated with prosecuting them through trial and appeal, and the benefits to settling them. Similarly, relator FHC, after careful review and consultation with its experienced FCA counsel, concurred that the settlement is fair, adequate, and reasonable. This factor weighs in favor of approval.

14

###### e)        Factor 7: Presence of a Government Participant

The United States' participation in this case supports approval of the City Settlement. "The participation of a government agency serves to protect the interests of . . . absentees, and approval by the agency is an important factor for the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). In this case—as in all FCA actions where the United States seeks to settle over a relator's objections—the government is an active participant and the real party in interest in the City Settlement. The City is also a government participant advocating for Los Angeles residents' interests, and Ms. Ling's co-relator FHC, a fair housing advocacy group, is advocating for its constituency's interests. The United States carefully considered the settlement amount, and the arguments of Ms. Ling, and determined that the proposed settlement is appropriate under the circumstances. Factor 7 supports the Court's approval of the settlement.

In sum, the Rule 23(a) class action factors support holding the City Settlement to be fair, adequate, and reasonable under all the circumstances. Ms. Ling cannot articulate a persuasive case to the contrary, especially when those factors are applied with the deference the FCA demands for the judgment of the United States.

#### 2.        The City Settlement Satisfies The *Sequoia Orange* Standard.

If the test from *Sequoia Orange* survives *Polansky* in the context of section (c)(2)(B), the City Settlement satisfies that test as well. In *Sequoia Orange*, the Ninth Circuit held that dismissal under section (c)(2)(A) requires that the government identify: "(1) a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose." *Sequoia Orange,* 151 F.3d at 1145. If the United States makes such a showing, the burden shifts to the objecting relator to prove the "dismissal is fraudulent, arbitrary or capricious, or illegal." *Id.* Courts applying *Sequoia Orange* to section (c)(2)(B) dismissals explained that there is "no reason why the government should be given . . . broad discretion to dismiss a case but not to settle it." *Shepard*, 2017

15

WL 749070 at *3; *see also Diagnostic Imaging,* 2011 WL 13249405 at *3; *U.S. ex rel. Grober v. Summit Med. Grp., Inc.*, No. 02–cv–177, 2004 WL 7340579, at *3 (W.D. Ky. July 13, 2004). The *Sequoia Orange* standard is "highly deferential" because "to significantly hamper the government's ability to settle may run afoul of the separation of powers doctrine." *Shepard*, 2017 WL 749070 at *1. In overruling *Sequoia Orange* as the standard for section (c)(2)(A) matters, *Polansky* further underscored the considerable deference due to government decision-making in *qui tam* cases. *Polansky*, 599 U.S. at 436-438.

For the reasons discussed above, the City Settlement is rationally related to the accomplishment of several valid government purposes and thereby satisfies the *Sequoia Orange* standard. The certainty of recovery as weighed against the uncertainty of summary judgment, trial, and appeal; the desire to avoid expending additional government resources in this case; and the significant deterrent message of a settlement of this size are all valid government purposes rationally related to the settlement and dismissal of this case. Moreover, as noted, Ms. Ling has failed to demonstrate otherwise. The City Settlement therefore also satisfies the highly deferential *Sequoia Orange* standard to the extent it continues to apply.

**B.    The Court Is Not Required To Hold An Evidentiary Or In-Person Hearing**

Finally, courts have held that the statutory "hearing" provided a relator before dismissal need not be in-person. *Ridenour v. Kaiser-Hill,* 397 F.3d 925, 931 (10th Cir. 2005) (hearings under 31 U.S.C. § 3730(c)(2)(A) and (B) "are only to be granted if relators can show a 'substantial and particularized need'") (quoting S. Judiciary Comm., False Claims Amendments Act of 1986, S. Rep. No. 99-345, at 26 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5291); *Sequoia Orange,* 151 F.3d at 1145-46, *overruled on other grounds*, *Polansky*, 599 U.S. 419 (2024) ("A hearing is appropriate 'if the relator presents a colorable claim that the settlement or dismissal is unreasonable in light of existing evidence, that the Government has not fully investigated the allegations, or that

16

the Government's decision was based on arbitrary or improper considerations.'" (*quoting* S. Rep. No. 99-345, at 26)); *Brutus Trading, LLC v. Standard Chartered Bank,* No. 20-cv-2578, 2023 WL 5344973, *2-3 (2d Cir. 2023) (section 3730(c)(2)(A) hearing requirement is satisfied by a court "carefully considering the parties written submissions"); *see also, U.S. ex rel. Chang v. Children's Advoc. Ctr. of Delaware*, 938 F.3d 384, 387-89 (3d Cir. 2019) (no section (c)(2)(A) in-person hearing required where relator did not request one and failed to make a colorable threshold showing of arbitrary government action). And even where a hearing is held in person, courts have held that the relator is not entitled to an evidentiary hearing unless the relator can establish a substantial and particular need. *See, e.g., Ashton*, 855 F.3d at 1290 ("[W]e construe the statutory right to a hearing [under 31 U.S.C. § 3730(c)(2)(B)] to include no more than a right to highlight existing evidence and make arguments, based on that evidence."). The Court should allow Ms. Ling to respond to this filing but need not hold an in-person hearing.

*    *    *

The United States, joined by the other Settling Parties, respectfully requests that the Court approve the proposed City Settlement of $38,266,989 as fair, adequate, and reasonable under all the circumstances. The proposed City Settlement guarantees a substantial recovery for the United States; ends the litigation of these claims, avoiding delay, uncertainty, inconvenience, and the expense of protracted dispositive motions practice, remaining pre-trial activities, an extended jury trial, post-trial briefing and hearings, and possible appeals; and sends a deterrence message that the United States expects compliance with grant requirements concerning accessibility for people with disabilities. The sizable monetary settlement guarantees a substantial recovery for the United States and sends a strong message that the United States expects compliance with grant requirements ensuring accessibility for people with disabilities. It also recognizes that the United States did not get the full benefit of its bargain and allows the United

17

States and the City to put this dispute behind them and focus on the City's continuing work with HUD on their mutual goal of providing affordable accessible housing.

## IV.    CONCLUSION

For the preceding reasons, the United States and FHC, in conjunction with the City that joins the requested relief but will be providing a separate response containing its reasoning in support of this motion, respectfully request that the Court provide Ms. Ling a hearing and approve the City Settlement as fair, adequate, and reasonable.

Dated: July 7, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JOSEPH T. MCNALLY, AUSA
First Assistant United States Attorney
DAVID M. HARRIS, AUSA
Chief, Civil Division
ROSS M. CUFF, AUSA
Chief, Civil Fraud Section
KAREN PAIK, AUSA
PAUL LA SCALA, AUSA


/s/ *William C. Edgar*
JAMIE ANN YAVELBERG
SARA MCLEAN
WILLIAM C. EDGAR
JENNIFER CHORPENING
DANIEL W. KASTNER
WESLEY J. HEATH
Attorneys, Civil Division
United States Department of Justice

*Attorneys for Plaintiff*
*United States of America*

18

/s/ *Donald R. Warren*
Donald R. Warren
Phillip E. Benson
WARREN BENSON LAW GROUP

David O. Iyalomhe, Esq.
DAVID IYALOMHE & ASSOCIATES

Odion L. Okojie, Esq.
LAW OFFICES OF ODION L. OKOJIE

*Attorneys for Qui Tam Plaintiff Fair Housing Council of the San Fernando Valley*

19