UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Derek Davis | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):** Order GRANTING Plaintiff United States' motion for settlement approval [Dkt. # 486] and DENYING Plaintiff-Relator Mei Ling's motion for evidentiary hearing and limited discovery as moot [Dkt. #495]

Before the Court is a motion for settlement approval, *see generally* Dkt. # 486-1, Ex. B ("*Settlement Agreement*"), in a *qui tam* action filed by Plaintiff United States ("Government"). *See generally* Dkt. # 486 ("*Gov. Mot.*"). The motion is supported by Plaintiff Fair Housing Council ("FHC"), *see generaly* Dkt. # 494 ("*FHC Reply*"), and Defendant City of Los Angeles ("City"), *see generally* Dkt. # 492 ("*City Reply*"). Plaintiff-Relator Mei Ling ("Relator") opposed, *see generally* Dkt. # 489 ("*Opp.*"), and filed a motion for an evidentiary hearing and limited discovery on the proposed settlement, *see generally* Dkt. # 495 ("*Evid. Mot.*"). Having considered the moving, opposing, and reply papers, as well as the arguments at the hearing on August 16, 2024, the Court **GRANTS** the motion for settlement approval and **DENIES** Relator's motion for an evidentiary hearing and limited discovery as moot.

I.  Background

   A.  Factual and Procedural Background

The Court has summarized the allegations underlying this case in previous orders, so it repeats only those necessary for deciding the current motion. *See United States ex rel. Mei Ling v. City of Los Angeles*, No. CV 11-974 PSG (JCx), 2018 WL 3814498 (C.D. Cal. July 25, 2018) ("*Mei Ling I*"); *United States ex rel. Mei Ling v. City of Los Angeles*, 389 F. Supp. 3d 744, 749 (C.D. Cal. 2019) ("*Mei Ling II*").

On February 1, 2011, Relator and FHC filed a *qui tam* action asserting that the City and the Community Redevelopment Agency of the City of Los Angeles ("CRA") violated the False

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

Claims Act ("FCA"), 31 U.S.C. §§ 3729 et seq. *See generally* Dkt. # 1 ("*Compl.*"). The FCA claims were based on the City and CRA's repeated misrepresentations to the Department of Housing and Urban Development ("HUD") in order to receive federal housing funds. *See id.* The Government filed an amended complaint-in-intervention on December 10, 2018. *See* Dkt. # 216.[1]

Shortly after the City's second motion to dismiss was denied in *Mei Ling II* in early August 2019, the City and HUD entered into a voluntary compliance agreement ("VCA"). *Opp.* 9:5–8, Ex. C. In the VCA, the City committed to carrying out a program that provides affordable, accessible housing with a value that averages a minimum of $20 million per year over ten or more years. *Id.*

The Government and the City engaged in extended and voluminous fact discovery, which concluded on November 17, 2023. *See Mot.* 3:6–19; Dkt. # 435 ("*Scheduling Order*"). Expert discovery cut-off was set for March 8, 2024, and trial for August 22, 2024. *Scheduling Order*.

B.     The Settlement Agreement

On March 1, 2024, the City filed a motion for summary judgment ("City MSJ"). *See generally* Dkt. # 471 ("*City MSJ*"). At the pre-trial mediation on March 5, 2024, the City offered the total settlement amount to the Government. *See Mot.* 3:22–24; Hearing Transcript ("*Hearing Tr.*") 10:6–9. Following mediation, the parties negotiated and agreed on written terms for a settlement. *Mot.* 3:25–4:1. The parties stipulated to stay the proceedings while the Government and City recommended the settlement to their respective decisionmakers. *See generally* Dkts. # 472, 482. Multiple levels of responsible Department of Justice ("DOJ") and City officials approved the settlement. *Mot.* 13:8–18. On May 28, 2024, the Government shared a copy of the not-yet-signed settlement with Relator. *Id.* 4:8–10.

On June 13, 2024, the Government, the City, and FHC executed the settlement for an amount of $38,266,989. *See generally Settlement Agreement*. The Government now moves for settlement approval. *See generally Mot.* Relator objects to the settlement on several grounds. *See generally Opp.* On August 16, 2024, the Court held a fairness hearing regarding the settlement.

---

[1] In July 2019, the Government, FHA, and CRA executed a settlement agreement resolving all claims against CRA. *Mot.* 2:22–25. The Court approved the CRA settlement after an *in camera* fairness hearing. *Id.* 2:26–3:5; *see generally* Dkt. # 321.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

II.  Fairness of the Settlement

The FCA allows the Government to settle a *qui tam* action over a relator's objection "if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances." 31 U.S.C. § 3730(c)(2)(B). To discern whether a settlement is "fair, adequate, and reasonable" under the FCA, district courts have generally applied one of two different standards.

Some district courts apply the Rule 23(e)(2) standard, normally used in class action settlements. *See*, *e.g.*, *U.S. ex rel. Resnick v. Weill Med. Coll. of Cornell Univ.*, No. 04 CIV. 3088 (WHP), 2009 WL 637137, at *2 (S.D.N.Y. Mar. 5, 2009); *U.S. ex rel. Schweizer v. Oce N. Am.*, 956 F. Supp. 2d 1, 10–11 (D.D.C. 2013). Other courts have applied the Ninth Circuit's *Sequoia Orange* standard, which it developed to determine whether the Government's dismissal (rather than settlement) of a *qui tam* suit is justified under 31 U.S.C. § 3730(c)(2)(A). *See United States ex rel. Sequoia Orange Co. v. Baird—Neece Packing Com.*, 151 F.3d 1139, 1145 (9th Cir. 1998); *United States ex rel. Shepard v. Grand Junction Reg'l Airport Auth.*, No. 13-CV-00736-CMA, 2017 WL 749070, at *1–2 (D. Colo. Feb. 27, 2017) (applying *Sequoia Orange* when a relator objected to a *qui tam* settlement).[2]

The Court concludes that the proposed settlement is fair, adequate, and reasonable under both standards. As such, it analyzes the settlement under both standards below.

A.  Rule 23(e)(2)

   i.  *Legal Standard*

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See*

---

[2] The Court acknowledges that the *Sequoia Orange* standard for *qui tam* settlement is likely limited by *Polansky v. Exec. Health Resources, Inc.*, 599 U.S. 419 (2023). There, the Supreme Court determined the appropriate standard for review for Government dismissal of a *qui tam* suit is Fed. R. Civ. P. 41, but it did not address the standard applicable to 31 U.S.C. § 3730(c)(2)(B). *Polansky*, 599 U.S. at 436–37. In other words, the Government does not have "unfettered discretion" to dismiss a *qui tam* suit. This Court, however, will still analyze the proposed settlement under *Sequoia Orange* as it has not been explicitly overruled in the context of 31 U.S.C. § 3730(c)(2)(B).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

*Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 626 (9th Cir. 1982). In assessing whether a settlement is fair, reasonable and adequate, the court must "balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice*, 688 F.2d at 625 (noting that the list of factors is "by no means an exhaustive list").

The Court notes significant differences between a class action settlement and a *qui tam* settlement under the FCA. The Government should be afforded deference when settling a *qui tam* case as it compromises claims for its own injuries, not those of the relator or some absent class member. *See Polansky,* 599 U.S. at 425 ("[T]he injury they assert is exclusively to the Government."); *see also United States v. Ctr. for Diagnostic Imaging, Inc.*, No. C05-0058RSL, 2011 WL 13249405, at *2 (W.D. Wash. Apr. 4, 2011) (many class action factors are inapplicable to the Government's settlement of a suit brought on its own behalf). Further, the settlement should consider public interests at stake in the litigation and settlement, interests not confined to monetary recovery. *See U.S., ex rel. Parikh v. Premera Blue Cross*, No. C01-0476MJP, 2007 WL 1461165, at *2 (W.D. Wash. May 16, 2007) (rejecting Government's argument that a court "should not be concerned about any compromise of the public's interest"); *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 969 (9th Cir. 1995), *cert. denied*, 518 U.S. 1018 (1996) (refusing to uphold release executed without Government's consent because the public interests underlying the *qui tam* provisions of the FCA outweighed the general policy in favor of settlements). Thus, the Court will not analyze factor 3 and factor 8 as they only apply to class actions, and it will apply the remaining factors deferentially while considering public interests.

The district court must approve or reject the settlement as a whole after comprehensively exploring all factors. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite provisions of the settlement. *See id.* The Court is cognizant that the settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

    *ii.    Discussion*

        *a.    Strength of Plaintiffs' Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast valley Roofing, Inc.*, 266 F.R.D. 482, 488 (C.D. Cal. 2010) (internal quotation marks omitted). This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Here, Relator argues that there is little uncertainty regarding the outcome of this case. *Opp.* 20:2–5. Although the Government believes that it would ultimately prevail if this litigation continued, it recognizes that the City's intention to aggressively defend this case, using facts uncovered during discovery, presents uncertainty and risks as to liability and damages. *Mot.* 10:12–14; *see Coleman v. Hernandez*, 490 F. Supp. 2d 278, 281 (D. Conn. 2007) ("[T]here is no simple rule for calculating . . . damages under the [FCA]."); *see generally City MSJ*. The Court emphasizes the City's argument that the Government would fail to prove that the City's certifications were material to HUD, *see City MSJ* 13:23–22:23, and scienter or causation, *id.* 23:1–30:10, all of which are required to establish FCA claims. In fact, the City's MSJ includes Government misconduct allegations tied to the materiality issue. *Id.* 15:5–18:11. Even if successful against the City's MSJ, the Government faces an onerous task to establish the FCA claims at trial. The Government's barriers of continuing litigation include more motion practice, remaining pre-trial activities, trial, and potential appeals. *Mot.* 10:14–17. Accordingly, the Court agrees with the Government that this factor weighs in favor of approval.

        *b.    Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement. *See Officers for Justice*, 688 F.2d at 625. Again, the Government acknowledges that its case would be "long, complex, and hard-fought" if it moved forward. *See Mot.* 10:14–17. If the case were to proceed further, the costs would likely increase exponentially without any guarantee of greater reward. *See id.* 11:13–14. The settlement minimizes the delay and costs that further litigation would entail.

Further, it is clear that the City will thoroughly defend this case. *See generally City MSJ*; *Mot.* 10:12–22. And while the Court previously denied the City's motion to dismiss, it also stated that this denial did not mean "that the Government has already proven its case." *Mei Ling*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

*II*, 389 F. Supp. 3d at 763. Without settlement, the Government expects further protracted and difficult litigation with regard to motion practice, remaining pre-trial activities, trial, and potential appeals. *Mot.* 10:14–17. Thus, the risks, expense, and duration of continued litigation support final approval of this settlement. *See Dyer v. Wells Fargo Bank, N.A.*, CV 13-02858 JST, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

       *c.*  *Amount Offered in Settlement*

  The next factor in assessing the fairness of the proposed settlement is the amount of the settlement. "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted). The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. Rather, any analysis of a fair settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation. *See id.*

  Here, the parties agreed to a total settlement of $38,266,989 million. *See Settlement Agreement* ¶ 1. The parties reached this amount after extensive investigation and negotiation over the course of nine years and two mediations. *See Mot.* 12:13–15.

  The Government analyzed the total settlement amount through a "benefit of the bargain" damages approach that looked at the value of affordable housing that the City developed compared to the value of the affordable and accessible housing it would have developed had it complied with the accessibility requirements. *See Hearing Tr.* 8:11–14; *see also United States v. Bornstein*, 423 U.S. 303, 316 n.3 (1976) ("The Government's actual damages are equal to the difference between the market value of the [service] it received and retained and the market value that the [service] would have had if [it] had been of the specified quality."). Although the Government previously identified the total amount of $536 million as single damages in this case, it recognized and reserved its right to reconsider alternative damage methodologies that might be more appropriate. *See Declaration of William C. Edgar*, Dkt. # 491-1, ¶ 29. The Government focused on the federal requirement that a minimum of five percent of the multifamily housing be made accessible for mobile impairment because most of the defects in this case related to mobility. See 24 C.F.R. § 8.22; *Hearing Tr.* 10:6–12, 11:15–12:14. In addition to the calculated amount of $26,800,000, the Government included a multiplier sum of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

$11,466,989.  *See Hearing Tr.* 12:12–14 ("for the 5-percent we got 100-percent of that out of the calculus, plus a multiplier.").

The amount recognizes that the City received funds for affordable housing that it did not make entirely accessible and sends a message of deterrence.  *Mot.* 13:1–7; *see Green*, 59 F.3d at 965 (recognizing "the FCA aims at achieving deterrence as well as restitution").  The Court acknowledges that "each dollar the City pays in settlement is a dollar that it must find in its budget, which balances other important goals such as spending on affordable and accessible housing, reducing homelessness, and other public goods." *Mot.* 12:21–24.  Even assuming the Government is successful at trial, the economic reality that the City can pay a full judgment with treble damages is troublesome.  Therefore, the settlement amount not only addresses public interests in enforcing the FCA and the City's struggle with budget allocation, but also secures a certain monetary recovery where the Government faces significant risks of no recovery and ongoing litigation expenses if forced to proceed with litigation.

Relator contends that there is no reasonable basis for the discrepancy between the settlement amount and the damages previously claimed by the Government that totaled $536 million, or the City's prior settlement offers to the Government of $111 million and $100 million. *Opp.* 16:1–17:16.  This argument is misplaced as the settlement arrives more than six years later after extended litigation, expansive discovery, and robust negotiations.  *Gov. Reply* 3:18–20.  The previous offers, and the size of those offers, were made in an entirely different context—which explains the series of increased, reduced, withdrawn, or amended offers.  The City's willingness to vigorously defend this case also provides insight into the discrepancy in amount and potential strength of the City's defense.  *See Great Neck Cap. Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410–11 (E.D. Wis. 2002) ("Mere possibility that class might receive better settlement if case were fully litigated is not a good reason for disapproving settlement in a class action."); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460–61 (S.D.N.Y. 2004) ("[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

For the reasons discussed, the Court finds that the settlement amount is fair, adequate, and reasonable under the circumstances. *See Rigo v. Kason Indus., Inc.*, No. CV 11-0064 MMA (DHBx), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation."); *Great Neck Cap.*, 212 F.R.D. at 409 (recognizing that plaintiffs would face substantial risks if settlement was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

not approved where "a jury would have to evaluate conflicting evidence on such issues as scienter, materiality, causation and damages, as well as conflicting expert testimony").

### 1.     *The VCA as an Alternate Remedy*

Relator argues that the $200 million value of the VCA should be deemed part of the total settlement proceeds, and therefore included in the calculations of Relator's recovery. *Opp.* 9:21–26; 15:24–28.

Assuming an alternate remedy is available when the Government intervenes,[3] the VCA does not address, resolve, or take the place of any FCA claims. *Gov. Reply* 7:16–24. The VCA expressly states that it "does not, and shall not be construed to, resolve any claims that have been or could be asserted in *[U.S.] ex rel. Mei Ling, et al. v. City of Los Angeles, et al.*, No. CV-11-00974-PSG-JC (CDCA filed Feb. 1, 2011), or any other claims . . . [the DOJ] has or may have under the [FCA] . . . or any other statutory, administrative, regulatory, or common law claims." *Id.*; *see U.S. ex rel. Kennedy v. Novo A/S*, 5 F.4th 47, 49, 54 (D.C. Cir. 2021) (plain text of FCA confines alternate remedies to those "that could have been brought in a *qui tam* action"). *Cf. with Barajas*, 258 F.3d at 1011 (finding an alternate remedy where "the Agreement itself appears to have explicitly taken into account the overlap with the remedy [the relator] sought in his second action.")

Further, because no money spent by the City under the VCA—no proceeds, tangible assets, or economic value—is transferred to the Government, the relator has no right of compensation. *See U.S. ex rel. Godfry v. Kellog, Brown & Root*, 2008 WL 9878351, at *7–8 (E.D. Va., 2008), *aff'd*, 360 Fed. Appx. 407 (4th Cir 2010) ("Unless the Government has

---

[3] The parties dispute whether the Government's intervention in a *qui tam* case forecloses the possibility of an alternate remedy under 31 U.S.C. § 3730(c)(5). *See Gov. Reply* 6:2–21; *Opp.* 9:21–15:28; *see generally FHC Reply*. The Government claims that it must decline intervention for an alternate remedy. *Gov. Reply* 6:11–13 (quoting *U.S. ex rel. Barajas v. United States*, 258 F.3d 1004, 1010 (9th Cir. 2001)) ("An alternate remedy under § 3730(c)(5) is a remedy achieved through the government's pursuit of a claim after it has chosen not to intervene.") In contrast, Relator and FHC argue against such a brightline rule, proposing a claim-by-claim analysis, not an intervention or not approach. *See FHC Reply* 4:1–4; *Opp.* 13:8–11. FHC persuasively explains that the legal and practical futility, not intervention, is a more plausible linchpin in deciding whether an alternate proceeding is an "alternate remedy." *See FHC Reply* 4:20–7:19. Although futility is the presumable linchpin, the issue is not dispositive in this case and therefore the Court will not analyze it further.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

received proceeds to remedy a claim of liability, relator has no right of compensation."); *Hearing Tr.* 28:5–8 ("The VCA clearly brings a benefit to the United States, but that benefit is very difficult to measure. It's really an intangible benefit, as far as the United States is concerned."). Accordingly, the Court will not include the VCA value as part of the total settlement proceeds.

### d. Extent of Discovery Completed and Stage of the Proceedings

The next factor requires the Court to gauge whether plaintiffs had sufficient information to make an informed decision about the merits of her case. *See In re Mego*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases." *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

In this case, the Government and the City completed extensive fact and expert discovery, which provided a significant factual foundation. *See Mot.* 13:22–25. The parties propounded and responded to multiple rounds of document requests, interrogatories, and requests for admissions; issued third party subpoenas related to hundreds of properties; collectively reviewed for privilege and relevance almost one million documents; and exchanged more than 580,000 documents. *Id.* 3:6–11. The parties deposed 28 fact and 30(b)(6) witnesses, produced eleven expert and non-retained expert reports, and took eight expert and non-retained expert depositions. *Id.* 3:11–13. The parties marked and used more than 400 separate deposition exhibits. *Id.* 13:13–14. The Government collected, assembled, and analyzed extensive agency accounting records for tens of thousands of City grant draws. *Id.* 13:14–16. The City and third parties produced architectural records and management files for hundreds of buildings. *Id.* 13:16–17. The Government's experts surveyed and photographed 219 buildings, finding extensive accessibility defects in them. *Id.* 13:17–19.

The extensive amount of discovery suggests that the parties were well informed and had sufficient information to assess the merits of their claims. *See id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (finding that counsel's "good grasp on the merits of their case" after extensive discovery weighs this factor in favor of approval); *Ramirez v. Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794, at *5 (N.D. Cal. Aug. 25, 2017) (finding this factor in favor of approval where "both sides had a well-develop sense of the risks and benefits of continuing litigation"). Accordingly, the Court finds that this factor weighs in favor of approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

    *e.*    *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Here, the Government's trial team that recommended the settlement included experienced attorneys and financial auditors in the DOJ and United States Attorney's Office for the Central District of California. *See Mot.* 14:17–20. Moreover, management in both offices reviewed and approved the settlement. *See id.* at 14:20–21. The Court is satisfied that the Government has evaluated the merits of the claims and risks associated with prosecuting them through trial and appeal, and the benefits to settling them. The Court accordingly credits Government's counsel's determination that the settlement is fair and reasonable, *see id.*, and finds that this factor weighs in favor of approval.

    *f.*    *The Presence of a Government Participant*

"The participation of a government agency serves to protect the interests of . . . absentees, and approval by the agency is an important factor for the court's consideration." *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977). Here, the Government's active participation in this case through the DOJ and U.S. Attorney's Office weighs in favor of approving the settlement.

    *iii.*    Conclusion

Having reviewed the relevant factors and finding that all favor approval of the final settlement, the Court **APPROVES** the settlement under the Rule 23(e)(2) standard.

    B.    <u>Sequoia Orange</u>

Under *Sequoia Orange*, "[a] two-step analysis applies . . . to test the justification for dismissal: [the government must identify] (1) . . . a valid government purpose; and (2) a rational relation between dismissal and accomplishment of the purpose. If the government satisfies the two-step test, the burden switches to the relator to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." *Sequoia Orange Co.*, 151 F.3d at 1145.

For the reasons discussed above, the settlement is rationally related to the accomplishment of several valid government purposes. The certainty of recovery as weighed against the uncertainty of summary judgment, trial, and appeal; the desire to avoid expending

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

additional government resources in this case; and the significant deterrent message of a settlement of this size are valid government purposes rationally related to the settlement and dismissal of the case.

Relator does not show that the settlement "is fraudulent, arbitrary and capricious, or illegal." *See Sequoia Orange Co.*, 151 F.3d at 1145. Relator refers to a "quid pro quo" in a non-related case involving the Government, other relators, and Relator's prior counsel, *see Opp.* 23:25–25:15, to allege a conjectural "quid pro quo" between the Government and the City, *see id.* 22:24–23:13. Relator asserts that the Government agreed to file a second amended complaint that "deleted the government's claims in the original and amended complaints that the City violated its duties under federal law to 'affirmatively further fair housing,'" so "that the City would in return drop some of its defense related allegations regarding potential HUD or DOJ misconduct." *Id.* The City, however, continued to make such misconduct claims in its MSJ, *see generally City's MSJ*, and therefore Relator allegations are inconsistent with the Court record. Further, Relator fails to point to any existing evidence of non-speculative collusion in this case. The Court does not find any indication of collusion in this case, which is also evidenced by the active participation of an experienced mediator during the settlement process.[4] *See Ladore v. Ecolab, Inc.*, No. CV 11-9386 FMO (JCX), 2013 WL 12246503, at *5 (C.D. Cal. Aug. 2, 2013) ("A settlement reached through the assistance of an experienced mediator supports a determination that the settlement process was not collusive."); *Georgino v. Sur la Table, Inc.*, No. CV 11-03522 MMM (JEMX), 2013 WL 12122430, at *16 (C.D. Cal. May 9, 2013) (recognizing same).

Without further evidence or explanation of how the settlement here is fraudulent or illegal, Relator has not met her burden to successfully oppose the settlement under the *Sequoia Orange* standard.

Accordingly, the Court **APPROVES** the settlement under *Sequoia Orange*.

III.     Relator's Request for an Evidentiary Hearing and Limited Discovery

The FCA entitles a *qui tam* relator to a fairness hearing as of right when the United States proposes a settlement with the FCA defendant. 31 U.S.C. § 3730(c)(2)(B); *United States ex rel.*

---

[4] David Geronemus, who assisted the parties in coming to a settlement agreement, is an attorney, full-time neutral with JAMS since 1994, and a former law clerk to Supreme Court Justice Potter Steward. *Hearing Tr.* 24:12–25; *David Geronemus, Esq.*, JAMS, https://www.jamsadr.com/geronemus/, (last visited Aug. 19, 2024).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

*Schweizer v. Océ N.V.*, 677 F.3d 1228, 1234 (D.C. Cir. 2012); *U.S. ex Rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715 (9th Cir. 1994). Although a relator's objections may be accompanied by a petition for an evidentiary hearing on those objections, an evidentiary hearing is not a matter of right. S. REP. 99-345, 26, 1986 U.S.C.C.A.N. 5266, 5291. It is the relator's burden, in light of existing evidence, to demonstrate a substantial and particularized need or "come forward with a colorable and non-speculative claim that the government's rationale is improper and that further disclosures are needed." *United States v. Everglades Coll., Inc.*, 855 F.3d 1279, 1291–92 (11th Cir. 2017), *abrogated on other grounds by United States v. Republic of Honduras*, 75 F.4th 1288 (11th Cir. 2023). An evidentiary hearing serves the "limited purpose of forcing the government to provide some reasoning behind its decision to settle the case." *Schweizer*, 956 F. Supp. 2d at 11. Any limited discovery that is afforded should not unduly burden the parties or cause unnecessary delay. *Everglades Coll.*, 855 at 1291 n.8.

In the opposition to the motion for settlement approval and in her motion for an evidentiary hearing, Relator argues that she is entitled to discovery and that the fairness hearing should have been held as an evidentiary hearing. *See generally Evid. Mot.*; *Opp.* 25:26–26:16. The motion for evidentiary hearing repeats the same speculative arguments raised in the opposition. *See generally Opp.; Evid. Mot.* Relator's alleged substantial or particularized need is based on disclosure of negotiation calculations, current and previous motivations, the 2019 VCA and whether the government credited the financial commitments, and potential collusion. *See id.* 2:18–3:2.

The Court is satisfied that the Government has adequately explained its reasoning behind the settlement through its motion and at the fairness hearing, eliminating any speculative substantial and particularized need. Any further discovery would be an unnecessary delay and undue burden on the parties. Also, this is not a case where Relator was entirely in the dark. *Cf. U.S. ex rel. Nudelman v. Int'l Rehab. Assocs., Inc.*, No. CIV.A. 00-1837, 2004 WL 1091032, at *1 (E.D. Pa. May 14, 2004) ("No evidence is offered, and no specific facts are even alleged to support the Government(s) and Defendant's contention that the settlement is therefore fair, adequate and reasonable."); *U.S. ex rel. McCoy v. California Med. Rev., Inc.*, 133 F.R.D. 143, 149 (N.D. Cal. 1990) ("[P]laintiffs were not included in settlement negotiations and have not been fully informed as to how the United States calculated the damages which are the basis of the proposed settlement."). Accordingly, Relator is not entitled to an evidentiary hearing or limited discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-00974 PSG (JCx) | Date | August 22, 2024 |
|---|---|---|---|
| Title | United States et al. v. City of Los Angeles et al. | | |

IV.     Conclusion

For the reasons stated above, the Court **DENIES** Relator's motion for evidentiary hearing and limited discovery, and **APPROVES** the settlement. Accordingly, it is **HEREBY ORDERED AS FOLLOWS**:

- The Court approves settlement of the action between the Government, FHC, and the City, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate.

- The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

**IT IS SO ORDERED**.